**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF OHIO and JENNIFER KUCERA, <br><br>         *Plaintiffs*, <br><br> v. <br><br> FRANK LaROSE, in his official capacity as Ohio Secretary of State; DAVID YOST, in his official capacity as Attorney General of Ohio; MICHAEL O'MALLEY, in his official capacity as County Prosecutor of Cuyahoga County; <br><br>         *Defendants*. | Civ. No. _____ <br><br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiffs League of Women Voters of Ohio (the "League") and Jennifer Kucera (collectively, "Plaintiffs"), by and through undersigned counsel, file this complaint for injunctive and declaratory relief, pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); Section 208 of the Voting Rights Act of 1965, 52 U.S.C. § 10508 ("VRA"); the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution, U.S. Const. amends. V, XIV; and 42 U.S.C. § 1983, against Frank LaRose, in his official capacity as Ohio Secretary of State; David Yost, in his official capacity as Attorney General of Ohio; and Michael O'Malley, in his official capacity as County Prosecutor of Cuyahoga County, and allege as follows:

1

## INTRODUCTION

1.      Many voters with disabilities cannot access any polling location and vote in person—or cannot do so without great difficulty—and so must rely on voting by U.S. mail or by using a drop box.  For many of those voters, voting by mail or drop box requires assistance from another person.

2.      A recently enacted provision in Ohio's revised Election Code, known as Ohio House Bill 458 ("HB 458"), which became effective April 7, 2023, provides that anyone—outside of a limited list of persons who are "authorized" to provide assistance, Ohio Rev. Code ("R.C.") § 3599.21(A)(9)—commits a felony if they assist voters with "return[ing]" their absentee ballot. This creates an unlawful burden on the right to vote for many people with disabilities.

3.      Thus, after HB 458, it is now a felony under R.C. § 3599.21(A) for anyone who is not an election official or a mail carrier to "possess" or "return" the absentee ballot of a voter with a disability, unless the person assisting the voter falls within a list of statutorily enumerated relatives.  R.C. § 3599.21(A)(9), (10) (provisions criminalizing possession and return of an absentee ballot); R.C. § 3509.05(C)(1) (listing relatives permitted to return absent voter's ballots) (collectively, the "Assistance Restrictions").

4.      By way of example: HB 458 does not authorize an adult grandchild to return or possess the absentee ballot of their grandparent.  Nor does HB 458 permit other trusted persons such as domestic partners, cousins, roommates, neighbors, or friends to return or possess an absent voter's ballot.

5.      The Assistance Restrictions also prohibit Plaintiff Jennifer Kucera's non-familial caregivers—professional in-home aides who help her with basic living tasks on a daily basis— from returning her ballot.  Likewise, HB 458 forecloses voters with disabilities, including League

2

members, from relying on the assistance of the staff members who care for them at nursing homes and other group facilities.

6.      Each of these categories of people—and anyone else who is not among the handful of statutorily enumerated categories of family members—risks criminal prosecution if they "return" the voter's absentee ballot on their behalf.  Notably, "return" is not defined by statute. *See* R.C. § 3599.21(A)(9).

7.      Any individual who is not among the handful of statutorily enumerated categories of family members also may risk criminal prosecution if they engage in other acts that would assist the voter in returning the ballot, such as "possess" the absent voter's ballot, although neither the face of the law nor the Secretary of State's guidance has clarified which specific actions constitute "possess[ion]" and are thus forbidden.  *See* R.C. § 3599.21(A)(10).

8.      The Assistance Restrictions are divorced from the reality faced by Ohio's population of voters with disabilities, including Miss Kucera and League members.  Many voters with disabilities do not have any of the statutorily enumerated family members nearby—or at all, receive only limited assistance from statutorily enumerated family members for certain needs, or cannot receive any assistance from statutorily enumerated family members.  Many require help to manage complex or severe disabilities and must rely exclusively on in-home caregivers or reside in nursing homes and other full-time care facilities.  In other words, Ohioans with disabilities cannot always receive the help they need from HB 458's circumscribed list of specific family members.

9.      Further, under the Assistance Restrictions, voters with disabilities, including but not limited to Miss Kucera and League members, cannot receive vital assistance from the non-familial persons that *are* around to assist, such as Miss Kucera's in-home professional caregivers,

without subjecting them to criminal liability.  This means the very people who are providing help to voters with disabilities—in some cases, with every facet of their day-to-day life, from the moment they wake up until they go to sleep in the evening—cannot assist them in exercising their "precious" and "fundamental" right to vote.  *Harper v. Virginia State Bd. of Elec.*, 383 U.S. 663, 670 (1966).

10.     For some voters with disabilities, the Assistance Restrictions force them to undertake extreme burdens to vote that voters without disabilities will never face.  For others, voting is simply impossible.

11.     The Assistance Restrictions thus disenfranchise many Ohioans with disabilities and exclude them from participation in the exercise of their fundamental and precious right to vote.

12.     In particular, Miss Kucera, an individual with muscular dystrophy, is severely burdened by Defendants' enforcement of the Assistance Restrictions.  As described in greater detail below, in two recent Ohio elections, in May and August of 2023, Miss Kucera could not vote on her own and could not legally rely on her in-home professional caregivers, so she was forced to ask her elderly mother with mobility issues, who does not live nearby, to drive to Miss Kucera's home, perform the physical process of folding and sealing her ballot in the return envelope, take it to a mailbox (as Miss Kucera's apartment complex does not have an outgoing mailbox), and deposit it in the mail on her behalf, even though an in-home professional caregiver who regularly assists Miss Kucera was available to do these things.

13.     Defendants' enforcement of the Assistance Restrictions has and will continue to severely restrict Miss Kucera's ability to vote in future elections, including Ohio's primary election in March 2024 and the November 2024 general election, by unjustifiably restricting who is legally permitted to help her vote, and thus will exclude her from participating in Ohio's absentee voting

program on an equal basis with her peers who do not have disabilities.

14.     By unjustifiably restricting who is legally permitted to help League members with disabilities vote, the Assistance Restrictions have excluded and will continue to exclude these members from participating in Ohio's absentee voting program on an equal basis with their peers who do not have disabilities.

15.     As set forth in detail below, the Assistance Restrictions violate at least two Federal statutes.

16.     This Ohio law conflicts with Section 208 of the Voting Rights Act of 1965, 52 U.S.C. § 10508, which provides: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write *may be given assistance by a person of the voter's choice*, other than the voter's employer or agent of that employer or officer or agent of the voter's union."  (emphasis added).

17.     The Assistance Restrictions violate Section 208 of the VRA by denying Ohio voters with disabilities assistance to vote by the person of their choice.

18.     Ohio's law also violates the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), which provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

19.     The Assistance Restrictions violate Title II of the ADA by excluding Ohio voters with disabilities from participating in and denying the benefits of Ohio's absentee voting services, programs, and activities.  *See* 42 U.S.C. § 12132.

20.     Additionally, the criminal penalties in the Assistance Restrictions are void for vagueness because the actions proscribed are so unclear and standardless that it is impossible for

a reasonable person to know what exactly is prohibited.

21.     By way of example only, the law does not make clear whether "possess[ing] the absent voter's ballot of another" includes possessing an unmarked ballot that a voter's roommate or in-home caregiver retrieves from the voter's mailbox at their request, or refers only to a voted ballot.  And even if the term "possess the absent voter's ballot of another" were sufficiently clear, HB 458's amendment of that statute to also include the "return" of the absent voter's ballot of another—a term that would ordinarily be understood to be subsumed by the word "possess[ion]"—renders both terms unclear.

22.     These vagueness concerns are particularly acute with respect to the League's employees, members, and volunteers, who assist voters with disabilities on a regular basis. Because the law does not define the boundaries of these terms, these employees and members will be subject to arbitrary or discriminatory enforcement by law enforcement or prosecutorial authorities.

23.     Thus, overall, the Assistance Restrictions directly encumber the voting rights of Miss Kucera, as well as those many League members who have disabilities and require assistance to vote.

24.     These Restrictions also have forced the League to expend scarce resources to educate voters, including voters with disabilities, about how to comply with the Assistance Restrictions without violating HB 458's criminal provisions.

25.     Unless voters with disabilities who need to vote absentee are permitted to obtain assistance in returning their ballots from trusted individuals beyond the statutorily enumerated categories of family members—and without the threat of criminal prosecution of their helpers—Miss Kucera and the League's members, as well as other voting Ohioans with disabilities, will be

deprived of meaningful access to Ohio's absentee voting scheme, and thus of their right to vote.

## JURISDICTION AND VENUE

26.     Plaintiffs bring this action pursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2; the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution, U.S. Const. amends. V, XIV; and the laws of the United States, including, but not limited to, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (as amended); Section 208 of the Voting Rights Act of 1965, 52 U.S.C. § 10508; and 42 U.S.C. § 1983.

27.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343.

28.     This Court has jurisdiction and authority to grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and 65, and this Court's equitable powers.

29.     Venue is proper in the Eastern Division of the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Michael O'Malley, as County Prosecutor of Cuyahoga County, has his principal place of business within this district.

30.     Venue is also proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

31.     Plaintiff League of Women Voters of Ohio, which has its headquarters in Columbus, Ohio, is a nonprofit, nonpartisan membership organization that encourages informed and active participation in government, works to increase understanding of major public policy

issues, and influences public policy through education and advocacy.  The League is the Ohio affiliate of the League of Women Voters of the United States.  The League was founded in 1920 by the suffragists, after the enactment of the Nineteenth Amendment to the U.S. Constitution, with the goal of helping citizens exercise their right to vote.  Currently, the League has 29 local leagues and 5 at-large units throughout Ohio, including in Cleveland, and 3,743 individual members.  The vast majority of the League's members are registered Ohio voters, and reside in all of Ohio's State Senate districts, 94 of Ohio's State House districts, and in all 15 of Ohio's U.S. Congressional Districts.

32.     The League dedicates significant resources to voter-engagement work, including voter registration and voter mobilization.  With the passage of HB 458, the League has been forced to divert resources it would otherwise spend on its core voter-engagement activities to educate voters on how to comply with the Assistance Restrictions.  HB 458 has also made it more difficult for the League's members and volunteers to assist voters and for many League members with disabilities to cast a vote in the general election, including members who are registered to vote and who live in and seek to vote in Cleveland and many other cities in the region.

33.     Plaintiff Jennifer Kucera is a citizen of the United States, a citizen of the state of Ohio, and a qualified elector.  Miss Kucera lives in Berea, Ohio, which is located in Cuyahoga County, Ohio, where she is registered to vote.  Miss Kucera has spinal muscular atrophy, a form of muscular dystrophy, which is a degenerative disease that affects her mobility and makes in-person voting virtually impossible and voting by mail or drop box virtually impossible without assistance.

34.     Defendant Frank LaRose is the Secretary of State and the chief election officer of the State of Ohio, with such powers and duties relating to the registration of voters and the conduct

of elections.  R.C. § 3501.04.  His office is located at 180 Civic Center Dr., Columbus, Ohio 43215.

Secretary LaRose is sued in his official capacity.

35.     Defendant David Yost is the Attorney General of the State of Ohio, with statewide

authority to prosecute violations of R.C. § 3599.21(A)(9), (10), other Election Code provisions,

and all other Ohio criminal laws.  R.C. § 109.95.  His office is located at 30 E. Broad St., 14th

Floor, Columbus, Ohio 43215.  Attorney General Yost is sued in his official capacity.

36.     Defendant Michael O'Malley is the County Prosecutor for Cuyahoga County, Ohio,

with authority to prosecute violations of R.C. § 3599.21(A)(9), (10), other Election Code

provisions, and other Ohio criminal laws that occurred within Cuyahoga County, Ohio.  R.C.

§ 309.08.  His office is located at The Justice Center, 1200 Ontario Street, 9th Floor, Cleveland,

Ohio 44113.  County Prosecutor O'Malley is sued in his official capacity.

## STATEMENT OF FACTS

### *Ohio's Voting Restrictions Make Voting Inaccessible to Voters with Disabilities*

37.     Ohio's recent so-called "Voter ID Law," HB 458, was signed into law by Governor

DeWine on January 6, 2023, and became effective April 7, 2023.  The law revises several aspects

of Ohio's Election Code and includes a new criminal penalty for non-enumerated family members

who assist voters in "return[ing]" absentee ballots.

38.     Ohio's Election Code allows only the following enumerated categories of family

members to possess an absent voter's ballot and assist a voter in returning an absentee ballot: "the

spouse of the elector, the father, mother, father-in-law, mother-in-law, grandfather, grandmother,

brother, or sister of the whole or half blood, or the son, daughter, adopting parent, adopted child,

stepparent, stepchild, uncle, aunt, nephew, or niece of the elector[.]"  R.C. § 3509.05(C)(1).

39.     HB 458 amended a related provision concerning absentee ballots, R.C. § 3599.21,

by imposing a criminal penalty upon any non-authorized person returning an absent voter's ballot:

> (A) No person shall knowingly . . .
>
>> (9) Return the absent voter's ballot of another to the office of a board of elections, unless either of the following apply:
>>
>>> (a) The person is a relative who is authorized to do so under division (C)(1) of section 3509.05 of the Revised Code; [or]
>>>
>>> (b) The person is, and is acting as an employee or contractor of the United States postal service or private carrier . . . .
>
> (C) **Whoever violates [this provision] is guilty of a felony of the fourth degree**.

R.C. § 3599.21(A)(9), (C) (emphasis added).

40.     Voters who have disabilities and live without qualifying family members nearby, including Miss Kucera and League members, are unable to vote in compliance with R.C. § 3509.05(C)(1) and R.C. § 3599.21(A)(9) and (C) because they cannot, or cannot without substantial hardship, return an absentee ballot either on their own or with the assistance of the statutorily enumerated family members—a spouse, parent, parent-in-law, grandparent, sibling, child, uncle, aunt, niece, or nephew—pursuant to R.C. § 3509.05(C)(1).

41.     People other than the statutorily enumerated family members are often available to assist such voters, including individual in-home caregivers or employees of the facilities where League members live, or friends, grandchildren, cousins, neighbors, or other trusted volunteers. But R.C. § 3599.21(A) not only prohibits such individuals from providing assistance, it also criminalizes their assistance by making it a "felony of the fourth degree."  R.C. § 3599.21(C).

42.     Thus, under revised Section 3599.21, anyone who is not an enumerated family member—including in-home caregivers, or employees of a care facility where a voter with a disability resides, or trusted volunteers—who assists a voter with a disability in returning his or

her ballot, has violated the law and is subject to felony criminal prosecution.

43.     By severely restricting who is legally permitted to help voters with disabilities return their absentee ballots, and placing all other assistors at risk of a felony charge, the Assistance Restrictions deny voters with disabilities the right to obtain assistance other than by the enumerated categories of family members—who may or may not be available, or even exist.

44.     By restricting who is legally permitted to help voters with disabilities return their absentee ballots, and placing all non-enumerated family assistants at risk of a felony charge, the Assistance Restrictions make absentee voting inaccessible to voters with disabilities and exclude voters with disabilities from participating in Ohio's absentee voting program on an equal basis with their peers who do not have disabilities.

45.     Furthermore, by using vague and undefined terms, the Assistance Restrictions fail to provide a person with average intelligence an opportunity to know what specific activity may be prohibited.  The Secretary of State has opined that the meaning of the statute's undefined terms are to be determined by the "discretion" of county prosecutors.  Exhibit 1.  A crime that fails to set any boundary for what law enforcement or prosecutorial authorities may charge is vague and standardless, and will result in arbitrary and discriminatory enforcement.

### *Ohio's Voting Restrictions Have Substantially Burdened and Will Continue to Burden Plaintiff Jennifer Kucera's Efforts to Vote*

46.     Miss Kucera, 54, is an individual with muscular dystrophy.  She was diagnosed with muscular dystrophy shortly after birth.  Muscular dystrophy is a degenerative disease.  As time has passed, Miss Kucera's muscles have progressively weakened to the point where she can no longer control certain body parts.  For example, earlier in life she was able to walk, but now she cannot move about without an electric wheelchair.  At present, she is only capable of moving her left arm, neck, and head.

11

47.     Miss Kucera lives in an apartment complex in Berea, Ohio, and has in-home professional caregivers who assist her with daily living activities every day of the week.  This includes, among many other things, helping Miss Kucera out of bed, bathing her, dressing her, placing her in her wheelchair, and cooking meals.  Because of her muscular issues, her in-home professional caregivers also pick up her mail, open it for her, and when she wants to send mail, package any letters or items, take them to the post office, and mail them on her behalf.  Miss Kucera is unable to do any of these activities without these caregivers.

48.     For Miss Kucera, voting under HB 458 is not merely inconvenient; it is an immense burden.

49.     Miss Kucera's apartment does not have its own mailbox.  The apartment complex's mail area, where Miss Kucera has a mailbox, is located outside in the front of the complex, which is across a parking lot from her apartment.

50.     It is extremely burdensome for Miss Kucera to access her mailbox.  To do so, Miss Kucera must exit her building and cross an active parking lot in her electric wheelchair.  Once at the mailbox, her in-home professional caregivers must open the mailbox because Miss Kucera's condition prevents her from using keys.  In addition, snow or rain make it virtually impossible for Miss Kucera to use her electric wheelchair to access the mail area.  Cold or dampness also affect her muscles so that, even without snow and rain, Miss Kucera rarely is able to retrieve mail during the colder months of the year.

51.     When Miss Kucera or her in-home professional caregivers retrieve the mail, they go back to her apartment and her caregivers open and show her each piece of mail individually, since she cannot open envelopes on her own.

52.     The mail area at Miss Kucera's apartment complex does not have an outgoing

mailbox.  If Miss Kucera needs to mail a letter or other item, her in-home professional caregivers must stuff the envelope or box the item for her, and then take the letter or package to a post office and mail it on her behalf.

53.     Miss Kucera cannot drive, and her in-home professional caregivers cannot drive her places because regular cars cannot accommodate her electric wheelchair.  If Miss Kucera would like to go anywhere—including the post office, a ballot drop box, or the board of elections office—her options are either to pay for a rental van or a car service that caters to people with disabilities, which is often no option at all because she is on a fixed income and these services are very expensive; or to attempt to acquire a ride from Paratransit, a public bus service for persons with disabilities provided by the Greater Cleveland Regional Transit Authority ("RTA"). However, using Paratransit is burdensome from start to finish.  Paratransit requires riders to go through a complicated application process and physically pick up an ADA identification card at the RTA's main office before being permitted to ride.  Once a rider receives that card, the rider is required to book their rides a maximum of three days in advance (if there are rides available at the desired time), required to wait for a 30-minute pickup window, and, because the passenger may be on the bus for up to 90 minutes and the rider is required to be at their destination for at least 30 minutes, any return trip will not be scheduled until *at least* two hours after the end of the pick-up window.  In addition, despite all of this required scheduling, the service is otherwise unreliable.

54.     Given these limitations, Miss Kucera has only been able to vote with the help of her elderly mother, even though receiving her mother's assistance is itself burdensome.

55.     Miss Kucera's mother is 75, lives approximately 30 minutes from Miss Kucera, and has debilitating knee pain and other physical mobility issues.  Although Miss Kucera's mother is the only family member even remotely involved in her care, her mother's participation is

necessarily limited by distance, age, and mobility problems, thus making her assistance sporadic and unreliable.

56.     The Assistance Restrictions impose full responsibility for Miss Kucera's voting upon Miss Kucera's elderly mother, which imposes an additional burden on Miss Kucera's right to vote.  Because no other family members in the statutorily enumerated categories are involved in Miss Kucera's care, no one would be left to legally assist Miss Kucera to vote if Miss Kucera's mother became unavailable.

57.     The August 8, 2023 special election provided an illustration of what an arduous process voting is for Miss Kucera.  The steps Miss Kucera and her mother were forced to take are as follows:

    a.  Miss Kucera's condition makes it difficult to vote by absentee ballot, as she cannot open an envelope on her own and writing is difficult.  Accordingly, Miss Kucera applied for and received an electronic ballot from her county board of elections.

    b.  The board emailed her an electronic link to the electronic ballot via email.

    c.  Normally, once a voter votes the electronic ballot, the voter is required to print the voted ballot and mail the ballot using a separate ballot envelope sent by the board to the voter.  However, Miss Kucera cannot perform this process without assistance because she is unable to operate a printer or to fold and stuff the ballot into an envelope without assistance.

    d.  Instead, Miss Kucera saved her ballot as a PDF file and emailed it to her mother.

    e.  Her mother printed Miss Kucera's completed ballot.

    f.  Miss Kucera's mother, who lives in Brunswick, Ohio, then drove approximately 30 minutes to Miss Kucera's home with the printed ballot.

g. Miss Kucera's mother opened the ballot identification envelope sent to Miss Kucera by the board, her mother placed Miss Kucera's voted ballot into the ballot identification envelope, and sealed it.

h. Miss Kucera then signed the ballot identification envelope.

i. Miss Kucera's mother then opened the return envelope provided by the board and placed Miss Kucera's sealed ballot identification envelope into the return envelope, and sealed it.

j. Miss Kucera's mother then drove the ballot to the Cuyahoga County drop box and deposited it for her.

58. Although this process worked for the August election, Miss Kucera is deeply concerned about her ability to vote using this process going forward, including for the 2024 primary and general elections, because of the burdens it imposes on herself and her elderly mother, who does not live nearby, who has mobility issues of her own, who is not always available when Miss Kucera would like to vote, and whose continued vitality and ability to assist in the future is not guaranteed.

59. For example, Miss Kucera was unable to vote in the November 2023 election because her absentee ballot application arrived after the absentee ballot application deadline, and she was unable to vote in person.

60. The Assistance Restrictions fail to provide a reasonable accommodation that would allow Miss Kucera to be able to vote absentee on an equal basis as those without a disability.

61. Miss Kucera's counsel inquired whether the Secretary of State would make such a reasonable accommodation available to voters with disabilities in a letter sent on April 25, 2023, which included the following information and request:

For electors with disabilities, returning a voted absentee ballot often requires assistance. However, such voters may only have a limited group of people available to provide such assistance. For example, a voter with a disability may not have an authorized relative in existence, or, if they do have an authorized relative, that relative may not be able to assist for a variety of reasons, such as living too far from the voter. In such scenarios, the only persons capable of assisting the voter with a disability in returning an absentee ballot might be the individual's caretakers, friends, neighbors, grandchildren, or domestic partners. But because these groups are not listed as authorized to return absentee ballots under R.C. § 3509.05(C)(1), and return of an absentee ballot by a non-authorized person is now criminalized, certain voters with disabilities will have no one to help them cast their absentee ballots.

To ensure that voters with disabilities understand the full scope of who may return an absentee ballot on their behalf, please state whether R.C. §§ 3599.21(A)(9) and 3509.05(C)(1) prohibit the following persons from returning voted absentee ballots on behalf of persons with disabilities:

> (1) caretakers of voters with disabilities, including both staff employed at assisted living facilities, such as nursing homes, and at-home caretakers,

> (2) friends or neighbors of voters with disabilities; and

> (3) grandchildren or domestic partners.

To the extent Ohio law purports to prohibit these persons from assisting voters with disabilities with returning their ballots, such a restriction effectively prevents certain voters with disabilities from participating in the state's voting program on equal terms with other voters. Ohio law, however, must be consistent with the ADA and with Section 208 of the Voting Rights Act. In connection with VRA Section 208, we note that it provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."

Accordingly, voters with disabilities should be permitted to receive assistance with returning their voted ballot by a person of the voter's choice, including non-familial caregivers, friends, neighbors, grandchildren, or domestic partners who fall outside of the enumerated list of relatives in R.C. § 3509.05(C)(1). ***Will your office support such an accommodation?*** If so, how will your office communicate that option to voters with disabilities and those who may assist them?

*See* Exhibit 2 at 3 (emphasis added).

62. In a response letter on April 28, 2023, the Secretary of State's office acknowledged

that HB 458 "adds a criminal penalty for the unauthorized return of a person's absentee ballot" that applies to persons other than the list of family members permitted to return an absentee ballot for a voter, and did not agree to make any accommodation available to voters with disabilities. *See* Exhibit 1 at 1.

63.     By restricting who is legally permitted to help Miss Kucera return her absentee ballot to enumerated family members, and by placing any non-enumerated family assistor such as her in-home professional caregivers at risk of a felony charge if they assist her, the Assistance Restrictions deny Miss Kucera the right to obtain assistance by a person of her choice. Indeed, if Miss Kucera's mother became unavailable, there would be no one in her life allowed under the law to help Miss Kucera to vote.

64.     By restricting who is legally permitted to help Miss Kucera return her absentee ballot to enumerated family members, and by placing any non-enumerated family assistor such as her in-home professional caregivers at risk of a felony charge if they assist her, the Assistance Restrictions exclude Miss Kucera from participating in Ohio's absentee voting program on an equal basis with her peers who do not have disabilities and threaten to exclude her from voting entirely.

### *The Assistance Restrictions are Vague and Create a Substantial Risk of Criminal Prosecution for League Members, Volunteers, Employees, and Other Caregivers*

65.     The Assistance Restrictions criminalize the "return" and/or "possess[ion]" of an absent voter's ballot by a non-enumerated family member, but do not define either term. R.C. § 3599.21(A)(9), (10).

66.     It is presently unclear what actions, besides physically returning a ballot to a board of elections, may qualify as a criminal "possession" or "return."

67.     For instance, and by way of example only, the statute does not make clear whether

"possess[ing] the absent voter's ballot of another" could transform ordinary conduct—including but not limited to a roommate or in-home caregiver who, while retrieving their mail, picks up the blank absentee ballot that a board of elections has transmitted to the voter—into a felony. The same is true of the grandchild, roommate, or in-home caregiver who places the completed absentee ballot back into the voter's mailbox at the voter's request. The text of HB 458 provides no limitation that would prevent either of these actions from being criminalized as possession of the absent voter's ballot of another.

68. The addition of the term "return" renders the statute particularly confusing, given that "possess[ion]" was already prohibited prior to the enactment of HB 458. The ordinary meaning of "possess" is broader than—and would be understood to encompass any of the conduct captured within—the term "return." The subsequent addition of the term "return" renders both the terms "possess" and "return" unclear to the average person.

69. Because of the potential danger for criminal liability of the League's employees, members, and volunteers, counsel to the League in this action wrote a letter to Secretary LaRose on April 25, 2023, requesting clarification as to how the Assistance Restrictions will be enforced. *See* Exhibit 2.

70. Specifically, counsel asked whether the following activities, if performed by a non-enumerated family member, are prohibited as an illegal "return" under Ohio Law:

- Collection of a sealed absentee ballot envelope from a voter and placing it in a mail box;

- Collection of a sealed absentee ballot envelope from a voter and placing it in a Board of Elections ballot drop box;

- Collection of a sealed absentee ballot envelope from a voter and delivering it to the Board of Elections.

71. In addition, League counsel asked for clarification regarding whether any

18

additional activities are now criminalized by the "return" provision that were not previously criminalized by the provision prohibiting "possess[ion]" of an absent voter's ballot.

72.     In a reply letter on April 28, 2023 (Exhibit 1), Secretary LaRose's Office, signed by Secretary LaRose's Chief Legal Counsel and Director of Public Policy, Paul Disantis, responded:

> Regarding the determination of criminal liability for the unauthorized possession or return of an absentee ballot, ***that discretion belongs to the relevant county prosecutor where the alleged offense occurred.***  (emphasis added).

73.     Because there is no uniform guidance, and instead the meaning of these terms is left to the discretion of whomever is the county prosecutor where the voter resides—such as Defendant O'Malley in Cuyahoga County—criminal liability is based on the subjective preferences of each of Ohio's 88 individual county prosecutors.

74.     The uncertainty as to the meaning of "possession" or "return" puts caregivers, including League members, volunteers, and employees, at substantial risk of arbitrary prosecution.

75.     With HB 458 in force, League members, volunteers, and employees who help voters in absentee voting are also at substantial risk of arbitrary prosecution.

76.     In addition to League members, volunteers, and employees, any individual who seeks to assist a voter with a disability in returning his or her absentee ballot is at substantial risk of arbitrary prosecution.

### *HB 458 Has Required and Continues to Require the League to Divert Resources from its Operations to Educate Voters about the Assistance Restrictions*

77.     Because of the risk placed on all who come into contact with the Assistance Restrictions, since the enactment of HB 458, the League has had to spend considerable time and resources making voters and its members aware of the potential breadth and the new force of the Assistance Restrictions.  This shift in resources has been all the more urgent because HB 458

imposes a new penalty for non-compliance and has made what the law forbids significantly less clear, thus the potential for incidental contact with Ohio's criminal penalties has greatly increased.

78. Furthermore, since HB 458 also imposes new photo ID requirements for in-person voting, *see, e.g.*, R.C. § 3505.18, more voters have problems meeting the in-person voting requirements and thus need to vote absentee. Because more voters now vote absentee, the exposure to potential liability for the League's members, employees, volunteers, and their non-familial contacts for non-compliance with the Assistance Restrictions is greater.

79. This is especially true as it relates to assisting voters who are new to voting by mail. Voters, who would naturally think that they could rely on grandchildren, roommates, non-familial caregivers, and other trusted helpers for assistance, need to be informed that these individuals are unable to assist and they risk potential criminal exposure if they do provide such help to the voter.

80. As part of its mission, the League conducts statewide voter service meetings every month. The purpose of these meetings is to plan for publication of voter guides, organize candidate events, and address other voter issues and problems that arise. Each local league has a voter service chair who attends these meetings.

81. Since the passage of HB 458, time must be spent at these meetings planning programming and education regarding the new penalty found in the Assistance Restrictions. Time spent on the Assistance Restrictions takes away from the League's other voter service priorities, which include programs to engage youth and active duty military voters (who have trouble accessing voting), addressing the pressing need for poll worker recruitment, fundraising, serving unhoused or housing-insecure voters, election protection programs, and other critical issues.

82. The League, which cannot serve all voter-related needs, is forced to choose who it is serving. The League's voter service efforts are necessarily limited by resources and volunteer

time. Being required to devote time and resources to the Assistance Restrictions diverts time and resources from the other critical voter service problems that the League needs to address.

83. In that connection, after the passage of HB 458, the League had to engage in a complete audit of its voter education materials as well as review its local Leagues' materials. The League then had to expend resources to revise all of its informational materials and guidance regarding the Assistance Restrictions, including materials on their website, its printed materials, social media, and vote411.org (the nonpartisan online voter guide). The League also had to educate and train volunteers regarding the new stringent requirements of HB 458.

84. Some local Leagues send volunteers into nursing homes and other residential facilities to instruct residents how to vote, so these volunteers needed new training. In addition, the League had to translate its materials into seven languages. The stakes are higher with criminal penalties, and the precise ways that the law may be violated are less clear, so voters and their helpers need to be informed of the potential breadth of the rules and the risks of non-compliance.

### *Defendants' Administration and Enforcement of the Assistance Restrictions Infringe Plaintiffs' Right to Vote Absentee on an Equal Basis with Voters without Disabilities*

85. Defendant LaRose, as Secretary of State, is the chief election officer of Ohio, charged with supervising the administration of the election laws statewide and issuing directives to prepare rules and instructions for the conduct of elections. R.C. §§ 3501.04-05, 3501.053.

86. Under Ohio law, the Secretary of State has the power to "issue instructions as to the proper method of conducting elections to members of the boards of elections by permanent or temporary directives." *Id*. § 3501.053(A).

87. The Secretary of State can issue a temporary directive beginning ninety days before Election Day through the fortieth day following the election; these directives, unlike permanent directives, are not subject to public review and public comment. *Id*. § 3501.053(A)(2).

21

88.     The Election Code requires the Secretary of State to compel local election officers to observe election laws.  *Id*. § 3501.05(M).

89.     The Election Code grants Secretary LaRose the power and responsibility to appoint the four members of each board of elections in each of Ohio's 88 counties, provide training for board members and staff, issue instructions and legal guidance as to how elections are to be conducted, compel the observance of election laws by all Ohio election officials, and determine and prescribe the form of ballots, among other duties.  *See generally id.* § 3501.05.

90.     In addition, the Election Code expressly provides that the Secretary is responsible for establishing an ADA coordinator within the Secretary's office, whose responsibilities include ensuring equal access to polling places for persons with disabilities, and assuring the same opportunity for access and participation (including privacy and independence) by each voter in casting their ballot.  *Id.* § 3501.05(V).

91.     On February 7, 2023, Secretary LaRose issued a Directive providing further guidance and specifications to all county boards of elections regarding implementation of HB 458. Directive 2023-03, Re: Substitute House Bill 458 (134th General Assembly) (Feb. 7, 2023), https://www.ohiosos.gov/globalassets/elections/directives/2023/dir2023-03.pdf.

92.     As shown by this directive, Secretary LaRose is actively involved in the administration and enforcement of the Election Code, including the Assistance Restrictions, as chief election officer of Ohio, including his administration of the election laws of Ohio, his adoption of administrative regulations, and his control and supervision of state and local election personnel.

93.     There is a realistic possibility that Secretary LaRose will take legal or administrative actions under the revised Election Code provisions that are against the Plaintiffs'

interests, in particular their (or, in the case of the League, their members', employees', and volunteers') interest in exercising their fundamental right to vote.

94.     Defendant Yost, Ohio Attorney General, as the state's chief prosecutor, is expressly authorized to "initiate criminal proceedings for election fraud under section 3599.42 of the Revised Code which results from a violation of any provision of Title XXXV[.]"  R.C. § 109.95.

95.     The Election Code separately authorizes the Attorney General to investigate and prosecute violations of the election laws that are referred to him by the Secretary of State.  *Id.* § 3501.05(N)(1).

96.     There is a realistic possibility that Defendant Yost will take legal actions that are against the Plaintiffs' interests, including investigation and prosecution of the new Election Code provision that criminalizes providing non-family assistance to a voter.  Such actions would be against Plaintiffs' interests both in exercising their (or, in the case of the League, their members', employees', and volunteers') fundamental right to vote and in being free from criminal prosecution for doing so.

97.     Defendant O'Malley is the County Prosecutor in Cuyahoga County, where Plaintiff Kucera lives and Plaintiff League of Women Voters of Ohio has members.

98.     Defendant O'Malley's prosecutorial authority extends throughout Cuyahoga County and includes the authority to "prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party[.]"  R.C. § 309.08.

99.     There is a realistic possibility that Defendant O'Malley will take legal actions that are against the Plaintiffs' interests, including investigation and prosecution of the new Election Code provision that criminalizes providing non-family assistance to a voter.  Such actions would be against Plaintiffs' interests both in exercising their (or, in the case of the League, members',

employees', and volunteers') fundamental right to vote and in being free from criminal prosecution for doing so.  This is especially true after Secretary LaRose's chief legal counsel stated that in "the determination of criminal liability for the unauthorized possession or return of an absentee ballot, *that discretion belongs to the relevant county prosecutor where the alleged offense occurred.*" Exhibit 1 (emphasis added).

## CAUSES OF ACTION

### *Statements Applicable to All Causes of Action*

100.    Courts "must avoid unduly technical interpretations that impede the public policy favoring free, competitive elections[,]" and have a "duty to liberally construe election laws in favor of the right to vote." *State ex rel. Myles v. Brunner*, 120 Ohio St. 3d 328, 2008-Ohio-5097, ¶¶ 22, 26 (internal quotations and citations omitted).

101.    By administering and enforcing the Assistance Restrictions, Defendants are perpetrating an ongoing violation of federal law.

102.    Plaintiffs have a likelihood of success on the merits of their claim.

103.    Absent injunctive relief, Plaintiffs will suffer irreparable harm.  Plaintiffs have no adequate remedy at law.

104.    There will be no injury to Defendants or others caused by granting the relief requested herein.

105.    The public interest will be served by granting the relief requested herein.

106.    Plaintiffs affirmatively allege that they have acted with the utmost diligence in bringing the instant action, that there has been no unreasonable delay or lapse of time in asserting their rights sought herein, and, further, there is no prejudice to Defendants.

**Count I:**
**Violation of Title II of the Americans with Disabilities Act**
**(42 U.S.C. § 12132 and 42 U.S.C. § 1983)**

107.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth in this claim.

108.     Plaintiffs bring this claim pursuant to 42 U.S.C. § 12132 and 42 U.S.C. § 1983.

109.     Title II of the ADA requires that state and local governments give people with disabilities an equal opportunity to benefit from all of their programs, services, and activities, including voting, and prohibits discrimination on the basis of a person's disability.

110.     Under Title II of the ADA, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

111.     A "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

112.     A "public entity" includes "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(A)-(B).

113.     The ADA's implementing regulations further state that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or

activity." 28 C.F.R. § 35.130(b)(7)(i).

114.    Miss Kucera has muscular dystrophy, and therefore is a qualified individual with a disability under the ADA.

115.    Miss Kucera is a registered voter in Ohio, who has voted in the past and intends to vote in future elections in Ohio.

116.    The League has members who are qualified individuals with disabilities under the ADA and are registered voters in Ohio.

117.    Absentee voting is a service, program, and activity operated by the state of Ohio. *See* R.C. § 3509.01, *et seq*.

118.    The Assistance Restrictions forbid Miss Kucera and League members with disabilities from obtaining assistance in returning an absentee ballot by anyone other than an enumerated family member, and anyone else who provides such assistance is guilty of a felony. R.C. § 3509.05(C)(1); R.C. § 3599.21(A)(9), (C).

119.    Miss Kucera's disability prevents her from voting in person, or by mail or drop box without assistance.

120.    Under Ohio's Election Code, Miss Kucera's only legal option to vote is to burden her 75-year-old mother, whose age, distance from Miss Kucera's residence, and physical abilities limit her availability to assist her with absentee voting—a process that is becoming increasingly challenging and uncertain with her mother's age and health.

121.    The Office of the Secretary of State, as an agency or instrumentality of the State of Ohio, is a public entity under Title II of the ADA.

122.    The Office of the Attorney General, as an agency or instrumentality of the State of Ohio, is a public entity under Title II of the ADA.

123.    The Office of the County Prosecutor of Cuyahoga County, as an agency or instrumentality of the State of Ohio and Cuyahoga County, Ohio, is a public entity under Title II of the ADA.

124.    Defendants are actively involved in administering and enforcing HB 458, including the Assistance Restrictions.

125.    Defendants have denied Miss Kucera and the League's members meaningful access to absentee voting in Ohio and have failed to provide a reasonable modification allowing them to vote on an equal basis with other voters.

126.    If the State provided Miss Kucera with a reasonable modification—for example, if Miss Kucera's in-home professional caregivers were allowed to assist her with the absentee voting process, including with the return of her voted absentee ballot—Miss Kucera would have meaningful access to the voting process and would be able to vote on an equal basis with her peers who do not have disabilities.  But the Assistance Restrictions do not allow for such a reasonable modification.

127.    Likewise, if the State provided a reasonable modification for the voters who have disabilities and reside in nursing homes and other full-time care facilities—for example, if workers at those facilities were allowed to assist voters with disabilities with the absentee voting process, including return of their voted absentee ballots— then voters with disabilities would have meaningful access to the voting process and could vote on an equal basis with their peers who do not have disabilities.  But the Assistance Restrictions do not allow for such a reasonable modification.

128.    Despite the fact that Miss Kucera and the League's members with disabilities cannot vote on an equal basis with their peers, Defendants have failed to provide an

accommodation to Plaintiffs in the State's service, program, and activity of absentee voting.

129.    Instead, by restricting the assistance that a person with a disability can receive, and by failing to provide guaranteed alternative options other than the statutorily enumerated categories of family members to assist voters with disabilities in returning absentee ballots, the Assistance Restrictions deny a reasonable modification necessary to avoid discrimination against voters with disabilities, in violation of the ADA and the Rehabilitation Act.

130.    Thus, at present, the Assistance Restrictions disparately impact Plaintiffs in the use of Defendants' service, program, and activity of absentee voting when compared with their peers.

131.    Defendants have denied and are continuing to deny Plaintiffs participation in and the benefits of its service, program, and activity of absentee voting.

132.    As a result of the actions described herein, Defendants have violated and continue to violate the ADA, 42 U.S.C. § 12132.

133.    Without the ability to have people other than the statutorily enumerated family members—including, for example, in-home caregivers and full-time care facility workers—legally possess and return a ballot of another voter without criminal liability found in R.C. § 3509.05(C)(1), Plaintiffs and Ohio voters with disabilities, like Miss Kucera, will be disenfranchised and suffer irreparable harm.

134.    As currently constituted, the Assistance Restrictions deny Plaintiffs equal and meaningful access to voting absentee in Ohio.

135.    Title II of the ADA contains an implied private right of action that can be enforced by private plaintiffs. *See, e.g.*, *Babcock v. Michigan*, 812 F.3d 531, 535 (6th Cir. 2016) ("Nonetheless, the [Supreme] Court's approach confirms that Title II's private right of action is specifically intended to remedy interference with a disabled individual's participation in, or

benefitting from, a public service, program, or activity."); *see also*, *e.g.*, Michael Waterstone, A New Vision of Public Enforcement, 92 MINN. L. REV. 434, 447 (2007) ("Each title of the ADA allows for a private right of action."). Plaintiffs therefore bring this claim pursuant to the implied right of action contained within Title II of the ADA.

136. Plaintiffs also bring this claim pursuant to 42 U.S.C. § 1983, which provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

137. Defendants, acting under color of state law, are depriving Plaintiffs of a right secured by the laws of the United States.

138. Absent injunctive relief, Plaintiffs will suffer irreparable harm. Plaintiffs have no adequate remedy at law.

139. Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

### Count II:
### Violation of Section 504 of the Rehabilitation Act of 1973
### (29 U.S.C. § 794 and 42 U.S.C. § 1983)

140. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth in this claim.

141. Plaintiffs bring this claim pursuant to 29 U.S.C. § 794 and 42 U.S.C. § 1983.

142. Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"  29 U.S.C. § 794(a).

143.    Under Section 504, "program or activity" is defined as "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government [or] the entity of such State or local government that distributes such assistance and each such department or agency (and each State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]"  29 U.S.C. § 794(b)(1).

144.    Defendants are, in their official capacities, recipients of federal financial assistance.

145.    Ohio receives federal elections assistance funds under the Help America Vote Act of 2002, 52 U.S.C. § 20901, *et seq.*, and Secretary of State LaRose has stated that those funds are being used for election security, elections integrity, and election cybersecurity.   Election Assistance     Commission,     *Ohio     State     Narrative   –   2022*, https://www.eac.gov/sites/default/files/paymentgrants/narrative2022/2022%20HAVA%20Program%20Narrative%20and%20Budget%20Update.pdf.

146.    The Secretary of State's Office is an agency or instrumentality of the State of Ohio.

147.    The Attorney General's Office is an agency or instrumentality of the State of Ohio.

148.    The Office of the County Prosecutor of Cuyahoga County is an agency or instrumentality of the State of Ohio and Cuyahoga County, Ohio.

149.    Miss Kucera has muscular dystrophy, and therefore is a qualified individual with a disability under Section 504.  29 U.S.C. § 705(20)(A).  Miss Kucera is also a registered voter in Ohio.

150.    The League has members who are qualified individuals with disabilities under the

30

Rehabilitation Act and are registered voters.

151. Absentee voting is a program or activity operated by the state of Ohio and Defendants in their official capacities. *See* 29 U.S.C. § 794(b).

152. Defendants are actively involved in enforcing and administering the Assistance Restrictions.

153. Defendants' conduct in administering, funding, and enforcing the Assistance Restrictions of Ohio's absentee voting program constitutes a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*.

154. Section 504 of the Rehabilitation Act contains an implied private right of action that can be enforced by private plaintiffs. *See, e.g.*, *Doe v. BlueCross BlueShield of Tennessee, Inc.*, 926 F.3d 235, 239 (6th Cir. 2019) ("May Doe enforce [Section 504] through a private right of action? Yes. Because the Rehabilitation Act contains a private right of action[.]"). Plaintiffs therefore bring this claim pursuant to the implied right of action contained within Section 504 of the Rehabilitation Act.

155. Plaintiffs also bring this claim pursuant to 42 U.S.C. § 1983, which provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

156. Defendants, acting under color of state law, are depriving Plaintiffs of a right secured by the laws of the United States.

157. Absent injunctive relief, Plaintiffs will suffer irreparable harm. Plaintiffs have no

31

adequate remedy at law.

158.    Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

### Count III:
### Violation of Section 208 of the Voting Rights Act of 1965
### (U.S. Const. art. VI, cl. 2, 52 U.S.C. § 10508, and 42 U.S.C. § 1983)

159.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth in this claim.

160.    Plaintiffs bring this claim pursuant to 52 U.S.C. § 10508, 42 U.S.C. § 1983, and the Supremacy Clause of the United States Constitution.

161.    Under Section 208 of the VRA, "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

162.    Thus, Section 208 allows a voter to exercise their right to seek assistance from anyone unrelated to their employer or union.  52 U.S.C. § 10508.  Voters may ask virtually any person of their choice to help return their ballot, with only narrow exceptions. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 614-15 (5th Cir. 2017).

163.    The VRA provides for a broad interpretation of the terms "vote" and "voting": "The terms 'vote' or 'voting' shall include all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election."

52 U.S.C. § 10310(c)(1).

164.   Under the Supremacy Clause of the United States Constitution, federal law preempts state law "where state law stands as an obstacle to the accomplishment or execution of the full purposes and objectives of Congress." *Disability Rights N.C. v. N.C. State Bd. of Elec.*, No. 21-361, 2022 WL 2678884, at *3 (E.D.N.C. July 11, 2022) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)).

165.    As applied to voters with disabilities, the Assistance Restrictions limit who may assist voters with returning an absentee ballot.

166.   By limiting who can possess or return an absent voter's ballot, the Assistance Restrictions criminalize assistance that Congress has decided voters should be allowed to access.

167.   Furthermore, individuals and organizations who have provided assistance in elections pre-dating HB 458 now fear being prosecuted for a felony for engaging in the same conduct, even though federal law dictates that these assistors may help voters.

168.   Therefore, the Assistance Restrictions stand as an obstacle to the accomplishment and execution of Congress's objectives, and directly conflict with Section 208 of the Voting Rights Act, because they do not allow voters with disabilities to be given assistance by a person of the voter's choice.

169.   Section 208 of the VRA preempts R.C. § 3599.21(A)(9), R.C. § 3599.21(A)(10), and R.C. § 3509.05(C)(1).

170.   Plaintiffs are entitled to a declaration that the Assistance Restrictions violate Section 208 of the Voting Rights Act as applied to voters with disabilities who need assistance voting.

171.   Defendants, acting under color of state law in administering and enforcing the

Assistance Restrictions, are depriving Plaintiffs of a right secured by the Constitution and laws of the United States.

172.    The Voting Rights Act contains an implied private right of action that can be enforced by private plaintiffs.  *See, e.g.*, *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 988–90 (N.D. Fla. 2021) (collecting cases and explaining that "[A]ll evidence points to the same conclusion: Congress intended for private parties to enforce section 208."); *see also Democracy N.C. v. N.C. State Bd. of Elec.*, 476 F. Supp. 3d 158 (M.D.N.C. 2020) (private plaintiffs demonstrated a likelihood of success on the merits of Section 208 claim).  Plaintiffs therefore bring this claim pursuant to the implied right of action contained within the Voting Rights Act.

173.    Plaintiffs also bring this claim pursuant to 42 U.S.C. § 1983, which provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

174.    Plaintiffs are entitled to injunctive relief barring any enforcement of the Assistance Restrictions as applied to voters with disabilities who need assistance voting.

175.    Absent injunctive relief, Plaintiffs will suffer irreparable harm.  Plaintiffs have no adequate remedy at law.

176.    Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and

costs.

## Count IV:
## Void for Vagueness
## (U.S. Const. amend. XIV, and 42 U.S.C. § 1983)

177.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth in this claim.

178.    Plaintiffs bring this claim pursuant to the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

179.    "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits[.]" *Simon v. Cook*, 261 F. App'x 873, 882 (6th Cir. 2008) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966)).

180.    The criminal penalties in the Assistance Restrictions are unconstitutionally vague on their face.  R.C. § 3599.21(A)(9), (10); R.C. § 3509.05(C)(1).

181.    The criminal penalties in the Assistance Restrictions are unconstitutionally vague as applied to the League. R.C. § 3599.21(A)(9), (10); R.C. § 3509.05(C)(1).

182.    R.C. § 3599.21(A)(9) states that "[n]o person shall knowingly . . . [r]eturn the absent voter's ballot of another to the office of a board of elections, unless . . . [t]he person is a relative who is authorized to do so under [R.C. § 3509.05(C)(1)]" or the person is a mail carrier.

183.    R.C. § 3599.21(A)(10) states that "[n]o person shall knowingly . . . [e]xcept as authorized under Chapters 3509. and Chapter 3511. of the Revised Code, possess the absent voter's ballot of another."

184.    The Ohio Election Code does not define what constitutes "possess[ing] the absent voter's ballot of another," nor "return[ing]" such a ballot.

185.    By way of example only, the law does not make clear whether "possess[ing] the absent voter's ballot of another" includes possessing an unmarked ballot that a voter's roommate or in-home caregiver retrieves from the voter's mailbox at their request, or only voted ballots.

186.    The absence of any definition of these terms is especially problematic within the context of the evolution of R.C. § 3599.21(A).   Prior to the enactment of HB 458, R.C. § 3599.21(A) already prohibited the "possess[ion]" of the absent voter's ballot of another.   Adding a new prohibition that criminalizes the "return" of the absent voter's ballot of another renders the statute particularly confusing, because the ordinary meaning of "possess" is broader than—and would be understood to encompass any of the conduct captured within—the term "return."   Absent any definition of either term, the subsequent addition of the term "return" unsettles any ordinary understanding of the word possession, and renders both the terms "possess" and "return" unclear to the average person.

187.    These terms are likely to result in arbitrary and/or discriminatory enforcement because the Ohio Code fails to set clear boundaries on what law enforcement or prosecutorial authorities can and cannot charge or prosecute.

188.    When asked for clarification of these vague and unclear terms, the Secretary of State stated that "the determination of criminal liability for the unauthorized possession or return of an absentee ballot" is a matter of "discretion" for the "relevant county prosecutor where the alleged offense might have occurred."   Exhibit 1.

189.    As a result of the failure to define these terms or place limits on their applicability to ordinary conduct, these terms are so vague and unclear that a person of average intelligence does not have an opportunity to know what is prohibited.

190.    The Constitution forbids terms that are so unspecific, unclear, vague, and

ambiguous that they effectively "entrust[] lawmaking to the moment-to-moment judgment of" law enforcement.  *Kolender v. Lawson*, 461 U.S. 353, 360 (1983) (quotations omitted).

191.    The Secretary's response admits that anyone who "possess[es]" or "return[s]" the ballot of a voter with a disability is at risk of arbitrary prosecution based on the unfettered "discretion" of each county prosecutor of Ohio, who are empowered to decide the meaning of "possess" and "return" for themselves.

192.    The League has substantial concerns about its members, volunteers, and employees being subject to such arbitrary or discriminatory enforcement under the Assistance Restrictions.

193.    "[V]agueness may invalidate a criminal statute if it either (1) fails 'to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits' or (2) authorizes or encourages 'arbitrary and discriminatory enforcement.'" *Al Maqablh v. Heinz*, No. 16-00289, 2017 WL 1788666, at *2 (W.D. Ky. May 4, 2017) (quoting *United States v. Caseer*, 399 F.3d 828, 836 (6th Cir. 2005)).

194.    The Election Code's words "possess" and "return" fail to provide adequate notice of what conduct is prohibited.

195.    The Election Code's words "possess" and "return" authorize or encourage arbitrary and discriminatory enforcement.

196.    The League's members, volunteers, and employees are at a substantial risk of arbitrary and discriminatory prosecution.

197.    Defendants, acting under color of state law, are depriving Plaintiffs of a right secured by the Constitution and laws of the United States.

198.    Absent injunctive relief, Plaintiffs will suffer irreparable harm.  Plaintiffs have no adequate remedy at law.

199.    Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

1.    Declare that Defendants' adoption, maintenance, administration, and enforcement of the Assistance Restrictions, R.C. § 3599.21(A)(9), (10) and R.C. § 3509.05(C)(1):

A.  Violate Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and 42 U.S.C. § 1983 as applied to Jennifer Kucera, who is an individual with disabilities, and the League of Women Voters of Ohio, which is an organization whose members include persons with disabilities, by excluding Plaintiffs from participation in and denying the benefits of Ohio's service, program, and activity of absentee voting;

B.  Violate Section 208 of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10508, by infringing on the rights of voters with disabilities, such as Plaintiffs, to receive assistance from the assistor of their choice, and therefore are preempted pursuant to the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2;

C.  Are so unclear and standardless as to exactly what is prohibited by the prohibitions concerning the "return" or "possession" of a ballot by a non-

enumerated family member, particularly with respect to those who might assist voters with disabilities, that a person of reasonable intelligence would not be able to understand what conduct is prohibited and will likely result in arbitrary or discriminatory enforcement by law enforcement or prosecutorial authorities.

2. Issue an injunction:

   A. Order Defendants to take all necessary steps to ensure that people beyond the family members enumerated in R.C. § 3509.05(C)(1)—including but not limited to in-home caregivers, care facility workers, and other trusted persons of the voter's choice—can, without threat of prosecution, assist voters with disabilities in receiving and returning their absentee ballots and thereby in having their votes counted, pursuant to Section 302(c) of the Help America Vote Act of 2002, 52 U.S.C. § 21082(c);

   B. Ordering Defendants to provide public notice of these additional voting opportunities for voters with disabilities by notifying all local media that any in-home caregiver or director, employee, or other staff member of an institution or facility where voters with disabilities reside will be permitted, without threat of prosecution, to assist voters with disabilities in receiving and returning their absentee ballots; and by posting sufficient notices at all affected poll locations and institutions where Ohioans with disabilities may reside; on the websites of the Ohio Secretary of State; and on the social media accounts used by the Ohio Secretary of State.

3. Award attorney's fees and costs associated with this litigation, pursuant to 42 U.S.C. § 1988 or other applicable authority;

4.  Retain jurisdiction of this matter for such time as is necessary to enforce any order this

Court may issue in furtherance of the requested relief, and

5.  Provide all such additional relief the Court deems just and proper.

Date: December 19, 2023                    Respectfully submitted,

Megan C. Keenan*                           _s/Freda Levenson_
AMERICAN CIVIL LIBERTIES UNION             Freda J. Levenson  (Ohio Bar. No. 0045916)
915 15th St. NW                            ACLU OF OHIO FOUNDATION, INC.
Washington, DC 20001                       4506 Chester Avenue
(740) 632-0671                             Cleveland, Ohio 44103
mkeenan@aclu.org                           (216) 541-1376
                                           flevenson@acluohio.org
Robert D. Fram*
COVINGTON & BURLING, LLP                   Suzan Charlton*
Salesforce Tower                           Scott Garfing*
415 Mission Street, Suite 5400             Jacob Zuberi (Ohio Bar No. 101383)
San Francisco, CA 94105-2533               COVINGTON & BURLING, LLP
(415) 591 6000                             One CityCenter
rfram@cov.com                              850 Tenth St. NW
                                           Washington, DC 20001-4956
                                           (202) 662-6000
                                           scharlton@cov.com
                                           sgarfing@cov.com
                                           jzuberi@cov.com


                                           _Attorneys for Plaintiffs_

* Application for Admission _Pro Hac Vice_ forthcoming