**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
EASTERN DIVISION**

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF OHIO, et al., | : | |
| | : | |
| | : | |
| *Plaintiffs*, | : | Case No. 1:23-cv-2414 |
| | : | |
| v. | : | JUDGE BRIDGET M. BRENNAN |
| | : | |
| FRANK LAROSE, et al., | : | |
| | : | |
| *Defendants*, | : | |
| | : | |
| and | : | |
| | : | |
| REPUBLICAN NATIONAL COMMITTEE, et al. | : | |
| | : | |
| | : | |
| *Intervenor-Defendants*. | : | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................iii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

BACKGROUND AND UNDISPUTED FACTS............................................................ 1

I.     Ohioans with Disabilities, Including Plaintiff Kucera and Many Members of the League of Women Voters of Ohio, Require Assistance in Voting by Absentee Ballot.......................................................................................................................... 1

     A.     More than a million Ohioans with disabilities require assistance in daily living, and hundreds of thousands of them need that assistance in voting. ............ 1

     B.     Ms. Kucera, an Ohioan with a disability, requires absentee-voting assistance............................................................................................................. 2

     C.     The League of Women Voters of Ohio is a civic-engagement organization whose members include Ohioans with disabilities and those who care for them........................................................................................................................ 3

II.     The Challenged Provisions Impede Voting with a Disability by Criminalizing Assistance from Anyone Other than Certain Relatives........................................ 4

     A.     The Challenged Provisions criminalize the possession and return of absentee ballots by anyone but certain of the voter's relatives............................ 5

     B.     The State provides options for some but not all absent voters with disabilities. ......................................................................................................... 5

III.     Defendants LaRose, Yost, and O'Malley Administer and Enforce the Challenged Provisions.............................................................................................................. 8

     A.     Secretary of State Frank LaRose.................................................................... 8

     B.     Attorney General Dave Yost ......................................................................... 9

     C.     Cuyahoga County Prosecutor Michael O'Malley........................................... 9

SUMMARY JUDGMENT STANDARD .................................................................... 10

ARGUMENT ............................................................................................................... 10

I.     Section 208 of the Voting Rights Act Preempts and Precludes Enforcement of the Challenged Provisions. ..................................................................................... 10

     A.     The Challenged Provisions directly conflict with Section 208's guarantee that voters with disabilities choose who assists them. ......................................... 11

B.      The legislative history supports Plaintiffs' view of Section 208. ......................... 12

C.      Federal courts have repeatedly refused to narrow Section 208's right to assistance................................................................................................... 13

II.     The Americans with Disabilities Act and Rehabilitation Act Preclude Defendants' Enforcement of the Challenged Provisions.......................................................... 14

A.      Plaintiffs are qualified individuals with disabilities................................. 14

B.      Defendants subject Plaintiffs to discrimination in their absentee-voting program on the basis of their disability.................................................. 15

1.      Defendants' implementation of the Challenged Provisions denies voters with disabilities equal access to Ohio's absentee-voting program. ............................................................................. 16

2.      Defendants fail to reasonably accommodate voters with disabilities. ............................................................................. 18

III.    Injunctive Relief Is Warranted. ...................................................................... 19

CONCLUSION................................................................................................... 20

CERTIFICATE OF COMPLIANCE.................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ability Ctr. of Greater Toledo v. City of Sandusky*,
  385 F.3d 901 (6th Cir. 2004) ............................................................15, 18

*Am. Council of the Blind v. Paulson*,
  525 F.3d 1256 (D.C. Cir. 2008) ................................................................18

*Anderson v. Kent State Univ.*,
  804 F. Supp. 2d 575 (N.D. Ohio 2011)....................................................10

*Arizona v. United States*,
  567 U.S. 387 (2012)............................................................................10, 14

*Ark. United v. Thurston*,
  626 F. Supp. 3d 1064 (W.D. Ark. 2022)...................................................13

*Babcock & Wilcox Co. v. Cormetech*,
  848 F.3d 754 (6th Cir. 2017) ....................................................................10

*Carey v. Wis. Elections Comm'n*,
  624 F. Supp. 3d 1020 (W.D. Wis. 2022) .............................................10, 13

*City of Arlington v. FCC*,
  569 U.S. 290 (2013).................................................................................16

*Commonwealth v. Biden*,
  57 F.4th 545 (6th Cir. 2023) .....................................................................20

*Deck v. City of Toledo*,
  29 F. Supp. 2d 431 (N.D. Ohio 1998)......................................................20

*Democracy N.C. v. N.C. State Bd. of Elections*,
  476 F. Supp. 3d 158 (M.D.N.C. 2020) .....................................................13

*Disability Rts. Miss. v. Fitch*,
  684 F. Supp. 3d 517 (S.D. Miss. 2023).....................................................13

*Disability Rts. N.C. v. N.C. State Bd. of Elections* (*DRNC I*),
  602 F. Supp. 3d 872 (E.D.N.C. 2022).......................................................13

*Disability Rts. N.C. v. N.C. State Bd. of Elections* (*DRNC II*),
  2022 WL 2678884 (E.D.N.C. July 11, 2022) ...............................11, 12, 13

iii

*Disabled in Action v. Bd. of Elections in City of New York*,
   752 F.3d 189 (2d Cir. 2014) .............................................................................18

*Doe v. Woodford Cnty. Bd. of Educ.*,
   213 F.3d 921 (6th Cir. 2000) ............................................................................14

*eBay v. MercExchange*,
   547 U.S. 388 (2006) ..........................................................................................20

*Hindel v. Husted*,
   875 F.3d 344 (6th Cir. 2017) .........................................................14, 15, 18, 19

*Kwon v. Crittenden*,
   No. 1:18-cv-5405-TCP (N.D. Ga. Nov. 29, 2018) .............................................13

*L.P. Acquisition Co. v. Tyson*,
   772 F.2d 201 (6th Cir. 1985) ............................................................................20

*Nat'l Fed'n of the Blind v. Lamone*,
   813 F.3d 494 (4th Cir. 2016) ............................................................................15

*Obama for Am. v. Husted*,
   697 F.3d 423 (6th Cir. 2012) ............................................................................20

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ............................................................................13

*Preterm-Cleveland v. Att'y Gen. of Ohio*,
   456 F. Supp. 3d 917 (S.D. Ohio 2020) .............................................................20

*Priorities USA v. Nessel* (*Priorities I*),
   487 F. Supp. 3d 599 (E.D. Mich. 2020)............................................................13

*Priorities USA v. Nessel* (*Priorities II*),
   628 F. Supp. 3d 716 (E.D. Mich. 2022)............................................................13

*Ray v. Texas*,
   2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ....................................................13

*Smith & Lee Assocs. v. City of Taylor*,
   102 F.3d 781 (6th Cir. 1996) ............................................................................19

*Tennessee v. Lane*,
   541 U.S. 509 (2004)...........................................................................................18

*Torres v. Precision Indus.*,
   995 F.3d 485 (6th Cir. 2021) ............................................................................10

*U.S. Airways v. Barnett*,
    535 U.S. 391 (2002) .................................................................................................19

*United States v. Alabama*,
    778 F.3d 926 (11th Cir. 2015) ...............................................................................11

*United States v. Carpenter*,
    80 F.4th 790 (6th Cir. 2023) .................................................................................11

*United States v. Johnson*,
    529 U.S. 53 (2000)..........................................................................................11, 12

**Statutes**

29 U.S.C. 794 ...................................................................................................14, 15

42 U.S.C. 1983 .........................................................................................................11

42 U.S.C. 12101 .......................................................................................................14

42 U.S.C. 12131 .......................................................................................................15

42 U.S.C. 12132 .......................................................................................................14

42 U.S.C. 12133 .......................................................................................................14

42 U.S.C. 12134 .......................................................................................................16

52 U.S.C. 10310 .......................................................................................................11

52 U.S.C. 10508 .......................................................................................................11

R.C. 109.02 ..........................................................................................................9, 15

R.C. 109.95 ..........................................................................................................9, 10

R.C. 309.08 ........................................................................................................10, 15

R.C. 3501.04 .........................................................................................................8, 15

R.C. 3501.05 ..............................................................................................................8

R.C. 3501.382 ............................................................................................................6

R.C. 3509 ...................................................................................................................5

R.C. 3509.02 .........................................................................................................4, 15

R.C. 3509.05 ................................................................................................1, 4, 5, 6, 9

R.C. 3509.08 ..................................................................................................6, 7

R.C. 3509.051 ......................................................................................................4

R.C. 3511 ..............................................................................................................5

R.C. 3599.12 .......................................................................................................20

R.C. 3599.21 ...............................................................................................1, 5, 20

R.C. 3599.26 .......................................................................................................20

R.C. 3599.28 .......................................................................................................20

**Regulations**

28 C.F.R. Part 35 ...............................................................................................16

28 C.F.R. 35.102 ................................................................................................15

28 C.F.R. 35.108 ................................................................................................15

28 C.F.R. 35.130 ....................................................................................15, 18, 19

**Other Authorities**

AG Yost Addresses Early Voting Election Concerns (Oct. 13, 2020),
     https://perma.cc/D5DP-J452 .......................................................................9

S. Rep. 417, 97th Cong, 2d Sess. (1982) ..........................................................12

## INTRODUCTION AND SUMMARY OF ARGUMENT

Ignoring federal laws that protect the right to assistance for voters with disabilities, Ohio transforms absentee-voting assistance into a felony for all but a few relatives. *See* R.C. 3599.21(A)(9),(10), 3509.05(C)(1) (collectively, Challenged Provisions). Any voter with a disability who lacks such relatives is thus faced with an impossible choice: ask someone else to help them vote (and break the law), or forgo voting altogether. But Section 208 of the Voting Rights Act (VRA) guarantees voters with disabilities assistance by any person of their choice, not just some family. And the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) assure that voters with disabilities have a full and equal opportunity to vote absentee. As applied to voters with disabilities, the Challenged Provisions conflict with these federal laws and are preempted. Further, Defendants violate these federal laws by failing to provide equal access or to modify their administration and enforcement of the Challenged Provisions to avoid discriminating against such voters in Ohio's absentee-voting program. Accordingly, the Court should declare the Challenged Provisions preempted and unlawful as applied to voters with disabilities and permanently enjoin their enforcement against these voters and their chosen assistors.

## STATEMENT OF ISSUES

1. Whether enforcement of the Challenged Provisions against voters with disabilities violates Section 208 of the Voting Rights Act.

2. Whether enforcement of the Challenged Provisions against voters with disabilities violates Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

## BACKGROUND AND UNDISPUTED FACTS

I.     **Ohioans with Disabilities, Including Plaintiff Kucera and Many Members of the League of Women Voters of Ohio, Require Assistance in Voting by Absentee Ballot.**

   **A.  More than a million Ohioans with disabilities require assistance in daily living, and hundreds of thousands of them need that assistance in voting.**

As of 2022, between 1.6 and 3.0 million Ohioans of voting age had a disability. Ex. 1, Dec.

1

& Expert Report of Dr. Douglas L. Kruse, Ph.D. (Kruse Rpt.) ¶¶33-35. Nearly 1.2 million Ohioans require assistance with their daily activities. *Id.* ¶¶41-42. Of those, 281,100 "receive assistance only from non-family members." *Id.* ¶43.

"Many people who need assistance with activities of daily living will also need voting assistance, since voting"—whether in person or by mail—"requires functional abilities that are often similar or the same as those needed to perform activities of daily living." *Id.* ¶69 (*e.g.*, "manual dexterity needed for getting dressed or preparing meals is also needed in . . . opening, removing, folding, stuffing, and sealing most mail ballots"). As a result, "[p]eople with disabilities are less likely to be able to vote independently (without assistance) with no difficulties." *Id.* ¶71.

Ohioans with disabilities are "much more likely to vote by mail," which is "effectively the only option" for many with "mobility restrictions, transportation barriers, and difficulty standing in long lines." *Id.* ¶¶59-60; *see also id.* ¶16. Absentee voters with disabilities disproportionately face numerous barriers that may require them to obtain assistance, including difficulty with: "reading or seeing the ballot"; "filling out the ballot or placing it in an envelope"; and "taking the ballot to a mailbox, a drop box, or an election office." *Id.* ¶63 & Table 10. Nationwide, among people with disabilities who needed assistance voting by mail, "24.7% in 2020 and 45.7% in 2022 reported the assistance was provided by a non-family member," and "it is likely that these national patterns apply to Ohio." *Id.* ¶17. Restrictions on who can assist voters "make it more difficult, if not impossible," for many Ohioans with disabilities to exercise the right to vote. *Id.* ¶¶21, 74, 78.

**B.  Ms. Kucera, an Ohioan with a disability, requires absentee-voting assistance.**

Plaintiff Jennifer Kucera, a registered Cuyahoga County voter, was diagnosed with muscular dystrophy shortly after birth. Ex. 2, Kucera Dec. ¶¶3-4, 9. Her muscles have since weakened to the point that she can no longer control most parts of her body—she can move only her left arm, neck, and head. *Id.* ¶3. Ms. Kucera can no longer drive, so she is only able to travel

using an expensive rental-van service for people with disabilities, which she cannot afford, or Paratransit, a public bus service that she has found consistently unreliable. *Id.* ¶¶10-13.

Ms. Kucera lives alone in a private apartment. *Id.* ¶4. Professional in-home caregivers, including Mrs. Maria Mann, assist her every day with daily-living tasks she cannot complete on her own (*e.g.*, bathing, dressing, and eating). *Id.* ¶4. Ms. Kucera's apartment-complex mailbox is far from her apartment, requires key access, and does not include an outgoing mailbox, so Ms. Kucera's caregivers also retrieve, open, seal, and send her mail. *Id.* ¶¶5-8. Her caregivers have never assisted her in voting, but would do so, were it lawful. *See* Ex. 3, Mann Dec. ¶¶7-10.

Ms. Kucera's 75-year-old mother lives 30 minutes away, has her own mobility issues, and is the only relative willing and able to assist Ms. Kucera with her daily-living tasks, as well as with voting. Kucera Dec. ¶¶16-17. With her mother's assistance, Ms. Kucera voted in the November 2020 general election, the August 2023 special election, and the March 2024 Republican presidential primary. *Id.* ¶¶18-19. Each time, Ms. Kucera used the Remote Ballot Marking System, which enables her to electronically fill out her ballot, but still requires her to print and mail the ballot to the board of elections (BOE). *Id.* Ms. Kucera's mother stuffed, sealed, and mailed her ballot. *Id.* ¶19. Ms. Kucera intends to continue voting in all future elections in Ohio; but she cannot always rely on her mother, who has been unavailable to assist her before, and she fears that she will not be able to vote if her mother is indisposed in the future. *Id.* ¶¶26-28. Given a choice, Ms. Kucera would prefer to rely on her caregivers to assist her in voting absentee. *Id.* ¶29.

### C. The League of Women Voters of Ohio is a civic-engagement organization whose members include Ohioans with disabilities and those who care for them.

The League of Women Voters of Ohio (LWVO) is a nonpartisan membership organization dedicated to helping citizens exercise their right to vote, expanding access to the franchise, and ensuring an effective democracy. Ex. 4, Miller Dec. ¶3. LWVO has a small staff for statewide

efforts, and it has thousands of members all over Ohio, who dedicate much of their time to LWVO's state and local programming. *Id.* ¶4. LWVO members include registered voters with disabilities that make voting in person difficult and who rely on absentee voting. *Id.* ¶13. Many of them require assistance delivering their absentee ballots to their BOEs, but do not have relatives available to help. *Id.* LWVO's members also include those who work or volunteer in nursing homes or as home health aides, or otherwise assist individuals with disabilities. *Id.* ¶14. These members, including Janice Patterson and Constance Rubin, would assist these individuals to mail their absentee ballots (or take them to a drop box) were it lawful. *Id.* ¶¶15-16; Ex. 5, Patterson Dec. ¶¶8-10; Ex. 6, Rubin Dec. ¶¶8-10.

Since the passage of House Bill 458 (HB 458), LWVO has expended significant time and resources educating and training its staff and volunteers on the bill's requirements, including the Challenged Provisions. Miller Dec. ¶¶8, 11. LWVO has taken pains to analyze the law and audit, revise, translate, and reprint its voter-education materials. *Id.* ¶¶9, 12. As a consequence of diverting its resources to address HB 458 and the Challenged Provisions, LWVO has forgone entire projects it was planning to undertake in 2023, such as a letter-writing program to active-duty-military personnel to encourage them to register to vote and apply for absentee ballots, and has redirected time and resources away from other LWVO activities, such as organizing voter registration drives and serving underserved and diverse voters. *Id.* ¶¶10-12.

## II.  The Challenged Provisions Impede Voting with a Disability by Criminalizing Assistance from Anyone Other than Certain Relatives.

While any Ohio elector may vote by absentee ballot, R.C. 3509.02(A), and ballots may be returned in person, by mail, or to a drop box,[1] R.C. 3509.05(C), the Challenged Provisions permit only the voter herself or certain relatives to return the ballot, even if the voter has a disability and

---

[1] Ohio permits "in-person absent voting." *See* R.C. 3509.051. This voting method is not at issue nor discussed herein.

no such relatives can or will assist them. *Id.*; R.C. 3599.21(A)(9),(10). No other alternative exists for many voters with disabilities.

**A.  The Challenged Provisions criminalize the possession and return of absentee ballots by anyone but certain of the voter's relatives.**

Effective April 7, 2023, HB 458 revised Ohio's Election Code to, among other things, criminalize returning another voter's absentee ballot unless expressly permitted by statute. R.C. 3599.21(A)(9). Specifically, Ohio law now prohibits "knowingly . . . [r]eturn[ing] the absent voter's ballot of another to the office of a board of elections, unless either of the following apply":

> (a) The person is a relative who is authorized to do so under division (C)(1) of section 3509.05 of the Revised Code; [or]
> (b) The person is, and is acting as, an employee or contractor of the United States postal service or a private carrier.

R.C. 3599.21(A)(9). Only certain relatives may deliver an absentee ballot to the BOE:

> [T]he spouse of the elector, the father, mother, father-in-law, mother-in-law, grandfather, grandmother, brother, or sister of the whole or half blood, or the son, daughter, adopting parent, adopted child, stepparent, stepchild, uncle, aunt, nephew, or niece of the elector may deliver it to the office of the board.

R.C. 3509.05(C)(1)*.* In addition to HB 458's prohibition on returning an absentee ballot, Ohio law already prohibited knowingly "possess[ing] the absent voter's ballot of another" unless otherwise permitted by R.C. 3509, which includes the relative-assistance provision above, or R.C. 3511, which concerns voters in the armed services. R.C. 3599.21(A)(10). Violations of the prohibitions on returning or possessing an absentee ballot are fourth-degree felonies. R.C. 3599.21(C).

These Challenged Provisions do not define the terms "return" and "possess," nor do they explain whether "absent voter's ballot" refers to both unmarked and marked ballots.

**B.  The State provides options for some but not all absent voters with disabilities.**

The Secretary of State (SOS) provides limited alternatives for some voters with disabilities.

*First*, Ohio law permits a voter who is "unable to physically sign" their name to designate

an "attorney-in-fact" to sign the ballot on their behalf. *See* R.C. 3501.382(A)(1); Ex. 7, Zuberi Dec. Ex. 7-A (Form 10-G). The "attorney-in-fact" is not authorized to assist the voter in any other way, including folding and placing the ballot in the envelope, sealing the envelope, or returning the signed ballot. *See id.*; Ex. 8, Stevens Dep. 229:2-231:10. The Challenged Provisions do not permit an "attorney-in-fact" to possess or return a ballot.

*Second*, Ohio voters who state they have a qualifying disability may apply to use the Remote Ballot Marking System, a digital ballot that can be filled out electronically. Ex. 7-B (Form 11-G). After completing the digital ballot, the voter must "print [their] ballot, enclose it with [their] identification envelope/statement of voter, and return it" to their BOE. *Id.* The request form instructs that only the voter or a "near relative" may return the ballot to the BOE. *Id.* at 2 (quoting R.C. 3509.05(C)(1)'s list of permitted relatives).

*Third*, "[a]ny qualified elector, who, on account of the elector's own personal illness, physical disability, or infirmity, or on account of the elector's confinement in a jail or workhouse . . . will be *unable to travel* from the elector's home or place of confinement to the voting booth" can request assistance from BOE employees to deliver and return the voter's ballot. R.C. 3509.08(A) (emphasis added). For an elector "confined to a public or private institution," a BOE "*shall* designate two board employees . . . for the purpose of delivering" and "returning" a ballot. *Id.* (emphasis added). For voters who are not confined to an institution but certify they have an illness, disability, or infirmity that results in the "*inability to travel* to the election booth in the elector's precinct on election day," the BOE "*may* designate two board employees" to assist in delivering and returning the ballot. *Id.* (emphasis added). A voter "unable to mark the elector's ballot by reason of physical infirmity that is apparent to the employees to be sufficient to incapacitate the voter from marking the elector's ballot properly" may request "the assistance of

the employees in marking the elector's ballot." *Id.*

A voter seeking assistance under Section 3509.08(A) must complete Form 11-F, which requires them to, under "penalty of election falsification," indicate they are "confined in a jail or workhouse" or identify the specific "illness, physical disability or infirmity" that makes them "unable to travel from [their] home or place of confinement." Ex. 7-C (Form 11-F).

On their faces, Section 3509.08(A) and Form 11-F do not permit assistance to voters with disabilities like Ms. Kucera, for whom leaving the home is possible but physically, financially, and logistically burdensome.[2] *See* Stevens Dep. 168:21-170:1; Kucera Dec. ¶¶11-13, 21; Kruse Rpt. ¶76 (such voters "may require voting assistance but would not be able to truthfully state they are unable to travel from their home"). And no evidence supports that this option has ever been used by a voter with a disability who is able to leave their private residence but finds traveling or voting in person burdensome. The SOS has stated that data on voters' use of Form 11-F "would be maintained and aggregated at local county" BOEs, not at the SOS's office. Stevens Dep. 63:7-11. But in response to Plaintiffs' public-records requests to all 88 county BOEs, no BOE provided records showing that a voter with a disability (other than a few who certified that they were *unable* to travel due to their disabilities) ever requested or received BOE assistance at their private residence using Form 11-F. Ex. 9, Gweon Dec. ¶¶3-4, 30-43, and exhibits thereto. Moreover, no BOE advertises this procedure publicly or to voters who reside in private homes. *See* Kucera Dec. ¶¶20-22; Gweon Dec. ¶¶3-4, 21-29, and exhibits thereto; *id.* ¶33 (noting that one BOE believed it illegal for BOE employees to assist voters at home).

---

[2] The SOS appears to understand that Form 11-F does not apply to all voters with disabilities, burying it on the SOS website's "Special Voting Circumstances" page under the heading "*Confined Voters* with a Physical Disability, Illness, or Infirmity," Ex. 7-D (emphasis added), and failing to include it on the "Resources for Voters with Disabilities" page, Ex. 7-E; *see also* Stevens Dep. 164:4-166:5.

**III.    Defendants LaRose, Yost, and O'Malley Administer and Enforce the Challenged Provisions.**

**A.  Secretary of State Frank LaRose**

SOS Frank LaRose is Ohio's chief election officer. R.C. 3501.04. The SOS supervises the administration of Ohio's election laws and promulgates rules, R.C. 3501.05(C),(M); prescribes forms that Ohioans must complete to vote in certain manners, *e.g.*, Ex. 7-A, 7-B, 7-C (Forms 10-G, 11-G, 11-F); issues directives and publishes the Election Official Manual (EOM) to instruct county BOEs on how to run elections, R.C. 3501.05(B); Ex. 7-F (EOM); and provides Ohio voters information through its website, Stevens Dep. 136:14-25. In addition, the SOS Public Integrity Division investigates and refers for prosecution potential election violations, including incidents involving the Challenged Provisions. Stevens Dep. 31:10-25, 34:19-23.

Soon after the Challenged Provisions took effect, Plaintiffs' counsel wrote to the SOS requesting an accommodation for voters with disabilities who require assistance returning their absentee ballots by permitting them to receive assistance from the person of their choice. Ex. 7-G (ACLU Letter to SOS) at 2-3. In response, the SOS did not address the accommodation request. Ex. 7-H (SOS Letter to ACLU). Instead, he acknowledged that HB 458 "adds a criminal penalty for the unauthorized return of a person's absentee ballot" and that "[r]egarding the determination of criminal liability for the unauthorized possession or return of an absentee ballot, that discretion belongs to the relevant county prosecutor where the alleged offense might have occurred." *Id.*

Plaintiffs' counsel also asked the SOS to clarify whether ballot "return" encompasses certain activities and whether certain individuals, including professional caregivers, are prohibited from assisting voters with disabilities. ACLU Letter at 2-4. But the SOS has issued no guidance on how prosecutors, poll workers, or Ohio voters should interpret the terms "possess" or "return" in the Challenged Provisions. Stevens Dep. 26:10-13, 26:25-27:5. The EOM instructs only that

"[a] voter may deliver the absentee ballot personally or have a family member deliver the absentee ballot." EOM at 202. And the EOM recites a *different* list of relatives, including several people *not* permitted by statute to return a voter's ballot—domestic partner, step-brother, step-sister, brother-in-law, sister-in-law, son-in-law, sister-in-law, and "other family member[s] living in the same household"—while excluding others who *are* permitted by statute—nephews, nieces, adopting parents, and adopted children. *Compare id.* at 202 n.20, 205 n.28, 210 n.39, 214 n.54, *with* R.C. 3509.05(C)(1).

### B. Attorney General Dave Yost

Dave Yost, as Attorney General (AG), is Ohio's chief law officer. R.C. 109.02. The AG, through its Bureau of Criminal Investigation, investigates potential violations of Ohio's election laws. Ex. 10, Kollar Dep. 21:7-22:15. The AG may "initiate criminal proceedings" for Election Code violations and refer them to county prosecutors. R.C. 109.95. If the county prosecutor declines to prosecute, the AG may prosecute. *Id.* Since 2020, the AG has investigated two potential violations of the Challenged Provisions and referred one to a county for potential prosecution. Kollar Dep. 50:5-10, 157:3-4. The AG is vocal about enforcement: for example, in 2020, he released a video warning that "possessing somebody else's ballot unless you're one of these close family members is a felony and you can be prosecuted for it." AG Yost Addresses Early Voting Election Concerns (Oct. 13, 2020), https://perma.cc/D5DP-J452; Ex. 7-I (Tr. of Yost Video). But the AG has not issued any guidance to prosecutors, election officials, or the public on what conduct the Challenged Provisions prohibit, Kollar Dep. 45:7-14, 48:9-12, 49:9-12, 59:1-4, 61:9-13, leaving that decision with each individual prosecutor, *id.* 59:17-22, 60:2-11, 61:14-24, 67:22-68:7.

### C. Cuyahoga County Prosecutor Michael O'Malley

Michael O'Malley leads the Cuyahoga County Prosecutor's Office (CCPO). CCPO has "first right of refusal" to prosecute alleged violations of the Challenged Provisions in the county.

Kollar Dep. 38:2-3; *see* R.C. 109.95, 309.08(A). Each CCPO prosecutor has discretion to determine what conduct violates the Challenged Provisions. *See* SOS Letter; Kollar Dep. 59:17-22, 61:14-18. CCPO has received one referral of an alleged violation but declined to prosecute. *See* Kollar Dep. 165:17-166:2, 167:22-169:22, and Exhibits 15 and 16 thereto.

**SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Babcock & Wilcox Co. v. Cormetech*, 848 F.3d 754, 758 (6th Cir. 2017) (quoting Fed. R. Civ. P. 56). Non-moving parties have "an affirmative duty to point out specific facts in the record [that] create a genuine issue of material fact." *Anderson v. Kent State Univ.*, 804 F. Supp. 2d 575, 582 (N.D. Ohio 2011). "A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment." *Babcock*, 848 F.3d at 758.

**ARGUMENT**

**I.      Section 208 of the VRA Preempts and Precludes Enforcement of the Challenged Provisions.**

The Supremacy Clause confers on Congress the "power to preempt state law." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Where a state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *id.* (quotation omitted), "the state law must yield." *Torres v. Precision Indus.*, 995 F.3d 485, 492 (6th Cir. 2021) (quotation omitted). "The Voting Rights Act is clear: disabled voters who need assistance in returning an absentee ballot are entitled to ask a person of their choosing for that assistance." *Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020, 1024 (W.D. Wis. 2022). In restricting that right to assistance, the Challenged Provisions conflict with the text and obstruct the purposes of Section 208 of the VRA; therefore, the state laws must yield. The VRA's legislative history and a majority

10

of federal court decisions confirm this conclusion.[3]

### A.  The Challenged Provisions directly conflict with Section 208's guarantee that voters with disabilities choose who assists them.

Section 208 mandates that "[a]ny voter who requires assistance to vote[4] by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. 10508. In contrast, the Challenged Provisions force covered voters to choose from a list of specific relatives. This manifest conflict with the text of Section 208 alone resolves this claim in Plaintiffs' favor.

Section 208's text "gives voters unrestricted choice" of an assistor. *Disability Rts. N.C. v. N.C. State Bd. of Elections* (*DRNC II*), 2022 WL 2678884, at *4 (E.D.N.C. July 11, 2022). It requires only that the voter's choice be "a person," regardless of whether that person is a relative. The indefinite article in "*a* person" means just that: *any* person. *See United States v. Carpenter*, 80 F.4th 790, 791 (6th Cir. 2023) (Kethledge, J., concurring) ("'[A] sentence' . . . means any kind of sentence."); *United States v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015) (collecting cases holding that "an indefinite article" is "a synonym for the word 'any,'" and reading "'a' or 'an' to mean 'any' rather than 'one'").

Congress excluded only two categories from the universe of "persons" who may assist: those affiliated with the voter's employer or union. Nothing in Section 208 permits states to carve out additional exceptions: "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v.*

---

[3] Plaintiffs bring their Section 208 claim under the Voting Rights Act and, in the alternative, under 42 U.S.C. 1983, because Defendants act under color of state law to deny Plaintiffs assistance by a person of their choice.
[4] The VRA defines "vote" as "all action necessary to make a vote effective." 52 U.S.C. 10310(c)(1).

*Johnson*, 529 U.S. 53, 58 (2000); *see DRNC II*, 2022 WL 2678884, at *4. Thus, any attempt by a state to curtail a voter's choice of assistor, as the Challenged Provisions seek to do, is preempted by Section 208.

### B. The legislative history supports Plaintiffs' view of Section 208.

Section 208's "purpose was to create a guaranteed right to the voting process that could not be narrowed or limited by state legislation." *DRNC II*, 2022 WL 2678884, at *4. The statute's legislative history confirms that Congress intended for Section 208 to preempt state laws that interfered with a disabled voter's right to the assistor of their choosing. Congress acknowledged that citizens "unable to exercise their rights to vote without obtaining assistance in voting" should not be "forced to choose between casting a ballot under the adverse circumstances of not being able to choose their own assistance or forfeiting their right to vote." S. Rep. 417, 97th Cong., 2d Sess. 62 (1982). The Senate Judiciary Committee emphasized that "the only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation" was to allow the voter to select "a person of their own choice . . . . whom the voter trusts and who cannot intimidate [them]." *Id.*

In enacting Section 208, Congress recognized that a state's right to "establish necessary election procedures" must be "subject to the overriding principle that such procedures shall be designed to protect the rights of voters" with disabilities and to "limit the risks of discrimination against" them. *Id.* at 62-63. Section 208 therefore "preempt[s]" any state law that unduly burdens the right to assistance, including, for example, one that denies "assistance at some stages of the voting process." *Id.* at 63. So too here, where Ohio's election procedures deny Ms. Kucera and LWVO members the right to vote with assistance from those they choose and trust. *See* Kucera Dec. ¶29; Miller Dec. ¶13; Rubin Dec. ¶¶8-10. By prohibiting that assistance, the Challenged Provisions cannot be enforced consistent with Section 208.

**C.  Federal courts have repeatedly refused to narrow Section 208's right to assistance.**

"Federal courts have shown little tolerance for any narrowing of the Section 208 right to assistance with the voting process." *Disability Rts. N.C. v. N.C. State Bd. of Elections* (*DRNC I*), 602 F. Supp. 3d 872, 877-78 (E.D.N.C. 2022). Numerous federal courts have concluded that Section 208 preempts state-law restrictions on who may assist covered voters. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 608, 614-15 (5th Cir. 2017); *Disability Rts. Miss. v. Fitch*, 684 F. Supp. 3d 517, 519 (S.D. Miss. 2023); *Ark. United v. Thurston*, 626 F. Supp. 3d 1064, 1085-87 (W.D. Ark. 2022) (app. pending); *Carey*, 624 F. Supp. 3d at 1032-33; *DRNC II*, 2022 WL 2678884, at *6; *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 235-36 (M.D.N.C. 2020). Several other federal courts have entered consent decrees recognizing the same. *See, e.g.*, Consent Order, *Kwon v. Crittenden*, No. 1:18-cv-5405-TCP (N.D. Ga. Nov. 29, 2018).

Only one federal case departs from this consensus, based on different facts and faulty reasoning.[5] *See Priorities USA v. Nessel* (*Priorities I*), 487 F. Supp. 3d 599 (E.D. Mich. 2020); *Priorities USA v. Nessel* (*Priorities II*), 628 F. Supp. 3d 716 (E.D. Mich. 2022). First—unlike Plaintiffs here, whose caregivers would face potential felony charges for assistance Section 208 protects—the *Priorities* plaintiffs presented no evidence of voters denied the assistor of their choice. *Compare Priorities I*, 487 F. Supp. 3d at 619-20, *with* Kucera Dec. ¶29; Mann Dec. ¶¶8-10; Miller Dec. ¶13. Second, contrary to the VRA's legislative history and basic rules of grammar, the court mistakenly concluded that "a person" did not mean "any person." *Priorities II*, 628 F. Supp. 3d at 732-33. *Priorities* is thus inapposite.

---

[5] *Ray v. Texas*, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008), also interpreted Section 208 narrowly to permit an assistance restriction, but its reasoning has since been abrogated by *OCA*, which held that restricting a voter's choice of assistor "impermissibly narrows the right guaranteed by Section 208 of the VRA," 867 F.3d at 615. *See also Ark. United*, 626 F. Supp. 3d at 1087 n.15 (recognizing *Ray*'s abrogation).

## II.     The ADA and RA Preclude Defendants' Enforcement of the Challenged Provisions.

The ADA and RA broadly prohibit state discrimination against people with disabilities. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132. Likewise, under Section 504 of the RA: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" of an agency receiving federal financial assistance. 29 U.S.C. 794(a),(b)(1)(A). Because "the purpose, scope and governing standards" of the ADA and RA are largely the same, courts analyze parallel claims under both statutes together. *Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000); 42 U.S.C. 12133 (RA "remedies, procedures, and rights" apply to ADA).

Plaintiffs' ADA and RA claims succeed as a matter of law because: (i) Ms. Kucera and LWVO members are qualified individuals with disabilities; and (ii) they are excluded from, denied benefits of, or otherwise discriminated against in Ohio's absentee-voting program because of (or under the RA, "solely" because of) their disability. 42 U.S.C. 12132; 29 U.S.C. 794(a). Further, because the Challenged Provisions erect an "obstacle to the accomplishment and execution of [Congress's] full purpose[] and objective[,]" *Arizona*, 567 U.S. at 399 (quotation omitted)—that "individuals with disabilities [be] assure[d] equality of opportunity[ and] full participation" in public programs, including voting, 42 U.S.C. 12101(a)(3),(7)—they are preempted by both federal laws. *See Hindel v. Husted*, 875 F.3d 344, 349 (6th Cir. 2017) ("[A] state procedural requirement may not excuse a substantive ADA violation.").

### A.  Plaintiffs are qualified individuals with disabilities.

There can be no dispute that Ms. Kucera and many LWVO members are registered voters

with disabilities that substantially limit their major life activities and qualify them for protection under the ADA and RA. Kucera Dec. ¶¶3-5, 9; Miller Dec. ¶¶5, 13; *see also* 42 U.S.C. 12131(2); 29 U.S.C. 794; 28 C.F.R. 35.108(b)(2),(c)(1)(i). As registered voters, Ms. Kucera and LWVO members are qualified to vote absentee. R.C. 3509.02(A).

**B. Defendants subject Plaintiffs to discrimination in their absentee-voting program on the basis of their disability.**

Federal law "imposes affirmative obligations on public entities and does not merely require them to refrain from intentionally discriminating against the disabled." *Ability Ctr. Of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 910 (6th Cir. 2004). Defendants, as public entities that receive federal funding,[6] are bound by Title II and Section 504. R.C. 3501.04, 109.02, 309.08; *see* 42 U.S.C. 12131(1)(b); 29 U.S.C. 794(a),(b)(1)(A); 28 C.F.R. 35.102(a). And because Defendants' program of absentee voting is available to all Ohio voters, that program—not Ohio's voting program as a whole—must be analyzed for ADA and RA compliance. *See, e.g.*, *Hindel*, 875 F.3d at 345-47 (addressing blind voters' challenge to Ohio's absentee-voting system); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 504 (4th Cir. 2016) ("[A]bsentee voting—rather than the entire voting program—[i]s the appropriate object of scrutiny for compliance with the ADA and [RA].").

Public entities cannot deny people with disabilities an equal opportunity to participate in programs nor provide them unequal or less effective services. 28 C.F.R. 35.130(b)(1)(i)-(iii). Put plainly, a plaintiff need not be wholly barred from receiving a program's benefits to create liability. Further, public entities must ensure they make "reasonable modifications" to avoid discrimination, unless the entities can show the modifications would fundamentally alter the nature of the service, program, or activity. *Id.* 35.130(b)(7)(i). Failing to fulfill either of these distinct responsibilities—

---

[6] The SOS, AG, and CCPO receive federal funding. Ex. 11, SOS Responses to Pls.' Interrogatories at 6; Ex. 7-K, Greenbook: LBO Analysis of Enacted Budget, AG; Ex. 7-L, Press Release on G.O.L.D. Unit Grant.

providing equal access and providing reasonable modifications—violates the ADA.

The undisputed factual record demonstrates Defendants fail on both fronts. First, they deny equal voting access to those whose disabilities necessitate assistance from others by forcing them to rely only on specific relatives, who are not always available and may not even exist. Second, they fail to provide a reasonable modification that permits voters with disabilities to rely on assistors who are available and whom they trust, including their professional caregivers.

### 1. Defendants' implementation of the Challenged Provisions denies voters with disabilities equal access to Ohio's absentee-voting program.

In implementing and enforcing the Challenged Provisions, Defendants deny voters with disabilities that necessitate assistance in voting an equal opportunity to participate in Ohio's absentee-voting program. The undisputed factual record establishes that, unlike non-disabled Ohioans, Ohioans with disabilities like Ms. Kucera's cannot retrieve, handle, or return their absentee ballots without assistance and do not always have enumerated relatives available to assist them. *See* Kucera Dec. ¶¶5-9, 14-15; Kruse Rpt. ¶¶43, 63. If these voters rely on anyone not enumerated, their assistors risk criminal prosecution. Defendants present such voters with a Catch-22: either ask those close to them to commit a felony or forfeit the right to vote. Voters without disabilities are spared this false choice. This is the exact type of state law that the Department of Justice—the agency responsible for promulgating regulations implementing the ADA—calls an ADA violation in its guidance.[7]

Although the Challenged Provisions appear neutral on their face, applying to all voters, the record makes clear why the brunt of their impact falls disproportionately—and therefore

---

[7] *See* Ex. 7-J (U.S. DOJ Report on Voters with Disabilities) ("State laws that restrict people from providing assistance with voting, subject to criminal penalties, may chill assistors from aiding voters with disabilities and thus interfere with voters' rights to assistance under the ADA."); 28 C.F.R. Part 35; 42 U.S.C. 12134(a) (delegating to DOJ authority to promulgate regulations under Title II); *see, e.g.*, *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013) ("Statutory ambiguities will be resolved, within the bounds of reasonable interpretation, not by the courts but by the administering agency.").

unlawfully—on Ohioans with disabilities. Voters with disabilities are more likely to vote absentee and to require assistance in doing so, and already face myriad barriers in voting. Kruse Rpt. ¶¶32, 41-43, 53-55, 59, 63-65, 68-73. More than two-fifths of Ohioans with disabilities require assistance in activities of daily living, and nearly one-sixth of them—close to half a million people—receive that assistance from non-relative third parties only. *See id.* ¶¶14, 19. Nearly a third of Ohio voters with disabilities voted by absentee ballot in 2022. *See id.* ¶16. Nationally, only 3.5% of absentee voters without disabilities required assistance in voting, while 11.1% of their counterparts with disabilities required such assistance, with about half of the latter subgroup receiving that assistance from a non-relative. *See id.* ¶17 (noting national patterns likely apply to Ohio).

Laws that restrict the availability of assistance thus severely impact voters with disabilities, who are more likely to need that help. In Professor Kruse's expert opinion, the criminalization of voting assistance by individuals not enumerated "likely deter[s] well-meaning assistors who are available and trusted by voters with disabilities, and in some instance may be the only means for some disabled Ohioans to vote," exacerbating the existing barriers and stigma that these voters face. *Id.* ¶¶14, 19. Consequently, the Challenged Provisions, as amended by HB 458, "harm a number of Ohioans with disabilities and make it more difficult, if not impossible, for many of them to exercise the right to vote." *Id.* ¶21.

Take, for example, Plaintiff Kucera. Though Ms. Kucera has been able to vote using her mother's assistance in some recent elections, Ms. Kucera's mother lives far away, herself experiences mobility challenges, and has not always been (nor will always be) available to assist Ms. Kucera. *See* Kucera Dec. ¶¶16-19, 27-29. The ADA and RA require more than Ms. Kucera's "right to vote [being] contingent on the happenstance that [certain] others are available to help." *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 200 (2d Cir. 2014); *see*

*Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1269 (D.C. Cir. 2008) (the RA requires that public benefits not be "contingent upon the cooperation of third persons"). Indeed, her professional caregivers, who spend hours with her daily, would assist her absent the continuous threat of Defendants' enforcement of the Challenged Provisions. *See* Mann Dec. ¶¶3, 9-10. The Challenged Provisions' prohibition of such assistance creates needless disparities in access for voters with disabilities like Ms. Kucera, risking—and, for some, resulting in—their wholesale disenfranchisement, Kruse Rpt. ¶¶21, 74, 78, violating the ADA and RA.

### 2. Defendants fail to reasonably accommodate voters with disabilities.

Defendants have also failed to "make reasonable modifications in policies, practices, or procedures" that "are necessary to avoid discrimination on the basis of disability." 28 C.F.R. 35.130(b)(7)(i); *see also Ability Ctr.*, 385 F.3d at 908-10 (discussing public entities' "affirmative obligation[]" to "make certain accommodations to the disabled in the course of providing public services"). Because Congress recognized that "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion," *Tennessee v. Lane*, 541 U.S. 509, 531 (2004), "[r]equiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does." *Hindel*, 875 F.3d at 349.

Defendants have not offered a reasonable modification in the administration of Ohio's absentee-voting laws that remedies discrimination against voters with disabilities who require but cannot reliably receive (or entirely lack) the assistance of an enumerated relative. In fact, when Plaintiffs' counsel sought a modification that would allow absentee voters with disabilities the assistor of their choice, as otherwise required by Section 208 of the VRA, the SOS *ignored* the request. *See* Exs. 7-G, 7-H (letters between ACLU and SOS). And the record establishes that Ohio's existing options for voters with disabilities (*see supra*, Background Section II.B) do not suffice to provide equal access; indeed, they wholly fail to accommodate voters like Ms. Kucera

who require assistance with sealing and returning their absentee ballot but are not confined to their home or an institution. None is sufficient to avoid the disability-based discrimination that such voters experience.

Plaintiffs have proposed a reasonable modification to the program that will allow them the equal access they seek: non-enforcement of the Challenged Provisions against absent voters with disabilities that necessitate assistance, and their assistors. ACLU Letter; *see Smith & Lee Assocs. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996); *U.S. Airways v. Barnett*, 535 U.S. 391, 401 (2002) (plaintiffs "need only show that an 'accommodation' seems reasonable on its face"). Defendants are only excused from their obligation to make such a reasonable modification under the ADA if they prove compliance would "result in a fundamental alteration" of the program at issue. 28 C.F.R. 35.130; *Hindel*, 875 F.3d at 348 (defendant has "burden of production and persuasion to prove" fundamental alteration). Defendants cannot meet their burden. Plaintiffs' proposed accommodation requires *inaction* on Defendants' part, and so creates little to no burden.[8] And Defendants have offered nothing more than conclusory statements, not evidence, that permitting Ohio voters with disabilities to choose their assistor would "fundamentally alter" the absentee-voting program. Kollar Dep. at 152:10-18; 177:18-178:6; Stevens Dep. at 211:18-212:12, 215:8-216:17; *see Hindel*, 875 F.3d at 348 (mere allegation of fundamental alteration does not suffice to meet defendant's burden).

## III.   Injunctive Relief Is Warranted.

To secure a permanent injunction, Plaintiffs must demonstrate an "irreparable injury" that remedies at law cannot adequately compensate, that the equities favor the plaintiffs, and that "the public interest would not be disserved by a permanent injunction." *eBay v. MercExchange*, 547

---

[8] State Defendants' counsel conceded as much at the Case Management Conference. *See* Zuberi Dec. ¶14.

U.S. 388, 391 (2006). The equities and public interest inquiries merge where the government is the defendant. *Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023).

Plaintiffs easily satisfy those elements. Ms. Kucera's injury—infringement on her fundamental right to vote—is a harm that cannot be redressed by financial compensation. *See Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). So too are the injuries to LWVO's mission and its members who either lack equal access to absentee voting or are at substantial risk of prosecution. *Id.*; *see Preterm-Cleveland v. Att'y Gen. of Ohio*, 456 F. Supp. 3d 917, 937-38 (S.D. Ohio 2020). And Plaintiffs' and the public's interest are aligned, both in "favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful," *Obama for Am.*, 697 F.3d at 437 ("The public interest . . . favors permitting as many qualified voters to vote as possible."), and in "eliminating discrimination against individuals with disabilities." *Deck v. City of Toledo*, 29 F. Supp. 2d 431, 434 (N.D. Ohio 1998).

By contrast, the public interest in preserving enforcement of the Challenged Provisions against voters with disabilities is non-existent: "The state has no legitimate interest in enforcing laws [that] frustrate federal [law]." *L.P. Acquisition Co. v. Tyson*, 772 F.2d 201, 209 (6th Cir. 1985). And Defendants cannot identify any election integrity issues uniquely addressed by the Challenged Provisions that are not already addressed by other provisions of Ohio's Election Code. *See* Kollar Dep. 150:2-150:9; *see, e.g.*, R.C. 3599.12(A)(2),(3), 3599.21(A)(2),(5),(6), 3599.26, 3599.28. Accordingly, Plaintiffs' requested permanent injunction would prevent irreparable harm and serve the needs of the public while maintaining Ohio's election integrity.

## CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiffs' Motion for Partial Summary Judgment and issue the requested declaration and permanent injunction.

Respectfully submitted,

/s/ Suzan F. Charlton
Suzan F. Charlton*
Jacob Zuberi (Bar No. 101383)
Scott Garfing*
Hassan Ahmad*
Gregory Terryn*
William Ossoff*
August Gweon*
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
scharlton@cov.com
jzuberi@cov.com
sgarfing@cov.com
hahmad@cov.com
gterryn@cov.com
wossoff@cov.com
agweon@cov.com

/s/ Freda J. Levenson
Freda J. Levenson (Bar. No. 0045916)
ACLU OF OHIO FOUNDATION, INC.
4506 Chester Avenue
Cleveland, OH 44103
(216) 541-1376
flevenson@acluohio.org

/s/ Megan C. Keenan
Megan C. Keenan*
AMERICAN CIVIL LIBERTIES UNION
915 15th Street NW
Washington, DC 20001
(740) 632-0671
mkeenan@aclu.org

/s/ Sophia Lin Lakin
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

Attorneys for Plaintiffs

*Admitted pro hac vice

**CERTIFICATE OF COMPLIANCE**

Under Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case

has been assigned to the Expedited Track. Scheduling Order, ECF. No. 31. I also certify that this

memorandum does not exceed the 20-page limitation ordered by the Court. Order (May 7, 2024),

ECF No. 39.

/s/ Suzan F. Charlton
Suzan F. Charlton
*Attorney for Plaintiffs*