**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF OHIO AND JENNIFER KUCERA, | |
| Plaintiffs, | Civil Action No. 1:23-cv-02414 |
| v. | Judge Bridget Meehan Brennan |
| FRANK LAROSE, in his official capacity as Ohio Secretary of State, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF
INTERVENORS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................... 1

STATEMENT OF ISSUES ................................................................................................... 1

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT .................................................................................................................... 5

    I.     Plaintiffs Have Failed To Prove A Violation Of The ADA Or Section 504. ......... 5

    II.     Section 208 Does Not Preempt The Ballot Harvesting Rules. ........................... 13

    III.     The Challenged Criminal Provisions Are Not Unconstitutionally Vague........... 17

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Choate*,
469 U.S. 287 (1985)......................................................................................................6

*Alexander v. Sandoval*,
532 U.S. 275 (2001).............................................................................................16, 17

*Ariz. Dem. Party v. Ariz. Republican Party*,
2016 WL 8669978 (D. Ariz. Nov. 4, 2016)..................................................................3

*Atl. Richfield Co. v. Christian*,
140 S. Ct. 1335 (2020)................................................................................................19

*Bedford v. Michigan*,
722 F. App'x 515 (6th Cir. 2018) .................................................................................6

*Bennett v. Hurley Med. Ctr.*,
86 F.4th 314 (6th Cir. 2023) .....................................................................................8, 9

*Burson v. Freeman*,
504 U.S. 191 (1992)....................................................................................................17

*Davis v. Echo Valley Condo. Ass'n*,
945 F.3d 483 (6th Cir. 2019) ................................................................................12, 19

*DiPietrae v. City of Philadelphia*,
666 A.2d 1132 (Pa. Commw. Ct. 1995) .....................................................................15

*Doe ex rel. K.M. v. Knox Cnty. Bd. of Educ.*,
56 F.4th 1076 (6th Cir. 2023) ....................................................................................10

*Eu v. S.F. Cnty. Dem. Cent. Comm.*,
489 U.S. 214 (1989)....................................................................................................11

*Fowler v. Benson*,
924 F.3d 247 (6th Cir. 2019) ......................................................................................17

*Gantt v. Wilson Sporting Goods Co.*,
143 F.3d 1042 (6th Cir. 1998) ..................................................................................7, 8

*Gonzales v. Carhart*,
    550 U. S. 124 (2007)...............................................................................20

*Gospel Missions of Am. v. City of Los Angeles*,
    419 F.3d 1042 (9th Cir. 2005) ............................................................19

*Green Party of Tenn. v. Hargett*,
    700 F.3d 816 (6th Cir. 2012) ..............................................................18

*Groner v. Golden Gate Gardens Apts.*,
    250 F.3d 1039 (6th Cir. 2001) ............................................................12

*Harrison v. NAACP*,
    360 U.S. 167 (1959)............................................................................17

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
    599 U.S. 166 (2023)......................................................................16, 17

*Hill v. Colorado*,
    530 U.S. 703 (2000)......................................................................19, 20

*In re Ga. Senate Bill 202*,
    2023 WL 5334615 (N.D. Ga. Aug. 18, 2023) ......................................3

*Jones v. City of Monroe*,
    341 F.3d 474 (6th Cir. 2003) ..............................................6, 8, 10, 12

*Keller v. Chippewa Cnty. Bd. of Comm'rs*,
    860 F. App'x 381 (6th Cir. 2021) ........................................................6

*Kleiber v. Honda of Am. Mfg., Inc.*,
    485 F.3d 862 (6th Cir. 2007) ..............................................................8

*Knox Cnty. v. M.Q.*,
    62 F.4th 978 (6th Cir. 2023) ...............................................................6

*Knox v. Brnovich*,
    907 F.3d 1167 (9th Cir. 2018) ......................................................19, 20

*League of Women Voters of Florida, Inc. v. Lee*,
    595 F. Supp. 3d 1042 (N.D. Fla. 2022)......................................10, 11, 12

*Marble v. Tennessee*,
    767 F. App'x 647 (6th Cir. 2019) ..................................................7, 8, 9

*Mays v. LaRose*,
   951 F.3d 775 (6th Cir. 2020) ................................................................................15

*Mbawe v. Ferris State Univ.*,
   751 F. App'x 832 (6th Cir. 2018) ..........................................................................7

*McDonald v. Bd. of Election Comm'rs of Chi.*,
   394 U.S. 802 (1969)..............................................................................................15

*McFadden v. United States*,
   576 U.S. 186 (2015)........................................................................................14, 20

*McPherson v. Mich. High Sch. Ath. Ass'n*,
   119 F.3d 453 (6th Cir. 1997) ..............................................................................6, 7

*Miller v. Blackwell*,
   348 F. Supp. 2d 916 (S.D. Ohio 2004) .................................................................13

*Miller v. City of Shaker Heights*,
   438 F. Supp. 3d 829 (N.D. Ohio 2020)...................................................................5

*Ne. Ohio Coal. for the Homeless v. LaRose*,
   2024 WL 83036 (N.D. Ohio Jan. 8, 2024)..............................................................4

*Neal v. Metro Reg'l Trans. Auth.*,
   2019 WL 3753605 (N.D. Ohio Aug. 8, 2019) .........................................................7

*Ohio Dem. Party v. Husted*,
   834 F.3d 620 (6th Cir. 2016) ..................................................................................1

*PGA Tour, Inc. v. Martin*,
   532 U.S. 661 (2001)............................................................................................8, 9

*Pierce v. Allegheny Cnty. Bd. of Elections*,
   324 F. Supp. 2d 684 (W.D. Pa. 2003) ..................................................................18

*Priorities USA v. Nessel*,
   487 F. Supp. 3d 599 (E.D. Mich. 2020)................................................................14

*Priorities USA v. Nessel*,
   628 F. Supp. 3d 716 (E.D. Mich. 2022)................................................................15

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006)..................................................................................................11

*Qualkinbush v. Skubisz,*
    357 Ill. App. 3d 594 (2004) ...........................................................................15

*R.R. Comm'n of Tex. v. Pullman Co.,*
    312 U.S. 496 (1941) ..................................................................................17, 18

*Ray v. Texas,*
    2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ................................................15

*Reynolds v. Sims,*
    377 U.S. 533 (1964) .......................................................................................13

*Schaw v. Habitat for Humanity of Citrus Cnty., Inc.,*
    938 F.3d 1259 (11th Cir. 2019) .....................................................................12

*Se. Cmty. Coll. v. Davis,*
    442 U.S. 397 (1979) .......................................................................................12

*Shays v. FEC,*
    414 F.3d 76 (D.C. Cir. 2005) .........................................................................13

*Shelby Cnty. v. Holder,*
    570 U.S. 529 (2013) .......................................................................................13

*Talley v. Family Dollar Stores of Ohio, Inc.,*
    542 F.3d 1099 (6th Cir. 2008) .......................................................................10

*Tex. Dem. Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) .........................................................................15

*United States v. Lopez,*
    929 F.3d 783 (6th Cir. 2019) .........................................................................19

*United States v. Skinner,*
    25 F.3d 1314 (6th Cir. 1994) .........................................................................20

*United States v. Theunick,*
    651 F.3d 578 (6th Cir. 2011) .........................................................................18

*United States v. Williams,*
    553 U.S. 285 (2008) .......................................................................................18

*US Airways, Inc. v. Barnett,*
    535 U.S. 391 (2002) ....................................................................................9, 13

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982) ................................................................................ 20

*Wag More Dogs, LLC v. Artman*,
    795 F. Supp. 2d 377 (E.D. Va. 2011) .................................................. 19

*Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
    831 F.3d 64 (2d Cir. 2016) .................................................................... 9

*Wyeth v. Levine*,
    555 U.S. 555 (2009) .............................................................................. 13

**STATUTES**

29 U.S.C. § 794 ........................................................................................... 5

29 U.S.C. § 794(a) ...................................................................................... 6

42 U.S.C. § 1983 ................................................................................... 16, 17

42 U.S.C. § 12132 ............................................................................ 5, 6, 20

42 U.S.C. § 20104 ..................................................................................... 16

52 U.S.C. § 10508 ........................................................................... 5, 13, 14

52 U.S.C. § 20104(c) ................................................................................ 16

52 U.S.C. § 20105(a) ................................................................................ 17

R.C. § 3501.29(C) ....................................................................................... 2

R.C. § 3501.29(E) ....................................................................................... 2

R.C. § 3501.382 ........................................................................................... 2

R.C. § 3505.24 ............................................................................................. 2

R.C. § 3509.02 ............................................................................................. 2

R.C. § 3509.03(D) ....................................................................................... 2

R.C. § 3509.05 ............................................................................................. 4

R.C. § 3509.05(C)(1) ................................................................................ 2, 4

R.C. § 3509.08 ...................................................................................................................4

R.C. § 3509.08(A) ..............................................................................................................3

R.C. §3599.21 ..................................................................................................................20

R.C. § 3599.21(A) .........................................................................................................4, 20

R.C. § 3599.21(A)(9) (2006) .............................................................................................4

## OTHER AUTHORITIES

28 C.F.R. § 35.130(b)(7)(i) ..............................................................................................10

Fed. R. Civ. P. 30(b)(6) .....................................................................................................5

Fed. R. Civ. P. 56(a) ..........................................................................................................5

S. Rep. No. 97-417 (1982), 1982 WL 25033 ................................................14, 15, 16

U.S. Const. amend. V .........................................................................................................5

U.S. Const. amend. XIV .....................................................................................................5

U.S. Const. art. I, § 4, cl. 1 ..............................................................................................13

*Webster's New International Dictionary* 1 (2d ed. 1954) ............................................14

## INTRODUCTION AND SUMMARY OF ARGUMENT

Ohio offers "generous, reasonable, and accessible voting options to all," including "many conveniences that have generously facilitated voting participation." *Ohio Dem. Party v. Husted*, 834 F.3d 620, 623, 628 (6th Cir. 2016). As a result, "it's easy to vote in Ohio. Very easy, actually." *Id.* at 628. Plaintiffs' own evidence bears this out: Plaintiffs ask the Court to invalidate Ohio's commonsensical rules regarding who may possess or return another person's mail ballot (the "Ballot Harvesting Rules"), but have not identified *even a single voter* who has been unable to vote because of those Rules. Indeed, Plaintiffs' various claims that the Rules violate the rights of voters with disabilities under federal law and the Constitution uniformly fail. The Court should grant summary judgment and uphold the Legislature's duly enacted Rules, which help facilitate mail voting, preserve the integrity of Ohio's elections, and prevent voter intimidation and fraud.

## STATEMENT OF ISSUES

1. Whether Plaintiffs have failed to prove a violation of the Americans with Disabilities Act (ADA) or Section 504 of the Rehabilitation Act because they have not identified a failure to accommodate, have not requested an accommodation, and seek a fundamental alteration.

2. Whether the Voting Rights Act preempts Ohio's reasonable restrictions on ballot harvesting.

3. Whether the Ballot Harvesting Rules are unconstitutionally vague, despite their use of plain language and their strict *mens rea* requirement.

## BACKGROUND

**Voting in Ohio.** Ohio offers an array of conveniences and accommodations that make it "[v]ery easy" for all eligible voters to vote, including voters with disabilities. *Ohio Dem. Party*, 834 F.3d at 628. Start with in-person voting. Ohio offers nearly a month of in-person voting, including five days with evening hours and two weekend days. Ex. 1, Directive 2023-03, at 8. The State works hard to ensure that polling places are accessible for voters with disabilities. Before each election, county boards of elections must verify and attest that each polling place complies

1

with Ohio and federal accessibility requirements through an extensive compliance review. Ex. 2, *Election Official Manual* (*EOM*), at 170-72; R.C. § 3501.29(E); Ex. 3, Form 16; Ex. 4, Form 17. Moreover, "[b]oards of elections must train their precinct election officials on the rights of voters with disabilities and how to assist and communicate effectively" with voters. Ex. 2, *EOM*, at 272.

Inside the polling place, a voter with a disability may receive any assistance in voting she needs from a bipartisan team of election workers or from "any person of [her] choice, other than [her] employer, an agent of [her] employer, or an officer or agent of [her] union." R.C. § 3505.24. In-person voters who cannot enter a polling place can take advantage of curbside voting with assistance from a bipartisan team of election workers. *Id.* § 3501.29(C); Ex. 2, *EOM*, at 210-12.

Ohio also offers generous absentee voting options. Any Ohio voter may vote absentee by requesting an absentee ballot as long as ten months or as short as a week before an election. R.C. §§ 3509.02, 3509.03(D). A voter with a disability may request an absentee ballot via a paper form or an electronic form that can be completed with assistive technology. Ex. 5, Form 11-A; Ex. 6, Kucera Tr. 71:23-72:21. A voter with a disability may also request an electronically delivered ballot that can be marked electronically, then printed and returned. *See* Ex. 2, *EOM*, at 203-06; Ex. 7, Form 11-G; Ex. 8, Accessible Absentee Voting in Ohio. Voters with disabilities have the option to mark ballots and sign ballot envelopes with "assistive technology or an augmentative device such as a signature stamp" or to designate an "attorney in fact" to assist with marking and signing. R.C. § 3501.382; Ex. 9, Form 10-F; Ex. 10, Form 10-G; Ex. 2, *EOM*, at 260 n.4.

Ohio voters may return absentee ballots by mail, at a board of elections office, or to a secure drop box, either on their own or through any of a litany of close family members. R.C. § 3509.05(C)(1). Moreover, if a voter cannot leave her home, she may request that a bipartisan team of election workers bring a ballot to her home, assist with marking it if needed, and return

the ballot for the voter. R.C. § 3509.08(A); Ex. 2, *EOM*, at 213; Ex. 11, Form 11-F; Ex. 12, Form 12-C; Ex. 13, Stevens Tr. 178:10-22, 181:25-182:9. Such a voter can also request that USPS pick up and deliver her mail at her door. Ex. 14, USPS Door Delivery.

**The Ballot Harvesting Rules.** Like dozens of other States, Ohio restricts who may possess or return another person's absentee ballot. These restrictions facilitate mail voting, protect against voter fraud, safeguard voter confidence in valid elections, and protect vulnerable voters from "intimidation or malfeasance." Ex. 15, Strach Rep. ¶¶ 82, 84, 88, 95; *see* Ex. 16, NCSL, Summary, *Ballot Collection Laws*. Such restrictions accomplish these objectives by regulating "ballot harvesting," which refers to third parties collecting and returning other individuals' completed absentee ballots. *See, e.g.*, *Ariz. Dem. Party v. Ariz. Republican Party*, 2016 WL 8669978, at *6 (D. Ariz. Nov. 4, 2016); *In re Ga. Senate Bill 202*, 2023 WL 5334615, at *3 (N.D. Ga. Aug. 18, 2023). Ballot harvesting presents an obvious risk of third parties exercising undue influence over voters' votes or even committing outright fraud by intercepting or altering mail ballots. Ex. 15, Strach Rep. (documenting fraud associated with ballot harvesting in North Carolina); Ex. 17, Carter-Baker Rep. § 5.2 ("Absentee ballots remain the largest source of potential voter fraud. … Citizens who vote at home, [or] at nursing homes … are more susceptible to pressure, … or to intimidation."). In 2005, a bipartisan commission chaired by former President Jimmy Carter and former Secretary of State James Baker recommended that States combat these risks by limiting who may possess an absentee ballot to "the voter, an acknowledged family member," postal workers, and election officials. Ex. 17, Carter-Baker Rep. § 5.2.1.

Ohio—like other States including Michigan, Massachusetts, and North Carolina—has done precisely that. *See* Ex. 16, NCSL, Summary, *Ballot Collection Laws*. In particular, Ohio law provides that an absentee ballot may be

> mail[ed] … to the office of the board of elections … , or the elector may personally deliver it to the office of the board, or the spouse of the elector, the father, mother, father-in-law, mother-in-law, grandfather, grandmother, brother, or sister of the whole or half blood, or the son, daughter, adopting parent, adopted child, stepparent, stepchild, uncle, aunt, nephew, or niece of the elector may deliver it to the office of the board. The return envelope shall be returned by no other person, in no other manner, and to no other location, except as otherwise provided in section 3509.08 [providing for delivery, marking, and return by team of election workers].

R.C. § 3509.05(C)(1). This provision, including its list of family members who may deliver another person's absentee ballot, has been in place since 2013. *Id.* § 3509.05(A) (2013).

Section 3599.21(A) prescribes criminal penalties for individuals who unlawfully possess or return another person's mail ballot:

> (A) No person shall knowingly do any of the following: …
>> (9) Return the absent voter's ballot of another to the office of a board of elections, unless either of the following apply:
>>> (a) The person is a relative who is authorized to do so under division (C)(1) of section 3509.05 of the Revised Code;
>>> (b) The person is, and is acting as, an employee or contractor of the United States postal service or a private carrier.
>> (10) Except as authorized under Chapters 3509. [including § 3509.05(C)(1), quoted above, and 3509.08, providing for election-worker assistance] and 3511. [governing military voters] of the Revised Code, possess the absent voter's ballot of another.

A violation of subsection (A)(9) or (A)(10) is a fourth-degree felony. *Id.* § 3599.21(C).

Ohio added subsection (A)(9) as part of HB 458 in January 2023. *See* Act effective Apr. 7, 2023, § 1. Subsection (A)(10) has been in place since 2006; HB 458 changed it only by renumbering it to account for the addition of subsection (A)(9). *See id.* § 3599.21(A)(9) (2006). Ohio has never prosecuted a violation of either subsection. Ex. 18, Kollar Tr. 129:4-15. Together, Section 3509.05(C)(1) and Section 3599.21(A)(9)-(10) constitute the Ballot Harvesting Rules.

**Factual Background.** Plaintiffs filed this suit challenging the Ballot Harvesting Rules, as amended by HB 458, in December 2023, just before the State prevailed against a different challenge to HB 458. Compl., Dkt. 1; *see Ne. Ohio Coal. for the Homeless v. LaRose*, 2024 WL

4

83036 (N.D. Ohio Jan. 8, 2024). Plaintiff Jennifer Kucera has muscular dystrophy, Compl. ¶ 12, and receives assistance from two at-home caregivers, Ex. 6, Kucera Tr. 23:15-42:5. She has voted absentee in many elections in compliance with the Rules. *See id.* at 52:6-21 (March 2024), 66:13-20 (August 2023), 70:19-71:6 (November 2020); Ex. 19, Kucera Voting History. Plaintiff League of Women Voters of Ohio alleges that its members include "voters with disabilities" but has not identified any specific members—and has disavowed reliance on any member's past injuries caused by the Ballot Harvesting Rules. Compl. ¶ 8; Ex. 20, Miller Tr. 23:19-25:18; Ex. 21, 4/8/24 Charlton Email; Ex. 22, Rule 30(b)(6) Notice Responses. Plaintiffs, therefore, have not identified even a single voter who has been unable to vote due to the Rules, including in the March 2023 primary election, August 2023 election, or March 2024 primary election conducted since HB 458's enactment. Plaintiffs nonetheless allege violations of Title II of the ADA, 42 U.S.C. § 12132; section 504 of the Rehabilitation Act, 29 U.S.C. § 794; section 208 of the Voting Rights Act (VRA), 52 U.S.C. § 10508; and due process, *see* U.S. Const. amends. V, XIV.

## LEGAL STANDARD

Summary judgment is warranted when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when "its resolution will affect the outcome of the lawsuit," and a dispute is "genuine" when there is enough evidence, under applicable evidentiary standards, for a reasonable jury to find for either party. *See Miller v. City of Shaker Heights*, 438 F. Supp. 3d 829, 835-36 (N.D. Ohio 2020).

## ARGUMENT

I.     **Plaintiffs Have Failed To Prove A Violation Of The ADA Or Section 504.**

Plaintiffs' claims that the Ballot Harvesting Rules violate Title II of the ADA and Section 504 of the Rehabilitation Act—and should be enjoined with respect to every Ohio voter with a disability—fail as a matter of law for four independent reasons. Accordingly, the Court

should grant summary judgment dismissing Counts I and II. *See Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023) (analyzing ADA and Section 504 claims together); *McPherson v. Mich. High Sch. Ath. Ass'n*, 119 F.3d 453, 459-60 (6th Cir. 1997) (en banc) (same).

  **1.**   Counts I and II fail at the outset because Plaintiffs cannot show that they have been "excluded from participation in," "denied the benefits of," or "subjected to discrimination under" any program or activity offered by Defendants. 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794(a) (Rehabilitation Act); *see, e.g.*, *Alexander v. Choate*, 469 U.S. 287, 302-03 (1985); *Jones v. City of Monroe*, 341 F.3d 474, 478-79 (6th Cir. 2003), *abrogated in part on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc) (ADA causation standard).

  Plaintiffs contend that the neutral Ballot Harvesting Rules "deny" voters with disabilities "meaningful access" to "voting" or "absentee voting," Compl. ¶¶ 109, 125, but the record demonstrates otherwise. Kucera has repeatedly been able to vote absentee in compliance with the Rules. *See* Ex. 6, Kucera Tr. 52:6-21 (March 2024), 66:13-20 (August 2023), 70:19-71:6 (November 2020). The League, moreover, is not aware of anyone who has been unable to vote due to the Rules, including in any of the 2023 or 2024 elections conducted under HB 458's rules. Ex. 20, Miller Tr. 55:22-25; 102:3-22, 103:25-104:5. And Plaintiffs' lone expert, Dr. Kruse, likewise could not identify any voters affected by the Rules and conducted no analysis of the post-HB 458 elections. Ex. 23, Kruse Tr. 22:7-27:6, 35:11-24, 132:7-21, 133:18-24, 155:17-156:18.

  This lack of evidence is not surprising, given Ohio's numerous voting conveniences and host of accommodations for voters with disabilities. *See supra* pp. 1-3. But it is fatal to Plaintiffs' lawsuit. *See Jones*, 341 F.3d at 478-79; *Keller v. Chippewa Cnty. Bd. of Comm'rs*, 860 F. App'x 381, 385-88 (6th Cir. 2021) (no ADA or Section 504 violation when prisoner was able to use prison facilities, even though he had a "hard time" doing so and needed cellmates' help); *Bedford*

*v. Michigan*, 722 F. App'x 515, 519-20 (6th Cir. 2018) (same, when plaintiff sought accommodations for judicial proceedings but "represented herself competently"); *Neal v. Metro Reg'l Trans. Auth.*, 2019 WL 3753605, at *6-7 (N.D. Ohio Aug. 8, 2019) (same, when plaintiffs failed to allege that they had tried to use existing accommodations).

**2.**      Counts I and II also fail because, prior to filing suit, neither Kucera nor the League requested the "accommodation" they now seek: an exemption of all voters with disabilities from the Ballot Harvesting Rules. Compl. ¶ 128. A public entity "is generally not liable for failing to make reasonable accommodation if the plaintiff did not request accommodation or otherwise alert the … entity to the need for accommodation." *Marble v. Tennessee*, 767 F. App'x 647, 652 (6th Cir. 2019) (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998)); *Mbawe v. Ferris State Univ.*, 751 F. App'x 832, 840 (6th Cir. 2018) (plaintiff has "burden of proposing an initial accommodation"); *see also McPherson*, 119 F.3d at 461 (only an accommodation "brought to the attention" of a public entity is "available" as the basis for a claim). Otherwise, the entity would have "to speculate as to the extent of the [plaintiff's] disability or [her] need or desire for an accommodation." *Gantt*, 143 F.3d at 1046-47. Imposing such a burden on Defendants here makes little sense: They are "poor[ly] position[ed] to speculate as to" any voter's "need or desire for accommodation," since they interact with *every* Ohio voter and their interactions with any individual voter are sporadic at best. *Marble*, 767 F. App'x at 653.

Kucera never sought exemption from the Ballot Harvesting Rules prior to filing suit. Ex. 6, Kucera Tr. 110:7-111:18. Instead, she has voted absentee in many elections in compliance with the Rules, including by receiving existing accommodations. *See id.* at 52:6-21 (Mar. 2024), 56:20-58:16 (accommodation); 66:13-20 (Aug. 2023), 70:19-71:6 (Nov. 2020); Ex. 19, Kucera Voting History. And she has not availed herself of other *existing* accommodations: in-home assistance

from election officials or mail delivery and pick-up at her door. *See supra* p.2; Ex. 6, Kucera Tr. 49:9-14, 50:14-20, 111:5-18; *Jones*, 341 F.3d at 481 ("requested modification" not "required under the ADA" when "record contain[ed] evidence of alternative accommodations available to Jones").

The League also did not request any accommodation prior to filing suit. The League may point to the ACLU's letter to the Secretary appended to the Complaint, Dkt. 1-2, but that letter fails to discharge Plaintiffs' burden. For one thing, the letter never mentions the League or its members. *See id.* In fact, the letter never identifies *any* individual voter seeking an accommodation. *See id.* To the contrary, it purports to seek the Secretary's "support" for an "accommodation" on behalf of all Ohio "voters with disabilities." *Id.* at 3. This global request at best left the Secretary "to speculate as to" *which voters* in Ohio have a disability and "need or desire [this] accommodation." *Gantt*, 143 F.3d at 1046-47. It therefore could not trigger the "individualized inquiry" necessary "to determine whether an individual has a disability" and whether the requested accommodation "'would be reasonable under the circumstances.'" *Marble*, 767 F. App'x at 652 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001)). Accordingly, it fails to discharge Plaintiffs' burden on this essential element of Counts I and II.

**3.**     Counts I and II fail for a third independent reason: Plaintiffs have failed to discharge "the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007); *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 326 (6th Cir. 2023) (a plaintiff is not entitled to her "'preferred' accommodation"). Plaintiffs' requested accommodation is to discard the Ballot Harvesting Rules and allow *any* person to possess or return *any* disabled voter's ballot. Compl. 38-39 (Prayer for Relief). But Plaintiffs have introduced no evidence to show that proposed accommodation is reasonable. The obvious place to introduce that evidence would have been

8

through an expert, who could have tried to assess the proposed accommodation's effects on voters and Ohio's administration of its election system. But Plaintiffs' lone expert, Dr. Kruse, provides no opinions regarding Plaintiffs' proposed accommodation. *See* Ex. 24, Kruse Rep. ¶¶ 11-21.

Even that would not have been enough. Determining "what constitutes a reasonable accommodation is highly fact-specific, requiring case-by-case inquiry." *Bennett*, 86 F.4th at 326 (cleaned up). In other words, "an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration" in the public program. *PGA Tour*, 532 U.S. at 688; *see Marble*, 767 F. App'x at 652 (Title II); *Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 831 F.3d 64, 77 (2d Cir. 2016) (same; collecting cases). Plaintiffs' request for an "accommodation" for *all* voters with a disability fails because Plaintiffs do not (and cannot) provide the individualized facts and analysis required to justify the proposed accommodation with respect to every such voter.

Indeed, Dr. Kruse proves that Plaintiffs' one-size-fits-all "accommodation" is not necessary or reasonable "ordinarily or in the run of cases." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). Kruse estimates that between 1.6 and 3 million Ohioans of voting age have a disability, Ex. 24, Kruse Rep. ¶¶ 13, 33, but that about 90% of Ohio voters with disabilities who voted by mail ballot *did not need any assistance* to do so, let alone someone else to possess or return their ballot, *id.* ¶ 17. Within the subset of voters with disabilities who vote by mail and need assistance, Kruse provides no analysis, estimate, or evidence of the number who need someone else to possess or return their ballot. *See id.* ¶¶ 11-21, 55-73; Ex. 23, Kruse Tr. 48:18-50:18, 57:4-58:24, 60:20-24, 61:25-62:5, 131:7-133:24. And within *that* subset of (a subset of) voters, he provides no analysis, estimate, or evidence of the number of such Ohio voters who cannot use a

close family member, postal worker, or election official to return their ballot. *See* Ex. 24, Kruse Rep. ¶¶ 11-21, 55-73; Ex. 23, Kruse Tr. 131:7-133:24. The record is accordingly devoid of any evidence that the requested accommodation is reasonable.

**4.** Finally, Counts I and II fail because, as Plaintiffs' request for a far-reaching accommodation makes clear, they seek a fundamental alteration of Defendants' program, service, or activity. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). Title II's implementing regulations provide that a public entity need not make "modifications" that "would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). "The key word in this regulation (modification) 'connotes moderate' (not significant) change." *Doe ex rel. K.M. v. Knox Cnty. Bd. of Educ.*, 56 F.4th 1076, 1087 (6th Cir. 2023). Several veins of precedent applying this rule doom Plaintiffs' claims.

*Basic Purpose.* A requested change is a fundamental alteration if it "would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change." *Jones*, 341 F.3d at 480 (quotation marks omitted). The decision in *League of Women Voters of Florida, Inc. v. Lee*, 595 F. Supp. 3d 1042 (N.D. Fla. 2022), *aff'd and rev'd in part on other grounds*, 66 F.4th 905 (11th Cir. 2023), is illustrative. At issue there was a newly enacted statute that amended Florida's rules for voters to request mail ballots. *See id.* at 1064-65, 1157-58. Under prior law, voters could request a mail ballot for the next four years simply by checking a box on the envelope of a current mail ballot they were returning to election officials. *See id.* at 1153-58. The new statute required voters to use a separate form to request a mail ballot for the next two years. *See id.*

The plaintiffs presented evidence from multiple Florida voters that the new request procedure made absentee voting in Florida "not readily accessible to those with disabilities," including "voters who are completely blind" or have "mobility issues." *Id.* at 1153, 1157; *see id.*

at 1153-54 (documenting evidence). The district court was "moved" by this testimony and voiced "grave concerns" about the effect of the new request rules. *Id.* at 1158. But it rejected the plaintiffs' ADA claim because their "proposed modification—to enjoin the" request rules in their "entirety … for all voters"—would constitute a "fundamental alteration" of the rules. *See id.* at 1156-59. As the district court reasoned, such a wholesale invalidation of the rules "necessarily eliminates an 'essential aspect'" of them and, thus, constitutes a fundamental alteration. *See id.* at 1158-59. Accordingly, the plaintiffs were "entitled to no relief on this claim." *Id.* at 1159.

So, too, here, Plaintiffs "go[] for broke," *id.* at 1158, and seek a sweeping injunction that necessarily entails a fundamental alteration of the Ballot Harvesting Rules, *id.* at 1156-59. The proposed injunction undermines the basic purpose of the Rules: to serve Ohio's paramount interests in making mail voting available while running fair elections free of voter fraud and intimidation and safeguarding public confidence in elections. *See Eu v. S.F. Cnty. Dem. Cent. Comm.*, 489 U.S. 214, 231 (1989) ("[P]reserving the integrity" of elections is "indisputably … a compelling interest."); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (Maintaining "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy."). As the bipartisan Carter-Baker Report concluded, "[c]itizens who vote at home, at nursing homes, at the workplace, or in church are more susceptible to pressure, … or to intimidation." Ex. 17, Carter-Baker Rep. § 5.2. And North Carolina's experience of significant fraud associated with ballot-harvesting operations confirms the risks associated with permitting unauthorized individuals to handle another person's mail ballot. *See* Ex. 15, Strach Rep. ¶¶ 59-80. The Carter-Baker Report accordingly recommended that States "reduce the risks of fraud and abuse in absentee voting by prohibiting 'third-party' organizations, candidates, and political party activists from handling absentee ballots," and instead authorizing only "the voter, an

acknowledged family member," postal workers, or election officials to do so. Ex. 17, Carter-Baker Rep. at 46-47. This is precisely what Ohio has done through the Ballot Harvesting Rules. Plaintiffs' requested accommodation would undo those Rules and, thus, cannot be implemented "without jeopardizing" Ohio's crucial "purposes behind the[m]." *Jones*, 341 F.3d at 480.

*Transformation.* Similarly, a requested accommodation "works a fundamental change if it turns the challenged policy into something else entirely." *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 491 (6th Cir. 2019). Thus, "requiring [a government] to cease enforcement of an otherwise valid [law] … by its very nature requires a fundamental alteration of the rule itself." *Jones*, 341 F.3d at 480; *see Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979); *Schaw v. Habitat for Humanity of Citrus Cnty., Inc.*, 938 F.3d 1259, 1267 (11th Cir. 2019).

That is just what Plaintiffs seek. Before and after HB 458, Ohio has permitted only enumerated family members, postal workers, and election officials to possess and return another person's absentee ballot. Plaintiffs seek to fundamentally change that considered policy judgment, and preclude enforcement of Ohio's "otherwise valid [law]," by instead allowing *anyone* to possess and return *any* disabled voter's absentee ballot. Compl. p. 38 (Prayer for Relief). That would be an entirely different policy, not a "moderate" or "one-off" adjustment. *Davis*, 945 F.3d at 490 (emphasis omitted). Indeed, "[i]t is more rewrite than adjustment." *Id.* at 492; *see Lee*, 595 F. Supp. 3d at 1158 (remedy with "expansive scope" would "fundamentally alter[] the law").

*Third-Party Rights.* A requested accommodation likewise is a fundamental alteration if it "interfere[s] with the rights of third parties." *Davis*, 945 F.3d at 492 (providing examples); *see Groner v. Golden Gate Gardens Apts.*, 250 F.3d 1039, 1046 (6th Cir. 2001) (a third party's "rights [do] not have to be sacrificed on the altar of reasonable accommodation"). Plaintiffs' requested injunction fails this test, too, because permitting unrestricted possession and return of mail ballots

of voters with disabilities would interfere with third-party rights. Indeed, it would open the door to the very voter intimidation, voter fraud, ballot harvesting, and erosion of public confidence in the State's elections that the Legislature enacted the Ballot Harvesting Rules to forestall. It cannot be disputed that allowing fraudulent or invalid ballots to be cast harms legitimate voters by diluting the value of their votes. *See Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."); *Miller v. Blackwell*, 348 F. Supp. 2d 916, 918 n.3 (S.D. Ohio 2004). And changing the rules for who can collect absentee ballots affects candidates, campaigns, and parties, who must restructure their get-out-the-vote strategies to account for programmatic changes to voting mechanics. *See Shays v. FEC*, 414 F.3d 76, 85-87 (D.C. Cir. 2005); *cf. Barnett*, 535 U.S. at 404-05. Plaintiffs' requested change is a fundamental alteration, not a reasonable accommodation. Counts I and II fail.

## II.     **Section 208 Does Not Preempt The Ballot Harvesting Rules.**

Section 208 of the VRA provides that a "voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or … or officer … of the voter's union." 52 U.S.C. § 10508. The Court should grant summary judgment dismissing Count III because Plaintiffs cannot show that Section 208 preempts the Ballot Harvesting Rules for at least two reasons.

**1.**     Section 208 leaves significant room for state rules on voter assistance that do not unduly burden voters. As a general matter, federal preemption of state law is the exception, not the rule. *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 565 & n.3 (2009). That fits with the Constitution's presumptive entrusting of decisions about how to conduct elections to the States. *See* U.S. Const. art. I, § 4, cl. 1; *see, e.g.*, *Shelby Cnty. v. Holder*, 570 U.S. 529, 543 (2013) ("the Framers of the Constitution intended the States to keep … the power to regulate elections.").

Here, there is no conflict between Section 208 and the Ballot Harvesting Rules. Section 208 recognizes that covered voters have the right to select an assistor, but it does not guarantee them their first choice; nor does it foreclose States from enacting reasonable regulations on who may assist a voter. *See Priorities USA v. Nessel*, 487 F. Supp. 3d 599, 619 (E.D. Mich. 2020), *rev'd in part on other grounds*, 860 F. App'x 419 (6th Cir. 2001). That follows from the text: Section 208 provides for assistance by "*a* person of the voter's choice." 52 U.S.C. § 10508 (emphasis added). But it "does not say that a voter is entitled to assistance from *the* person of his or her choice or *any* person of his or her choice." *Priorities USA*, 487 F. Supp. 3d at 619. That textual choice matters. "When used as an indefinite article, 'a' means '[s]ome undetermined or unspecified particular.'" *McFadden v. United States*, 576 U.S. 186, 191 (2015) (quoting *Webster's New International Dictionary* 1 (2d ed. 1954)).

Legislative history underscores that straightforward textual point. The Senate Judiciary Committee Report addressing § 208 explained that "State provisions would be preempted *only to the extent that they unduly burden the right recognized in this section*, with that determination being a practical one dependent upon the facts." S. Rep. No. 97-417, at 62-63 (1982), 1982 WL 25033 (emphasis added). Indeed, it would be startling if States were barred from reasonably regulating who may assist absentee voters. Must a State permit someone from a candidate's campaign, with every interest in influencing a voter's decisions, to assist a voter in completing her absentee ballot? Someone previously convicted of voter fraud? For that matter, must a State release a prisoner if a voter wants his assistance? Those results would be incommensurate with the Committee's finding that voters who need assistance to vote "are more susceptible than the ordinary voter to having their vote unduly influenced or manipulated." *Id.* at 62. And they would invalidate dozens of States' laws designed to prevent the risk of "pressure" and even "intimidation"

inherent in ballot harvesting. *See supra* p. 3; Ex. 17, Carter-Baker Rep. § 5.2. So the Committee sensibly explained that Section 208 leaves States free to "establish necessary election procedures" so long as they are "designed to protect the rights of voters." S. Rep. No. 97-417, at 63.

Several courts have thus concluded that Section 208 does not preempt States' reasonable restrictions on who may assist voters, including laws similar to Ohio's. *See Priorities USA v. Nessel*, 628 F. Supp. 3d 716, 731-32 (E.D. Mich. 2022) (upholding Michigan law limiting who may possess a signed absentee-ballot application); *Ray v. Texas*, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008) (upholding law barring a single person from assisting more than one voter to apply for an absentee ballot); *Qualkinbush v. Skubisz*, 357 Ill. App. 3d 594, 610-12 (2004) (similar); *DiPietrae v. City of Philadelphia*, 666 A.2d 1132, 1135-36 (Pa. Commw. Ct. 1995) (upholding law barring anyone from returning absentee ballots for more than one household), *aff'd*, 543 Pa. 591 (1996).

This straightforward construction of Section 208 makes particular sense when it comes to state laws regulating absentee voting. Both at the time of Section 208's enactment and now, the constitutional and statutory "right to vote" does not entail a right to absentee voting. *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 803-04, 807 (1969); *Tex. Dem. Party v. Abbott*, 961 F.3d 389, 402-06 (5th Cir. 2020); *Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020). Accordingly, when States opt to provide absentee voting at all, they are going above and beyond any requirement to uphold "the right to vote," not "unduly burden[ing]" that right, even when they limit who may possess or return another person's ballot. S. Rep. No. 97-417, at 63. The legislative history of the VRA amendments that added Section 208 scarcely mentioned absentee voting, and clearly conceived of Section 208 as regulating in-person voting first and foremost. *Id.* at 62 (explaining that Section 208 is meant "to permit [covered voters] *to bring into the voting booth* a

15

person whom the voter trusts and who cannot intimidate him.") (emphasis added).

Moreover, absentee voting is more susceptible to fraud than in-person voting, which takes place in the presence of watchful election officials and involves an unbroken chain of custody of ballots from voters to those officials. Ex. 17, Carter-Baker Rep. § 5.2. Absentee voting, by contrast, necessarily takes place outside the presence of election officials—so state laws regulating the custody of absentee ballots are entirely appropriate exercises of state authority to establish "election procedures" enshrined in the Constitution. S. Rep. No. 97-417, at 63.

Ohio's Ballot Harvesting Rules likewise accord with Section 208. They permit voters to select from a litany of relatives, postal workers, and election officials to possess or return their ballots and, thus, do not "unduly burden [any] right." *Id.* at 62-63. And by advancing the State's crucial interests in providing trustworthy absentee voting as part of its free and fair election system, the Rules are well within the "election procedures" the Constitution and Congress leave States free to "establish." *Id.* at 63. Plaintiffs' Count III fails.

**2.** Plaintiffs lack a cause of action because neither the VRA nor Section 1983 provides a private right to enforce Section 208. When Congress provides an express statutory enforcement scheme, that "suggests that Congress intended to preclude other[]" methods of enforcement, like implied private rights of action. *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). And when the statute provides a private remedy that is "more restrictive" than Section 1983, there is no right to sue under Section 1983. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 188 (2023). The VRA provides a more-restrictive enforcement scheme for violations of Section 208. It requires "[t]he chief election officer of each State" to "provide public notice[] … of the availability of … assistance under section [208]," 52 U.S.C. § 20104(c), and it authorizes the "Attorney General or a person who is personally aggrieved" by noncompliance with Section 20104

to "bring an action for declaratory or injunctive relief," *id.* § 20105(a). This enforcement scheme "suggests that Congress intended to preclude" implied private rights of action, *Alexander*, 532 U.S. at 290, and precludes suits under Section 1983, *Talevski*, 599 U.S. at 188.

## III. The Challenged Criminal Provisions Are Not Unconstitutionally Vague.

Plaintiffs' Count IV raises facial and as-applied challenges to the Ballot Harvesting Rules' prohibition of knowingly "possess[ing]" or "return[ing]" another person's absentee ballot by anyone other than a statutorily authorized person. Compl. ¶¶ 180-81. The Court should not address this claim, since no Ohio court has yet interpreted those terms. But if the Court considers this challenge, it should dismiss Count IV. Plaintiffs' vagueness claims do not present a close question.

1.      **Abstention.** To start, the Court should not resolve Plaintiffs' vagueness challenges at all. "[F]ederal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." *Harrison v. NAACP*, 360 U.S. 167, 176 (1959). Ohio's courts have not yet had the opportunity to interpret the terms "possess" and "return" in the Ballot Harvesting Rules—and they may adopt a construction that removes any alleged vagueness. *See, e.g.*, *id.* Indeed, vagueness challenges in particular usually must be raised as defenses to prosecution rather than in pre-enforcement challenges—especially before *any* enforcement of the challenged law has occurred, as here. *See Burson v. Freeman*, 504 U.S. 191, 210 n.13 (1992). For this reason alone, the Court should defer to Ohio's courts to construe the Rules in the first instance and dismiss Count IV.

The *Pullman* abstention doctrine leads to the same result. That doctrine "instructs courts to avoid exercising jurisdiction in cases involving an ambiguous state statute that may be interpreted by state courts so as to eliminate, or at least alter materially, the constitutional question raised in federal court." *Fowler v. Benson*, 924 F.3d 247, 255 (6th Cir. 2019) (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)). Accordingly, a nearby district court abstained from issuing

17

a final judgment on the merits under *Pullman* in a case involving delivery of absentee ballots when it found that state law was unclear and had not yet been definitively construed by the state courts. *See Pierce v. Allegheny Cnty. Bd. of Elections*, 324 F. Supp. 2d 684, 703-04 (W.D. Pa. 2003).

      **2.**      **Facial Challenge**. If the Court were to proceed to the merits, Plaintiffs' facial challenge deserves little analysis. A statute is "facially vague only if [a] plaintiff … 'demonstrate[s] that the law is impermissibly vague in all of its applications.'" *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 825 (6th Cir. 2012). But Plaintiffs lack a credible argument that the Ballot Harvesting Rules have *no* clear applications. For example, each provision clearly prohibits a political party volunteer from knowingly collecting completed absentee ballots from residents throughout an apartment building and delivering them to a drop box. Each provision likewise clearly prohibits Kucera's caregivers, who are not related to her, from knowingly driving her completed absentee ballot to the county's drop box and depositing it there, as Kucera has always understood.

      **3.**      **As-Applied Challenge.** Plaintiffs' challenge to the Ballot Harvesting Rules as applied to the League, Compl. ¶ 181, likewise lacks merit. Vagueness challenges abound, but criminal statutes are hardly ever vague. "A criminal statute is unconstitutionally vague if it 'fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits,' or fails to provide standards that prevent arbitrary and discriminatory enforcement." *United States v. Theunick*, 651 F.3d 578, 585 (6th Cir. 2011). Obviously, "the mere fact that close cases can be envisioned" does not render a statute vague, since "[c]lose cases can be imagined under virtually any statute," *United States v. Williams*, 553 U.S. 285, 305-06 (2008), and "practical necessities … inevitably limit[s] the specificity with which legislators can spell out prohibitions," *Theunick*, 651 F.3d at 585.

Statutes that use "common words" are unlikely to be vague, since ordinary people can readily understand them. *Hill v. Colorado*, 530 U.S. 703, 732 (2000). There is no vagueness problem when terms "are not defined by the statute, but are pedestrian and clear." *United States v. Lopez*, 929 F.3d 783, 785 (6th Cir. 2019). "Possess" and "return" are everyday words that ordinary people can readily understand. *See, e.g.*, *id.* (referring to "illegally or unlawfully"); *Wag More Dogs, LLC v. Artman*, 795 F. Supp. 2d 377, 388 (E.D. Va. 2011) ("'direct, identify, and inform' are words of common usage, with plain and ordinary meanings"), *aff'd*, 680 F.3d 359 (4th Cir. 2012); *Gospel Missions of Am. v. City of Los Angeles*, 419 F.3d 1042, 1047-48 (9th Cir. 2005) (collecting cases). A reasonable, ordinary person would understand that the Rules bar anyone not on the list of permitted persons from obtaining another person's ballot and from mailing that ballot or taking it to a drop box. Plaintiffs tellingly "point[] to no evidence that the public has had difficulties in understanding or complying with" the Rules, including in the many years that Ohio has prohibited possessing a non-family member's absentee ballot. *See Knox v. Brnovich*, 907 F.3d 1167, 1183 (9th Cir. 2018) (rejecting vagueness challenge to similar ballot-harvesting prohibition).

The Complaint emphasizes that the prohibition on *returning* a non-family member's absentee ballot overlaps with the prohibition on *possessing* a non-family member's absentee ballot. Compl. ¶ 186. But overlap in statutes is hardly unusual. *See, e.g.*, *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 n.5 (2020) (statutory phrase was entirely redundant under correct interpretation, reflecting "a belt and suspenders approach"); *Davis*, 945 F.3d at 494 (correct reading rendered two terms "largely duplicative"). The possibility that "possess" and "return" overlap is no basis to conclude that the Ballot Harvesting Rules are unconstitutionally vague; indeed, such a conclusion would transform vagueness doctrine and imperil many statutes that courts have had no difficulty interpreting despite overlapping language (perhaps even Title II of

the ADA, which applies to the overlapping categories of "services, programs, or activities," 42 U.S.C. § 12132).

If that were not enough, Section 3599.21's stringent scienter requirement "'alleviates vagueness concerns,' 'narrows the scope of its prohibition, and limits prosecutorial discretion.'" *McFadden*, 576 U.S. at 197 (quoting *Gonzales v. Carhart*, 550 U. S. 124, 149-50 (2007)) (cleaned up). Section 3599.21's criminal provisions are violated only if someone *knowingly* possesses or returns a non-relative's absentee ballot. R.C. § 3599.21(A). Someone who does not know that what she possesses or returns is an absentee ballot, or who does not know that she is possessing or returning the absentee ballot, does not violate the law. That is more than enough to pass muster. *See Hill*, 530 U.S. at 732 (scienter requirements "ameliorate[]" vagueness concerns); *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) ("a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed"); *United States v. Skinner*, 25 F.3d 1314, 1319 (6th Cir. 1994) (scienter element requiring government to "prove that a defendant knowingly … possessed obscene materials with the intent to distribute … further safeguards the statute from vagueness challenges and unconstitutional applications.").

Nor does the statute lack standards, inviting arbitrary enforcement. "Because the scope of H.B. [458] is clear, it poses no significant threat of arbitrary enforcement." *Knox*, 907 F.3d at 1184. Plaintiffs may argue that Defendants' deference to local prosecutors' views of the law suggests otherwise. But that merely reflects Defendants' roles in Ohio government and the fact that no Ohio court has yet passed on the scope of the Ballot Harvesting Rules.

## CONCLUSION

The Court should grant summary judgment dismissing all of Plaintiffs' claims.

20

Dated: May 24, 2024                     Respectfully submitted,

                                        /s/  John M. Gore
                                        _____

                                        John M. Gore (*pro hac vice*)
                                        E. Stewart Crosland (*pro hac vice*)
                                        JONES DAY
                                        51 Louisiana Avenue, N.W.
                                        Washington, D.C. 20001
                                        jmgore@jonesday.com
                                        scrosland@jonesday.com
                                        Telephone:  (202) 879-3939
                                        Facsimile:  (202) 626-1700

                                        Sarah Welch (99171)
                                        Jesse T. Wynn (101239)
                                        JONES DAY
                                        North Point, 901 Lakeside Avenue
                                        Cleveland, OH 44114
                                        swelch@jonesday.com
                                        jwynn@jonesday.com
                                        Telephone:  (216) 586-3939
                                        Facsimile:  (216) 579-0212

                                        *Attorneys for Intervenors Republican National
                                        Committee and Ohio Republican Party*