# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| **LEAGUE OF WOMEN VOTERS OF OHIO**, et al., | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | Case No. 1:23-cv-2414 |
| | : | |
| **FRANK LAROSE**, et al., | : | JUDGE BRIDGET M. BRENNAN |
| *Defendants,* | : | |
| | : | |
| and | : | |
| | : | |
| **REPUBLICAN NATIONAL COMMITTEE and** | : | |
| **OHIO REPUBLICAN PARTY,** | : | |
| *Intervenor-Defendants.* | : | |

## OHIO SECRETARY OF STATE AND OHIO ATTORNEY GENERAL'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants Ohio Secretary of State Frank LaRose and Ohio Attorney General Dave Yost (the State Defendants) oppose Plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*

ANN YACKSHAW (0090623)*
* *Counsel of Record*
HEATHER L. BUCHANAN (0083032)
MICHAEL A. WALTON (0092201)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Heather.Buchanan@OhioAGO.gov
Michael.Walton@OhioAGO.gov
*Counsel for Defendants Secretary of State Frank
LaRose and Ohio Attorney General Dave Yos*

# TABLE OF CONTENTS

Table of Authorities ............................................................................................. iii

Introduction ........................................................................................................ 1

Statement Of Issues ........................................................................................... 2

Law And Argument ............................................................................................ 2

    I.      Legal Standard ...................................................................................... 2

    II.    Plaintiffs' VRA Section 208 Claim Fails as a Matter of Law. ............... 2

          A.    Congress exceeded its enforcement authority in enacting Section 208, so Section 208 does not abrogate Ohio's sovereign immunity. ....................................................... 2

          B.    Section 208 of the VRA does not preempt Ohio's ballot-harvesting laws ........................................................................ 7

    III.   The ballot-harvesting statutes comply with the ADA .......................... 11

          A.    Ohio offers meaningful access to absentee voting ................... 11

          B.    Ignoring Ohio's ballot-harvesting laws is a not a facially reasonable accommodation and would result in a fundamental alteration of Ohio's voting laws ......................... 16

    IV.   Plaintiffs cannot show that the equities favor injunctive relief ............ 19

Conclusion ........................................................................................................ 20

Certificate Of Service ....................................................................................... 1

Certificate Of Compliance ................................................................................ 1

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Altria Grp., Inc. v. Good*,
   555 U.S. 70 (2008)....................................................................................................8

*Anderson v. Kent State Univ.*,
   804 F. Supp. 2d 575 (N.D. Ohio 2011)....................................................................2

*Bd. of Trs. v. Garrett*,
   531 U.S. 356 (2001)..................................................................................3, 4, 5, 6

*Bennett v. Hurley Med. Ctr.*,
   86 F.4th 314 (6th Cir. 2023) ..........................................................................1, 11, 12

*Campbell v. Bd. of Educ. of the Centerline Sch. Dist.*,
   58 F. App'x 162 (6th Cir. 2003).............................................................................15

*Carey v. Wis. Elections Comm'n*,
   624 F. Supp. 3d 1020 (W.D. Wis. 2022) ...............................................................10

*City of Boerne v. Flores*,
   521 U.S. 507 (1997).............................................................................................3, 4

*Coal. To Defend Affirmative Action v. Granholm*,
   473 F.3d 237 (6th Cir. 2006) ................................................................................20

*Democracy N.C. v. N.C. State Bd. of Elections*,
   476 F. Supp. 3d 158 ..............................................................................................11

*Disability Rights Miss. v. Fitch*,
   684 F. Supp. 3d 517 (S.D. Miss. 2023)..................................................................10

*Disability Rights N.C. v. N.C. State Bd. of Elections*,
   602 F. Supp. 3d 872 (E.D.N.C. 2022)...................................................................11

*Disability Rights N.C. v. N.C. State Bd. of Elections*,
   No. 5:21-cv-361, 2022 U.S. Dist. LEXIS 121307 (E.D.N.C. July 10, 2022)..........10

*Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank*,
   527 U.S. 627 (1999)................................................................................................3

*Fulgenzi v. PLIVA, Inc.*,
   711 F.3d 578 (6th Cir. 2013) ..............................................................................1, 7

*Hindel v. Husted*,
   875 F.3d 344 (6th Cir. 2017) ................................................................................17

iii

**Cases**                                                                    **Page(s)**

*Jones v. City of Monroe,*
    341 F.3d 474 (6th Cir. 2003) ................................................................18

*Keever v. City of Middletown*,
    145 F.3d 809 (6th Cir. 1998) ...............................................................15

*Kimel v. Florida Bd. of Regents*,
    528 U.S. 62 (2000) ............................................................................3, 6

*Knox Cnty. v. M.Q.*,
    62 F.4th 978 (6th Cir. 2023) ...........................................................11, 16

*Maryland v. King*,
    133 S. Ct. 1 (2012) ...............................................................................19

*Mays v. LaRose*,
    951 F.3d 775 (6th Cir. 2020) ................................................................10

*McFadden v. United States*,
    576 U.S. 186 (2015) ................................................................................8

*Murphy v. NCAA*,
    584 U.S. 453 (2018) ................................................................................7

*Ne. Ohio Coal. For the Homeless v. LaRose*,
    No. 1:23-cv-26, 2024 U.S. Dist. LEXIS 3262 (N.D. Ohio Jan. 8, 2024) ...............................10

*Neal v. Metro Reg'l Transit Auth.*,
    No. 5:18-cv-2402, 2019 U.S. Dist. LEXIS 133707 (N.D. Ohio Aug. 8, 2019).....................15

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) ................................................................10

*Priorities USA v. Nessel*,
    487 F. Supp. 3d 599 (E.D. Mich. 2020)..................................................7

*Priorities USA v. Nessel*,
    628 F. Supp. 3d 716 (E.D. Mich. 2022)..............................................7, 8

*Shelby Cnty. v. Holder*,
    570 U.S. 529 (2013)................................................................................7

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966)................................................................................3

*Spivey v. United States*,
    912 F.2d 80 (4th Cir. 1990) ..................................................................18

**Cases**                                                                                    **Page(s)**

*Tennessee v. Lane*,
    541 U.S. 509 (2004) ............................................................................................5

*Thompson v. DeWine*,
    959 F.3d 804 (6th Cir. 2020) .......................................................................19, 20

*United States v. Morrison*,
    529 U.S. 598 (2000) ............................................................................................3

*Vance v. City of Maumee, Ohio*,
    960 F. Supp. 2d 720 (N.D. Ohio 2013).............................................................17


**Statutes**                                                                                 **Page(s)**

ADA Title I ...........................................................................................................3

ADA Title II ................................................................................................. *passim*

Age Discrimination in Employment Act ..............................................................3

Americans with Disabilities Act or the Rehabilitation Act ........................ *passim*

Ohio Rev. Code § 3501.382(A)(1)(a) ................................................................12

Ohio Rev. Code § 3505.24....................................................................................9

Ohio Rev. Code § 3509.02(A) ...........................................................................11

Ohio Rev. Code § 3509.05....................................................................................6

Ohio Rev. Code § 3509.05(C) ...........................................................................11

Ohio Rev. Code § 3509.05(C)(1)................................................................ *passim*

Ohio Rev. Code § 3509.08..................................................................................13

Ohio Rev. Code § 3509.08(A) ...........................................................12, 13, 14, 15

Ohio Rev. Code § 3599.21....................................................................................6

Ohio Rev. Code § 3599.21(A)(9) ..................................................................1, 17

Ohio Rev. Code § 3599.21(A)(10) ................................................................1, 17

**Statutes**                                                              **Page(s)**

Patent and Plant Variety Protection Remedy Clarification Act ..................................................3

Rehabilitation Act ...................................................................................................................1

Religious Freedom Restoration Act .........................................................................................3

Violence Against Women Act ..................................................................................................3

Voting Rights Act of 1965 ............................................................................................. *passim*

Voting Rights Act Section 208 ....................................................................................... *passim*

**Other Authorities**                                                           **Page(s)**

28 C.F.R. § 35.130(b)(7)(i) .....................................................................................................17

House Bill 458 ........................................................................................................................1

S. Rep. No. 97-417, 1982 WL 25033 (1982) ...................................................................1, 5, 6, 9

U.S. Const., Tenth Amendment .................................................................................................7

U.S. Const., Fourteenth Amendment ............................................................................... *passim*

## **INTRODUCTION**

House Bill 458 went into effect in April 2023. Among its new provisions was Ohio Rev. Code § 3599.21(A)(9), which prohibits the unauthorized "return" of someone else's absentee ballot. Since H.B. 458's implementation, Ohio has administered four statewide elections—a May 2023 primary election, an August 2023 special election, a November 2023 general election, and a March 2024 presidential primary election. *See* Official Election Results, *available at* https://www.ohiosos.gov/elections/election-results-and-data/. Still, Plaintiffs cannot locate a single disabled voter unable to vote by absentee ballot due to Ohio Rev. Code § 3599.21(A)(9) or the other statutes challenged here. This should stop Plaintiffs' case in its tracks.

But for Plaintiffs, this failure barely registers. They still claim that Ohio's ballot-harvesting statutes, Ohio Rev. Code § 3599.21(A)(9), as well as Ohio Rev. Code § 3509.05(C)(1) and Ohio Rev. Code § 3599.21(A)(10), violate the Voting Rights Act, the Americans with Disabilities Act, and the Rehabilitation Act[1] as a matter of law. But a successful claim under these federal statutes requires some showing that disabled voters are unable to access absentee voting under current law. The VRA, for example, only preempts state law when the state law unduly burdens the rights set forth in the VRA. *See* S. Rep. No. 97-417, at 63, 1982 WL 25033 (1982); *see also Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 584 (6th Cir. 2013) (finding that preemption applies when a state law is an obstacle to the purposes and objectives of Congress). And the ADA requires Plaintiffs to show that they lack meaningful access to absentee voting. *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 326 (6th Cir. 2023). Plaintiffs cannot point to any such evidence in the record. This dooms their motion for summary judgment.

---

[1] In the Sixth Circuit, claims under Title II of the ADA and the Rehabilitation Act can be analyzed together. *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 323 (6th Cir. 2023).

## STATEMENT OF ISSUES

1. Whether Plaintiffs are entitled to summary judgment under Section 208 of the Voting Rights Act even though that section is not a valid exercise of Congress's enforcement power under § 5 of the Fourteenth Amendment and does not preempt any Ohio law?

2. Whether Plaintiffs are entitled to summary judgment under the Americans with Disabilities Act or the Rehabilitation Act when they cannot show that any disabled voter lacks meaningful access to absentee voting?

## LAW AND ARGUMENT

### I.    Legal Standard

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Kent State Univ.*, 804 F. Supp. 2d 575, 581 (N.D. Ohio 2011) (quoting Fed. R. Civ. P. 56(a)). "A fact is 'material' only if its resolution will affect the outcome of the lawsuit." *Id.* at 582. "Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id.* "The non-moving party is under an affirmative duty to point out specific facts in the record . . . which create a genuine issue of material fact." *Id.*

### II.   Plaintiffs' VRA Section 208 Claim Fails as a Matter of Law.

#### A.    Congress exceeded its enforcement authority in enacting Section 208, so Section 208 does not abrogate Ohio's sovereign immunity.

Plaintiffs' claim that Ohio's laws are preempted by the VRA never gets off the ground because Section 208 of the VRA is not a valid exercise of Congress's enforcement power under § 5 of the Fourteenth Amendment. This means that Section 208 does not abrogate Ohio's sovereign

2

immunity because Congress did not "act[] pursuant to a valid grant of constitutional authority." *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001) (quotations omitted).[2]

The U.S. Supreme Court has never considered whether Section 208 is a valid exercise of Congress's enforcement authority under § 5 of the Fourteenth Amendment. Nor has the Sixth Circuit. But the U.S. Supreme Court has repeatedly held that federal statutes like Section 208 exceed Congress's § 5 enforcement power. *See, e.g.*, *City of Boerne v. Flores*, 521 U.S. 507, 518-20 (1997) (holding that the Religious Freedom Restoration Act was an unconstitutional exercise of Congress' § 5 enforcement power); *Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 630 (1999) (holding that the Patent and Plant Variety Protection Remedy Clarification Act exceeded Congress' authority under § 5 of the Fourteenth Amendment); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 67 (2000) (holding that the Age Discrimination in Employment Act exceeded Congress' authority under § 5 of the Fourteenth Amendment); *United States v. Morrison*, 529 U.S. 598, 627 (2000) (holding that a provision of the Violence Against Women Act exceeded Congress' authority under § 5 of the Fourteenth Amendment); *Garrett*, 531 U.S. at 374 (holding that Title I of the ADA exceeded Congress' authority under § 5 of the Fourteenth Amendment).

"Section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees contained in § 1 by enacting 'appropriate legislation.'" *Garrett*, 531 U.S. at 365 (quoting *City of Boerne*, 521 U.S. at 536). In turn, federal courts "define the substance of

---

[2] To validly abrogate state sovereign immunity, Congress must also "unequivocally intend[] to do so." *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001). Congress clearly intended to abrogate state sovereign immunity when it enacted the Voting Rights Act of 1965. *See South Carolina v. Katzenbach*, 383 U.S. 301, 315 (1966) ("The Voting Rights Act of 1965 reflects Congress' firm intention to rid the country of racial discrimination in voting."). But whether Congress intended to abrogate state sovereign immunity when it added VRA Section 208—almost 20 years later— is far less clear.

constitutional guarantees" under the Fourteenth Amendment. *Id*. In short, Congress' power under § 5 is not limitless. "[Section] 5 legislation reaching beyond the scope of § 1's actual guarantees must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Id*. (quoting *City of Boerne*, 521 U.S. at 520). Like the other federal statutes cited above, Section 208 of the VRA fails the Supreme Court's three-part test for determining lawful exercises of congressional enforcement authority under § 5 of the Fourteenth Amendment.

**Step 1:** Under *City of Boerne* and its progeny, Step 1 is to "identify with some precision the scope of the constitutional right at issue." *Garrett*, 531 U.S. at 365. In *Garrett*, the Court determined that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational." *Id.* at 367. Of course, by the time Congress enacted the ADA in 1990, every State in the Union had enacted special accommodations for persons with disabilities. *Id.* at 368 n.5. Thus, the scope of the constitutional right relevant to VRA Section 208 is the right of persons with disabilities to be free from "irrational state discrimination" in voting. *Id.* at 368.

**Step 2:** Step 2 requires "examin[ing] whether Congress identified a history and pattern of unconstitutional [voting-related] discrimination by the States" against persons with disabilities. *See Garrett*, 531 U.S. at 368. "Congress' § 5 authority is appropriately exercised only in response to state transgressions." *Id.*; *see also City of Boerne*, 521 U.S. at 527 ("Any suggestion that Congress has a substantive, non-remedial power under the Fourteenth Amendment is not supported by our case law."). But just as in *Garrett*, "[t]he legislative record . . . simply fails to show that Congress did in fact identify a pattern of irrational state discrimination . . . against the disabled." *Garrett*, 531 U.S. at 368.

Contrasting Section 208's legislative record with that in *Tennessee v. Lane*, 541 U.S. 509 (2004), which concluded that Title II of the ADA was "valid § 5 legislation," makes clear that VRA Section 208 exceeds Congress' enforcement power. *Lane* involved congressional findings of discrimination against persons with disabilities with respect to judicial services. For example, the Court relied on the fact that "[i]n the deliberations that led up to the enactment of the ADA, Congress identified important shortcomings in existing laws that rendered them 'inadequate to address the pervasive problems of discrimination that people with disabilities are facing.'" *Lane*, 541 U.S. at 526 (quoting S. Rep. No. 101-16, at 18). "A report before Congress showed that some 76% of public services and programs housed in state-owned buildings were inaccessible to and unusable by persons with disabilities . . . ." *Id.* at 527 (citing a U.S. Civil Rights Commission report). And "Congress itself heard testimony from persons with disabilities who described the physical inaccessibility of local courthouses." *Id.*

By contrast, Section 208 was not enacted based on an "identified . . . history and pattern of unconstitutional [voting-related] discrimination by the States" against persons with disabilities. *See Garrett*, 531 U.S. at 368. Section 208's legislative record is paper thin. And this paper-thin record appears to consist not of "legislative findings, but of unexamined, anecdotal accounts"— indeed, of simple conclusions without cited evidentiary support. *Garrett*, 531 U.S. at 370. But conclusory summations of desired public policy are insufficient. "Congress is the final authority as to desirable public policy, but in order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment . . . ." *Id.* at 374. Compared to the evidence the Court relied on in *Lane* in upholding Title II of the ADA, any evidence underlying Section 208 was scant to none. *See, e.g.*, S. Rep. No. 97-417, at 62-64 (1982).

In any event, Congress did not enact Section 208 based on any history and pattern of unconstitutional discrimination in *absentee* voting—which is all the challenged ballot-harvesting laws concern. *See* Ohio Rev. Code § 3599.21 (concerning an "[a]bsent voter's ballot"); Ohio Rev. Code § 3509.05 (concerning "[v]oting and return procedure" for absent voters' ballots). Section 208 was enacted out of concern for discrimination against disabled voters *at the polls*. *See* S. Rep. No. 97-417, at 62 (1982) (finding that voters with disabilities "run the risk that they will be discriminated against *at the polls*") (emphasis added). Indeed, the Senate Judiciary Committee recommending that the language now in Section 208 be added to the Voting Rights Act "concluded that the only kind of assistance that will make fully 'meaningful' the vote of the blind, disabled, or those who are unable to read or write, is to permit them to bring *into the voting booth* a person whom the voter trusts and who cannot intimidate him." *Id.* (emphasis added).

**Step 3:** Because Section 208 fails Step 2, it also fails Step 3. Step 3 entails determining whether "the remedy imposed by Congress [is] congruent and proportional to the targeted violation." *Garrett*, 531 U.S. at 374. But the severe remedy of abrogating state sovereign immunity cannot be "congruent and proportional" to an undocumented harm. *See Kimel*, 528 U.S. at 89 ("Congress never identified any pattern of age discrimination by the States, much less any discrimination whatsoever that rose to the level of constitutional violation"); *Garrett*, 531 U.S. at 368 ("The legislative record of the ADA, however, simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled."). Where— as here—Congress has failed to establish a "history and pattern of unconstitutional . . . discrimination by the States," abrogating state sovereign immunity fails *City of Boerne*'s congruence-and-proportionality test. *See Garrett*, 531 U.S. at 368.

**B.      Section 208 of the VRA does not preempt Ohio's ballot-harvesting laws.**

Section 208 does not preempt Ohio's ballot-harvesting laws. For VRA Section 208 to be a preemption provision, it "must represent the exercise of a power conferred on Congress by the Constitution; pointing to the Supremacy Clause will not do." *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). For all the reasons set forth in Part II.A *supra*, Section 208 is not an exercise of Congress' enforcement power under § 5 of the Fourteenth Amendment. The preemption analysis can and should end there. But even if the Court proceeds to a conflict-preemption analysis, Plaintiffs' Section 208 claim still cannot succeed because Ohio's laws do not conflict with Section 208.

Conflict preemption nullifies state law "to the extent that it actually conflicts with federal law." *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 584 (6th Cir. 2013) (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)). Actual conflict occurs if compliance with both federal and state law is impossible or when the state law is an obstacle to the full purposes and objectives of Congress. *Id*. In traditional areas of state regulation, like election law, courts should apply a "presumption against preemption." *Id*.; *Shelby Cnty. v. Holder*, 570 U.S. 529, 543 (2013) ("[T]he Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections." (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 461-62 (1991))); *Priorities USA v. Nessel*, 487 F. Supp. 3d 599, 620 (E.D. Mich. 2020) (applying a presumption against preemption to Michigan law restricting who may return an absentee ballot). Applying the presumption against preemption here, Plaintiffs fail to show that Ohio's ballot-harvesting laws result in actual conflict under either test.

**First,** it is certainly possible to comply both with Section 208 and Ohio's ballot-harvesting laws. Section 208 allows disabled voters to select *a* person of the voter's choice to assist with voting. As set forth in the State Defendants' motion for summary judgment, this "wording matters." *Priorities USA v. Nessel*, 628 F. Supp. 3d 716, 732 (E.D. Mich. 2022). Because Congress

did not specify that disabled voters can select *the* person of their choice, Ohio can impose some restrictions on who may assist disabled voters within the confines of Section 208. *Id.* (Under Section 208, "some state law limitations on the identity of persons who may assist voters is permissible."); *see also McFadden v. United States*, 576 U.S. 186, 191 (2015) ("When used as an indefinite article, 'a' means '[s]ome undetermined or unspecified particular.'"). And the universe of assistors permitted by Ohio law—19 different individuals—certainly leaves ample room for disabled voters to select *a* person of their choosing. *See* Ohio Rev. Code § 3509.05(C)(1) (allowing "the spouse of the elector, the father, mother, father-in-law, mother-in-law, grandfather, grandmother, brother, or sister of the whole or half blood, or the son, daughter, adopting parent, adopted child, stepparent, stepchild, uncle, aunt, nephew, or niece of the elector" to assist with returning the voter's absentee ballot). In short, it is not impossible to comply with both Ohio's ballot-harvesting laws and Section 208.

Plaintiffs, however, insist that Section 208 offers disabled voters an "unrestricted choice" of an assistor in completing and returning an absentee ballot. Under Plaintiffs' reading, *any* assistance restriction in state law cannot withstand a conflict-preemption analysis. *See* Doc. 42-1 at PageID 461-62. In support, Plaintiffs note that Section 208 incorporates several exceptions and courts ought not to read additional exceptions into statutes. *Id.* (quoting *United States v. Johnson*, 529 U.S. 53, 58 (2000)).

Plaintiffs improperly elevate this interpretive principle above the presumption against preemption that applies here. *See Priorities USA*, 628 F. Supp. 3d at 732. The conflict-preemption analysis must begin from the position that preemption *does not apply*. Accordingly, when each party offers a statutory interpretation, the Court should select a plausible interpretation that allows it to avoid preemption. *Cf. Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (noting that courts

ordinarily "accept the reading that disfavors pre-emption" when construing pre-emption clauses in federal legislation (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005))). Here, that interpretation is the State Defendants'.

**Second**, Ohio's laws do not impose any obstacle to the to the full purposes and objectives of Congress. Section 208 was meant to "encourage[] greater participation in our electoral process" by disabled voters while "assur[ing] privacy for the voter and the secrecy of his vote." S. Rep. No. 97-417, at 62-63 (1982). According to the Senate Judiciary Committee, voters with disabilities "are more susceptible than the ordinary voter to having their vote unduly influenced or manipulated." *Id*. at 62; *see also id.* ("Others may have their actual preference overborne by the influence of those assisting them or be misled into voting for someone other than the candidate of their choice."). Section 208 therefore allows disabled voters "to bring into the voting booth a person whom the voter trusts and who cannot intimidate him." *Id*. Congress left to the States the authority to "establish necessary election procedures, subject to the overriding principle that such procedures shall be designed to protect the rights of voters." *Id*. at 63. Accordingly, "State provisions would be preempted only to the extent that they unduly burden the right recognized in [Section 208], with that determination being a practical one dependent upon the facts." *Id*.

Ohio's ballot-harvesting laws further Section 208's purpose of encouraging disabled voters' participation in the electoral process while assuring both ballot secrecy and protection from intimidation and manipulation. Ohio's laws recognize that absentee ballots present unique election-integrity issues. Ballots in the polling place are under the control of elections officials who can monitor for undue influence or manipulation. In this secure setting, it makes sense to allow *any* person of the disabled voter's choice into the voting booth, which Ohio does. Ohio Rev. Code § 3505.24; Perlatti Decl. ¶ 13, Doc. 43-3 at 2360. But absentee ballots are voted beyond the

watchful eyes of elections officials. For these ballots, Ohio imposes stricter security requirements, limiting the persons permitted to return an absentee ballot.  Ohio Rev. Code § 3509.05(C)(1). Even more security measures exist when disabled voters receive assistance marking their ballots from elections officials or a designated attorney-in-fact. Under those circumstances, the assistor is disclosed to elections officials and must affirm that the assistor acted at the voter's direction. Perlatti Decl. ¶¶ 23-25, Doc. 43-3 at PageID 2361; Herron Decl. ¶¶ 15-20, Doc. 43-4 at PageID 2380-81. These security measures decrease the likelihood of intimidation or manipulation of disabled voters without sacrificing Ohio's broad access to absentee voting. *See, e.g.*, *Mays v. LaRose*, 951 F.3d 775, 779 (6th Cir. 2020) ("There is no dispute that Ohio is generous when it comes to absentee voting . . . ."); *Ne. Ohio Coal. for the Homeless v. LaRose*, No. 1:23-cv-26, 2024 U.S. Dist. LEXIS 3262, at *46 (N.D. Ohio Jan. 8, 2024) ("Ohio's generous voting law regime appears to rise well above the constitutional floor for voting."). Indeed, Plaintiffs are unable to identify a single voter unable to access absentee voting after H.B. 458. Doc. 43 at 2182.

In short, Plaintiffs cannot show actual conflict between Section 208 and Ohio's ballot-harvesting statutes. Instead, Plaintiffs point to a series of decisions finding that *other* states' laws regulating absentee ballots were preempted by Section 208. Doc. 42-1 at PageID 463. These decisions are of little value. Some never considered the textual argument made by the State Defendants here that harmonizes Section 208 with state restrictions on ballot harvesting. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 614-15 (5th Cir. 2017); *Disability Rights Miss. v. Fitch*, 684 F. Supp. 3d 517, 520-22 (S.D. Miss. 2023); *Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020, 1032-34 (W.D. Wis. 2022). And while other courts considered the textual argument, they erroneously ignored the presumption against preemption in refusing to accept it. *See Disability Rights N.C. v. N.C. State Bd. of Elections*, No. 5:21-cv-361, 2022 U.S. Dist. LEXIS 121307, at

*12-13 (E.D.N.C. July 10, 2022) (rejecting State's interpretation of Section 208 without applying presumption against preemption); *Disability Rights N.C. v. N.C. State Bd. of Elections*, 602 F. Supp. 3d 872, 878 (E.D.N.C. 2022) (same); *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 234-35 (M.D.N.C. 2020) (same).

Section 208 comfortably coexists with Ohio's ballot-harvesting statutes, and Plaintiffs' motion for summary judgment under the VRA therefore fails.

## III.    The ballot-harvesting statutes comply with the ADA.

### A.    Ohio offers meaningful access to absentee voting.

Plaintiffs' ADA claim cannot succeed because Plaintiffs have not shown that they lack meaningful access to absentee voting. To be sure, Plaintiffs show that the State Defendants do not offer disabled voters their *preferred* accommodation—an unrestricted choice of assistor. But to succeed on a Title II ADA claim, a plaintiff must show (1) the accommodation offered by defendants was not reasonable and (2) the plaintiff's preferred accommodation was reasonable. *Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023). So long as the existing accommodations provide "meaningful access" to a government service or program, there is no Title II violation. *Bennett*, 86 F.4th at 326 ("Title II does not require a plaintiff to receive her 'preferred' accommodation, but merely a reasonable one that provides 'meaningful access' to the public entity." (citations and quotation marks omitted)).

Here, the existence of numerous accommodations enshrined in Ohio law to assist disabled voters with requesting, accessing, and casting absentee ballots defeats any question that Plaintiffs' ADA claim can succeed. It is undisputed that Ohio offers numerous voting opportunities, including no-fault absentee voting, Ohio Rev. Code § 3509.02(A), with options to return the absentee ballot by mail and by drop box, Ohio Rev. Code § 3509.05(C), or through an authorized family member, Ohio Rev. Code § 3509.05(C)(1). Disabled voters receive additional absentee-voting opportunities

through remote ballot marking tools, Perlatti Decl. ¶¶ 9-12 & Ex. A, hand delivery of absentee ballots by board of elections staff members, Ohio Rev. Code § 3509.08(A), and attorney-in-fact authorizations, Ohio Rev. Code § 3501.382(A)(1)(a). Together, these methods interlock to provide disabled voters with meaningful access to absentee voting no matter the severity of the voters' disabilities.

The evidence shows that Ohio's broad access provisions for disabled voters are working and that the passage of H.B. 458 has not restricted access. The League of Women Voters could not identify a single disabled voter who has been unable to vote since H.B. 458's passage under one of the methods described above. Doc. 43-7, Miller Tr. 55:22-25; 102:3-22; 103:25-104:5. Nor could Plaintiffs' expert identify any disabled voters unable to vote using one of these methods since H.B. 458's implementation. Doc. 44-25, Kruse Tr. 22:7-27:6; 35:11-24; 132:7-21; 133:18-24; 155:17-156:18. And Ms. Kucera's own voting history proves that even voters with severe disabilities regularly access absentee voting. Doc. 43-2 at PageID 2355-56. Ms. Kucera has taken advantage of Ohio's remote ballot marking system and has been assisted on occasion by her mother. Doc. 43 at PageID 2180. Plaintiffs posit that Ms. Kucera's mother may not be able to assist her in the future. Doc. 42-1 at PageID 453. And Ms. Kucera prefers that her caregivers assist. *Id*. But speculation and preferences do not establish an ADA violation. *Bennett*, 86 F.4th at 326 (noting that Title II does not require a plaintiff to receive her preferred accommodation).

But even if Ms. Kucera's speculation became fact and her mother could no longer assist her with absentee voting, she still cannot show that she lacks meaningful access to absentee voting under Ohio law. Importantly, Ohio Revised Code § 3509.08(A) allows a bipartisan team of board of elections staff to hand deliver an absentee ballot to any voter who "will be unable to travel from the [voter's] home or place of confinement to the voting booth" due to the voter's "own personal

12

illness, physical disability, or infirmity." Plaintiffs claim there are two problems with this accommodation. First, that the statute only applies to disabled voters who are "unable to travel" under *any* circumstances. Second, because the statute says board employees *may* hand deliver an absentee ballot, board employees have discretion to choose not to do so if requested. But no evidence supports either theory.

As to the first problem, Plaintiffs' reading of Ohio Rev. Code § 3509.08(A) rests on a narrow and hyper-technical interpretation of "unable to travel." According to Plaintiffs, the hand-delivery option under Ohio Rev. Code § 3509.08 does not apply to voters like Ms. Kucera who *can* travel to the voting booth, but for whom travel is "physically, financially, and logistically burdensome." Doc. 42-1 at PageID 457. That is, if a voter cannot independently travel to the polling place, but could do so with assistance, the voter cannot truthfully state that he or she is *unable* to travel there. *Id*. Put another way, Plaintiffs argue that Ohio Rev. Code § 3509.08(A) requires the voter's affirmation of *impossibility.* But Ohio Rev. Code § 3509.08 has never been interpreted or applied this way.

Secretary LaRose does not instruct boards to inquire into or otherwise verify a voter's ability to travel to the polls. Secretary LaRose does not instruct boards to solicit or accept any proof of disability when processing applications under Ohio Rev. Code § 3509.08. Doc. 44-4 at PageID 2835-86. Indeed, this stands in marked contrast with former versions of Ohio Rev. Code § 3509.08, which required voters seeking hand delivery of absentee ballots to supply a certificate from a physician "giving the facts relative to [the voter's] illness or disability" with their absentee ballot applications. Doc. 43-8 at PageID 2552.

Further, there is no evidence that any board of elections employee has ever determined that a voter who applied for hand delivery of an absentee ballot under Ohio Rev. Code § 3509.08(A)

was ineligible because the voter could physically travel to the polls at great expense and physical discomfort. Indeed, the evidence shows that boards accept the representations made on applications submitted under Ohio Rev. Code § 3509.08(A). In Cuyahoga County, where Ms. Kucera resides, the Director of the Board of Elections confirmed that the BOE regularly hand delivers ballots to voters who are "neither jailed nor residents of nursing homes or other care facilities" without first investigating or confirming "the existence of that voter's illness, physical disability, or infirmity." Perlatti Decl. ¶ 17, 19, Doc. 43-3 at PageID 2360-61.

Plaintiffs' crabbed reading of "unable to travel" in Ohio Rev. Code § 3509.08(A) fails for an additional reason. It would render the section inapplicable to any nursing home or care facility resident who could physically leave the facility on Election Day to access the voting booth. But of course, none of the 88 county boards of elections interprets or applies the statute in this way. Indeed, the public records attached to Plaintiffs' motion for summary judgment show that the boards hand deliver absentee ballots to nursing home and care facility residents regardless of whether those residents are physically capable of reaching the polls on Election Day. *See generally* Doc. 42-22.

Plaintiffs' second objection to the accommodation set forth in Ohio Revised Code § 3509.08(A)—that boards of elections may choose to ignore a voter's request for hand delivery of an absentee ballot—likewise finds no support in the record. There is no evidence that any board of elections official has quibbled with "may" and "shall" and opted to mail an absentee ballot to a voter who requested hand delivery. Again, the evidence shows the opposite. In Cuyahoga County, the BOE has never mailed an absentee ballot to a voter who requested hand delivery of the ballot by BOE staff. Perlatti Decl. ¶ 20, Doc. 43-3 at PageID 2361 ("In my experience as Director of the Cuyahoga County Board of Elections, the Board of Elections has never mailed a ballot to a voter

14

with an illness, physical disability, or infirmity who requested hand delivery of a ballot by a bipartisan team of Board of Elections staff."). Nor has the Delaware County BOE. Herron Decl. ¶ 11, Doc. 43-4 at PageID 2380. Plaintiffs point to no evidence to the contrary.

Perhaps most importantly, there is no evidence that Ms. Kucera herself—or anyone else—has ever attempted to use Ohio Rev. Code 3509.08(A)'s hand-delivery option and was denied that accommodation. Plaintiffs cannot establish as a matter of law that they have been denied meaningful access to a service when they never attempted to use alternative accommodations. *See Neal v. Metro Reg'l Transit Auth.*, No. 5:18-cv-2402, 2019 U.S. Dist. LEXIS 133707, *17-18 (N.D. Ohio Aug. 8, 2019) (holding that "plaintiffs cannot establish that they were denied meaningful access from services that plaintiffs have never attempted to procure"). Instead, the evidence shows that Ms. Kucera can use this accommodation, *see* Doc. 43-5, Kucera Dep. 113:9-115:16, but she would prefer not to, *id.* at 86:25-87:21; Doc. 42-1 at PageID 453 ("Ms. Kucera would prefer to rely on her caregivers to assist her in voting absentee."). The hand-delivery option may not be the accommodation Ms. Kucera prefers, nor the best accommodation, but that does not mean she did not receive "meaningful access" to absentee voting. *See Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998) (finding an accommodation was reasonable even though it was not the accommodation that the plaintiff would have most preferred); *Campbell v. Bd. of Educ. of the Centerline Sch. Dist.*, 58 F. App'x 162, 167 (6th Cir. 2003) (a plaintiff is "entitled *only* to a 'reasonable' public accommodation of his disability, *not* to the 'best possible' accommodation").

Last, Plaintiffs make much of boards' and Secretary's failure to properly advertise the accommodation under Ohio Rev. Code § 3509.08(A). That no BOE "advertises" this option does

not amount to an ADA violation. The ADA does not require that public entities advertise accommodations in a certain way.

At the end of the day, Ms. Kucera may disagree with aspects of the accommodations currently provided in Ohio's absentee voting scheme. Ms. Kucera may believe that other, perhaps better, means are available. But this is simply not enough to succeed.

> **B.     Ignoring Ohio's ballot-harvesting laws is a not a facially reasonable accommodation and would result in a fundamental alteration of Ohio's voting laws.**

Even if Plaintiffs could show that the existing accommodations for absentee voting for disabled voters are unreasonable, they still cannot succeed on their ADA claim because their proposed accommodation is not reasonable. *See Knox County*, 62 F.4th at 1000 ("The plaintiff must establish both that his preferred accommodation was reasonable, *and* that the accommodation provided to him was unreasonable.").

Initially, Plaintiffs' ADA claim fails because they did not request the accommodation they now seek. Neither the League nor Ms. Kucera requested accommodations before filing suit, and the request from Plaintiffs' counsel was, at most, a request for clarification and guidance. *See* Doc. 42-15 at PageID 1042-45. But even if Plaintiffs had made a proper request for accommodation in the first instance, their ADA claim still fails because they have not proposed a reasonable accommodation. Plaintiffs' proposed accommodation is "non-enforcement of the [ballot-harvestings laws] against absent voters with disabilities that necessitate assistance, and their assistors." Doc. 42-1 at PageID 469. That is, despite Plaintiffs' many options for voting absentee in Ohio, they propose ignoring the ballot-harvesting laws entirely.

Directing Defendants to disregard important and established laws is patently unreasonable and would fundamentally alter Ohio's security protections for absentee ballots. Although Title II requires a public entity to make reasonable accommodations when necessary to avoid

discrimination on the basis of disability, a public entity need not make any accommodation that would fundamentally alter the nature of the entity's service, program, or activity. 28 C.F.R. § 35.130(b)(7)(i). That is, a state need not waive a generally applicable rule when "waiver of the rule in the particular case would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change." *Hindel v. Husted*, 875 F.3d 344, 348 (6th Cir. 2017) (quoting *Jones v. City of Monroe*, 341 F.3d 473, 480 (6th Cir. 2003)). Reasonableness is determined using a commonsense approach that "balances the needs of the parties involved." *See Vance v. City of Maumee, Ohio*, 960 F. Supp. 2d 720, 729 (N.D. Ohio 2013) (citing *United States v. Village of Palatine, Illinois*, 37 F.3d 1230, 1234 (7th Cir.1994)).

Here, Plaintiffs' proposed accommodation would work a fundamental and unreasonable change of Ohio's absentee-ballot system. For good reason, Ohio law limits the universe of persons who may return or possess the absentee ballot of another. Ohio Rev. Code §§ 3509.05(C)(1), 3599.21(A)(9)-(10). These limitations are not mere formalities; they are vital to protecting election security and the interests of both voters and assistors. As the bipartisan Carter-Baker Report recognized, "[c]itizens who vote at home . . . are more susceptible to pressure, . . . or to intimidation." Doc. 44-19 at PageID 3362; *see also* Doc. 43-1 at PageID 2221. Accordingly, the report recommended that States authorize only "the voter, an acknowledged family member, the U.S. Postal Service or other legitimate shipper, or election officials" to handle an absentee ballot. Doc. 44-19 at PageID 3363; Doc. 43-1 at PageID 2221. Ohio does just that. Ohio Rev. Code §§ 3509.05(C)(1), 3599.21(A)(9)-(10). These protections are balanced, however, by the many options Ohio offers to vote absentee. Ms. Kucera's own voting history shows that the balance works; she has been able to safely vote absentee in many elections in compliance with Ohio law. *See* Doc. 43-5, Kucera Dep. 52:6-21, 56:20-58:16; 66:13-20, 70:19-71:6.

Plaintiffs' proposed alternative upends this balance. Plaintiffs want a blanket exemption to the ballot-harvesting laws and to allow anyone to assist a disabled for voter. Plaintiffs' proposal does not include any guardrails to protect vulnerable voters, to allow boards of elections to verify who handled an absentee ballot, or to protect the assistors themselves. The State Defendants presented evidence that Ohio's ballot-harvesting laws protect vulnerable voters, help elections officials track and deter fraud, and protect both disabled voters and their assistors when election-integrity issues arise. *See generally* Doc. 43-1; Doc. 43-4 at PageID 2381. Non-enforcement of these laws would weaken these protections and fundamentally destabilize Ohio's election security.

Moreover, Plaintiffs oversimplify implementing their proposed accommodation to cast the accommodation as a moderate or incremental step. They claim ignoring the ballot-harvesting laws is simply a matter of *inaction*. Doc. 42-1 at PageID 469. But inaction can alter Ohio's voting system as significantly as an affirmative action can. *See Jones v. City of Monroe*, 341 F.3d 474, 480 (6th Cir. 2003) (plaintiff's requester waiver of the law would require the city "to cease enforcement of an otherwise valid ordinance, which by its very nature requires a fundamental alteration of the rule itself"). Ignoring ballot-harvesting laws would significantly and fundamentally alter Ohio's absentee voting system.

Last, in a move that is at best improper, Plaintiffs support their proposed accommodation by citing a statement by defense counsel Ann Yackshaw during the case management conference in this matter. Doc. 42-1 at PageID 469; Zuberi Decl. ¶ 13, Doc. 42-8 at PageID 587. The Court should ignore this "evidence." First, it's hearsay. More importantly, inserting this point into the record makes Mr. Zuberi a fact witness and improperly crosses the line between witness and advocate, and potentially makes Ms. Yackshaw a witness. *Spivey v. United States*, 912 F.2d 80, 84 (4th Cir. 1990) ("It is elementary that counsel may not participate both as an advocate and as a

witness, absent special circumstances."). No consideration should be given to such underhanded tactics. Regardless, this statement proves nothing. Whether Plaintiffs' requested accommodation of non-enforcement of Ohio's ballot-harvesting laws would be easy to implement is immaterial. Rather, the Court must consider whether non-enforcement *fundamentally alters* Ohio's absentee-ballot system. It may be easy to stop enforcing a law regulating absentee ballots. But non-enforcement of that law can still fundamentally change how Ohio administers absentee ballots and ensures those ballots stay safe.

Because they cannot show that Ohio's accommodations for disabled voters to vote by absentee ballot are unreasonable and because they cannot show that their proposed accommodation is reasonable, Plaintiffs are not entitled to summary judgment on their ADA claim.

## IV. Plaintiffs cannot show that the equities favor injunctive relief.

Plaintiffs are not entitled to injunctive relief under the test articulated in their motion. Doc. 42-1 at PageID 469 (citing *eBay v. MercExchange*, 547 U.S. 388, 391 (2006) (requiring plaintiff seeking permanent injunction to demonstrate irreparable injury that cannot be compensated by monetary damages and to show that the equities and the public interest "would not be disserved by a permanent injunction")).

Crucially, Plaintiffs have not identified any irreparable injury. Although Plaintiffs claim that the challenged statutes infringe their fundamental right to vote, they cannot point to any disabled voter unable to vote by absentee ballot because of them. *See supra* Sections II-III.

Nor do the equities favor the Plaintiffs. Ohio suffers whenever it "cannot conduct its election in accordance with its lawfully enacted . . . regulations. *Thompson v. DeWine*, 959 F.3d 804, 812 (6th Cir. 2020); *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). And the public interest always lies "upon the

will of the people of [Ohio] being effected in accordance with [Ohio] law." *Coal. To Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006).

A final point. As of the date of this filing, the November 5 general election is still months away. But each passing day brings us closer to that election, which implicates the "Supreme Court's warning that federal courts are not supposed to change state election rules as elections approach." *Thompson*, 959 F.3d at 813 (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020); *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006)).

## CONCLUSION

For these reasons and for the reasons set forth in the State Defendants' motion for summary judgment, Plaintiffs' motion for summary judgment should be denied.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
* *Counsel of Record*
HEATHER L. BUCHANAN (0083032)
MICHAEL A. WALTON (0092201)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Heather.Buchanan@OhioAGO.gov
Michael.Walton@OhioAGO.gov

*Counsel for Defendants Secretary of State*
*Frank LaRose and Ohio Attorney General Dave Yost*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2024, the foregoing was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has been assigned to the Expedited Track. *See* Doc. No. 31. I also certify that the page limitations have been modified by order of the Court, which permitted the parties leave to file responses to motions for summary judgment of up to 20 pages. *See* May 7 non-document order. This memorandum complies with that modification.

*/s/ Ann Yackshaw*
ANN YACKSHAW
Assistant Attorney General