**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF OHIO, et al., | : | |
| | : | |
| *Plaintiffs*, | : | Case No. 1:23-cv-2414 |
| | : | |
| v. | : | JUDGE BRIDGET M. BRENNAN |
| | : | |
| FRANK LAROSE, et al., | : | |
| | : | |
| *Defendants*, | : | |
| | : | |
| and | : | |
| | : | |
| REPUBLICAN NATIONAL COMMITTEE, et al., | : | |
| | : | |
| *Intervenor-Defendants*. | : | |

---

**MEMORANDUM IN OPPOSITION TO**
**INTERVENORS' MOTION FOR SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 1

I.      Intervenors' Voting Rights Act Arguments Fail as a Matter of Law. ................................. 1

      A.      Intervenors misrepresent the weight of authority on Section 208's interpretation. ............................................................................................. 2

      B.      Intervenors' private-right-of-action position is fundamentally flawed. ................ 3

      C.      Intervenors' selective invocation of Section 208's legislative history is unavailing.............................................................................................. 4

II.      Intervenors are Not Entitled to Summary Judgment on the Americans with Disabilities Act and Rehabilitation Act Claims. .............................................................. 5

      A.      Plaintiffs lack meaningful access to Ohio's absentee-voting program. .................. 5

      B.      Although notice was not required, Plaintiffs' counsel gave the State notice. ......... 6

      C.      Plaintiffs have proposed a reasonable modification. ............................................. 8

      D.      Intervenors fail to prove a fundamental alteration. ............................................... 8

III.      Intervenors Are Not Entitled to Summary Judgment on Plaintiffs' Vagueness Claim................................................................................................................... 9

      A.      The Court should not abstain from resolving Plaintiffs' vagueness claim. .......... 10

      B.      Intervenors' remaining arguments are meritless. ................................................ 11

CONCLUSION................................................................................................................. 14

CERTIFICATE OF SERVICE ......................................................................................... 15

CERTIFICATE OF COMPLIANCE................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Broad. Co. v. Blackwell*,
  479 F. Supp. 2d 719 (S.D. Ohio 2006) ..............................................................10, 11

*Ark. United v. Thurston*,
  517 F. Supp. 3d 777 (W.D. Ark. 2021).....................................................................3

*Atl. Richfield Co. v. Christian*,
  140 S. Ct. 1335 (2020).............................................................................................13

*Baggett v. Bullitt*,
  377 U.S. 360 (1964).................................................................................................10

*Bedford v. Michigan*,
  722 F. App'x 515 (6th Cir. 2018) ..............................................................................6

*Bennett v. Hurley Med. Ctr.*,
  86 F.4th 314 (6th Cir. 2023) .....................................................................................7

*Boyce Motor Lines v. United States*,
  342 U.S. 337 (1952).................................................................................................12

*Bryan v. United States*,
  524 U.S. 184 (1998).................................................................................................12

*Bultemeyer v. Fort Wayne Cmty. Schs.*,
  100 F.3d 1281 (7th Cir. 1996) ...................................................................................7

*Burson v. Freeman*,
  504 U.S. 191 (1992).................................................................................................11

*Carey v. Wis. Elections Comm'n*,
  624 F. Supp. 3d 1020 (W.D. Wis. 2022) ...............................................................2, 3

*Cnty. of Allegheny v. Frank Mashuda Co.*,
  360 U.S. 185 (1959).................................................................................................10

*Davis v. Echo Valley Condo. Ass'n*,
  945 F.3d 483 (6th Cir. 2019) ...................................................................................13

*Davoll v. Webb*,
  194 F.3d 1116 (10th Cir. 1999) .................................................................................7

*Democracy N.C. v. N.C. State Bd. of Elections*,
476 F. Supp. 3d 158 (M.D.N.C. 2020) ...................................................................2

*DiPietrae v. City of Phila.*,
666 A.2d 1132 (Pa. Commw. Ct. 1995) .................................................................2

*Disability Rts. N.C. v. N.C. State Bd. of Elections*,
602 F. Supp. 3d 872 (E.D.N.C. 2022)....................................................................2

*Edwards v. Sammons*,
437 F.2d 1240 (5th Cir. 1971) .............................................................................11

*Elonis v. United States*,
575 U.S. 723 (2015) ..............................................................................................12

*Fla. State Conf. of NAACP v. Lee*,
576 F. Supp. 3d 974 (N.D. Fla. 2021) ...................................................................3

*Forbes v. Woods*,
71 F. Supp. 2d 1015 (D. Ariz. 1999) ...................................................................11

*Friends of Georges, Inc. v. Mulroy*,
675 F. Supp. 3d 831 (W.D. Tenn. 2023)..............................................................11

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992)..................................................................................................4

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002)................................................................................................3

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995)..............................................................................................13

*Harman v. Forssenius*,
380 U.S. 528 (1965)..............................................................................................11

*Harris Cnty. Comm'rs Ct. v. Moore*,
420 U.S. 77 (1975)..........................................................................................10, 11

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023)............................................................................................3, 4

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2d Cir. 2003)...................................................................................8

*Hill v. Snyder*,
308 F. Supp. 3d 893 (E.D. Mich. 2018)...............................................................10

*Hindel v. Husted,*
   875 F.3d 344 (6th Cir. 2017) ....................................................................8, 9

*Jones v. City of Monroe,*
   341 F.3d 474 (6th Cir. 2003) .......................................................................6

*Kay v. Austin,*
   621 F.2d 809 (6th Cir. 1980) .....................................................................10

*Keller v. Chippewa Cnty. Bd. of Comm'rs,*
   860 F. App'x 381 (6th Cir. 2021) ...............................................................5, 6

*Knox v. Brnovich,*
   907 F.3d 1167 (9th Cir. 2018) ...................................................................13

*La Unión del Pueblo Entero v. Abbott,*
   618 F. Supp. 3d 388 (W.D. Tex. 2022).........................................................3

*League of Women Voters of Fla. v. Lee,*
   595 F. Supp. 3d 1042 (N.D. Fla. 2022).........................................................9

*Marble v. Tennessee,*
   767 F. App'x 647 (6th Cir. 2019) ...........................................................6, 7, 8

*Mbawe v. Ferris State Univ.,*
   751 F. App'x 832 (6th Cir. 2018) .................................................................7

*McPherson v. Mich. High Sch. Athletic Ass'n,*
   119 F.3d 453 (6th Cir. 1997) .......................................................................7

*Neal v. Metro Reg'l Transit Auth.,*
   2019 WL 3753605 (N.D. Ohio Aug. 8, 2019) ................................................6

*Ohio Dem. Party v. Husted,*
   834 F.3d 620 (6th Cir. 2016) .......................................................................6

*Peoples Rts. Org. v. City of Columbus,*
   152 F.3d 522 (6th Cir. 1998) .....................................................................11

*Priorities USA v. Nessel,*
   487 F. Supp. 3d 599 (E.D. Mich. 2020).........................................................2

*Priorities USA v. Nessel,*
   628 F. Supp. 3d 716 (E.D. Mich. 2022).........................................................2

*Qualkinbush v. Skubisz,*
   826 N.E.2d 1181 (Ill. App. 2004) .................................................................2

*Ray v. Texas*,
  2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ........................................................................2

*Reynolds v. Sims*,
  377 U.S. 533 (1964) ..........................................................................................................11

*Screws v. United States*,
  325 U.S. 91 (1945) ............................................................................................................11

*Siegel v. LePore*,
  234 F.3d 1163 (11th Cir. 2000) ........................................................................................11

*Staples v. United States*,
  511 U.S. 600 (1994) ..........................................................................................................12

*United States v. Costigan*,
  2000 WL 898455 (D. Me. June 16, 2000) .........................................................................12

*United States v. Young*,
  766 F.3d 621 (6th Cir. 2014) ............................................................................................12

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982) ..........................................................................................................13

**Statutes**

42 U.S.C. 1983 ...........................................................................................................................3

42 U.S.C. 12101 .........................................................................................................................9

42 U.S.C. 12112 .........................................................................................................................6

52 U.S.C. 10301 .........................................................................................................................3

52 U.S.C. 10302 ......................................................................................................................3, 4

52 U.S.C. 10310 .........................................................................................................................2

52 U.S.C. 20101 .........................................................................................................................3

52 U.S.C. 20104 .........................................................................................................................3

52 U.S.C. 20105 .........................................................................................................................3

52 U.S.C. 20106 .........................................................................................................................4

R.C. 3509.05 ..............................................................................................................................1

R.C. 3509.08 ..............................................................................................................................6

R.C. 3599.21 .................................................................................................................1

**Regulations**

28 C.F.R. 35.130 ....................................................................................5, 6, 8

**Other Authorities**

S. Rep. 417, 97th Cong., 2d Sess. (1982) ...............................................4, 5

S. Rep. 295, 94th Cong., 1st Sess. (1975)......................................................3

## INTRODUCTION

Ohio's restrictions on who can deliver another person's absentee ballot, R.C. 3599.21(A)(9),(10), 3509.05(C)(1) (Challenged Provisions), make it difficult, if not impossible, for many disabled voters to vote. *See* Pls.' Mem. in Support of Mot. for Partial Summ. J. (Pl. Br.). Ohio's enforcement of the Challenged Provisions as to such voters denies them the assistor of their choice and deprives them of meaningful access to Ohio's absentee-voting program, violating Section 208 of the Voting Rights Act (VRA), Title II of the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). Intervenors[1] cannot establish that they are entitled to judgment as a matter of law on Plaintiffs' federal statutory claims.

Intervenors' motion likewise fails as to Plaintiffs' vagueness claim: they ignore clear law allowing pre-enforcement challenges, and they disregard genuine issues of material fact regarding whether ordinary Ohioans can understand what conduct the Challenged Provisions prohibit and how Ohio prosecutors may enforce them with unchecked discretion. These factual disputes preclude summary judgment on this claim. The Court should deny Intervenors' motion.

## ARGUMENT

## I.   Intervenors' Voting Rights Act Arguments Fail as a Matter of Law.

Intervenors raise several arguments regarding Plaintiffs' claim under Section 208 of the VRA that overlap with the State's. *Compare* Intervenors' Mem. in Support of Mot. for Summ. J. (Int. Br.) 13-17, *with* State Defs.' Mem. in Support of Mot. for Summ. J. (St. Br.) 10-15. To avoid duplication, Plaintiffs incorporate their arguments as set forth in Plaintiffs' Memorandum in Opposition to State Defendants' Motion for Summary Judgment (Pl. St. Opp.) Sec. I. This Court should reject Intervenors' additional arguments as well.

---

[1] "Intervenors" are the Republican National Committee and the Ohio Republican Party. "State Defendants" or "the State" are Ohio Secretary of State Frank LaRose (SOS) and Ohio Attorney General Dave Yost (AG).

**A.  Intervenors misrepresent the weight of authority on Section 208's interpretation.**

In opposing Plaintiffs' VRA claim, Intervenors omit any reference to the many recent federal cases confirming Plaintiffs' view of Section 208. *Compare* Int. Br. 15, *with* Pl. Br. 13. Intervenors instead cite to *Ray v. Texas*, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008), whose reasoning has been abrogated, *see* Pl. Br. 13 n.5, and two state-intermediate-appellate-court cases from two and three decades ago, respectively, both of which *Ray* cited as the only available authority on the issue in 2008.[2] *See* 2008 WL 345021, at *7 (citing *Qualkinbush v. Skubisz*, 826 N.E.2d 1181 (Ill. App. 2004); *DiPietrae v. City of Phila.*, 666 A.2d 1132 (Pa. Commw. Ct. 1995)).

None of these cases supports Intervenors' reading of Section 208. Like the *Qualkinbush* and *Ray* courts before them, Intervenors misread *DiPietrae*, where the court *affirmed* an injunction against a state statute requiring voters to deliver their own ballots, thereby mandating that voters with disabilities be allowed to appoint an agent to do so. 666 A.2d at 1135. *DiPietrae* also held—citing no authority and without textual analysis or cross-briefing—that the trial court reasonably imposed a condition on its injunction (not a "law," *contra* Int. Br. 15) that such an agent may assist only one household. *Id.* at 1136. This limit, which was not challenged on appeal, cannot invert the court's Section 208 holding that disabled voters must be allowed an assistor of their choice.

Nor does the text of the law or any existing precedent support Intervenors' attempt to carve absentee voting out of Section 208's protections. Int. Br. 15. Voting includes "all action necessary to make a vote effective," 52 U.S.C. 10310(c)(1), including "using an absentee ballot" and "the delivery of an absentee ballot to a county board of elections." *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 234-35 (M.D.N.C. 2020); *see Disability Rts. N.C. v. N.C. State Bd. of Elections*, 602 F. Supp. 3d 872, 877 (E.D.N.C. 2022) (same); *Carey v. Wis. Elections*

---

[2] Intervenors' reliance on *Priorities USA v. Nessel*, 487 F. Supp. 3d 599 (E.D. Mich. 2020); *Priorities USA v. Nessel*, 628 F. Supp. 3d 716 (E.D. Mich. 2022) fails for the same reasons as the State's. *See* Pl. St. Opp. Sec. I.A.2; Pl. Br. 13.

*Comm'n*, 624 F. Supp. 3d 1020, 1032-33 (W.D. Wis. 2022) (same).

   **B. Intervenors' private-right-of-action position is fundamentally flawed.**

   Intervenors next ask this Court to reach a different conclusion than every other court to consider whether private plaintiffs can bring Section 208 claims. The Court should decline.

   As an initial matter: the VRA's plain text provides that private parties may enforce Section 208. *See* 52 U.S.C. 10302; S. Rep. 295, 94th Cong., 1st Sess. 40 (1975) (adding "aggrieved person" to Section 10302 "authorize[s] courts to grant similar relief to private parties in suits brought to protect voting rights"). And "every court that has considered the issue—and the Attorney General of the United States—agree." *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 988-90 (N.D. Fla. 2021); *see La Unión del Pueblo Entero v. Abbott*, 618 F. Supp. 3d 388, 432-34 (W.D. Tex. 2022); *Ark. United v. Thurston*, 517 F. Supp. 3d 777, 790 (W.D. Ark. 2021). Were there any doubt, Section 1983 provides an alternative enforcement mechanism: Intervenors do not dispute that Congress intended to extend a federal right in Section 208, so that "right is presumptively enforceable by [42 U.S.C.] 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-84 (2002); *see Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183-84 (2023).

   Intervenors rest their contrary position solely upon the false premise that "[t]he VRA provides a more-restrictive enforcement scheme for violations of Section 208." Int. Br. 16. But Intervenors actually invoke a *different* set of rights and remedies from a *different* federal law: the Voting Accessibility for the Elderly and Handicapped Act (VAEHA), not the VRA.[3] Intervenors provide absolutely no reason to interpret Congress's creation of the VAEHA's additional rights and remedies for elderly and handicapped voters as the exclusive means for enforcing disabled voters'

---

[3] The laws are codified separately in the U.S. Code. *Compare* 52 U.S.C. 10301 *et seq.* (VRA), *with* 52 U.S.C. 20101 *et seq.* (VAEHA). VAEHA requires states to provide "elderly and handicapped voters" notice of absentee-voting procedures and their rights under VAEHA and Section 208. *Id.* 20104(c). And it authorizes the Attorney General or a person aggrieved to sue to remedy violations. *Id.* 20105(a).

distinct rights under the VRA. *Cf. Talevski*, 599 U.S. at 188 ("The existence of a more restrictive private remedy *in the statute itself* for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not." (cleaned up, emphasis added)).

Without offering any connective tissue, Intervenors seek to transform the passage of a law requiring states to provide voters *notice* of their federal rights into an excuse for states not to *comply* with those advertised protections. This flies in the face of Congress's stated intent *within the VRA* that private parties can enforce its promises. 52 U.S.C. 10302. And it even contradicts the VAEHA's text, which provides that it "shall not be construed to impair any right guaranteed by the [VRA]." 52 U.S.C. 20106.

### C.  Intervenors' selective invocation of Section 208's legislative history is unavailing.

Intervenors' attempt to rely on the legislative history to create the impression that Congress did not intend Section 208 to preempt laws limiting assistance, especially in the absentee-voting context, fails as a matter of law and is unsupported by the legislative history itself.

As a matter of law, Intervenors cannot avoid preemption by claiming that the Challenged Provisions share one of Section 208's purposes. *See* Int. Br. 14-15. Even to the extent that the Challenged Provisions serve any of the VRA's goals (which Plaintiffs contest, *see* Pl. St. Opp. 12-13), "it is not enough to say that the ultimate goal of both federal and state law is the same"—"a state law [is] also preempted if it interferes with the methods by which the federal statute was designed to reach th[at] goal." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103 (1992) (cleaned up). Section 208's text prescribes the method to effectuate Congress's goal: guaranteeing voters' assistance from a person of their choice.

The legislative history confirms that understanding. *See* S. Rep. 417, 97th Cong., 2d Sess. (S. Rep. 97-417) at 3-4 (1982) (describing Section 208 as "concerning the method by which voting

assistance is provided to the blind, the disabled, and the illiterate"); *id.* at 63 (Section 208's command that voters receive assistance by a person of their choice "prescrib[ed] minimal requirements as to the manner in which voters may choose to receive assistance"); *id.* ("at the least, [covered voters] are entitled to assistance from a person of their own choice"); *see also* Pl. Br. 12. The legislative history also provides no basis to constrain Section 208's application in the absentee-voting context. To the contrary, Congress gave specific examples of election procedures states could *not* establish, *contra* Int. Br. 15-16, including those that deny assistance "at some stages of the voting process during which assistance was needed." S. Rep. 97-417 at 63.

## II.    Intervenors are Not Entitled to Summary Judgment on the ADA and RA Claims.

Intervenors raise four primary objections to Plaintiffs' ADA and RA claims, but none entitles them to summary judgment. Intervenors' arguments focus on whether Plaintiffs have shown they were denied an equal opportunity to use the absentee voting program and, if so, whether Intervenors can prove that Plaintiffs' proposed reasonable modification would fundamentally alter Ohio's absentee-voting program. 28 C.F.R. 35.130(b)(1)(i)-(iii),(b)(7)(i). Plaintiffs have, and Intervenors cannot. Where Intervenors raise arguments that overlap with the State's arguments, *compare* Int. Br. 5-13, *with* St. Br. 3-10, Plaintiffs incorporate their arguments in opposition to State Defendants' Motion. Pl. St. Opp. Sec. II.

### A.  Plaintiffs lack meaningful access to Ohio's absentee-voting program.

Intervenors first misstate the law, asserting that Plaintiffs' ADA claim fails because they have not been wholly disenfranchised. Int. Br. 6-7. As State Defendants acknowledge, the test is whether Defendants deny *meaningful access* to Ohio's absentee-voting program. St. Br. 4-8.

The cases Intervenors cite do not support their argument that the ADA requires wholesale exclusion, rather than denial of meaningful access. The plaintiffs in those cases simply failed to substantiate their allegations that they were denied meaningful access. *See, e.g., Keller v.*

*Chippewa Cnty. Bd. of Comm'rs*, 860 F. App'x 381, 387 (6th Cir. 2021) (finding plaintiff's allegation conclusory); *Bedford v. Michigan*, 722 F. App'x 515, 519 (6th Cir. 2018) (finding plaintiff failed to argue how defendants "excluded or limited her access"); *Jones v. City of Monroe*, 341 F.3d 474, 481 (6th Cir. 2003) (finding plaintiff did not establish why alternative accommodations failed to provide meaningful access).[4] As detailed in Plaintiffs' opposition to State Defendants' Motion, Plaintiffs are denied meaningful access to the absentee-voting program because they have no reliable means to return their absentee ballots. Pl. St. Opp. Sec. II.A.[5]

**B.  Although notice was not required, Plaintiffs' counsel gave the State notice.**

Relying on employment-related precedent involving Title I of the ADA, Intervenors next argue that Plaintiffs' claims fail because prior to filing suit, "neither Kucera nor the League requested the 'accommodation' they now seek." Int. Br. 7. But Title II differs materially from Title I: while Title I requires employers to accommodate "known physical or mental limitations of an otherwise qualified individual with a disability," 42 U.S.C. 12112(b)(5); 29 C.F.R. 1630.9(a), Title II requires public entities to make reasonable modifications "when the[y] are necessary to avoid discrimination on the basis of disability," 28 C.F.R. 35.130(b)(7)(i). So, unlike Title I, Title II does not require any knowledge by the public entity of a *specific individual's* disability.

In addition, no case Intervenors cite turned on a plaintiff's failure to request an accommodation before litigation. Int. Br. 7-8; *see Marble v. Tennessee*, 767 F. App'x 647, 655

---

[4] To the extent that Intervenors rely on *Neal v. Metro Reg'l Transit Auth.*, 2019 WL 3753605 (N.D. Ohio Aug. 8, 2019), to argue that Plaintiffs are not entitled to reasonable modifications because they have not used the R.C. 3509.08(A) process, an enumerated assistor, or mail delivery at her door, Int. 7-8, that case is distinguishable. Plaintiffs here have already demonstrated why the first two alternatives do not provide meaningful access. Pl. Br. 5-7, 15-18; Pl. St. Opp. II.A. And door delivery does not provide meaningful access, because the program does not provide assistance in folding or stuffing a ballot, assistance required by those like Ms. Kucera. ECF 42-3 (Kucera Dec.) ¶¶7-8.

[5] Intervenors also wrongly invoke the Sixth Circuit's findings that Ohio's *early-in-person-voting* program provides "generous, reasonable, and accessible voting options to all" and makes it "easy to vote in Ohio," Int. Br. 1 (quoting *Ohio Dem. Party v. Husted*, 834 F.3d 620, 623, 628 (6th Cir. 2016)). To the extent early-in-person voting is part of Ohio's absentee-voting program, it does not provide meaningful access to voters like Ms. Kucera. *See* Kucera Dec. ¶¶10-13.

(6th Cir. 2019) (defendant attempted to accommodate plaintiffs' request); *Mbawe v. Ferris State Univ.*, 751 F. App'x 832, 840 (6th Cir. 2018) (plaintiff refused offered accommodation and failed to suggest an alternative accommodation *during* litigation); *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 461-62 (6th Cir. 1997) (accommodation was a fundamental alteration). Indeed, the Sixth Circuit has not "held that the same [Title I] interactive process requirement applies to Title II of the ADA." *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 331 (6th Cir. 2023). Even a case on which Intervenors rely recognizes that the accommodation-request requirement "may not be absolute," and "proactive[] accommodations" may be necessary where the need for them is "obvious." *Marble*, 767 F. App'x at 652 n.2.

Even if Plaintiffs were required to give notice of the need for an accommodation, Plaintiffs' counsel did so by letter months before this litigation began. *See* ECF 42-15 (ACLU Letter to SOS). Through that letter, the Secretary was placed on notice of both the obvious problem that existed for voters with disabilities like the Plaintiffs who filed this lawsuit, and the modification they requested. *Id.* There can be no dispute that Defendants had notice of the need to make a reasonable modification to avoid disability discrimination; indeed, State Defendants do not argue that they lacked such knowledge. Nor should the Court credit any such lack-of-notice argument as to Plaintiffs' requested modification, which mirrors Section 208's requirements. *See* Section I, *supra*.

Furthermore, the Title I standards that Intervenors seek to import into Title II would not require Plaintiffs to make an individualized request where one would be futile. *Davoll v. Webb*, 194 F.3d 1116, 1132 (10th Cir. 1999); *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996). Here, the request for an accommodation and the proposed modification addressed the very problem that Ms. Kucera and LWVO members face. *See* ECF 42-15 (ACLU Letter to SOS). Because the SOS completely ignored both, *see* ECF 42-16 (SOS Letter to ACLU), it would

have been futile for Plaintiffs to resubmit that same request.

### C.  Plaintiffs have proposed a reasonable modification.

Plaintiffs have proposed an exception to the Challenged Provisions for absent voters with disabilities that necessitate assistance, and their assistors—and have supported that reasonable proposal with evidence. Pl. St. Opp. Sec. II.B. To the extent Intervenors argue that Plaintiffs' proposed modification is not reasonable because Plaintiffs have not shown it is *not* a fundamental alteration, Int. Br. 9, they improperly shift *their* burden of production and persuasion. 28 C.F.R. 35.130(b)(7)(i); *see, e.g.*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003) (under Title II, "it is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits, [and then] the risk of nonpersuasion falls on the defendant" (cleaned up)).

The regulations implementing Title II refute Intervenors' contention that a reasonable modification is only possible after an individualized inquiry for every disabled voter. Int. Br. 8-9. Title II requires proactive avoidance of discrimination. 28 C.F.R. 35.130(b)(7)(i). And Intervenors' suggested assessment would only increase the costs and delays in providing disabled voters meaningful access to Ohio's absentee-voting program. That outcome contravenes the purpose of the individualized assessment, which, in the context where it applies, is meant to prevent decision making driven by prejudice, stereotypes, or unfounded fear, not to unnecessarily delay generally effective policy modifications, which Title II is meant to achieve. *See Marble*, 767 F. App'x at 655; *Hindel v. Husted*, 875 F.3d 344, 348-49 (6th Cir. 2017).

### D.  Intervenors fail to prove a fundamental alteration.

Like the State, Intervenors cannot meet their burden to prove that Plaintiffs' proposed remedy is a fundamental and unreasonable change to Ohio's absentee-voting program. *See* Pl. St. Opp. Sec. II.B. Intervenors cite one purpose not mentioned by the State: the need to "safeguard[]

public confidence in elections." Int. Br. 11. Plaintiffs' proposed modification is not at odds with that purpose. Intervenors present no evidence indicating that Ohioans' faith in elections would be undermined by permitting disabled voters to be assisted by a person of their choice. Nor do Intervenors show that the enumerated relatives are any less likely to intimidate or engage in voter fraud than other family members or other individuals disabled people trust to assist them. And Intervenors' remaining claim that third parties' rights would be impacted, *id.* at 12-13, rests on the same support (the Strach and Carter-Baker reports) as the State's fundamental-alteration arguments and fails for the same reason, *see* Pl. St. Opp. Sec. II.B.

Intervenors' argument that Plaintiffs' proposed modification is a fundamental alteration because it would "transform" the Challenged Provisions also fails. Int. Br. 12. First, it implies that no discriminatory state law can ever be preempted by the ADA, contrary to the ADA's stated purpose, *see, e.g.*, 42 U.S.C. 12101(b)(4) ("to invoke the sweep of congressional authority . . . to address the major areas of discrimination faced day-to-day by people with disabilities") and basic principles of federal supremacy, *Hindel*, 875 F.3d at 349. Second, unlike plaintiffs in *League of Women Voters of Florida v. Lee*, 595 F. Supp. 3d 1042 (N.D. Fla. 2022), who proposed suspending an entire statutory scheme, Plaintiffs only seek to modify how the law is applied to certain disabled voters and those who assist them in absentee voting. That is not a fundamental alteration.

## III.    Intervenors Are Not Entitled to Summary Judgment on Plaintiffs' Vagueness Claim.

At a minimum, genuine disputes of material fact exist as to the unclear scope of the Challenged Provisions and the potential for arbitrary enforcement, precluding summary judgment on Plaintiffs' vagueness claim. Where Intervenors' arguments overlap with the State's arguments, *compare* Int. Br. 17-20, *with* St. Br. 15-20, Plaintiffs incorporate their responses to the State's Motion. Pl. St. Opp. Sec. III. Intervenors' remaining arguments are equally unavailing.

**A. The Court should not abstain from resolving Plaintiffs' vagueness claim.**

By seeking abstention, Intervenors ask the Court to invoke "an extraordinary and narrow exception" to its duty to resolve controversies, *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959), and in a manner that likely ensures Plaintiffs will receive no relief before the upcoming election. The Court should decline their invitation.

"The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). "[B]ecause of the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court, abstention must be invoked only in special circumstances, and only upon careful consideration of the facts of each case." *Hill v. Snyder*, 308 F. Supp. 3d 893, 901 (E.D. Mich. 2018) (quoting *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975)), *aff'd*, 900 F.3d 260 (6th Cir. 2018).

Here, the delays brought about by abstention and certification would impede Ms. Kucera and LWVO members' voting rights in advance of a federal election. Until this claim is resolved, fearing criminal prosecution, LWVO members and other assistors in Ohio will refrain from assisting voters with disabilities with their absentee ballots. This, in turn, will make it more difficult—if not impossible—for some voters with disabilities to vote. Further, abstaining and certifying questions of law to the Ohio Supreme Court would likely delay resolution of the suit until after the 2024 general election. And "[a]bstention is not appropriate when it is not practicable to wait the necessary length of time to get a definitive state adjudication." *Kay v. Austin*, 621 F.2d 809, 812 (6th Cir. 1980). Indeed, one court in this circuit declined to abstain from deciding an as-applied vagueness challenge right before an election, finding in part that "plaintiffs are entitled to a final decision before the mid-term elections." *Am. Broad. Co. v. Blackwell*, 479 F. Supp. 2d 719,

732 (S.D. Ohio 2006). Plaintiffs are equally entitled to a decision here.

Moreover, abstention is particularly inappropriate in cases impairing the right to vote, as "any restrictions on that right strike at the heart of representative government." *Harman v. Forssenius*, 380 U.S. 528, 537 (1965) (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)); *see also Edwards v. Sammons*, 437 F.2d 1240, 1244 (5th Cir. 1971) (interpreting *Harman* to mean that the "delay which follows from abstention is not to be countenanced in cases involving such a strong national interest as the right to vote"); *Siegel v. LePore*, 234 F.3d 1163, 1174 (11th Cir. 2000). Because this is a case in which "valuable federal rights might be lost in the absence of expeditious adjudication in the federal court," *Harris Cnty.*, 420 U.S. at 83, the Court should decline to exercise its discretion to abstain.[6]

### B.  Intervenors' remaining arguments are meritless.

1. *Scienter*. The Challenged Provisions' requirements that someone "knowingly" possess or return an absentee ballot do not cure its failure to provide adequate notice. The Supreme Court has recognized that even a "requirement that the act must be willful or purposeful" may not "render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain," and that a scienter requirement "cannot make definite that which is undefined." *Screws v. United States*, 325 U.S. 91, 102, 105 (1945) (plurality op.); *Forbes v. Woods*, 71 F. Supp. 2d 1015, 1020 (D. Ariz. 1999), *aff'd sub nom. Forbes v. Napolitano*, 236 F.3d 1009 (9th Cir. 2000) (same). Here, the knowledge requirement does not clarify the *undefined* terms in the statute. *See* Pl. St. Opp. Sec. III.B.I.

---

[6] Intervenors also contend, citing *Burson v. Freeman*, 504 U.S. 191, 210 n.13 (1992), that vagueness challenges "usually must be raised as defenses to prosecution rather than in pre-enforcement challenges." Int. Br. 17. But the cited case did not involve a vagueness claim and says nothing about vagueness claims needing to be raised as "defenses in prosecution rather than in pre-enforcement challenges." Indeed, courts in this circuit frequently adjudicate vagueness claims that are brought as pre-enforcement challenges. *See Peoples Rts. Org. v. City of Columbus*, 152 F.3d 522, 530 (6th Cir. 1998); *Friends of Georges, Inc. v. Mulroy*, 675 F. Supp. 3d 831, 854, 875 (W.D. Tenn. 2023). For further discussion, *see generally* Pl. St. Opp. Sec. III.A.

Whether a knowledge requirement alleviates vagueness concerns depends upon "the effect of the requirement in [the] case." *Boyce Motor Lines v. United States*, 342 U.S. 337, 342 (1952). Ordinarily, "the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 193 (1998). In this context, "knowingly" just exempts from prosecution a person who is unaware that the stack of mail they hold contains a ballot. That leaves unremedied Plaintiffs' vagueness concerns. *See* Pl. St. Opp. Sec. III. B.

To the extent Intervenors suggest that the knowledge requirement would insulate from prosecution an assistor who did not know their conduct violated the prohibition on "possess[ing]" or "return[ing]" a ballot, Int. Br. 20, they are wrong. A knowledge requirement does not disturb the basic maxim that ignorance of the law is no excuse. *See Staples v. United States*, 511 U.S. 600, 622 n.3 (1994) (Ginsburg, J., concurring); *Elonis v. United States*, 575 U.S. 723, 735 (2015) ("[O]ur cases have explained that a defendant generally must 'know the facts that make his conduct fit the definition of the offense,' . . . even if he does not know that those facts give rise to a crime.") (quoting *Staples*, 511 U.S. at 608 n.3); *United States v. Costigan*, 2000 WL 898455, at *4 (D. Me. June 16, 2000) (explaining that "[m]istake of fact is a defense, but mistake of law is not, because ignorance of the law is said to be no defense to a criminal charge"), *aff'd*, 18 F. App'x 2 (1st Cir. 2001). So an assistor's lack of knowledge that their conduct violated the law would only succeed as a defense if the law fails to provide sufficient notice of what it prohibits: in other words, if the law is vague. *United States v. Young*, 766 F.3d 621, 629 (6th Cir. 2014) (courts "apply the centuries-old maxim that ignorance of the law is no excuse" unless the statute is unconstitutionally vague) (quotations omitted)).

2. *Context*. As Plaintiffs have explained, one of several factors that contributes to the

Challenged Provisions' vagueness is the context of the overall statutory scheme.[7] Because the ordinary meaning of "possess" would be understood to wholly subsume any conduct captured by "return," then either the later-in-time addition of the "return" prohibition is superfluous, or "possess" cannot assume its ordinary meaning. *See* Pl. St. Opp. Sec. III.B.1.

Intervenors cite two cases for the proposition that it is "hardly unusual," Int. Br. 19, for statutory language to be "somewhat redundant," *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 n.5 (2020),[8] or "largely duplicative," *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 494 (6th Cir. 2019). Those cases are inapposite: neither involved vagueness claims, and both addressed the interpretation of civil rather than criminal laws. It is well-settled that civil laws are held to a less strict vagueness standard than criminal laws "because the consequences of imprecision are qualitatively less severe." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982). Here, not only do the Challenged Provisions have criminal consequences, their vagueness chills people who need assistance from exercising their right to vote. "[T]he clarity that the Constitution demands of a law" is even more stringent when vagueness "threatens to inhibit the exercise of constitutionally protected rights." *Id.* (calling this "perhaps the most important factor" in assessing the requisite clarity). General platitudes about belt-and-suspenders drafting are insufficient to justify vagueness in this context, where the clarity the Constitution requires is at its zenith.

---

[7] Intervenors ignore this context when referring to *Knox v. Brnovich*, 907 F.3d 1167 (9th Cir. 2018) as a failed vagueness challenge to a "similar ballot-harvesting prohibition." Int. Br. 19. There, the law clearly indicated its application to marked and unmarked ballots—unlike here—and the mail-carrier exceptions the plaintiff challenged as vague are not at issue in this case. *Knox*, 907 F. 3d at 1182-84.

[8] Intervenors mischaracterize the *Atl. Richfield Co.* Court as noting that the statutory phrase was "entirely redundant," Int. Br. 19, but that phrase does not appear in the opinion and overlooks the fact that the Supreme Court "usually seeks to 'avoid a reading which renders some words altogether redundant.'" *Atl. Richfield Co.*, 140 S. Ct. at 1360 n.3 (Alito J., concurring in part) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995)).

**CONCLUSION**

For all the foregoing reasons, the Court should deny Intervenors' Motion for Summary Judgment, grant Plaintiffs' Motion for Partial Summary Judgment, and issue the requested declaration and permanent injunction.

Respectfully submitted,

/s/ Freda J. Levenson
Freda J. Levenson (Bar. No. 0045916)
ACLU OF OHIO FOUNDATION, INC.
4506 Chester Avenue
Cleveland, OH 44103
(216) 541-1376
flevenson@acluohio.org

/s/ Megan C. Keenan
Megan C. Keenan*
AMERICAN CIVIL LIBERTIES UNION
915 15th Street NW
Washington, DC 20001
(740) 632-0671
mkeenan@aclu.org

/s/ Sophia Lin Lakin
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

*Attorneys for Plaintiffs*

*Admitted pro hac vice

14

## CERTIFICATE OF SERVICE

I, Megan C. Keenan, an attorney admitted to practice pro hac vice before this court, hereby certify that on June 14, 2024, the foregoing Memorandum in Opposition to Intervenors' Motion for Summary Judgment was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. The parties may access this filing through the Court's electronic filing system.

/s/ Megan C. Keenan
Megan C. Keenan
*Attorney for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Under Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has been assigned to the Expedited Track. Scheduling Order, ECF 31. I also certify that this memorandum does not exceed the 20-page limitation ordered by the Court. Order (May 7, 2024), ECF 39.

/s/ Megan C. Keenan
Megan C. Keenan
*Attorney for Plaintiffs*