IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LEAGUE OF WOMEN VOTERS OF OHIO, *et al.*,

        *Plaintiffs*,

    v.

FRANK LaROSE, *et al.*,

        *Defendants*,

REPUBLICAN NATIONAL COMMITTEE, *et al.*,

        *Intervenor-Defendants*.

Case No. 1:23-CV-02414

Judge Brennan

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

Table of Contents

STATUTORY BACKGROUND.................................................................................. 2

    I.   Section 208 of the Voting Rights Act ............................................................. 2

    II.   Title II of the ADA ......................................................................................... 2

DISCUSSION ....................................................................................................... 4

    I.   Ohio's Restriction on Assistance Violates Section 208 of the Voting Rights Act ......... 4

        a.   Section 208 Includes Assistance with Absentee Voting............................ 4

        b.   Section 208 Permits Only Two Exceptions to Its Guarantee of Assistance ............ 5

        c.   Section 208 Preempts Ohio's More Restrictive Law.................................. 7

        d.   Section 208 Does Not Violate the Anticommandeering Doctrine.......................... 10

        e.   Private Plaintiffs May Enforce Section 208 Under Either the Voting Rights Act's Implied Private Right of Action or 42 U.S.C. § 1983............................................. 11

        f.   This Court Should Defer Ruling on Section 208's Constitutionality ..................... 14

    II.   Failing to Make Reasonable Modifications that Give Voters with Disabilities an Equal Opportunity to Vote Violates the Americans with Disabilities Act.............................. 15

        a.   Title II's Equal Opportunity Requirement Prohibits More Than Outright Exclusion from a Program ....................................................................................... 15

        b.   Allowing Voters with Disabilities to Use an Assistor of Their Choice is a Reasonable Modification under Title II and would not Fundamentally Alter the Assistance Already Allowed in Ohio's Absentee Voting Program ........................................... 18

CONCLUSION..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Choate*, 469 U.S. 287 (1985)……………………………………………………15, 17

*Alexander v. Sandoval*, 532 U.S. 275 (2001)……………………………………………………11, 12

*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969)……………………………………………12, 13, 14

*Bragdon v. Abbott*, 524 U.S. 624 (1998)…………………………………………………………13

*Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979)……………………………………………………11, 12

*Crawford v. Marion Cnty. Election Bd.*, 533 U.S. 181 (2008)……………………………………………8

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)……………………………………………7

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)……………………………………………………11, 12

*Haaland v. Brackeen*, 599 U.S. 255 (2023)…………………………………………………………10

*Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264 (1981)………………………10

*Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150 (2016)………………………………………………9

*Lorillard v. Pons*, 434 U.S. 575 (1978)……………………………………………………………13

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)……………………………………………………7

*Morse v. Republican Party of Va.*, 517 U.S. 186 (1996)……………………………………………13, 14

*Murphy v. NCAA*, 584 U.S. 453 (2018)…………………………………………………………10, 11

*New York v. United States*, 505 U.S. 144 (1992)………………………………………………………11

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021)……………………………………………………………6

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015)……………………………………………………7

*PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001)………………………………………………………20

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015)………..13

*Thornburg v. Gingles*, 478 U.S. 30 (1986)…………………………………………………………5

*United States v. Raines*, 362 U.S. 17 (1960)……………………………………………………………12

*Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093 (11th Cir. 2011)………………....3

*Am. Council of the Blind v. Paulson*, 525 F.3d 1256 (D.C. Cir. 2008)……………………………19

*Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015)………………………………………....4, 18

*Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010)……………………………………10

*Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104 (3d Cir. 2018)……………………19

*Cnty. of Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935 (6th Cir. 2013)………………………..5

*Curry v. Baker*, 802 F.2d 1302 (11th Cir. 1985)……………………………………………………8

*Disabled in Action v. Bd. of Elections N.Y.C.*, 752 F.3d 189 (2d Cir. 2014)…………………17, 18

*Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921 (6th Cir. 2000)……………………………….....1

*Hindel v. Husted*, 875 F.3d 344 (6th Cir. 2017)……………………………………………………3

*In re Robinson*, 764 F.3d 554 (6th Cir. 2014)……………………………………………………….5

*Johnson v. City of Saline*, 151 F.3d 564 (6th Cir. 1998)……………………………………………3

*Johnson v. Gambrinus Co.*, 116 F.3d 1052 (5th Cir. 1997)………………………………………20

*Jones v. City of Monroe*, 341 F.3d 474 (6th Cir. 2003)……………………………………………20

*Marble v. Tennessee*, 767 F. App'x 647 (6th Cir. 2019)…………………………………………19

*McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453 (6th Cir. 1997)………………19

*Muhammad v. Ct. of C.P. of Allegheny Cnty.*, 483 F. App'x 759 (3d Cir. 2012)………………….15

*Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016)…………………………..*passim*

*OCA-Greater Hous. v. Texas*, 867 F.3d 604 (5th Cir. 2017)………………………………5, 8, 14

*United States v. Lewis*, 900 F.2d 877 (6th Cir. 1990)………………………………………………5

*United States v. Sands*, 948 F.3d 709 (6th Cir. 2020)……………………………………………….6

*Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006)...........................15
*Wisniewski v. Rodale, Inc.*, 510 F.3d 294 (3d Cir. 2007)................................................................11
*Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020 (W.D. Wis. 2022).......................4, 7
*Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158 (M.D.N.C. 2020).....5, 14, 17
*Disability Rts. Miss. v. Fitch*, 684 F. Supp. 3d 517 (S.D. Miss. 2023)..............................4, 14
*Disability Rts. N.C. v. N.C. State Bd. of Elections*, 602 F. Supp. 3d 872 (E.D.N.C. 2022).....4, 5, 6
*Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974 (N.D. Fla. 2021)..............................14
*La Unión del Pueblo Entero v. Abbott*, 618 F. Supp. 3d 388 (W.D. Tex. 2022)......................14
*New Ga. Project v. Raffensperger*, 484 F. Supp. 3d 1265 (N.D. Ga. 2020)............................14
*O.B. v. Norwood*, 170 F. Supp. 3d 1186 (N.D. Ill. 2016).....................................................20
*Priorities USA v. Nessel*, 487 F. Supp. 3d 599 (E.D. Mich. 2020)..............................6, 7, 14
*Priorities USA v. Nessel*, 628 F. Supp. 3d 716 (E.D. Mich. 2022)...................................6, 8
*Am. Council of the Blind of Ind. v. Ind. Election Comm'n*, No. 1:20-cv-03118, 2022 WL 702257 (S.D. Ind. Mar. 9, 2022)................................................................................17, 18
*Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 5:21-CV-361, 2022 WL 2678884 (E.D.N.C. July 11, 2022)..............................................................................................7
*Hindel v. Husted*, No. 2:15-cv-3061, 2016 WL 2735935 (S.D. Ohio May 11, 2016)...........17, 18
*Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008).......................8
*Clark v. Quick*, 36 N.E.2d 563 (Ill. 1941)........................................................................8
*DiPietrae v. City of Phila.*, 666 A.2d 1132 (Pa. Commw. Ct. 1995)....................................9
*Qualkinbush v. Skubisz*, 357 Ill. App. 3d 594 (2004)..................................................8, 9

**Statutes**

28 U.S.C. § 517......................................................................................................1
28 U.S.C. § 2403...................................................................................................14
42 U.S.C. § 12101(a)(3)..........................................................................................2
42 U.S.C. § 12132..............................................................................................2, 4
42 U.S.C. §§ 12133-12134, 12206.........................................................................1
42 U.S.C. § 12134..................................................................................................3
42 U.S.C. § 12203(b)..............................................................................................3
52 U.S.C. §§ 10101(c), 10307(a), 10308(d)..............................................................1
52 U.S.C. § 10302................................................................................................12
52 U.S.C. § 10304................................................................................................12
52 U.S.C. § 10308(f)............................................................................................12
52 U.S.C. § 10310(c)(1).......................................................................................2, 4
52 U.S.C. § 10310 (e)...........................................................................................13
52 U.S.C. § 10501(b)(1)..........................................................................................2
52 U.S.C. § 10508......................................................................................2, 4, 5, 19
52 U.S.C. §§ 20101-20107....................................................................................13
52 U.S.C. § 20101................................................................................................13
52 U.S.C. § 20104(c)............................................................................................13
52 U.S.C. § 20105(a)............................................................................................13
Ohio Rev. Code §§ 2929.14(A)(4), 2929.18(A)(3)(d), 3599.21(C)..................................1

i

**Rules and Regulations**

28 C.F.R. pt. 35………………………………………………………………………………1, 3

28 C.F.R. §§ 35.104, 35.149-51…………………………………………………………………15

28 C.F.R. § 35.130(b)(1)(i)-(iii)……………………………………………………………15, 16

28 C.F.R. § 35.130(b)(1)(ii)-(iii)……………………………………………………....3, 15, 17

28 C.F.R. § 35.130(b)(3)(i)……………………………………………………………………...3

28 C.F.R. § 35.130(b)(7)………………………………………………………………………15

28 C.F.R. § 35.130(b)(7)(i)…………………………………………………………………3, 18

Fed. R. Civ. P. 5.1…………………………………………………………………...........14

**Secondary Authorities**

S. Rep. No. 94-295 (1975), *reprinted in* 1975 U.S.C.C.A.N. 774……………………………12, 13

S. Rep. No. 97-417 (1982), *reprinted in* 1982 U.S.C.C.A.N. 177……………………………*passim*

A (*adj.*), Oxford Eng. Dictionary (3rd ed. 2008)………………………………………………...6

Rodney A. Smolla, FED. CIVIL RIGHTS ACTS, § 2:87 (3rd ed. 2024)………………………………8

The United States respectfully submits this Statement of Interest to clarify the proper legal framework for addressing the claims raised in this case under Section 208 of the Voting Rights Act and Title II of the Americans with Disabilities Act (ADA or Title II).[1] Plaintiffs have sued under Section 208 and Title II,[2] alleging Ohio's absentee voting law criminalizing possession or return of the absentee ballot of another voter by anyone other than a prescribed list of authorized persons[3] violates the rights of Ohio voters with disabilities. In their motions for summary judgment, Secretary LaRose, Attorney General Yost, other state Defendants, and Intervenor-Defendants Republican National Committee and Ohio Republican Party (collectively Defendants), misconstrue the requirements of Section 208 and the ADA. They argue incorrectly that Section 208 does not preempt Ohio's absentee ballot assistance restriction law and that there is no private right of action under Section 208. They also argue erroneously that voters with disabilities have meaningful access to absentee voting because the law allows multiple methods of voting, does not

---

[1] The United States files this Statement of Interest under 28 U.S.C. § 517, which permits the Attorney General to attend to the interests of the United States in any case pending in federal court. The Department of Justice (Department) is charged with enforcing the Voting Rights Act on behalf of the United States. 52 U.S.C. §§ 10101(c), 10307(a), 10308(d). The Department further is charged with enforcing and implementing the ADA by promulgating regulations, issuing technical assistance, and bringing suits in federal court to enforce the statute. 42 U.S.C. §§ 12133-12134, 12206; 28 C.F.R. pt. 35. Thus, the United States has an interest in the proper and uniform application of Section 208 and Title II.

[2] Plaintiffs also bring constitutional claims and a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. This Statement of Interest focuses on the ADA and Section 208 claims. However, Section 504 involves the same substantive standards and is subject to the same analysis as the ADA. *See Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000) (explaining that because "the purpose, scope and governing standards" of the ADA and the Rehabilitation Act are largely the same, courts analyze parallel claims under both statutes together). Similarly, Plaintiffs bring a claim under 42 U.S.C. § 1983. *See infra* at 11-12.

[3] The law contains two voter assistance restrictions (described fully in Plaintiff's Motion for Summary Judgment (ECF No. 42-1, at 4-5)), which limit who may possess and return an absentee ballot to a narrow list of certain family members. The law also makes violation of either restriction a fourth-degree felony, punishable by a prison term of 6 to 18 months and a fine of up $5000. Ohio Rev. Code §§ 2929.14(A)(4), 2929.18(A)(3)(d), 3599.21(C).

specifically prevent voters from voting, and any reasonable modifications would fundamentally alter the balance between access and security that Ohio has struck for absentee voting.

Section 208 requires that individuals who need assistance to vote because of their disabilities be given assistance by a person of the voter's choice, not limited to a prescribed list of family members.  Under Title II, public entities must provide voters with disabilities an equal opportunity, not merely some opportunity, to vote. Along with ensuring that people with disabilities have equal access to their voting services, programs, and activities, public entities must make reasonable modifications to their policies, practices, or procedures to avoid discrimination unless the modifications would fundamentally alter the nature of the service, program, or activity.

## STATUTORY BACKGROUND

### I.      Section 208 of the Voting Rights Act

Section 208 states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. "Vote" and "voting" broadly encompass "all action necessary to make a vote effective," including "casting a ballot[] and having such ballot counted properly." *Id.* § 10310(c)(1). Congress passed Section 208 to "assure meaningful voting assistance" for members of the covered groups and their "greater participation in our electoral process." S. Rep. No. 97-417, at 62-63 (1982), *reprinted in* 1982 U.S.C.C.A.N. 177, 240; *see also* 52 U.S.C. § 10501(b)(1).

### II.     Title II of the ADA

Under Title II, a public entity may not "den[y] the benefits of [its] services, programs, or activities" to a qualified individual with a disability or subject any such individual to discrimination. 42 U.S.C. § 12132. In enacting the ADA, Congress found that discrimination persists in "critical areas" such as "voting, and access to public services." *Id.* § 12101(a)(3); *cf.*

2

*Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998) ("the phrase 'services, programs, or activities' encompasses virtually everything that a public entity does"). Title II encompasses voting programs and activities, including absentee voting. *E.g.*, *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (holding that the ADA applies to absentee balloting); *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1107 (11th Cir. 2011) ("As a public program, disabled citizens must be able to participate in the County's voting program."); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) ("Voting is a quintessential public activity.").

Title II's implementing regulation, 28 C.F.R., pt. 35, effectuates this broad nondiscrimination mandate. *See* 42 U.S.C. § 12134. The regulation, in part, prohibits public entities from: (1) affording an individual with a disability "an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," 28 C.F.R. § 35.130(b)(1)(ii); (2) providing "an aid, benefit, or service that is not as effective in affording equal opportunity," *id.* § 35.130(b)(1)(iii); or (3) using "criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination," *id.* § 35.130(b)(3)(i).[4]  The regulation also obligates public entities to "make reasonable modifications in policies, practices, or procedures" when necessary to avoid discrimination. *Id.* § 35.130(b)(7)(i). A public entity is excused from this obligation only if it can demonstrate that the requested modifications would "fundamentally alter" the nature of the program. *Id.*

---

[4] The Department notes that the ADA also prohibits state and local governments from intimidating or coercing voters with disabilities (or people who aid them) in exercising their rights under the ADA. 42 U.S.C. § 12203(b). State laws that restrict people from assisting with voting, subject to criminal penalties, may chill assistors from aiding voters with disabilities and thus impermissibly interfere with voters' rights to assistance under the ADA.

To prove a violation of Title II, a plaintiff must show that they: (1) have a disability; (2) are otherwise qualified to receive the benefits of the defendant's service, program, or activity; and (3) were excluded from participation in, denied the benefits of the service, program, or activity, or were otherwise subjected to discrimination, on the basis of their disability. 42 U.S.C. § 12132; *see Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citing *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008)).

## DISCUSSION

**I.    Ohio's Restriction on Assistance Violates Section 208 of the Voting Rights Act**

**a.    Section 208 Includes Assistance with Absentee Voting**

Section 208 provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. 10508. Contrary to Intervenor-Defendants' implication, ECF No. 44-1 at 15-16, the statute contains no carveout for any particular method of voting, instead allowing "any voter" who needs assistance because of disability to receive assistance "to vote." *Id*. Certainly, a person is a "voter" regardless of whether they cast a ballot in person or by mail. And the Voting Rights Act defines "vote" and "voting" broadly as "*all* action necessary to make a vote effective," including but not limited to actions required to "cast[] a ballot, and hav[e] such ballot counted." 52 U.S.C. § 10310(c)(1) (emphasis added). Completing an absentee ballot and mailing or otherwise delivering the absentee ballot is necessary to cast it and have it counted.

Multiple courts agree, and State Defendants do not dispute, that Section 208 applies to absentee voting. *See, e.g.*, *Disability Rts. Miss. v. Fitch*, 684 F. Supp. 3d 517, 519 (S.D. Miss. 2023); *Disability Rts. N.C. v. N.C. State Bd. of Elections*, 602 F. Supp. 3d 872, 877 (E.D.N.C. 2022) ("*Disability Rts. N.C. I*"); *Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020, 1033

(W.D. Wis. 2022); *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 235-36 (M.D.N.C. 2020). These decisions confirm that a voter who is physically unable to return an absentee ballot because of disability faces the same barrier to making their vote "effective" as a voter who cannot physically place their ballot in the ballot box at the polls because of disability.

### b. Section 208 Permits Only Two Exceptions to Its Guarantee of Assistance

Section 208 is "unambiguous." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017). It guarantees certain voters the right to assistance from "a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. The statute provides no other exceptions and allows no leeway to impose or imply exceptions to the statutory language. *See OCA-Greater Hous.*, 867 F.3d at 614-15; *Disability Rts. N.C. I*, 602 F. Supp. 3d at 877. "Where Congress creates specific exceptions to a broadly applicable provision, the 'proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.'" *Cnty. of Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935, 940 (6th Cir. 2013) (quoting *United States v. Johnson*, 529 U.S. 53, 58 (2000)). *Accord In re Robinson*, 764 F.3d 554, 562 (6th Cir. 2014) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)); *United States v. Lewis*, 900 F.2d 877, 881 (6th Cir. 1990).

Section 208's legislative history mirrors the statute's plain language. The Senate Judiciary Committee's Report is the "authoritative source for legislative intent" regarding the 1982 amendments to the Voting Rights Act. *Thornburg v. Gingles*, 478 U.S. 30, 43 n.7 (1986). Congress recognized that some people "may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice." S. Rep. No. 97-417 at 62, 1982 U.S.C.C.A.N. 177, 240, and it was "concerned that some people in this situation do in fact elect to forfeit their right to vote." *Id.* Wanting "[t]o limit the risks of discrimination against voters in these specified groups and avoid denial or infringement of their right to vote" and to

"encourage[] greater participation in our electoral process," Congress concluded that Section 208 was "the only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter." *Id.* at 62-63. Congress therefore required that covered voters be allowed assistance "from a person of their own choosing, with two exceptions" and only two. *Id.* at 62.

State Defendants argue that Congress's use of an indefinite article in Section 208— guaranteeing voters "assistance by *a* person of the voter's choice"—permits states to limit a voter's right to choose an assistor. ECF No. 43 at 11-12. Not so. An indefinite article, by definition, "[i]ndicat[es] indefiniteness" and can reasonably mean "one" or "any." *See* A (*adj.*), Oxford Eng. Dictionary (3rd ed. 2008), *available online at https://perma.cc/9SRD-STYS; see also United States v. Sands*, 948 F.3d 709, 713 (6th Cir. 2020).  As a result, "context matters" when determining what "a" means, *Niz-Chavez v. Garland*, 593 U.S. 155, 162-63 (2021). State Defendants ignore several crucial points of context here: Section 208's enumerated exceptions, its command that assistors reflect "the voter's choice," and the likelihood that some covered voters will have only one assistor of choice. Section 208's use of "a" to modify "person" does not obviate its protections nor its essential guarantee, nor is it evidence of an "intent by Congress to allow states to restrict or nullify a federally created right, for Congress does not 'hide elephants in mouseholes.'" *Disability Rts. N.C. I*, 602 F. Supp. 3d at 878 (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)).

Finally, State Defendants rely on flawed opinions from a single case. ECF No. 43 at 11-12 (citing *Priorities USA v. Nessel*, 487 F. Supp. 3d 599 (E.D. Mich. 2020) ("*Nessel I*"), *rev'd and remanded*, 860 F. App'x 419 (6th Cir. 2021) and *Priorities USA v. Nessel*, 628 F. Supp. 3d 716 (E.D. Mich. 2022) ("*Nessel II*")). These opinions failed to consider the word "a" in context and flouted the settled canon that enumerated statutory exceptions are presumed to be exclusive. In

addition, *Nessel I* engaged in an undue burden analysis unsupported by the statute and preemption law, and it misread the legislative history by ignoring the importance of voter choice as Congress's chosen remedy. *Nessel*'s Section 208 analysis is a flawed outlier, and the United States has found no case relying on it. This Court should refrain from adopting it here.

### c. Section 208 Preempts Ohio's More Restrictive Law

"[S]tate law is naturally preempted to the extent of any conflict with a federal statute." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Conflict preemption exists when "'compliance with both state and federal law is impossible,' or where 'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (quoting *California v. ARC Am. Corp.*, 490 U.S. 93, 100-01 (1989)). Congressional purpose is "the ultimate touchstone in every preemption case," and "any understanding of the scope of a pre-emption statute must rest primarily on a fair understanding of congressional purpose." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996) (internal citations omitted).

Section 208's text is clear: it grants two exceptions only to a voter's right to an assistor of choice. *See supra* at 5. And Congress's aim is also clear: to encourage voter participation and limit intimidation or manipulation of the voter by allowing them assistance from whomever they want, with only two limitations. *See supra* at 5-6. *See also Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 5:21-CV-361, 2022 WL 2678884, at *4 (E.D.N.C. July 11, 2022); *Carey*, 624 F. Supp. 3d at 1033. Ohio's attempt to deny voters with disabilities their right to an assistor of choice conflicts with Section 208's text and purpose. It is therefore preempted.

To be sure, Ohio law provides some rights to persons with disabilities who need assistance with voting. But as the Fifth Circuit recognized in *OCA-Greater Houston*, "[i]t should go without saying that a state cannot restrict [Section 208's] federally guaranteed right by enacting a statute

tracking its language, then defining terms more restrictively than as federally defined." 867 F.3d at 615. That is exactly what happened here: Ohio enacted a statute allowing persons with disabilities to receive assistance with returning their absentee ballots, but the State restricted those voters' choices more narrowly than Section 208.

Intervenor-Defendants urge this court to ignore basic principles of conflict preemption and instead import an "undue burden" analysis. ECF No. 53 at 18 (incorporating cases described in ECF No. 44-1 at 15). None of the four cases cited is persuasive. First, *Nessel II*, 628 F. Supp. 3d at 727, improperly relied on the *Anderson-Burdick* balancing test, which applies to constitutional claims. *See, e.g.*, Rodney A. Smolla, FED. CIVIL RIGHTS ACTS, § 2:87 (3rd ed. 2024) ("The Anderson-Burdick test is the default 'all-purpose' test employed by courts to test constitutional challenges to elections, and may apply to First Amendment claims as well as to Equal Protection claims."); *Crawford v. Marion Cnty. Election Bd.*, 533 U.S. 181, 190 (2008) (noting that the test applies when "a court evaluat[es] a constitutional challenge to an election regulation"). Second, *Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008), predated the Fifth Circuit's binding directive in *OCA-Greater Houston* that a "state cannot restrict [Section 208's] federally guaranteed right by enacting a statute tracking its language, then defining terms more restrictively than as federally defined," 867 F.3d at 615. Third, *Qualkinbush v. Skubisz*, 357 Ill. App. 3d 594, 608 (2004), relies on two inapposite cases involving state law questions about ballot-counting, not violations of federal rights. *See Clark v. Quick*, 36 N.E.2d 563 (Ill. 1941); *Curry v. Baker*, 802 F.2d 1302, 1316-17 (11th Cir. 1985) (rejecting plaintiffs' "ordinary dispute over the counting and marking of ballots" because it did not "rise to the level of a constitutional deprivation," and noting that plaintiffs failed to use the process available under state law) (internal

citations omitted).[5] Fourth, *DiPietrae v. City of Philadelphia* offers only a single sentence of what purports to be analysis: "The trial court's proviso that 'an individual cannot be the agent for persons living in more than one household' appears to be a reasonable means of balancing the rights of a disabled person who wishes to vote with the public need to insure a fair election.'" 666 A.2d 1132, 1135-36 (Pa. Commw. Ct. 1995). But Section 208 contains no balancing test, and the court did not mention—let alone consider—that Section 208 permits two exceptions only to its assistance guarantee.

Finally, neither Intervenor-Defendants' imagined horribles, ECF No. 44-1 at 14-15, 16, nor State Defendants' strained ballot security arguments, ECF No. 43 at 15, avoid preemption. Intervenor-Defendants cannot substitute their judgment for Congress's or rewrite federal law.[6] And states may not achieve legitimate ends through means that intrude on federal law. *See Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 164 (2016). Ohio's law is so broad as to exclude not only common assistors (such as domestic partners, roommates, neighbors, and caregivers) but also two categories of persons—coworkers and fellow union-members—that Congress specifically provided are *not* excluded from serving as assistors under Section 208. S. Rep. No. 97-417 at 64.

---

[5] *Qualkinbush* suffers from a multitude of deficiencies. For instance, counterpetitioner's argument did not address whether the state law in question actually conflicted with the Voting Rights Act. The Counterpetitioner cited no authority for the proposition that the state law was preempted by the Voting Rights Act. The court improperly interpreted the Senate Judiciary Committee's comments as referring only to *in-booth* voting. And the court relied on the Senate Judiciary Committee's concern about undue influence or manipulation to coin additional restrictions on assistors, thus discarding the Committee's limited and calculated approach. *Id.* at 607, 610-11.

[6] Intervenor-Defendants go so far as to ask whether a State must release a prisoner if a voter wants his assistance. Of course not. A common-sense reading of the statute suggests that a person must be willing and able to assist in order to be considered an assistor of choice. And an incarcerated person is unable to provide voting assistance for reasons unrelated to Ohio's election laws.

Accordingly, Section 208 preempts Ohio's restrictions on who may possess and return an absentee ballot on behalf of a voter whose need for assistance is protected by the federal law.

### d. Section 208 Does Not Violate the Anticommandeering Doctrine

The anticommandeering doctrine requires Congress to legislate directly, rather than "command a state government to enact *state* regulation," "compel[] States to enact and enforce a federal regulatory program," or "conscript state governments as its agents." *Murphy v. NCAA*, 584 U.S. 453, 472 (2018) (internal citations omitted). But Congress did legislate directly when it enacted Section 208, conferring on private actors a federal right to vote with an assistor of choice. And it is precisely this direct regulation that marks the difference between a federal law with preemptive authority and a federal law that unconstitutionally directs a state to act. *See id.* at 479 ("[E]very form of preemption is based on a federal law that regulates the conduct of private actors, not the States."); *see generally id.* at 477-80. *Cf. Haaland v. Brackeen*, 599 U.S. 255, 281 (2023) (explaining that a statute must "harness[] a State's legislative or executive authority" to violate the anticommandeering doctrine, and "[a statutory] demand that either public or private actors can satisfy is unlikely to require the use of sovereign power."); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1069 (9th Cir. 2010) (declining to extend the anticommandeering doctrine to actions by private parties to enforce their own rights under federal law and the Constitution).

If Ohio must now "enact *new* statutes to ensure the same level of election integrity," ECF No. 43 at 15, it is because it passed a law that conflicts with Federal law; preemption is the natural consequence of that decision. *Cf. Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 289-91 (1981) (squarely rejecting the argument that federal preemption of state regulatory authority commandeers the legislative processes of States). Section 208 does not "unequivocally dictate[] what a state legislature may and may not do," ECF No. 43 at 15. If the state wants to enact different laws to achieve its election integrity aims, it may do so. *See* S. Rep. No. 97-417 at 63

10

("State provisions would be preempted only to the extent that they unduly burden the right recognized in this section, with that determination being a practical one dependent upon the facts.").[7] This is a valid exercise of Congress's preemptive authority.

### e. Private Plaintiffs May Enforce Section 208 Under Either the Voting Rights Act's Implied Private Right of Action or 42 U.S.C. § 1983

When determining whether there is an implied private right of action under the VRA or 42 U.S.C. § 1983, courts begin by asking the same question: whether the statute in question confers an individual right, i.e. whether it contains "rights-creating language." *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-87 (2002). The answer flows directly from the statute's "text and structure." *See Sandoval*, 532 U.S. at 288.

To determine whether a statute contains "rights-creating language," courts analyze whom the statute benefits. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 690 (1979). If it explicitly refers to a right and focuses on individuals rather than regulators, Congress likely intended to create a private right. *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 302 (3d Cir. 2007) (summarizing the relevant section of *Sandoval*, 532 U.S. at 288-89). Section 208 grants voters who are blind, disabled, or unable to read or write—the "special class to be benefited," *Cannon*, 441 U.S. at 690—an explicit

---

[7] The important purposes of the anticommandeering doctrine are not applicable here. First, the doctrine protects the balance of power between States and the Federal Government, *Murphy* 584 U.S. at 473, but Section 208 does not forbid or require a State or its officers to take specific action; it gives individuals a right, as explained *infra* at 11-12. In any event, the Voting Rights Act enforces the Fifteenth Amendment, which forbids states from denying or abridging the right to vote and gives Congress power to enforce that prohibition. U.S. Const., Amend. XV. Second, the doctrine promotes political accountability by ensuring that state officials are not blamed for Congress's regulatory decisions, *Murphy* 584 U.S. at 473-74, but the Voting Rights Act is landmark legislation and Section 208 was enacted 42 years ago, so there is hardly any risk of "state officials [bearing] the brunt of public disapproval, while the federal officials who devised the regulatory program may remain insulated from the electoral ramifications of their decision." *New York v. United States*, 505 U.S. 144, 169 (1992). Third, the doctrine prevents Congress from shifting regulatory costs to the States, *Murphy* 584 U.S. at 474, but compliance with Section 208 costs nothing.

right to a voting assistant of their choice. Courts have relied on similar language to infer Congress's intent to create a private right of action to enforce Section 5 of the VRA. *Allen v. State Bd. of Elections*, 393 U.S. 544, 555 (1969); *Cannon*, 441 U.S. at 690; *see* 52 U.S.C. § 10304.

Because the statute confers an individual right, and because "Section 1983 generally supplies a remedy for the vindication of rights secured by federal statutes," private plaintiffs presumptively have an express right of action under 42 U.S.C. § 1983. *Gonzaga Univ.*, 536 U.S. at 284-85. To determine if there is an implied right of action under the VRA, courts ask a second question: whether Congress has "manifest[ed] an intent to create a private remedy." *Sandoval*, 532 U.S. at 289.

Because Section 208 contains rights-creating language, a strong presumption exists that Congress intended to create a private remedy to enforce those rights. *See, e.g.*, *Cannon*, 441 U.S. at 690 n.13; *Sandoval*, 532 U.S. at 288. And the presumption is even stronger here because voting rights typically are considered "private rights" that inhere in individual citizens. *See United States v. Raines*, 362 U.S. 17, 27 (1960).

Other sections of the Voting Right Act demonstrate Congress's intent to create a private remedy under the Act for individuals and organizations. Section 12(f) gives courts jurisdiction "without regard to whether a person asserting rights" has exhausted any administrative or other remedies. 52 U.S.C. § 10308(f). Section 3 provides specific remedies to "the Attorney General or an aggrieved person" in lawsuits brought "under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302; S. Rep. No. 94-295 at 40 (1975), *reprinted in* 1975 U.S.C.C.A.N. 774, 806-07 (stating that an "aggrieved person" includes "an individual or an organization representing the interests of injured persons"). And Section 14(e) confers a right to attorney's fees for "the prevailing party, other than the United States." 52 U.S.C.

§ 10310(e). Accordingly, the Supreme Court has recognized private rights of action in Sections 2, 5, and 10 of the Act. *See Allen,* 393 U.S. at 555-57; *Morse v. Republican Party of Va.*, 517 U.S. 186, 231-34 (1996) (plurality opinion); *accord id.* at 240 (opinion of Breyer, J., concurring in the judgment). Just as it would be "anomalous" to find a private right of action for Sections 2 and 5 but not Section 10, *Morse,* 517 U.S. at 232, so too it would be anomalous to not find a private right of action for Section 208.[8]

The contemporary legal context reaffirms Congress's intent. Given that courts at the time regularly heard private suits to enforce the VRA, *see Morse*, 517 U.S. at 231 (quoting *Cannon*, 441 U.S. at 698 nn.22–23), Congress would have been "aware of this unanimous precedent," *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536 (2015), when it added Section 208 to the VRA. *See also* S. Rep. No. 94-295 at 40 (finding the award of attorneys' fees "appropriate" in the 1975 VRA extension because "Congress depends heavily on private citizens to enforce the fundamental rights involved"); *Lorillard v. Pons*, 434 U.S. 575, 581 (1978) (holding that when "Congress adopts a new law incorporating sections of a prior law, [it] normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."); *Bragdon v. Abbott*, 524 U.S. 624, 644-45 (1998).

---

[8] Section 208 is not enforced differently from the rest of the VRA. Contrary to Intervenor-Defendants' urging, *see* ECF No. 44-1 at 16, 52 U.S.C. § 20104(c) applies to an entirely different statutory scheme called the Voting Accessibility for the Elderly and Handicapped Act ("VAEHA"), 52 U.S.C. §§ 20101–20107. Congress enacted VAEHA in 1984 to improve "access for handicapped and elderly individuals to registration facilities and polling places." 52 U.S.C. § 20101. Section 20104(c)'s requirement that certain voters be notified of resources that may assist them in voting, including assistance under Section 208, says nothing about a *remedy for violating Section 208*. Indeed, Section 20104(c) does not even provide a remedy for violating VAEHA; that remedy is set forth in Section 20105. 52 U.S.C. § 20105(a).

13

It is no surprise, then, that courts have consistently heard the claims of individuals and organizations under Section 208 without expressing any doubt about their ability to bring such claims. *See, e.g.*, *OCA-Greater Hous.*, 867 F.3d at 609-14; *Disability Rts. Miss.*, 684 F. Supp. 3d at 520-21; *La Unión del Pueblo Entero v. Abbott*, 618 F. Supp. 3d 388, 432-35 (W.D. Tex. 2022); *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 988-90 (N.D. Fla. 2021); *New Ga. Project v. Raffensperger*, 484 F. Supp. 3d 1265, 1301 (N.D. Ga. 2020), *appeal dismissed*, No. 20-13360-DD, 2021 WL 4128939 (11th Cir. Mar. 9, 2021); *Nessel I*, 462 F. Supp. 3d at 806-07; *Democracy N.C.*, 476 F. Supp. 3d at 233-36. These and other private lawsuits enforcing the VRA are crucial because "[t]he Attorney General has a limited staff," and thus "[t]he achievement of the Act's laudable goal [would] be severely hampered, . . . if each citizen were required to depend solely on litigation instituted [by] the Attorney General." *Allen*, 393 U.S. at 556; *see also Morse*, 517 U.S. at 231-32 (attaching "significance to the fact that the Attorney General had urged us to find that private litigants may enforce the Act").

### f.  This Court Should Defer Ruling on Section 208's Constitutionality

State Defendants' opposition brief raises for the first time that Congress lacked constitutional authority to enact Section 208. ECF No. 49, 2-6. Federal Rule of Civil Procedure 5.1 requires any party questioning the constitutionality of a federal statute to promptly file a notice and serve the notice and motion on the Attorney General, if the United States is not already a party. Fed. R. Civ. P. 5.1(a). The court must also, under 28 U.S.C. § 2403, certify to the Attorney General that a statute has been questioned. Fed. R. Civ. P. 5.1(b). The Attorney General has at least 60 days from the notice or certification to intervene. Fed. R. Civ. P. 5.1(c). The court may uphold the statute at any time, but because no notice has been filed and because the court has not yet certified the issue to the Attorney General, it may not enter a final judgment holding the statute unconstitutional until the time to intervene expires. *Id.*

14

## II. Failing to Make Reasonable Modifications that Give Voters with Disabilities an Equal Opportunity to Vote Violates the Americans with Disabilities Act

### a. Title II's Equal Opportunity Requirement Prohibits More Than Outright Exclusion from a Program

Defendants argue that, because Ohio offers voters with disabilities multiple ways to vote by absentee ballot and does not prevent voters from voting absentee, Plaintiffs cannot show that these voters lack "meaningful access" to Ohio's absentee voting program.[9] Defendants are wrong.

Defendants mostly ignore Title II's explicit equal opportunity requirement, suggesting that Title II only requires reasonable modifications to address outright exclusion from any method of voting.[10] Defendants' arguments fail to acknowledge that public entities must provide equal access for people with disabilities to the benefits of all their voting services, programs, and activities, 28 C.F.R. § 35.130(b)(1)(i)-(iii), *and* make reasonable modifications to avoid discrimination unless the modifications would fundamentally alter the nature of the service, program, or activity, *id.* § 35.130(b)(7). These are distinct responsibilities. *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006) (en banc); *Muhammad v. Ct. of C.P. of Allegheny Cnty.*, 483 F. App'x 759, 763 (3d Cir. 2012) (same); *Lamone*, 813 F.3d at 507. Failing to provide equal access

---

[9] Defendants use the term "meaningful access" to describe the legal standard under Title II. *E.g.*, ECF Nos. 43 at 3-8; 44-1 at 6. This term originates in neither Title II nor Section 504 but comes from the Supreme Court's decision in *Alexander v. Choate*, in which the Court interpreted Section 504's requirements. 469 U.S. 287, 290-303 (1985). Although some courts have used the term "meaningful access" to describe the legal standard under Title II, the regulation uses the term "equal opportunity" and requires a public entity to provide "equal opportunity" to its benefits, programs, and services. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

[10] Defendants' references to Title II's program accessibility requirements, *e.g.*, ECF No. 43 at iii, 3, are misplaced. Title II requires public entities to make their "facilities" (all or any portion of buildings and structures) physically accessible, so that their programs and activities, when viewed in their entirety, are "readily accessible" to and usable by individuals with disabilities. 28 C.F.R. §§ 35.104, 35.149-51. The physical accessibility of polling places is not at issue here, so any arguments based on these requirements are irrelevant.

to the benefits of each voting mechanism can violate the ADA. And, separately, as described below, failing to make reasonable modifications can also violate the ADA.

Defendants incorrectly contend that having multiple voting methods equates to "meaningful access," and therefore satisfies their obligations under the ADA. They argue that a violation of Title II only occurs when a voter with a disability is denied the ability to cast an absentee ballot privately and independently, is denied assistance, or is prevented from voting. *E.g.*, ECF Nos. 43 at 5; 44-1 at 6. But that argument is inconsistent with the ADA. It would read out protections from the plain text of Title II and its regulation that prohibit public entities from denying the benefits of services, programs, or activities to individuals on the basis of disability.

The Title II regulation prohibits public entities from "deny[ing]" people with disabilities an "*equal opportunity*" to participate in services. 28 C.F.R. § 35.130(b)(1)(i)-(iii) (emphasis added). It also prohibits public entities from providing unequal or less effective services to people with disabilities. Making voting harder for people with disabilities than it is for people without disabilities can violate the ADA, even if people with disabilities have some minimal access to voting. Making it more difficult for voters with disabilities to participate in any part of an absentee ballot program—including marking and returning an absentee ballot—can violate the ADA.

The Fourth Circuit's decision in *Lamone* is instructive in applying the ADA to absentee voting. The court determined that Maryland's prohibition against the use of an online ballot marking tool failed to provide voters with disabilities an opportunity to vote that was equal to the opportunity provided to other voters. *Lamone*, 813 F.3d at 507-08. The *Lamone* court observed that voters without disabilities had the benefit of marking a ballot without assistance and the online ballot marking tool was intended to extend this same benefit to voters with certain disabilities. Unlike the state Defendants' characterization of *Lamone* as requiring only private and independent

16

absentee voting, *see* ECF No. 43 at 5, *Lamone*'s focus is on the opportunities afforded voters and whether the particular opportunities are equally provided, *see Lamone*, 813 F.3d at 506 ("This case does not turn on whether there is a standalone right to vote privately and independently[,]" but whether such a benefit was provided to voters without disabilities "while denying that same benefit to [voters with disabilities] on the basis of their disability"). Other courts have adopted this approach, including a court interpreting a predecessor of the assistance restriction law at issue here. *See Hindel v. Husted*, No. 2:15-cv-3061, 2016 WL 2735935, at *5-6 (S.D. Ohio May 11, 2016), *rev'd on other grounds*, 875 F.3d 344 (6th Cir. 2017) (following *Lamone*); *see also Disabled in Action v. Bd. of Elections N.Y.C.*, 752 F.3d 189, 199 (2d Cir. 2014); *Am. Council of the Blind of Ind. v. Ind. Election Comm'n*, No. 1:20-cv-03118, 2022 WL 702257, at *8 (S.D. Ind. Mar. 9, 2022).[11] As the Fourth Circuit found and the plain language of the regulation states, denying voters with disabilities an equal opportunity to participate in absentee voting can violate the ADA. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

Further, to construe Title II as prohibiting only total exclusion from absentee voting would negate Title II's antidiscrimination prohibitions. *See Disabled in Action*, 752 F.3d at 199 ("[T]o assume the benefit is . . . merely the opportunity to vote at some time and in some way" would render the equal opportunity mandate "meaningless."); *cf. Alexander*, 469 U.S. at 301 n.21 ("'Antidiscrimination legislation can obviously be emptied of meaning if every discriminatory

---

[11] State Defendants cite *In re Georgia Senate Bill 202*, Nos. 1:21-mi-55555, 1:21-cv-01284, 2023 WL 5334615 (N.D. Ga. Aug. 18, 2023) to support their proposition that having multiple voting methods satisfies meaningful access under Title II. *E.g.*, ECF No. 43 at 4. But that court's holding conflicts with the Title II equal opportunity analysis applied by other courts, including in *Lamone* and other cases cited by the state Defendants for other purposes. *See, e.g.*, *Hindel*, 2016 WL 2735935; *Disabled in Action*, 752 F.3d 189; *Am. Council of the Blind of Ind.*, 2022 WL 702257; *Democracy N.C.*, 476 F. Supp. 3d 158.

policy is 'collapsed' into one's definition of what is the relevant benefit.'" (internal citation omitted)).

In evaluating a Title II claim alleging that a state denies voters with disabilities an equal opportunity to vote using a particular method, courts have considered whether voters with disabilities have an equal opportunity to vote by using the same method as voters without disabilities. *E.g.*, *Hindel*, 2016 WL 2735935, at \*5-6; *Lamone*, 813 F.3d at 506-07; *Disabled in Action*, 752 F.3d at 199; *Am. Council of the Blind of Ind.*, 2022 WL 702257, at \*8. Thus, restrictions on who may assist a voter in returning a marked absentee ballot may make it more difficult for voters with disabilities to vote absentee, thereby denying voters with disabilities an equal opportunity to participate in absentee voting.

### b. Allowing Voters with Disabilities to Use an Assistor of Their Choice is a Reasonable Modification under Title II and would not Fundamentally Alter the Assistance Already Allowed in Ohio's Absentee Voting Program

Under Title II, public entities must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7)(i); *Anderson*, 798 F.3d at 353. A public entity must make these modifications unless they "would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). Defendants argue that removing restrictions on who may assist absentee voters with disabilities in returning their ballots is unreasonable because, even if the restrictions burden or prevent such voters from voting by absentee ballot, the State provides alternative methods of voting. ECF Nos. 43 at 5-8; 44-1 at 1-3. They also contend that expanding who may assist voters with disabilities in absentee voting would fundamentally alter the State's absentee voting program. ECF Nos. 43 at 8-10; 44-1 at 10-13. For the following reasons, these arguments fail.

First, Defendants err in asserting that an individualized request for a modification is always necessary for a plaintiff to obtain relief. ECF No. 44-1 at 7-8. The Sixth Circuit recognizes that an express request for a modification is not required; it is sufficient that plaintiffs "alert the covered entity to the need for accommodation." *Marble v. Tennessee*, 767 F. App'x 647, 652 (6th Cir. 2019) (citation omitted). *See also McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 461 (6th Cir. 1997). Moreover, reasonable modifications can be made on a systemic rather than individualized basis where they are necessary to prevent discrimination. *See Am. Council of the Blind v. Paulson*, 525 F.3d 1256 (D.C. Cir. 2008) (systemic changes to remedy discrimination are facially reasonable).

Second, the existence of alternative voting methods does not render a proposed modification unreasonable. Title II requires public entities to make reasonable modifications where "necessary to avoid discrimination on the basis of disability." Defendants offer no legal support for their argument that the alternatives they point to–"no-fault absentee voting, remote ballot marking systems, hand delivery of ballots to confined voters, and attorney-in-fact authorization"–make Plaintiffs' request unreasonable.  Nor does the availability of these methods alleviate the specific barrier Plaintiffs allege–the restriction of only being allowed to use certain family members, the U.S. postal service, or a private carrier to return absentee ballots. ECF No. 43 at 9.

Third, as discussed above, Section 208 requires that any disabled voter who requires assistance in casting his or her ballot "may be given assistance by a person of the voter's choice," other than the voter's employer or an agent of that employer. 52 U.S.C. § 10508. Where a modification requested under the ADA is required by another federal law, it is generally presumed to be reasonable. *See, e.g.*, *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 122 (3d

Cir. 2018) (finding that where federal agencies were "unanimous in mandating that covered actors, as a general matter, accommodate the use of service animals by disabled individuals under both the R[ehabilitation] A[ct] and ADA" then "such an accommodation generally will be reasonable as a matter of law."); *see also Johnson v. Gambrinus Co.*, 116 F.3d 1052, 1064 (5th Cir. 1997) (finding presumption created by similar regulations under Title III of the ADA); *O.B. v. Norwood*, 170 F. Supp. 3d 1186, 1198 (N.D. Ill. 2016) (granting preliminary injunction under Title II of the ADA where the requested modification was to receive services already required by Medicaid's EPSDT benefit). And a state cannot lawfully narrow, substitute for, or replace the affirmative right to voting assistance guaranteed by Section 208.

For the same reason, Defendants cannot demonstrate how expanding the existing list of assistors for absentee voters with disabilities would fundamentally alter its absentee voting program. A showing of fundamental alteration requires proof that the modification would require fundamentally changing the "nature" or an "essential aspect" of the program. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682 (2001). That a modification may require changes, even if significant, to a public entity's rules, policies, or programs does not render the modification a fundamental alteration–in fact, "[r]equiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does." *Jones v. City of Monroe*, 341 F.3d 474, 487 (6th Cir. 2003) (Cole, J., dissenting). Allowing voters with disabilities to select an assistor of their own choosing would not alter the essential nature of the absentee voting program because this modification is consistent with another federal law—Section 208 of the Voting Rights Act.

## CONCLUSION

The United States asks the Court to consider the frameworks for evaluating claims under Section 208 and Title II set forth in this Statement.

Dated: June 17, 2024

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief, Disability Rights Section
R. TAMAR HAGLER
Acting Chief, Voting Section

KEVIN KIJEWSKI
RONDA CRESS
AMANDA PEARLSTEIN
Attorneys, Disability Rights Section

RICHARD A. DELLHEIM
MICHELLE RUPP
Attorneys, Voting Section

Civil Rights Division
U.S. Department of Justice
150 M Street NE
Washington, D.C. 20530
ronda.cress@usdoj.gov
michelle.rupp@usdoj.gov

REBECCA C. LUTZKO
United States Attorney
Northern District of Ohio

/s/ Michelle L. Heyer

MICHELLE L. HEYER
Ohio Bar No. 0065723
Assistant United States Attorney
United States Courthouse
801 West Superior Ave.
Cleveland, OH 44113
(216) 622-3686
michelle.heyer@usdoj.gov

*Attorneys for the United States of America*

**Certificate of Compliance**

Under Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has been assigned to the Expedited Track. Scheduling Order, ECF. No. 31. I also certify that this memorandum does not exceed the 20-page limitation ordered by the Court. Order (May 7, 2024), ECF No. 39.

 /s/ Michelle L. Heyer
Michelle L. Heyer
*Attorney for the United States*