# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF OHIO AND JENNIFER KUCERA, <br><br>  Plaintiffs, <br><br> v. <br><br> FRANK LAROSE, in his official capacity as Ohio Secretary of State, *et al.*, <br><br>  Defendants. | Civil Action No. 1:23-cv-02414 <br><br> Judge Bridget Meehan Brennan |

# **REPLY BRIEF IN SUPPORT OF**
# **INTERVENORS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1
ARGUMENT .......................................................................................................................... 1
    I.    Plaintiffs Have Still Failed To Prove A Violation Of The ADA Or Section 504 ............... 1
    II.   Section 208 Does Not Preempt The Ballot Harvesting Rules. ........................................... 6
    III.  Abstention Or Summary Judgment Is Warranted On Plaintiffs' Vagueness Claim. ........... 9
CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ...................................................................................................8, 9

*Am. Broad. Co., Inc. v. Blackwell*,
    479 F. Supp. 2d 719 (S.D. Ohio 2006) ..........................................................................9

*Am. Council of the Blind v. Ind. Election Comm'n*,
    2022 WL 702257 (S.D. Ind. Mar. 9, 2022) ....................................................................5

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*,
    86 F.4th 1204 (8th Cir. 2023) ........................................................................................8

*Baggett v. Bullitt*,
    377 U.S. 360 (1964) .......................................................................................................9

*DiPietrae v. City of Phila.*,
    666 A.2d 1132 (Pa. Commw. Ct. 1995) ........................................................................7

*Edwards v. Sammons*,
    437 F.2d 1240 (5th Cir. 1971) .......................................................................................9

*FDA v. All. for Hippocratic Medicine*,
    602 U.S. -- (June 13, 2024) ...........................................................................................1

*Fedance v. Harris*,
    1 F.4th 1278 (11th Cir. 2021) ........................................................................................8

*Hall v. Higgins*,
    77 F.4th 1171 (8th Cir. 2023) ........................................................................................4

*Harman v. Forssenius*,
    380 U.S. 528 (1965) .......................................................................................................9

*Harris Cnty. Comm'rs Ct. v. Moore*,
    420 U.S. 77 (1975) .........................................................................................................9

*Hedberg v. Ind. Bell Tel. Co.*,
    47 F.3d 928 (7th Cir. 1995) ...........................................................................................4

*Hill v. Colorado*,
 530 U.S. 703 (2000) ..........................................................................................................10

*Huffman v. Hilltop Cos.*,
 747 F.3d 391 (6th Cir. 2014) ...............................................................................................8

*Jones v. City of Monroe*,
 341 F.3d 474 (6th Cir. 2003) ...........................................................................................2, 6

*Kay v. Austin*,
 621 F.2d 809 (6th Cir. 1980) .............................................................................................10

*Kiman v. N.H. Dep't of Corr.*,
 451 F.3d 274 (1st Cir. 2006) ................................................................................................3

*Knox Cnty. v. M.Q.*,
 62 F.4th 978 (6th Cir. 2023) ................................................................................................1

*League of Women Voters of Fla., Inc. v. Lee*,
 595 F. Supp. 3d 1042 (N.D. Fla. 2022) ................................................................................6

*Marble v. Tennessee*,
 767 F. App'x 647 (6th Cir. 2019) .....................................................................................3, 4

*Muhammad v. Ct. of Common Pleas*,
 483 F. App'x 759 (3d Cir. 2012) ..........................................................................................2

*Nat'l Fed'n of the Blind v. Lamone*,
 813 F.3d 494 (4th Cir. 2016) ...............................................................................................2

*NEOCH v. Husted*,
 837 F.3d 612 (6th Cir. 2016) ...............................................................................................8

*Priorities USA v. Nessel*,
 628 F. Supp. 3d 716 (E.D. Mich. 2022) ..............................................................................7

*Qualkinbush v. Skubisz*,
 357 Ill. App. 3d 594 (2004) .................................................................................................7

*Ray v. Texas*,
 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ......................................................................7

*Reyes Galeana v. Garland*,
 94 F.4th 555 (6th Cir. 2024) ................................................................................................9

iii

*Reynolds v. Sims*,
   377 U.S. 533 (1964) ................................................................................................................. 9

*Robertson v. Las Animas Cnty. Sheriff's Dep't*,
   500 F.3d 1185 (10th Cir. 2007) ............................................................................................... 4

*Siegel v. LePore*,
   234 F.3d 1163 (11th Cir. 2000) ............................................................................................... 9

*Spurr v. Pope*,
   936 F.3d 478 (6th Cir. 2019) ................................................................................................. 10

*Terry v. Tyson Farms, Inc.*,
   604 F.3d 272 (6th Cir. 2010) ................................................................................................... 8

*United States v. Skinner*,
   25 F.3d 1314 (6th Cir. 1994) ................................................................................................. 10

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ................................................................................................................. 7

*Windham v. Harris Cnty.*,
   875 F.3d 229 (5th Cir. 2017) ................................................................................................... 4

*Wis. Cmty. Servs., Inc. v. City of Milwaukee*,
   465 F.3d 737 (7th Cir. 2006) ................................................................................................... 2

**STATUTES**

52 U.S.C. § 10302 ............................................................................................................................ 8

**OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) ............................................................... 8

**INTRODUCTION**

Plaintiffs' responses to Defendants' and Intervenors' motions for summary judgment identify no fact in dispute and fail to back up their far-reaching challenges to Ohio's commonsensical Ballot Harvesting Rules as a matter of law. At the threshold, Plaintiff League of Women Voters of Ohio (LWVO) lacks standing and, thus, should be dismissed from the suit. *See* R.53 at 6-7; *FDA v. All. for Hippocratic Medicine*, 602 U.S. -- (June 13, 2024) (slip op. at 21-23). To the extent the Court addresses the merits, it should enter summary judgment against Plaintiffs on all claims. To name just a few problems with Plaintiffs' ADA and Section 504 claims, they have still failed to: (i) identify any voter who has been denied meaningful access to voting, let alone been unable to vote, because of the Rules; (ii) identify a pre-suit request for an accommodation; and (iii) explain the mismatch between the sweeping statewide accommodation they seek and their own evidence about how few Ohio voters with disabilities could conceivably need that accommodation. Plaintiffs' reading of Section 208, moreover, still fails to account for text, context, and the statute's basic purpose. And while Plaintiffs say their vagueness claims turn on disputed questions of fact, they can identify only as-yet unsettled questions of Ohio law that (if anything) warrant abstention, not an order barring Ohio state courts from adjudicating the Ballot Harvesting Rules' application in the first instance. The Court should grant summary judgment and leave the Ohio Legislature's duly enacted Ballot Harvesting Rules in place.

**ARGUMENT**

**I.      Plaintiffs Have Still Failed To Prove A Violation Of The ADA Or Section 504.**

Plaintiffs' ADA and Section 504 claims fail because they have not carried their burden to prove either of the "two available theories: intentional discrimination [or] failure to reasonably accommodate." *Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023); R.53 at 7-15; R.44-1 at 5-13. Plaintiffs have not even pursued an intentional discrimination claim—and their opposition

1

does not rescue their failure-to-accommodate claim for at least five reasons.

*First*, Plaintiffs chide Intervenors for purportedly "misstat[ing] the law," which requires Ohio to provide "meaningful access" to voters with disabilities. R.54 at 5. But Intervenors have *embraced* "meaningful access" as the governing standard and shown why Plaintiffs have failed to carry their burden under it. R.44-1 at 6-13; R.53 at 7-15. It was *Plaintiffs* who misstated the law in their first brief when they insisted that the standard is "equal access." R.42-1 at 16. That argument fails as already explained, *see* R.53 at 12-15, which may be why Plaintiffs now backtrack from it.

For its part, the United States now picks up the torch on the novel "equal access" theory, but its arguments on the theory are no better than those Plaintiffs offer. Indeed, while the United States purports to cite three out-of-circuit cases for its claim that Title II requires "equal access," the cases say no such thing. R.55 at 15. The first contrasts a different statute's use of the term "equal opportunity" with the omission of that requirement in Title II. *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751-52 (7th Cir. 2006) (en banc). The second case never mentions the equal-access theory, and in fact contradicts it by inquiring whether the plaintiff "was unable to meaningfully participate" in the relevant activity. *Muhammad v. Ct. of Common Pleas*, 483 F. App'x 759, 764 (3d Cir. 2012). And the third case likewise followed an ordinary failure-to-accommodate analysis, first "[d]etermining that plaintiffs have been denied meaningful access," then observing that that determination did not "end [the court's] analysis" and determining whether plaintiffs had proposed a reasonable modification that did not fundamentally alter the program. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507-08 (4th Cir. 2016). Regardless, even if *other* courts had actually adopted this theory, the fact remains that the Sixth Circuit has rejected it—both as a freestanding theory, *see* R.53 at 12, and as a way to prove a failure-to-accommodate theory, *see Jones v. City of Monroe*, 341 F.3d 474, 479 (6th Cir. 2003) ("[E]qual results from the

2

provision of [a] benefit, even assuming equal results could be achieved, are not guaranteed.").

In all events, Plaintiffs still have not shown that they have been denied meaningful access to voting. In fact, Plaintiffs fail to explain what they even mean by meaningful access in this context—and so have no explanation for how they can claim to lack "meaningful access" when Kucera has consistently been able to vote and Plaintiffs have been unable to identify *anyone else* in their statewide pseudo-class who has so much as struggled to vote because of current law.

To be sure, Plaintiffs briefly suggest a factual dispute about "whether a disabled voter 'was excluded from absentee voting,'" R.51 at 10 n.7, yet it does not advance the ball. Plaintiffs point to some evidence that, on one occasion, ballots were not counted because a nursing home employee illegally returned them to a drop box, and argue that one of the voters may have had an ADA-qualifying disability. *Id.* But even if all that were true, Plaintiffs have not proven that the voter actually *did* have a qualifying disability, as they implicitly concede. *See id.* They also never suggest there is any evidence that the voter could not have voted through legal means, such as by having an enumerated family member or a bipartisan team of election workers return the ballot. And Plaintiffs never suggest that voter is a plaintiff in this lawsuit or an LWVO member. Without any evidence that they have been denied meaningful access to voting, Plaintiffs' claims fail as a matter of law. R.53 at 7-15; R.44-1 at 5-13.

*Second*, Kucera and LWVO never requested the accommodation they now seek, as Title II requires. Contrary to Plaintiffs' argument, the Sixth Circuit *has* "take[n] the time to discuss the extent to which the principles derived from Titles I and III should apply to" Title II cases, and explained that a Title II plaintiff bears "the initial burden of requesting [an] accommodation." *Marble v. Tennessee*, 767 F. App'x 647, 651, 653 (6th Cir. 2019). And the Sixth Circuit is far from alone in that conclusion. *See, e.g.*, *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006);

3

*Windham v. Harris Cnty.*, 875 F.3d 229, 236-37 (5th Cir. 2017); *Hall v. Higgins*, 77 F.4th 1171, 1182 (8th Cir. 2023); *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007). Even assuming there is an exception when the need for an accommodation is obvious to the defendant, *see* R.54 at 7, "[t]he ADA does not require clairvoyance," *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995), and Plaintiffs offer no basis on which the Court could conclude that Kucera's or anyone else's need for an accommodation should have been obvious to any Defendant. In fact, Defendants are "in a poor position to speculate as to" Kucera's or any other voter's "need or desire for accommodation" because millions of Ohioans vote and Defendants have at best only sporadic and limited interaction with any voter. *Marble*, 767 F. App'x at 653 (government entity should not have known of the plaintiff's need for an accommodation where their relationship "was less consistent and intimate than a typical employment relationship").

Plaintiffs' attorneys' pre-suit letter is not a request for an accommodation, as explained already. R.44-1 at 7-8; R.53 at 8-9. And Plaintiffs' brief reference to futility is not enough to excuse their decision to sue first and ask questions later. A request for an accommodation for a specific person addressed to the county board of elections could have cleared up several points on which Plaintiffs now profess uncertainty. For example, a request for Kucera could have revealed that Kucera is eligible for existing accommodations such as assistance by a bipartisan team of election workers. Or it might have clarified the scope of the Ballot Harvesting Rules about which Plaintiffs now claim such uncertainty. Or the Cuyahoga County Board of Elections might even have offered Kucera a non-statutory accommodation. We will never know, because Plaintiffs never tried.

*Third*, Plaintiffs have not requested a reasonable accommodation. Plaintiffs fight against the Supreme Court's and the Sixth Circuit's requirement of an individualized assessment of the costs and benefits of an accommodation, but those courts' precedents govern here. *See* R.53 at 8.

4

Plaintiffs say that their proposed statewide accommodation for all voters with disabilities is reasonable for several high-level reasons, but none is satisfying. They argue that other courts have "suggested or imposed similar modifications," but fail to cite any such cases other than a line of dicta in an unpublished out-of-jurisdiction decision. R.51 at 11 (citing *Am. Council of the Blind v. Ind. Election Comm'n*, 2022 WL 702257, at *8 (S.D. Ind. Mar. 9, 2022)). Moreover, an accommodation's reasonableness is a fact-intensive question that cannot simply be appropriated from another case on other facts in another context. *See* R.53 at 8 (discussing individualized inquiry). Plaintiffs also say the accommodation is already required by Section 208 (R.51 at 11), but that just makes this claim fall with that one—and ignores that the claims arise from different statutes with different requirements. And whether the accommodation provides a clear standard (*id.*) is irrelevant to its reasonableness, and Plaintiffs cite no authority to the contrary.

Plaintiffs next say that the accommodation is "appropriately circumscribed" because it applies only to voters with disabilities. *Id.* "Circumscribed" is not the word that comes to mind. The accommodation would apply to all voters with any kind of disability, statewide—a number Plaintiffs place in the millions. R.42-1 at 1. And the accommodation is especially expansive given that Plaintiffs' own putative expert admitted that just an indeterminate subset of a subset of Ohio voters with disabilities—somewhere less than 10% of those who even vote by mail—could even possibly need the accommodation. *See* R.44-1 at 9-10; R.53 at 8-9.[1]

*Fourth*, Plaintiffs—like all Ohio voters with disabilities—have already been offered a *reasonable* accommodation, and are not entitled to their *preferred* accommodation. *See* R.44-1 at

---

[1] The United States argues for "systemic rather than individual" accommodations when "necessary to prevent discrimination." R.55 at 19. That acknowledgement that the requested accommodation must be "necessary" dooms Plaintiffs' request for a "systemic" accommodation that, on Plaintiffs' own evidence, is far from necessary for the vast majority of Ohio voters with disabilities.

5

6-7; R.53 at 9-11.

*Fifth*, Plaintiffs seek a fundamental alteration of Ohio's rules for absentee voting. Plaintiffs say that the ADA and Section 504 sometimes require governments to change their policies. The United States makes a similar point, citing the dissent in *Jones*, 341 F.3d at 487 (Cole, J., dissenting), and ignoring that the *majority* in that case squarely held that ordering a town "to cease enforcement of an otherwise valid ordinance" would "by its very nature require[] a fundamental alteration of the rule itself," *id.* at 480 (majority). *See* R.55 at 20. Regardless, that is just one vein of fundamental-alteration precedent. *See* R.44 at 12-13 (identifying two more).

Plaintiffs' distinction of the instructive fundamental-alteration reasoning in *League of Women Voters of Florida, Inc. v. Lee*, 595 F. Supp. 3d 1042, 1157-59 (N.D. Fla. 2022), *aff'd and rev'd in part on other grounds*, 66 F.4th 905 (11th Cir. 2023), does not withstand scrutiny. Plaintiffs say they do not propose "suspending an entire statutory scheme," just one provision. R.54 at 9. But the *Lee* plaintiffs also targeted just one piece of the scheme—a vote-by-mail registration provision. *See Lee*, 595 F. Supp. 3d at 1158. That request was a fundamental alteration because "a proposed modification which seeks to enjoin an entire provision necessarily eliminates an 'essential aspect' of it." *Id.* The same is true here: Plaintiffs' proposed suspension of the Ballot Harvesting Rules for millions of Ohio voters would create the exact same risks of voter manipulation and fraud that the Rules exist to prevent. *See* R.44-1 at 10-13.

**II.     Section 208 Does Not Preempt The Ballot Harvesting Rules.**

Section 208 is best understood to permit States to enact rules designed to protect voters' rights and which do not unduly burden the right to vote. That follows from the text (Congress's decision to permit assistance from "*a* person of the voter's choice" instead of "*the*" or "*any*" person), context (Section 208's role as a minor provision in amendments to the Voting Rights Act),

6

and legislative history (Congress's stated understanding that the provision would preempt state laws "only to the extent that they unduly burden" voting, and that Section 208 was designed to permit assistance "in[] the voting booth"). *See* R.44-1 at 13-16; R.53 at 15-18.

On that understanding, dozens of States—Ohio included—have enacted laws limiting ballot harvesting to protect election integrity and prevent voters from becoming victims of fraudulent or even just careless ballot harvesters. Plaintiffs' reading of Section 208 would invalidate those laws across the country (including the laws of at least two of Plaintiffs' own *amici*). R.53 at 17-18. So it is Plaintiffs who try to cram an elephant into a mousehole with the claim that Section 208 absolutely forbids States from placing *any* limits on ballot harvesting when it comes to voters with disabilities. *See* R.51 at 5 (invoking *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)). Indeed, if Plaintiffs' theory were correct, there would be no need for the ADA and Section 504 to guarantee voters with disabilities a right to assistance in voting from a person of their choice—and Plaintiffs' ADA and Section 504 claims would therefore fail.

Plaintiffs are also wrong to rely on their claimed "mounting federal-court consensus." R.51 at 2. That framing carefully omits state-court disagreement. *See DiPietrae v. City of Phila.*, 666 A.2d 1132, 1135-36 (Pa. Commw. Ct. 1995) (concluding that appropriate remedy for conceded violation of Section 208 limited an individual to returning ballots from just one household), *aff'd*, 543 Pa. 591 (1996); *Qualkinbush v. Skubisz*, 357 Ill. App. 3d 594, 610-12 (2004) (holding that "states may impose restrictions on those individuals who may return a disabled voter's absentee ballot, and that such restrictions may be above and beyond those set forth in the Voting Rights Act"). It also ignores federal-court disagreement. *See Priorities USA v. Nessel*, 628 F. Supp. 3d 716, 731-32 (E.D. Mich. 2022); *Ray v. Texas*, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008). And it overlooks that deciding cases is a matter of which reading is ultimately correct, not a matter

7

of "merely [ ] count[ing] noses." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 279 (6th Cir. 2010). The cases Plaintiffs cite on their side of the argument are poorly reasoned, as already explained—and, what is more, none of them address *Ohio's* laws. R.49 at 10-11; R.53 at 17.

Plaintiffs resort to the *expressio unius* canon, but that canon applies only when there is reason to think that the stated exceptions are "an exhaustive list." *Huffman v. Hilltop Cos.*, 747 F.3d 391, 397 (6th Cir. 2014). So, for example, a "No dogs allowed" sign in a restaurant does not imply that "pet monkeys, potbellied pigs, and baby elephants might be quite welcome." Antonin Scalia & Bryan A. Garner, *Reading Law* §10, at 107 (2012); *see Fedance v. Harris*, 1 F.4th 1278, 1286 (11th Cir. 2021) (discussing this example). So too here: Congress's particular concern with the recurring problem of pressure from employers and unions does not, by mere implication, bar States from enacting non-burdensome limits on ballot harvesting.

Moreover, the Court need not even reach the merits because Section 208 exceeds Congress's authority under Section 5 of the Fourteenth Amendment, *see* R.49 at 2-6, and Plaintiffs lack a private right of action under Section 208 or Section 1983. Plaintiffs do not dispute that the question of a private right of action is one of first impression in this jurisdiction. Nor can they dispute that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). And the existence of an alternative enforcement scheme cuts sharply against implication of a private cause of action or a right to sue under § 1983, whether or not it is included in the *same* statute. *See id.* at 290 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); *NEOCH v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016) (no private right of action to enforce a federal voting rights statute enforceable "by the Attorney General"). Nor does a reference to "an aggrieved person" in 52 U.S.C. § 10302 create a private right of action. *See Ark. State Conf. NAACP v. Ark.*

8

*Bd. of Apportionment*, 86 F.4th 1204, 1211-13 (8th Cir. 2023) (pointing out Supreme Court's rejection of "a near-identical argument"). Mere assumptions in other cases cannot change that analysis. *See Reyes Galeana v. Garland*, 94 F.4th 555, 560 (6th Cir. 2024).

The United States, for its part, argues that courts should more freely create rights of action in old statutes. *See* R.55 at 13. That courts once felt free to improvise does not justify continuing the practice. *See Sandoval*, 532 U.S. at 287 (rejecting identical argument, as an "invitation to have one last drink" despite "[h]aving sworn off the habit of venturing beyond Congress's intent").

### III. Abstention Or Summary Judgment Is Warranted On Plaintiffs' Vagueness Claim.

The Court should abstain from deciding—or reject—Plaintiffs' vagueness challenges.

*Abstention.* Plaintiffs attempt to rehabilitate their vagueness challenges by arguing that there are unsettled questions of Ohio law about the scope of the Ballot Harvesting Rules. *See* R.51 at 16-18. But the more they argue that Ohio law is unsettled, the more warranted abstention becomes—as their own cases *confirm*. In one, the Supreme Court *did* abstain because state law was unsettled. *See Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77 (1975). In another, it confirmed that abstention is proper where the plaintiff—like Plaintiffs here—seek clarification regarding a statute's "applicability [to] … a defined course of conduct." *Baggett v. Bullitt*, 377 U.S. 360, 377 (1964). Others are not even vagueness cases, *see Harman v. Forssenius*, 380 U.S. 528 (1965); *Reynolds v. Sims*, 377 U.S. 533 (1964); *Edwards v. Sammons*, 437 F.2d 1240 (5th Cir. 1971); *Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000), while at least one refused to abstain because the challenged law was *not* vague, *see Am. Broad. Co., Inc. v. Blackwell*, 479 F. Supp. 2d 719, 732 (S.D. Ohio 2006). And to the extent there is an ongoing prosecution under the Rules, *see* R.51 at 15, that is all the more reason to abstain because the individual (who Plaintiffs never claim is Kucera or an LWVO member) can raise a vagueness challenge there. *See* R.44-1 at 17-18.

Plaintiffs also are not entitled to pressure federal courts into deciding unsettled questions

9

of state law because of time constraints of their own manufacture—especially when the Ballot Harvesting Rules have been on the books for years and Plaintiffs could have sought clarification from Ohio's courts. Plaintiffs' final case just *underscores* this point: that court declined to abstain but held that the plaintiff was not entitled to relief because he had delayed too long in filing suit. *See Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980). Plus, there the State had already applied the challenged law to the plaintiff—a crucial element missing here. *See id.* at 810.

*Vagueness claims*. Regardless, summary judgment is warranted on Plaintiffs' facial and as-applied vagueness claims, for three reasons. *First*, Plaintiffs' supposed disputed questions of fact (R.51 at 16-20) are really just questions of law regarding "whether the statute applies only to marked ballots," "what it means to 'possess' or 'return' an absent voter's ballot," and whether the Ballot Harvesting Rules have "a standardless sweep" permitting arbitrary enforcement. Such requests for "statutory interpretation" pose "question[s] of law," *Spurr v. Pope*, 936 F.3d 478, 485-86 (6th Cir. 2019), not disputed facts precluding summary judgment.

*Second*, Plaintiffs argue that scienter does not ameliorate vagueness, R.54 at 11-12, but the Supreme Court says otherwise, *see* R.44-1 at 20 (collecting cases). And that is equally true of knowledge requirements as willfulness requirements. *See, e.g.*, *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *United States v. Skinner*, 25 F.3d 1314, 1319 (6th Cir. 1994) ("knowingly" requirement "safeguards the statute from vagueness challenges").

*Third*, Plaintiffs continue to press their misguided theory that mere overlap in statutory terms creates a vagueness problem. That would be a radical new expansion of vagueness doctrine, *see* R.44-1 at 19-20, and Plaintiffs have identified *no* cases whatsoever adopting that theory. This Court should not be the first.

**CONCLUSION**

The Court should grant Intervenors' motion for summary judgment.

10

Dated: June 21, 2024                        Respectfully submitted,

*/s/ John M. Gore*

John M. Gore (*pro hac vice*)
E. Stewart Crosland (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
jmgore@jonesday.com
scrosland@jonesday.com
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Sarah Welch (99171)
Jesse T. Wynn (101239)
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, OH 44114
swelch@jonesday.com
jwynn@jonesday.com
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

*Attorneys for Intervenors Republican National Committee and Ohio Republican Party*

11

**CERTIFICATE OF SERVICE**

I certify that on June 21, 2024, a copy of the foregoing Opposition to Plaintiffs' Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ John M. Gore*
John M. Gore
*Attorney for Intervenors*

**LOCAL RULE 7.1(F) CERTIFICATION**

Intervenor-Defendants certify that this case has been assigned to the expedited case management track and that this memorandum adheres to the page limitations for that case management track.

*/s/ John M. Gore*
John M. Gore
*Attorney for Intervenors*