# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO,
# EASTERN DIVISION

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF OHIO, et al., | : : : | |
| *Plaintiffs*, | : : | Case No. 1:23-cv-2414 |
| v. | : : | JUDGE BRIDGET M. BRENNAN |
| FRANK LAROSE, et al., | : : : | |
| *Defendants*, | : : | |
| and | : : | |
| REPUBLICAN NATIONAL COMMITTEE, et al., | : : : | |
| *Intervenor-Defendants*. | : | |

# REPLY MEMORANDUM IN SUPPORT OF
# PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

ARGUMENT .......................................................................................................................... 1

    I.      Plaintiffs Have Standing for Every Claim. ............................................................. 1

    II.     Congress Validly Enacted Section 208 of the Voting Rights Act ........................ 3

    III.    Defendants' Repeated Arguments Fail ................................................................... 7

CONCLUSION ...................................................................................................................... 10

CERTIFICATE OF COMPLIANCE ..................................................................................... 12

CERTIFICATE OF SERVICE ............................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                             **Page(s)**

*Alexander v. Choate*,
 469 U.S. 287 (1985)...............................................................................................................8

*Arizona v. Inter Tribal Council of Ariz.*,
 570 U.S. 1 (2013).....................................................................................................................7

*Ark. United v. Thurston*,
 626 F. Supp. 3d 1064 (W.D. Ark. 2022)..................................................................................9

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
 178 F.3d 350 (5th Cir. 1999)....................................................................................................2

*Bd. of Trustees of Univ. of Ala. v. Garrett*,
 531 U.S. 356 (2001).............................................................................................................3, 4

*Carey v. Wis. Elections Comm'n*,
 624 F. Supp. 3d 1020 (W.D. Wis. 2022) .................................................................................9

*City of Boerne v. Flores*,
 521 U.S. 507 (1997).................................................................................................................4

*Crookston v. Johnson*,
 841 F.3d 396 (6th Cir. 2016) ...................................................................................................9

*Democracy N.C. v. N.C. State Bd. of Elections*,
 476 F. Supp. 3d 158 (M.D.N.C. 2020) ....................................................................................9

*Disability Rts. N.C. v. N.C. State Bd. of Elections*,
 2022 WL 2678884 (E.D.N.C. July 11, 2022) ..........................................................................7

*DNC v. Wis. State Legis.*,
 141 S. Ct. 28 (2020)...............................................................................................................10

*Doe v. DeWine*,
 910 F.3d 842 (6th Cir. 2018) ...................................................................................................2

*FDA v. Alliance for Hippocratic Medicine*,
 602 U.S. __ (June 13, 2024) .................................................................................................2, 3

*Fry v. Napoleon Cmty. Schs.*,
 580 U.S. 154 (2017).................................................................................................................8

*Havens Realty v. Coleman*,
 455 U.S. 363 (1982)............................................................................................................2, 3

*Hawkins v. DeWine*,
    968 F.3d 603 (6th Cir. 2020) ..................................................................................................7

*Jones v. City of Monroe*,
    341 F.3d 474 (6th Cir. 2003) ..................................................................................................8

*Kareem v. Cuyahoga Cnty. Bd. of Elections*,
    95 F.4th 1019 (6th Cir. 2024) .................................................................................................1

*Kovacevich v. Kent State Univ.*,
    224 F.3d 806 (6th Cir. 2000) ..................................................................................................6

*La Unión del Pueblo Entero v. Abbott*,
    618 F. Supp. 3d 504 (W.D. Tex. 2022) ..................................................................................4

*Laird v. Air Carrier Engine Serv.*,
    263 F.2d 948 (5th Cir. 1959) ................................................................................................10

*Mote v. City of Chelsea*,
    284 F. Supp. 3d 863 (E.D. Mich. 2018) .................................................................................2

*Murphy v. NCAA*,
    584 U.S. 453 (2018) ...............................................................................................................6

*MX Grp. v. City of Covington*,
    293 F.3d 326 (6th Cir. 2002) ..................................................................................................1

*Ne. Ohio Coal. for the Homeless v. Husted*,
    837 F.3d 612 (6th Cir. 2016) ..............................................................................................1, 2

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) ...............................................................................................2, 3

*Online Merchs. Guild v. Cameron*,
    995 F.3d 540 (6th Cir. 2021) ..................................................................................................2

*PLIVA v. Mensing*,
    564 U.S. 604 (2011) ...............................................................................................................7

*Priorities USA v. Nessel*,
    978 F.3d 976 (6th Cir. 2020) ..................................................................................................9

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ...................................................................................................................9

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ...............................................................................................................4

*Rodgers v. Bryant*,
    942 F.3d 451 (8th Cir. 2019) ...................................................................................10

*Smiley v. Holm*,
    285 U.S. 355 (1932) ..................................................................................................7

*Tennessee v. Lane*,
    541 U.S. 509 (2004) ..........................................................................................4, 5, 6

*United States v. Alabama*,
    778 F.3d 926 (11th Cir. 2015) ...................................................................................7

*United States v. Morrison*,
    529 U.S. 598 (2000) ..................................................................................................3

*Williams v. Union Carbide Corp*,
    790 F.2d 552 (6th Cir. 1986) ...................................................................................10

**Constitutional Provisions**

U.S. Const., art. I, sec. 4 .....................................................................................................6

**Regulations**

28 C.F.R. 35.130 ................................................................................................................8

**Rules**

Fed. R. Evid. 801 .............................................................................................................10

**Dockets**

*Disability Rts. Miss. v. Fitch*, No. 3:23-cv-350 (S.D. Miss.) ...........................................7

*Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 5:21-cv-361 (E.D.N.C.) ............7

**Other Authorities**

*Extension of the Voting Rights Act: Hearing Before the Subcomm. on Civ. and
    Const. Rts. of the H. Comm. on the Judiciary*, 97th Cong. (1982) ...........................5

S. Rep. 417, 97th Cong., 2d Sess. (1982) .......................................................................4, 6

*Unable*, Merriam-Webster.com Dictionary, https://perma.cc/HX83-B473 ......................8

*Voting Rights Act: Hearing on S. 53, S. 1761, S. 1975, S. 1992, and H.R. 3112
    Before the Subcomm. on the Const. of the S. Comm. on the Judiciary*, 97th
    Cong. (1982) ..............................................................................................................5

# ARGUMENT

This case seeks to ensure meaningful access to absentee voting for disabled Ohioans by vindicating their right to an assistor of their choice. Defendants cannot justify arbitrary and overzealous restrictions on this right in the name of unsubstantiated "election security" and "ballot harvesting" concerns.[1] Their opposition briefs fail to reveal a genuine factual dispute or refute Plaintiffs' entitlement to judgment as a matter of law.

**I.    Plaintiffs Have Standing for Every Claim.**

As an initial matter, only one plaintiff need establish standing per claim. *See Ne. Ohio Coal. for the Homeless v. Husted* (*NEOCH*), 837 F.3d 612, 623-24 (6th Cir. 2016). No party challenges Plaintiff Jennifer Kucera's standing to bring VRA, ADA, and RA claims, so the Court need not consider LWVO's standing as to those claims. And Ms. Kucera's standing is clear: a declaration and injunction precluding Defendants' enforcement of the Challenged Provisions would remedy Ms. Kucera's injuries, the denial of meaningful access to absentee voting and an assistor of her choice in future elections. *See* ECF 42-1 (Pl. Br.) 2-3, 5-7, 12, 14-19.

To the extent Intervenors suggest that LWVO should be dismissed from this case, they are wrong. No party questions LWVO's associational standing to bring its vagueness claim. LWVO members are at substantial risk of prosecution for future intended conduct that may violate the Challenged Provisions, an injury caused by Defendants that would also be redressed by the relief Plaintiffs seek.[2] *See* ECF 51 (Pl. St. Opp.) 14-15; ECF 52 (Pl. CCPO Opp.) 1-4, 6-8; *MX Grp. v. City of Covington*, 293 F.3d 326, 332-35 (6th Cir. 2002); *Kareem v. Cuyahoga Cnty. Bd. of*

---

[1] Defendants' fearmongering about "ballot harvesting" is especially curious in this case given that their own purported expert did not consider one person returning another's ballot—the relief Plaintiffs seek for all voters with disabilities necessitating assistance—to be "ballot harvesting." ECF 48-1 (Strach Dep.) 132:3-7.

[2] Intervenors' contention that an LWVO "member's thwarted desire to assist voters with disabilities" cannot support standing as to the statutory claims, ECF 53 (Int. Opp.) 7, attacks a strawman. Plaintiffs do not argue that LWVO's assistor-members' harms support associational standing as to the statutory claims.

1

*Elections*, 95 F.4th 1019, 1022-23, 1027 (6th Cir. 2024).

Because at least one plaintiff has standing for each of Plaintiffs' four claims, the Court's standing analysis can end there. The record nevertheless also establishes that LWVO has direct organizational standing because Defendants' enforcement of the Challenged Provisions has forced it to make "within-mission organizational expenditures."[3] *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 548 (6th Cir. 2021); *see NEOCH*, 837 F.3d at 624. As a nonpartisan organization whose core mission is to educate and provide services to Ohio voters, LWVO is injured because it has been forced to divert, and continues to divert, its scarce resources in response to the Challenged Provisions. *See* Pl. Br. 3-4. LWVO has shifted its funds, activities, and volunteer and staff time away from its other mission-based programming and services and toward analyzing, responding to, and educating voters and members, including those with disabilities and their caregivers, about the Challenged Provisions. *Id.*; ECF 43-7 (Miller Dep.) 35:15-25, 64:14-69:25, 97:11-98:3 (discussing planned programs forgone and staffer who became full-time because of HB 458 and Challenged Provisions). These within-mission injuries are "perceptible" impairments, even if not precisely quantified, and suffice to establish LWVO's organizational standing. *See Havens Realty v. Coleman*, 455 U.S. 363, 379 (1982); *Mote v. City of Chelsea*, 284 F. Supp. 3d 863, 888 (E.D. Mich. 2018) ("there is no threshold of 'significance'" for organizational injury); *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357-58 (5th Cir. 1999) (the "injury in fact requirement . . . is qualitative, not quantitative"); *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (injury "need not measure more than an identifiable trifle" (quotation omitted)).

Nothing in *FDA v. Alliance for Hippocratic Medicine* (*AHM*), 602 U.S. __ (June 13, 2024),

---

[3] No party's opposition brief contests the causation or redressability elements of LWVO's direct standing. Nor could they: Defendants' enforcement of the Challenged Provisions has indisputably caused LWVO's diversion of resources, its members denial of meaningful access to absentee voting and assistors of their choice, and the substantial risk of its members' prosecution. *See Doe v. DeWine*, 910 F.3d 842, 848-49 (6th Cir. 2018); Pl. CCPO Opp. 7-8.

2

requires a different result. LWVO and its voter-service, education, and assistance services are more akin to the housing-counseling organization in *Havens*, whose "core business activities" were "directly affected and interfered with" by the defendant, than the organization in *AHM*, whose "advocacy" suffered no "impediment" at the hands of the defendant. *Id.* (slip op. 23). Unlike *AHM*, and contrary to Intervenors' suggestion, Int. Opp. 6, LWVO's diversion of resources does not involve "expending money to gather information and advocate against the defendant's action." *AHM* (slip op. 22). Rather, LWVO's services are intended to help Ohioans, including LWVO members, *understand and comply with* new criminal prohibitions that affect their ability to help disabled people vote. *See OCA*, 867 F.3d at 612 (devoting resources "toward mitigating [the] real-world impact" of challenged conduct demonstrates injury).

But for Defendants' enforcement of the Challenged Provisions, LWVO could spend its resources to otherwise increase voter participation, and LWVO staff and volunteers could assist disabled absentee voters without fear of prosecution. The Challenged Provisions directly affect and interfere with these core activities, requiring LWVO to abandon planned projects and instead spend its resources educating staff, members, and voters of the risks and burdens these laws impose. That injury provides LWVO direct organizational standing for all its claims.

II. **Congress Validly Enacted Section 208 of the VRA.**

The State newly posits that Section 208 does not abrogate Ohio's sovereign immunity or preempt Ohio law because it exceeds Congress's Fourteenth Amendment enforcement power. ECF 49 (St. Opp.) 3. The State's support for this argument is confounding.[4] The core case it relies on—*Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001), which concluded that

---

[4] It is difficult to understand how, for instance, the provision of the Violence Against Women Act that flunked the Fourteenth Amendment's state-action requirement is among the "federal statutes like Section 208." St. Opp. 3 (citing *United States v. Morrison*, 529 U.S. 598 (2000)).

3

Title I of the ADA exceeded Congress's enforcement authority—differs vastly from this case as to both key points of the State's analysis: the right at issue and the pattern of discrimination in the congressional record. Considering the right and the record at issue here, Section 208 is both congruent and proportional to the targeted violation.

*Different Right.* The voting rights safeguarded by Section 208 are not analogous to the rights at issue in Title I of the ADA. In concluding *Title II* of the ADA did *not* exceed Congress's authority, the Supreme Court explained: "Title II, like Title I, seeks to enforce this prohibition on irrational disability discrimination. But it also seeks to enforce a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review." *Tennessee v. Lane*, 541 U.S. 509, 522-23 (2004); *see also La Unión del Pueblo Entero v. Abbott*, 618 F. Supp. 3d 504, 548 (W.D. Tex. 2022) ("Congress acted pursuant to a valid grant of constitutional authority in enacting Title II to prohibit discrimination in voting."). So too here: Section 208 enforces both the Equal Protection Clause's prohibition on disability discrimination *and* the fundamental right to vote, infringement of which "must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964). *See* S. Rep. 417, 97th Cong., 2d Sess. (S. Rep. 97-417) 62 (1982) (if voters requiring assistance did not "have the assistance of a person of their own choice," "whom the voter trusts and who cannot intimidate" them, it "would deny these voters the same opportunity to vote enjoyed by all citizens"); *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997) (collecting cases holding "measures protecting voting rights are within Congress' power to enforce the Fourteenth and Fifteenth Amendments").

*Different Legislative Record.* The State's assertion that "Section 208's legislative record is paper thin" and "conclusory," St. Opp. 5, is belied by the record itself. Unlike in *Garrett*, where neither Title I's "legislative findings nor its legislative history reflected a concern that the States

4

had been engaging in a pattern of unconstitutional employment discrimination," *Lane*, 541 U.S. at 521-22, Section 208's legislative record and findings demonstrate that states' restrictions on assistance to disabled voters had discriminatory results that threatened the right to vote.

Section 208's record incorporates concerns and patterns of discrimination identified by the National Federation of the Blind (NFB). *See Voting Rights Act: Hearing on S. 53, S. 1761, S. 1975, S. 1992, and H.R. 3112 Before the Subcomm. on the Const. of the S. Comm. on the Judiciary* (S. Hrg.), 97th Cong. 64-66, 392-94 (1982). NFB presented Congress with statistics showing the vast number of blind and visually limited voters needing assistance to vote, *id.* 64 ("approximately 465,000 blind persons of voting age" and up to "1.3 million" others with visual impairments), and cited disparate state restrictions limiting who could provide such assistance, *id.* 65. NFB explained that these restrictions had "often caus[ed] confrontations and disputes" between election officials and voters requiring assistance, and a "national standard" protecting such voters' rights to an assistor of their choice would correct the problem that "blind people desiring to vote do not do so because their assistants may not meet the specific qualifications of the state's statutes." *Id.* 65-66.

The legislative record also documented a pattern of problems with forcing voters to rely on election officials or others chosen by the state. *Extension of the Voting Rights Act: Hearing Before the Subcomm. on Civ. and Const. Rts. of the H. Comm. on the Judiciary*, 97th Cong. 765, 780, 2162, 2641, 2649-50 (1982). And NFB highlighted that states' "overprotective" and "custodial" requirements that only election officials could assist voters had "discourag[ed] blind persons from voting out of the realistic fear of being intimidated by onlooking election officials." S. Hrg. 65; *see also id.* 63 (referencing risk of "undue influence or harassment from voting officials").[5]

---

[5] Ms. Kucera's testimony echoed these concerns. *See* ECF 43-5 (Kucera Dep.) 114:19-118:12 (allowing government officials into her home would intimidate her by forcing her to vote while "under the gun" and "somebody is staring over [her] shoulder," which "no one else" who is non-disabled has to go through).

5

Based on this record, the Senate Judiciary Committee made the following findings:

- "Certain discrete groups of citizens," including "the disabled," "are unable to exercise their rights to vote without obtaining assistance in voting." S. Rep. 97-417 at 62.

- "Because of their need for assistance," such citizens were "more susceptible than the ordinary voter to having their vote unduly influenced or manipulated" and risked "hav[ing] their actual preference overborne by the influence of those assisting them or be[ing] misled into voting for someone other than the candidate of their choice." *Id.* & n.207 (citing NFB letter that was "made part of the record"); *contra* St. Opp. 5 (describing legislative findings as "simple conclusions without cited evidentiary support").

- The "only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter" is to provide that such voters "must be permitted to have the assistance of a person of their own choice." S. Rep. 97-417 at 62.

And so Congress prescribed a remedy proportional to the problems identified in the record: that blind, disabled, and illiterate voters must have voting assistance from "a person of their own choice" rather than from election workers or other state-prescribed assistors who were forced on them. *Id.* In this way, a voter could receive assistance from "a person whom the voter trusts and who cannot intimidate him." *Id.* Against this backdrop, Section 208 "cannot be said to be so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional" infringement of disabled persons' right to vote. *Lane*, 541 U.S. at 533 (quotation omitted). Congress did not exceed its authority in enacting this "reasonable prophylactic measure, reasonably targeted to a legitimate end." *Id.*

The State's arguments also fail for independent reasons. First, because *Ex parte Young* defeats sovereign immunity here, *see* Pl. CCPO Opp. 5-8, addressing whether Congress properly abrogated states' immunity via Section 208 is unnecessary. *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir. 2000). Second, preemption requires only that the federal law "represent the exercise of a power conferred on Congress by the Constitution," *Murphy v. NCAA*, 584 U.S. 453, 477 (2018), and the State does not question Congress's *additional* authority to enact Section 208 under the Elections Clause, U.S. Const., art. I, sec. 4. The Elections Clause "empowers Congress

6

to pre-empt state regulations governing the 'Times, Places and Manner' of holding congressional elections." *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 8 (2013); *see also Smiley v. Holm*, 285 U.S. 355, 366 (1932) (authority to regulate "manner of holding elections" encompasses regulations of "supervision of voting [and] protection of voters"). Section 208 squarely fits within this mandate. Thus, even if the State's Fourteenth Amendment arguments had merit (and they do not), the State's challenge to Section 208 still fails.

### III.  Defendants' Repeated Arguments Fail.

Defendants' remaining arguments, which echo their summary-judgment briefs, do not defeat Plaintiffs' entitlement to judgment as a matter of law on their statutory claims. Plaintiffs incorporate their opposition briefs fully and correct some of Defendants' most pernicious errors.

*Section 208*. The Challenged Provisions are preempted because they defy the VRA's text and purpose. Pl. St. Opp. 1-7; ECF 54 (Pl. Int. Opp.) 2-5. The State cannot rely on a general presumption to evade preemption where state and federal laws directly conflict. *See PLIVA v. Mensing*, 564 U.S. 604, 617 (2011). Nor can Defendants salvage the Challenged Provisions by arguing Plaintiffs lack a private cause of action, Pl. Int. Opp. 3-4, or that Section 208 does not reach absentee voting, *id*. 2-3, 5, or by manufacturing an undue-burden test, Pl. St. Opp. 5-7. And Defendants' efforts to distinguish Plaintiffs' supporting cases rely on brazen mischaracterizations or irrelevant distinctions.[6] Lastly, whether other states' laws conflict with Section 208 is irrelevant:

---

[6] Take three examples. First, Intervenors' claim that *Disability Rts. N.C. v. N.C. State Bd. of Elections* (*DRNC*) overlooked Section 208's text, purpose, and history is just wrong: the court discussed each in depth. *See* 2022 WL 2678884, at *4-5 (E.D.N.C. July 11, 2022). Second, the State ignores that the presumption-against-preemption argument was extensively briefed in *DRNC*, and that the indefinite-article argument was likewise briefed in *Disability Rts. Miss. v. Fitch* (*DRMS*) (as was the presumption-against-preemption argument). *See DRMS*, No. 3:23-cv-350 (S.D. Miss.), ECF 17 at 15, 18-19; *DRNC*, No. 5:21-cv-361 (E.D.N.C.), ECF 18 at 9-10, 12, ECF 24 at 2-5, ECF 35 at 12, 15. Those courts "had the opportunity to consider" Defendants' arguments and "appear not to have credited" them. *See Hawkins vs. DeWine*, 968 F.3d 603, 606 n.1 (6th Cir. 2020). Third, Intervenors' misreading of *United States v. Alabama* (which *rejected* the only more-restrictive meaning of "a" it considered) would be irrelevant even if it were accurate: limiting assistors to *one* person of the voter's choice would cabin only *how many* assistors the voter could choose; it cannot save Ohio's restrictions on *whom* the voter could choose. *See* 778 F.3d 926, 932 (11th Cir. 2015).

7

Defendants' whataboutism cannot rebut the VRA's proper reading. *See* ECF 55 (DOJ Stmt.) 4-10.

*ADA and RA.* The Court should disregard Defendants' strawmen and misdirection. To start, the ADA and RA prohibit denying equal opportunity and reasonable accommodations, not just total disenfranchisement. *See* Pl. St. Opp. 10-11 & n.7; Pl. Int. Opp. 5-6; DOJ Stmt. 15-18. Further, Intervenors misframe their analysis around Ohio's voting program generally when even the State agrees that absentee voting is the program at issue. Pl. Int. Opp. 5-6; ECF 43 (St. Br.) 4. Intervenors also mischaracterize Plaintiffs' equal-access argument as novel. Courts and litigants use "equal" and "meaningful" access interchangeably to harmonize RA caselaw's meaningful-access standard with Title II's equal-opportunity regulations. *See, e.g.*, *Jones v. City of Monroe*, 341 F.3d 474, 478-79 (6th Cir. 2003); *compare Alexander v. Choate*, 469 U.S. 287, 301 (1985), *with* 28 C.F.R. 35.130(b)(1)(ii)-(iii). And even the Supreme Court has referred to the ADA and RA's "equal access requirements." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 175 (2017).

Defendants also misrepresent that disabled voters have alternatives to return their ballots, citing irrelevant procedures or options unavailable to most voters. Pl. St. Opp. 9-11 & nn. 5-6. Defendants ask voters to trust their litigation position that when the SOS *requires voters to affirm* that they are "unable to travel" on Form 11-F, it means "have difficulty traveling." But neither the SOS nor AG has provided guidance indicating that "unable" means anything other than "incapable" in this context. *Unable*, Merriam-Webster.com Dictionary, https://perma.cc/HX83-B473. These hollow assurances that the form doesn't mean what it says hardly justify risking an "election falsification" charge, especially where a BOE official believes this type of aid is illegal. Pl. St. Opp. 10 & n.5. And none of Defendants' nitpicking undermines Dr. Kruse's core findings: At least one million disabled Ohioans voted in the 2020 election, ECF 42-2 (Kruse Rpt.) ¶¶13, 15, at least 498,000 of whom used a mail ballot, *id.* ¶16. Dr. Kruse's report demonstrates to a

8

reasonable degree of certainty that approximately 10.5% of those voters—tens of thousands of disabled Ohioans—require assistance to vote by mail. *Id.* ¶17. A clear standard that provides them meaningful access to absentee voting, consistent with the remedy imposed by other courts, is a reasonable modification. *See* Pl. St. Opp. 11-13; Pl. Int. Opp. 8-9.

*Injunctive Relief.* Invoking *Purcell v. Gonzalez*, 549 U.S. 1 (2006), Intervenors oppose changing election laws "mid-election year." Int. Opp. 19. But *Purcell* "is neither dispositive nor establishes a presumption against enjoining election rules close to election day." *Priorities USA v. Nessel*, 978 F.3d 976, 985 n.3 (6th Cir. 2020). *Purcell* cautions courts not to enjoin laws "when an election is imminent and when there is inadequate time to resolve factual disputes and legal disputes." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (cleaned up). Neither is the case here. As the State acknowledges, "the November 5 general election is still months away." St. Opp. 20. Courts considering Section 208 challenges have rejected *Purcell*'s applicability and enjoined invalid state laws months closer to a November election. *See, e.g.*, *Ark. United v. Thurston*, 626 F. Supp. 3d 1064, 1088 n.16 (W.D. Ark. Sept. 7, 2022); *Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020, 1035 (W.D. Wis. Aug. 31, 2022); *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 238-39 (M.D.N.C. Aug. 4, 2020). The Court may easily resolve all issues well before the November election.

Further, Intervenors fail to explain how enjoining enforcement of a preempted state law as to voters with disabilities and their assistors would cause "voter confusion" or affect "voter confidence." Int. Opp. 18-19. Indeed, an injunction "won't create confusion but rather will alleviate it." *Carey*, 624 F. Supp. 3d at 1035. Intervenors cry that "absentee ballots must be prepared, approved, printed, and mailed" to military and overseas voters by September 20. Int. Opp. 19. But relief here would not affect the ballot at all. Nor would it otherwise cause sweeping

9

changes to Ohio law. *Cf. DNC v. Wis. State Legis.*, 141 S. Ct. 28 (2020) (upholding stay of injunction extending election deadline). Indeed, the State conceded an injunction will be easy to implement. ECF 42-8 ¶15.[7] Intervenors' conclusory arguments—which are not even joined by the parties who administer Ohio's elections—cannot tip the balance of equities in their favor.[8]

Whiplashed, Intervenors also argue that an injunction can only be granted narrowly to individual plaintiffs. But if the Challenged Provisions are preempted, they should be enjoined to the full extent they conflict with federal law—that is, as to all absent voters with disabilities requiring assistance and their assistors. There is no principled reason why affected individuals should have to engage in piecemeal litigation to regain the full rights afforded to them under federal law. *See Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019) ("every plaintiff seeking statewide relief from legislative overreach" is not required "to file for class certification").

Lastly, Intervenors fret that increased voter participation due to Plaintiffs' requested injunction could "result in more ballots returned by Democratic voters." ECF 53-1 ¶¶21, 26, 28. In addition to being sheer speculation, that is not a legitimate reason to override the public interest in enfranchisement and eliminating discrimination. Pl. Br. 20. And Intervenors' partisan entreaties fall particularly flat in the context of this case: LWVO is a nonpartisan organization and Ms. Kucera is a registered Republican. ECF 44-21.

## CONCLUSION

The Court should grant Plaintiffs' Motion for Partial Summary Judgment.

---

[7] Plaintiffs' invocation of the State's counsel's on-the-record statement is neither hearsay nor otherwise improper. When an attorney "speaks in Court, whether it be on a formal trial or in an informal pretrial, [the attorney] speaks for and as the client," *Laird v. Air Carrier Engine Serv.*, 263 F.2d 948, 953-54 (5th Cir. 1959), and such statements by counsel are "available as substantive evidence under Federal Rule of Evidence 801(d)(2)," *Williams v. Union Carbide Corp.*, 790 F.2d 552, 556 (6th Cir. 1986). The attorney declaration merely memorializes the State's position; it is the State who "insert[ed] this point into the record," St. Opp. 18, by stating it in a hearing before this Court.

[8] The Court should not credit the Sagester and Latchem declarations' assertions about voter confusion and voter confidence, which merely parrot Intervenors' speculative remarks without supporting facts or data. ECF 53-1, 53-2.

Respectfully submitted,

/s/ Suzan F. Charlton
Suzan F. Charlton*
Jacob Zuberi (Bar No. 101383)
Scott Garfing*
Gregory Terryn*
Hassan Ahmad*
William Ossoff*
August Gweon*
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
scharlton@cov.com
jzuberi@cov.com
sgarfing@cov.com
gterryn@cov.com
hahmad@cov.com
wossoff@cov.com
agweon@cov.com

/s/ Freda J. Levenson
Freda J. Levenson (Bar. No. 0045916)
ACLU OF OHIO FOUNDATION, INC.
4506 Chester Avenue
Cleveland, OH 44103
(216) 541-1376
flevenson@acluohio.org

/s/ Megan C. Keenan
Megan C. Keenan*
AMERICAN CIVIL LIBERTIES UNION
915 15th Street NW
Washington, DC 20001
(740) 632-0671
mkeenan@aclu.org

/s/ Sophia Lin Lakin
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

*Attorneys for Plaintiffs*

*Admitted pro hac vice

**CERTIFICATE OF COMPLIANCE**

Under Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has been assigned to the Expedited Track. Scheduling Order, ECF 31. I also certify that this memorandum does not exceed ten (10) pages.

/s/ Suzan F. Charlton
Suzan F. Charlton
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Suzan F. Charlton, an attorney admitted to practice pro hac vice before this court, hereby certify that on June 21, 2024, the foregoing Reply Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. The parties may access this filing through the Court's electronic filing system.

/s/ Suzan F. Charlton
Suzan F. Charlton
*Attorney for Plaintiffs*