# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| **LEAGUE OF WOMEN VOTERS OF OHIO**, et al., | : |
| *Plaintiffs*, | : |
| | : |
| v. | : Case No. 1:23-cv-2414 |
| | : |
| **FRANK LaROSE**, et al., | : JUDGE BRIDGET M. BRENNAN |
| *Defendants*, | : |
| | : |
| and | : |
| | : |
| **REPUBLICAN NATIONAL COMMITTEE and** | : |
| **OHIO REPUBLICAN PARTY,** | : |
| *Intervenor-Defendants*. | : |

## OHIO SECRETARY OF STATE AND OHIO ATTORNEY GENERAL'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE OPINION OF KIMBERLY STRACH

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
* *Counsel of Record*
HEATHER L. BUCHANAN (0083032)
MICHAEL A. WALTON (0092201)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Heather.Buchanan@OhioAGO.gov
Michael.Walton@OhioAGO.gov

*Counsel for Defendants Secretary of State Frank LaRose and Ohio Attorney General Dave Yost*

## INTRODUCTION

Kimberly Westbrook Strach was North Carolina's chief elections official during the country's biggest investigation into ballot harvesting. The fraud was so widespread that an entire congressional election could not be certified. Based upon that experience, coupled with her 20 years with the North Carolina State Board of Elections, Ms. Strach offered her expert opinion on election fraud, how to detect it, and how to prevent it, particularly in the context of absentee voting and ballot harvesting. Ms. Strach is qualified to offer these opinions based on her broad experience in election-fraud investigations, and her opinion will help the factfinder in this case. The Court should therefore deny Plaintiffs' motion to exclude Ms. Strach's opinions and testimony.

## LAW AND ARGUMENT

Courts have distilled Rule 702 to the following three requirements for admissible expert testimony: (1) the witness must be qualified by "knowledge, skill, experience, training or education," (2) the testimony must be relevant, *i.e.*, helpful to the trier of fact in determining a fact in issue, and (3) the testimony must be reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008). Here, the State Defendants must show that it is "more likely than not" that Ms. Strach's proffered testimony meets these three requirements. Fed. R. Evid. 702, advisory committee's notes to 2023 amendments. They do so easily.

**I. Ms. Strach is qualified to offer her expert opinion based on her education, training, and nearly 20 years of experience investigating irregularities and fraud.**

Ms. Strach is qualified to offer an expert opinion on election-fraud detection and investigation based on her knowledge, skill, experience, and training. "[T]here are many different kinds of experts, and many different kinds of expertise." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). A person can qualify as an expert entirely based on her experience. Fed. R. Evid. 702, advisory committee's notes to 2000 amendments; *Design Basics, LLC v. Petros Homes, Inc.*,

1

No. 1:14-cv-1966, 2017 U.S. Dist. LEXIS 102931, *18-19 (N.D. Ohio. Jul. 3, 2017) (holding that an architect's testimony based largely on his personal experience with design plans "does not necessarily disqualify him as an expert"); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2021 U.S. Dist. LEXIS 239137, *13-14 (N.D. Ohio. Dec. 15, 2021) (finding that a certified public accountant's decades of accounting experience and "extensive damage expert experience," in conjunction with his formal training, qualified him to testify about data breach damages). Fundamentally, whether a person's experience sufficiently qualifies her to offer expert testimony "depends on the nature and extent of that experience." *United States v. Cunningham*, 679 F.3d 355, 379 (6th Cir. 2012). The Sixth Circuit "take[s] a liberal view" of the skill or experience necessary to satisfy the qualification requirement. *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015).

Here, Ms. Strach's extensive experience with election-fraud investigations qualifies her as an expert. Ms. Strach graduated from East Carolina University in 1994 with a bachelor's degree in criminal justice. Doc. 43-1 at PageID 2199. As part of her degree, Ms. Strach took courses that prepared her to conduct criminal investigations. Doc. 48-1 at PageID 4011-12.

In March 2000, she joined the North Carolina State Board of Elections (NCSBE) as an Elections Investigator, where she "investigated election related irregularities, fraud, and campaign finance violations." Doc. 43-1 at PageID 2200. She received on-the-job training from numerous members of the NCSBE staff, including the deputy director, executive director, and general counsel. Doc. 48-1 at PageID 4024-27. Throughout her time as an Elections Investigator, Ms. Strach developed a "well-defined process" to ensure faith and trust in her investigation results. *Id.* at PageID 4025-26.

Ms. Strach's first investigation as an Elections Investigator involved a fraudulent absentee-ballot scheme in a city council race in Harnett County, North Carolina. Doc. 48-1 at PageID 4018. Ms. Strach uncovered a complex conspiracy in which a city councilmember forged voters' names on absentee-ballot applications, sent the ballots to certain P.O. boxes from which the ballots would be retrieved, and induced co-conspirators to cast the ballot and falsely sign the ballots as witnesses. *Id.* at PageID 4018-19. Ms. Strach later investigated allegations of voter intimidation, illegal assistance to absentee voters, and voter registrations that never arrived at the boards of elections. *Id.* at PageID 4019-20.

In late 2001, Ms. Strach was promoted to Deputy Director of Campaign Finance at the NCSBE, where she continued to participate in election-related investigations. Doc. 43-1 at PageID 2200. In 2013, she was appointed as Executive Director of the NCSBE. *Id.* at PageID 2200. Serving as North Carolina's chief elections official, Ms. Strach "oversaw the comprehensive management of State elections, provided directives to the 100 county boards of elections, and continued to spearhead major investigative initiatives into electoral fraud and misconduct." *Id.* at PageID 2201. She also oversaw the training of North Carolina's 100 county boards of elections. Doc. 48-1 at PageID 4036-37.

During her tenure, Ms. Strach led an investigation into the largest ballot-harvesting scheme in the United States to date. In 2018, an elections official in Bladen County received a report from a voter that an unrelated person visited the voter's home, offered the voter assistance with an absentee ballot, and left with the ballot. Doc. 43-1 at PageID 2214. The NCSBE scheduled an evidentiary hearing, and Ms. Strach and her team conducted 142 voter interviews in preparation. *Id*. at PageID 2216. She then presented evidence before the NCSBE that a political operative hired workers in rural North Carolina to participate in a two-phase ballot-harvesting scheme. *Id*. In phase

3

one, the workers would persuade voters to request absentee ballots. The workers returned absentee-ballot applications to the boards of elections and retained copies of the applications. *Id*. at PageID 2216-17. In phase two, the workers would return to the voters who participated in phase one. The workers would offer to assist the voters with their absentee ballots and to return the ballots to the boards of elections. *Id*. at PageID 2217-18. The workers received payments for the absentee-ballot applications and absentee ballots they collected. *See id*. Accordingly, the workers forged voter signatures on request forms and witness signatures on absentee ballots. *Id.* at PageID 2218-19. Additionally, in the counties in which these workers operated, a high percentage of requested absentee ballots were never returned to the board of elections, which led to the impression that the workers harvested these ballots. *Id*. at PageID 2219. After Ms. Strach presented her evidence, the NCSBE ordered a new election for the affected congressional district. *Id*. at PageID 2220.

Throughout her time at the NCSBE, Ms. Strach provided detailed testimony and comprehensive reports to legal and quasi-judicial bodies across multiple states on matters of election law and campaign finance. Doc. 43-1 at PageID 2202-07. She also provided expert testimony on issues of election security in Oklahoma, Virginia, and Michigan. *Id.* at PageID 2206-07.

Plaintiffs fault Ms. Strach for being unaware of cases invalidating certain North Carolina laws *after* Ms. Strach's tenure at the NCSBE concluded. Doc. 48 at PageID 3982-83. But Ms. Strach is not offered as an expert on up-to-date absentee-ballot laws in North Carolina; she is offered as an expert in the detection and investigation of election fraud. In this area, she has 20 years of knowledge, skills, and experience. This experience, along with her formal and informal education and training, shows that Ms. Strach is uniquely qualified to opine on matters of election security. The nature and extent of Ms. Strach's experience more than suffices to qualify her as an expert in this case.

Regardless, this point goes to the weight of Ms. Strach's testimony, not admissibility. *See Davis v. Combustion Engineering, Inc.*, 742 F.2d 916, 919 (6th Cir. 1984) ("The fact that a proffered expert may be unfamiliar with pertinent statutory definitions or standards is not grounds for disqualification. Such lack of familiarity affects the witness' credibility, not his qualifications to testify."); *First Tennessee Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 333 (6th Cir. 2001) (an expert witness' unfamiliarity with a legal issue "affected the weight and credibility of his testimony, not its admissibility"); *see also Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998) ("[T]he jury was free to give [an expert's] testimony as much credence as it felt the testimony deserved, particularly in light of Defendant's cross-examination exposing [his] lack of familiarity with the given topics"). Here, the Court can weigh the significance of *where* the ballot-harvesting examples occurred and Ms. Strach's knowledge of certain laws and give both the weight it deems appropriate.

> **II. Ms. Strach's testimony is relevant and helpful as it relates to the reasonableness of Plaintiffs' proposed accommodation under the Americans with Disabilities Act.**

Expert testimony must assist the trier of fact in understanding evidence presented or in determining a fact of consequence in issue. Fed. Rule Evid. 702(a); *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 766 (E.D. Mich. 2010) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993)). A fact of consequence is one that—due to its presence or absence—affects the outcome of a case. Fed. R. Evid. 401(b); *United States v. Hazelwood*, 979 F.3d 398, 408 (6th Cir. 2020). For evidence to be relevant, it must also have a "tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. Rule Evid. 401(a); *United States v. Nixon*, 694 F.3d 623, 636 (6th Cir. 2012). "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Davis v. Combustion Engineering, Inc.*, 742 F.2d 916, 919 (6th Cir. 1984).

Here, Plaintiffs contend that Ohio's ballot-harvesting statutes violate the Americans with Disabilities Act and the Rehabilitation Act. If Plaintiffs can show that Ohio's existing accommodations for disabled voters do not provide meaningful access to absentee voting, the Court must then consider whether Plaintiffs' proposed accommodation is reasonable. *Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023). Plaintiffs' proposed accommodation is non-enforcement of the ballot-harvesting statutes against disabled voters and their assistors. But Title II does not require the State Defendants to provide any accommodation that would fundamentally alter the underlying absentee-ballot program. 28 C.F.R. § 35.130(b)(7)(i). Accordingly, the fact-of-consequence questions here include (1) the ballot-harvesting statutes' role in advancing election security for Ohio's absentee-ballot system and (2) whether Ohio's absentee-ballot system would suffer if the ballot-harvesting statutes were not enforced.

Ms. Strach's testimony is relevant to the role of ballot-harvesting statutes in maintaining election security and the consequences to Ohio's absentee-ballot system of non-enforcement and helpful to the factfinder in understanding these points. She explains that the ballot-harvesting statutes' criminal penalties "have a deterrent effect on ballot harvesting schemes." Doc. 43-1 at PageID 2223. Without the ballot-harvesting statutes, Ohio would have a difficult time identifying and investigating ballot-harvesting schemes. *Id*. at PageID 2223-24. This is because Ohio lacks protections—like witness-signature requirements—present in other states that assist elections investigators in identifying and pursuing bad actors. *Id*. Instead, Ohio limits access to absentee ballots by law, which has a natural deterrent effect. *Id*.

Ms. Strach's testimony also helps to understand the deleterious effect of unchecked ballot harvesting on an elections system. She describes in detail the ballot-harvesting operation uncovered in North Carolina, which affected so many ballots that a congressional race could not

6

be certified. Doc. 43-1 at PageID 2220. In the North Carolina scheme, a political operative paid workers to convince potential voters to request absentee ballots, return to the voters' residences, assist the voters with their ballots, and offer to return the ballots to the boards of elections. *Id*. at PageID 2217-18. Ms. Strach opined that "such activities could become a recurring political strategy rather than an isolated incident" if left unpunished. *Id*. at PageID 2226. Ms. Strach's testimony is also relevant to whether non-enforcement of the ballot-harvesting statutes is reasonable.

Plaintiffs' arguments to the contrary do not convince. Plaintiffs argue that Ms. Strach's opinions are not relevant here because the North Carolina scheme she uncovered would have been illegal under Ohio statutes other than the ballot-harvesting statutes. *See, e.g.*, Ohio Rev. Code § 3599.21(A)(5)-(7). But it is often the case that States have laws criminalizing "the most blatant and specific attempts to impede elections." *Burson v. Freeman*, 504 U.S. 191, 207 (1992) (plurality op.) (quotation marks omitted). These States are still permitted to enact broader regulations targeting conduct that may lead to election fraud. For example, a state with election-intimidation and interference laws can still enact an electioneering ban in the hopes of preventing "acts of interference [that] would go undetected" under the stricter laws. *Id*. Just so here. Certainly, Ohio specifically penalizes many kinds of absentee-ballot abuses, including impersonating another to obtain an absentee ballot or delaying the return of an absentee ballot. Ohio Rev. Code § 3599.21(A)(1), (5). But it is still permitted to criminalize the return of an absentee ballot by an unauthorized person. And that's true even if most people returning someone else's absentee ballot would not commit fraud. *Burson*, 504 U.S. at 206-07 (rejecting argument that electioneering ban is overinclusive). The fact-of-consequence question is whether the ballot-harvesting statutes

7

nonetheless play a vital role in Ohio's absentee-ballot system. And Ms. Strach's opinion helps the factfinder to answer that question.

Next, Plaintiffs argue that Ms. Strach's opinion is of no use here because she uncovered the North Carolina scheme through the witness-signature requirement, which Ohio lacks. This fact prompted Ms. Strach to conclude that the ballot-harvesting prohibition is *more* important to the detection of absentee fraud in Ohio because Ohio lacks certain safeguards present in other states. Doc. 43-1 at PageID 2224. Plaintiffs state that Ms. Strach's conclusion is based on no factual support, but this is untrue. Ms. Strach explained that access to ballots necessarily creates the risk of intimidation and manipulation, a concern echoed by the bipartisan Carter-Baker Commission's 2005 report on Federal Election Reform. Doc. 48-1 at PageID 4074-75, 4079-80. Accordingly, Ms. Strach testified that states should limit ballot access to a defined group of people less likely to engage in fraud. *Id*. at PageID 4074-75.

### III. Ms. Strach's testimony is reliable.

Finally, Ms. Strach's testimony is reliable. In cases involving non-scientific expert testimony, reliability focuses upon personal knowledge or experience. *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001). Expert testimony derived from practical experiences in the relevant area can be reliable. *See id*. Non-scientific expert testimony is reliable if the record shows the expert's explanation "how their experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts*." Surles v. Greyhound Lines, Inc*., 474 F.3d 288, 296 (6th Cir. 2007) (cleaned up).

Here, as set forth above, the record establishes Ms. Strach's knowledge, experience, and how her knowledge and experience led to the conclusions she reached. Ms. Strach set forth at length her experience investigating absentee-ballot fraud in North Carolina, including the largest

8

ballot-harvesting case in U.S. history. Doc. 43-1 at PageID 2210-20; Doc. 48-1 at PageID 4107-15. She explained the effect that ballot harvesting can have on election security based on her experience. *See id*. She examined Ohio's ballot-harvesting laws, and, based on her experience in North Carolina and bipartisan best-practice recommendations, she opined that such laws are necessary to safeguard absentee ballots. Doc. 48-1 at PageID 4074-75, 4079-80, 4124. Her testimony is therefore reliable. *First Tenn. Bank*, 268 F.3d at 335; *Surles*, 474 F.3d at 296.

## CONCLUSION

The Court should deny Plaintiffs' motion to exclude.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
\* *Counsel of Record*
HEATHER L. BUCHANAN (0083032)
MICHAEL A. WALTON (0092201)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Heather.Buchanan@OhioAGO.gov
Michael.Walton@OhioAGO.gov

*Counsel for Defendants Secretary of State
Frank LaRose and Ohio Attorney General Dave Yost*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2024, the foregoing was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General

**CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has been assigned to the Expedited Track. *See* Doc. No. 31. This memorandum complies with the page limitations for expedited cases.

*/s/ Ann Yackshaw*
ANN YACKSHAW
Assistant Attorney General