UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF OHIO, *et al.*, | ) ) ) | CASE NO.  1:23-cv-02414 |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK LAROSE, *et al.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| REPUBLICAN NATIONAL COMMITTEE, *et al.*, | ) ) | |
| | ) | |
| Intervenor-Defendants. | ) | |

Before the Court are the parties' cross-motions for summary judgment.  (Doc. Nos. 42, 43, 44, 45.)  Each motion has been opposed (Doc. Nos. 49, 50, 51, 52, 53, 54), and replies have been filed (Doc. Nos. 56, 57, 58, 59).  Also before the Court is *amici* states' unopposed motion for leave to file a memorandum in support of Plaintiffs' motion for partial summary judgment. (Doc. No. 46.)

For the reasons stated herein, the Court finds that Section 208 of the Voting Rights Act ("Section 208") preempts Ohio Revised Code § 3599.21 (the "Challenged Ohio law").  Because the Court reaches this conclusion on the Voting Rights Act claim, the Court declines to reach the Plaintiffs' Americans with Disabilities Act, Rehabilitation Act, and vagueness claims.

I.    **Background**

    A.    **The Parties**

Plaintiffs are the League of Women Voters of Ohio ("LWVO") and Jennifer Kucera ("Ms. Kucera") (collectively "Plaintiffs").  The LWVO is a nonpartisan organization dedicated to assisting citizens exercise their right to vote and expanding voter access.  (Doc. No. 42-1, PageID# 453.) [1]  In Ohio, the LWVO has a small staff and thousands of members.  (*Id.* at PageID #453–54.)  Many members work or volunteer in nursing homes as home health aides, or otherwise assist the disabled community.  (*Id.* at PageID #454.)  Since the passage of HB 458, the law at dispute here, the LWVO has dedicated significant time, money, and resources to educating and training on the Challenged Ohio Law's requirements and limitations.  (*Id.*)  Because of this, the LWVO has not undertaken other projects or has deprioritized projects like voter registration programs.  (*Id.*)  At least a few of LWVO's members are willing to assist disabled voters who want their members' assistance.  (*Id.*)  However, the LWVO's members cannot and do not facilitate disabled voters in this way because they fear felony charges, including those that assist Ms. Kucera and others.  (Doc. No. 42-4, PageID #567–68; Doc. No. 42-5, PageID #570–74; Doc. No. 42-6, PageID #576–78; Doc. No. 42-7, PageID #580–82.)

Ms. Kucera is a disabled Ohioan living with muscular dystrophy.  (Doc. No. 42-1, PageID #452.)  She is a registered Republican.  (Doc. No. 59, PageID #4568.)  Ms. Kucera lives alone with the assistance of professional, in-home caregivers.  (Doc. No. 42-1, PageID #453.)  She is unable to travel without assistance and relies on her caregivers for daily tasks.  (*Id.* at PageID #452–53.)  In the past few elections, Ms. Kucera has voted with the assistance of her

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

elderly mother.  (*Id.* at PageID #453.)  Her mother is the only family member willing and able to assist Ms. Kucera with voting.  (*Id.*)  However, Ms. Kucera would prefer to rely on her professional caregivers to assist her with voting in the future because her mother is not always available—due to her mother's own health and mobility limitations—and if her mother becomes indisposed in the future, Ms. Kucera may not be able to vote at all.  (*Id.*)

The "State Defendants" are Secretary of State Frank LaRose and Attorney General Dave Yost.  (*Id.* at PageID #458.)  Mr. LaRose is Ohio's chief election officer, supervising Ohio's elections and promulgating rules relating to those elections.  (*Id.*)  Mr. Yost is Ohio's chief law officer, tasked with—among other things—investigating potential violations of Ohio's election laws.  (*Id.* at PageID #459.)  Under those laws, Mr. Yost may initiate criminal proceedings for violations of Ohio's election laws or refer violations to a county prosecutor.  (*Id.*)

The "CCPO" is the Cuyahoga County Prosecutors' Office, and Michael O'Malley is its duly elected prosecutor.  (*Id.* at PageID #459–60.)  The CCPO can initiate criminal proceedings against anyone who violates Ohio's election laws, either on its own or by referral from the Ohio Attorney General's Office.  (*Id.*)

The "Intervenors" are the Republican National Committee and the Ohio Republican Party.  Together, the Intervenors represent the interests of their members.  (Doc. No. 16-1, PageID #148.)

### B.    Ohio's Absentee Ballot Election Laws

Plaintiffs challenge Ohio's limitations on who may possess or return absentee ballots on the grounds that its application unlawfully affects disabled voters.  In April 2023, Ohio enacted a series of changes to its election laws.  *See* Sub. H.B. 458, 2022 Ohio Laws 175.  HB 458 criminalizes knowingly returning another's absentee ballot, unless the facilitating person is

3

authorized to do so.  *See* R.C. § 3599.21(A)(9).[2]  HB 458 is codified at R.C. § 3599.21, and

states:

> (A) No person shall knowingly do any of the following: . . .
>> (9) Return the absent voter's ballot of another to the office of a board of
>> elections, unless either of the following apply:
>>> (a) The person is a relative who is authorized to do so under division
>>> (C)(1) of section 3509.05 of the Revised Code;
>>> (b) The person is, and is acting as, an employee or contractor of the
>>> United States postal service or a private carrier.
>> (10) Except as authorized under Chapters 3509 and 3511 of the Revised
>> Code, possess the absent voter's ballot of another.

Authorized relatives are limited to the voter's spouse, father, mother, father-in-law,

mother-in-law, grandfather, grandmother, brother, or sister of the whole or half blood, or the

voter's son, daughter, adopting parent, adopted child, stepparent, stepchild, uncle, aunt, nephew,

or niece.  R.C. § 3509.05(C)(1).  A violation of R.C. § 3599.21 is a felony of the fourth degree.

R.C. § 3599.21(C).  So, any facilitator who is not listed in § 3509.05(C)(1) can be charged with a

felony for placing an absentee ballot in the mail or returning a ballot to the board of elections.

The law does not recognize any basis to expand the list of facilitators if, for example, a disabled

voter does not have such a relative available to them or the disabled voter prefers the help of

their caregiver.

### C.    Procedural Background

On December 19, 2023, Plaintiffs filed a Complaint asserting four causes of action:

violation of Title II of the Americans with Disabilities Act ("ADA") (Count One); violation of

Section 504 of the Rehabilitation Act ("RA") (Count Two); violation of Section 208 of the

Voting Rights Act ("Section 208") (Count Three); and that the Ohio Challenged Law is void for

---

[2] Ohio law already criminalized knowingly possessing another's absentee ballot, unless
authorized.  *See* R.C. § 3599.21(A)(10).

4

vagueness (Count Four).  (Doc. No. 1, PageID #25–38.)  Plaintiffs requested declaratory relief, injunctive relief, and attorney fees.  (*Id.* at PageID #38–40.)  The Complaint named as defendants Frank LaRose (as Ohio Secretary of State), David Yost (as Attorney General of Ohio), and Michael O'Malley (as County Prosecutor of Cuyahoga County).  (*Id.* at PageID #7–9.)  On January 19, 2024, the Republican National Committee and the Ohio Republican Party sought intervention under Rule 24 of the Federal Rules of Civil Procedure.  (Doc. No. 16.)  No opposition was filed to permissive intervention, and the Court granted the motion on February 6, 2024.  (Doc. No. 25.)

At the onset of this case, the parties requested this Court hold a case management conference as soon as practicable and set the case for an expedited track.  (Doc. No. 13.)  The Court held the case management conference on March 1, 2024, assigned the case to an expedited track, and established deadlines accordingly.  (Doc. No. 31.)  Those deadlines required the parties to submit dispositive motions six months after Plaintiffs filed this case.  (*Id.*)  After expedited discovery was completed, all parties timely filed dispositive motions.  For Plaintiffs, it is a partial summary judgment motion, seeking relief only on Count One through Count Three (ADA, RA, and Section 208, respectively).  (Doc. No. 42.)  The State Defendants, Intervenors, and the CCPO moved on all of Plaintiffs' claims.  (Doc. Nos. 43, 44, 45.)  On May 24, 2024, six states—Delaware, Illinois, Maryland, Nevada, New Jersey, and New York—and the District of Columbia, filed a motion for leave to submit a memorandum of law as *amicus curiae*.  (Doc. No. 46.)  That motion is unopposed.

## II.  <u>Law and Analysis</u>

### A.  **Legal Standard**

"A party may move for summary judgment, identifying each claim or defense—or the

part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories,

and affidavits show there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. The moving party bears the burden of showing that no

genuine issues of material fact exist."  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021)

(citations and quotations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A "material" fact is one that "might affect the outcome of the suit under the governing

law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "And a genuine dispute of

material fact exists if the evidence is such that a reasonable jury could return a verdict for the

non-moving party."  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849–50 (6th Cir. 2020) (citations

and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to

set forth specific facts showing a triable issue of material fact."  *Queen v. City of Bowling Green,

Ky.*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted).  Facts and inferences

must be read in a light most favorable to the party opposing the motion.  *Duchon v. Cajon Co.*,

791 F.2d 43, 46 (6th Cir. 1986).  A party asserting or disputing a fact must cite evidence in the

record or show that the record establishes either the absence or the presence of a genuine dispute.

*See* Fed. R. Civ. P. 56(c) & (e).  Rule 56 further provides that "[t]he court need consider only

the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(3); *see also Street v. J.C. Bradford

& Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search

the entire record to establish that it is bereft of a genuine issue of material fact.").  "Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986) (quotation and citation omitted).  However, the Court's role is not to make credibility determinations or weigh conflicting evidence.  *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014).  "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law."  *Id.* at 530.

"The fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists."  *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948).  "It is true that both parties seek to resolve this case through the vehicle of cross-motions for summary judgment, but the standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).  "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

When a plaintiff moves for summary judgment on its own claims, for which it carries the burden of persuasion at trial, the burden is high.  The plaintiff must show the absence of material fact disputes on all of the essential elements of its claim.  *See Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (citations and quotations omitted).

### B.    Standing

Intervenor Defendants challenge the LWVO's standing to bring this action.  Separately, the CCPO argues that it is not a proper party to this action, that no Plaintiff can obtain declaratory and injunctive relief against it, and that the CCPO is entitled to sovereign immunity.

These challenges are addressed in turn.

### 1.     Intervenors' Standing Challenge

The Intervenors' standing challenge is limited to the LWVO. (Doc. No. 53, PageID #4438.) Intervenors do not challenge Ms. Kucera's standing to sue, and neither do the State Defendants. (*Id.*; Doc. No. 59, PageID #4559.) Accordingly, Intervenors do not ask the Court to dismiss the entire suit on standing grounds. Instead, Intervenors only ask that LWVO be dismissed.

Under well-settled law, "[w]hen one party has standing to bring a claim, the identical claims brought by other parties to the same lawsuit are justiciable." *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 623–24 (6th Cir. 2016) (citing *Dep't of Com. v. U.S. House of Representatives*, 525 U.S. 316, 330 (1999)). Accordingly, upon a finding that one plaintiff has standing, courts often refuse to entertain challenges to the standing of other parties since the court already has jurisdiction to hear the case. *Rumsfeld v. F. for Acad. and Inst. Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006) (agreeing with the Court of Appeals when it "did not determine whether the other plaintiffs have standing because the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement"); *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 555 (6th Cir. 2021) ("If one party has standing, then identical claims brought by other parties to the same lawsuit are also justiciable."); *Ne. Ohio Coal. for the Homeless*, 837 F.3d at 623 ("Because NEOCH has organizational standing, we do not reach Ohio's other arguments regarding NEOCH's and CCH's standing to bring suit."); *O.A. v. Trump*, 404 F.Supp.3d 109, 138 (D.D.C. 2019) ("Where multiple plaintiffs assert claims seeking precisely the same declaratory or injunctive relief . . . and where the court has subject matter jurisdiction to consider the claims of at least one of those plaintiffs, the court need not address its

jurisdiction to consider the claims of the remaining plaintiffs.").

LWVO and Ms. Kucera bring identical claims. (Doc. No. 1, PageID #25–38.) No party challenges Ms. Kucera's standing, and this Court finds no reason to. Ms. Kucera alleges she has suffered, or is likely to suffer, an injury in fact because she may be unlawfully deprived of her right to vote. Further, she alleges that she is deprived of her federally protected rights. These are sufficient injuries. *See Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote . . . constitutes irreparable injury.") (citation omitted). That injury was—and is—caused by the State Defendants and the CCPO enforcing the Challenged Ohio Law. And the relief sought in this Court—if successful—would redress Ms. Kucera's injuries by allowing her an assistor of her choice consistent with federal law. *See Democracy N.C. v. N.C. State Bd. of Elections*, 476 F.Supp.3d 158, 188 (M.D.N.C. 2020) ("The court finds [plaintiff], as a person covered by Section 208, has standing, given the conflict between Section 208 and the North Carolina laws concerning who may assist [plaintiff] in requesting, marking and completing, and returning his absentee ballot[.]").

Because Ms. Kucera has standing, and LWVO's claims are identical, the Court will not entertain Intervenors' motion to dismiss LWVO from the suit based on standing. Intervenors do not cite to any legal authority that would require an opposite conclusion.[3]

---

[3] The Supreme Court recently decided *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). It addressed the specific contours of organizational standing under Article III and held that when an organization asserts injury on behalf of someone else, mere diversion of resources may not be sufficient to assert standing, particularly where the injury is not direct to that organization and the organization is solely an issue-advocacy organization. *Alliance for Hippocratic Med.*, 602 U.S. at 393–96; *see also Tenn. Conference of the NAACP v. Lee*, 105 F.4th 888, 901 (6th Cir. 2024) (questioning standing based on diversion of resources theory). Here, LWVO is not solely an issue-advocacy organization seeking to challenge R.C. § 3599.21. Instead, it is a voter-advocacy organization whose core mission is to educate and assist voters. They allege their members have been affected by HB 458. Unlike the organizational plaintiffs in *All. for Hippocratic Med.* or *Lee*, LWVO does not assert standing solely on the diversion of funds. And

2. **CCPO's Challenges**

a. **Standing to Obtain a Declaratory and Injunctive Relief**

The CCPO argues that Plaintiffs lack standing to obtain either a declaratory judgment or an injunction against the CCPO. (Doc. No. 45, PageID #3796.) To the CCPO, injuries suffered by the Challenged Ohio Law are not "fairly traceable" to it. (*Id.* at PageID #3797.)

Standing requires "a causal connection between the injury and the conduct complained of[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. E. Ky. Welfare R. Org.*, 426 U.S. 26, 41–42 (1976)). Where a party "play[s] a role in enforcing" a statute, that party is a proper defendant. *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1027 (6th Cir. 2024) ("all of whom play a role in enforcing" the statute that causes the "alleged violation" creates a "fairly traceable" injury).

In *Kareem*, the Sixth Circuit held that a plaintiff had standing to sue the CCPO, among others, in challenging an Ohio law that prohibited displaying a marked election ballot. *Id.* at 1021. The Sixth Circuit found that "the alleged violation of [the plaintiff's] First Amendment rights is 'fairly traceable'" to the CCPO because the plaintiff had a credible fear of prosecution stemming from the CCPO's role in enforcing the statute. *Id.* at 1027. The Sixth Circuit focused on the defendant's refusal to disavow future prosecutions, past enforcement actions, and the nature of the restrictions. *Id.* at 1023–25.

Here, as in *Kareem*, Plaintiffs assert a credible fear of prosecution sufficient for a "fairly traceable" injury. The CCPO has not disavowed prosecuting violations of R.C. § 3599.21,

---

this is not, like in *All. for Hippocratic Med.* or *Lee*, a challenged law where it "neither requires nor forbids any action" by the LWVO and its members. Indeed, Ohio law now forbids LWVO members from assisting disabled voters and its members could be subject to felony criminal charges for violations of the Challenged Ohio Law. LWVO's injury in this case is direct.

including cases in which a disabled voter has chosen an assistor inconsistent with R.C. §
3509.05(C).  (Doc. No. 52, PageID #4417.)  Further, while no enforcement actions have been
filed to date, the CCPO has investigated such instances in the past. (*Id.*)  Lastly, as in *Kareem*
where the nature of the law might prevent a person from engaging in their First Amendment
right, so too a disabled voter might be dissuaded from voting altogether due to the Challenged
Ohio Law and a facilitator would not assist disabled individuals who want their help.
Accordingly, Plaintiffs have standing to seek declaratory and injunctive relief against the CCPO.
The Court similarly rejects the CCPO's argument that it is not a proper party to the suit (Doc.
No. 45, PageID #3795) on the same grounds.

### b.    CCPO's Immunity

The CCPO asserts Eleventh Amendment immunity.[4]  (Doc. No. 45, PageID #3798.)  The
Eleventh Amendment bars suits against state officials in their official capacity.  *T.M. v. DeWine*,
49 F.4th 1082, 1087 (6th Cir. 2022).  However, "[t]here are three exceptions to sovereign
immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress
has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex
Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies."  *Boler v. Earley*, 865
F.3d 391, 410 (6th Cir. 2017).

Addressing express abrogation, the Sixth Circuit has already found the Voting Rights Act
expressly abrogated sovereign immunity.  *Mixon v. Ohio*, 193 F.3d 389, 398 (6th Cir. 1999)
("With respect to whether Congress intended to abrogate the States' sovereign immunity under
the Voting Rights Act, we believe the language and purpose of the statute indicate an affirmative

---

[4] Because the Court reaches only the VRA issue, it does not decide whether the CCPO is entitled
to sovereign immunity from the ADA, RA, or vagueness claims.

response.").  The Fifth Circuit has agreed.  *See OCA-Greater Houston v. Texas*, 867 F.3d 604,

614 (5th Cir. 2017) ("The VRA, which Congress passed pursuant to its Fifteenth Amendment

enforcement power, validly abrogated state sovereign immunity.").

The *Young* exception also applies.  Under *Young*, "the state cannot authorize an

unconstitutional act."  *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021,

1040 (6th Cir. 2022).  Because the state has no authority to do so, the state official enforcing the

unconstitutional act is "'stripped of his official . . . character' and stripped of corresponding

immunity from suit."  *Id.* (quoting *Ex parte Young*, 209 U.S. at 160).  Accordingly, a state

official who seeks to enforce an unconstitutional law is not entitled to sovereign immunity.  *Id.*

"In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit,

a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an

ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon

Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur

d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).  An official is a proper party if they have the

"requisite enforcement connection to the challenged laws."  *Universal Life Church*, 35 F.4th at

1040.  The *Young* exception readily applies to these facts.  Plaintiffs seek prospective relief from

an allegedly preempted state law for which the CCPO has the "requisite enforcement

connection."  And, as explained above, "there is 'a realistic possibility the official will take legal

or administrative actions against the plaintiff's interests . . . .'"  *Id.* (quoting *Doe v. DeWine*, 910

F.3d 842, 848–49 (6th Cir. 2018)).

Lastly, the CCPO asserts prosecutorial immunity from this suit.  But prosecutorial

immunity does not shield the CCPO.  *See Supreme Court of Va. v. Consumers Union of U.S.,

Inc.*, 446 U.S. 719, 736–37 (1980) ("Prosecutors enjoy absolute immunity from damages liability

. . . but they are natural targets for § 1983 injunctive suits since they are the state officers who are threatening to enforce and who are enforcing the law."). Here, Plaintiffs do not seek money damages against the CCPO, but instead seek declaratory and injunctive relief. Accordingly, the CCPO cannot assert prosecutorial immunity.

In summary, Plaintiffs can bring each claim against all defendants in this matter.

## C.     The Voting Rights Act Claim

Plaintiffs allege that the Challenged Ohio Law is preempted by Section 208 of the Voting Rights Act. (Doc. No. 1, PageID #32 (Count Three).) Specifically, Plaintiffs argue that Section 208 protects a disabled voter's ability to choose "a person of the voter's choice" to assist with voting. (Doc. No. 42-1, PageID #460.) Plaintiffs read this section to mean a disabled voter may choose *any* person to assist them. (*Id.* at PageID #461.) Because the Challenged Ohio Law imposes a restriction on who a disabled person may choose, Plaintiffs argue, the law is preempted. (*Id.*) The Intervenors raise two procedural issues: (1) Plaintiffs cannot proceed with the Section 208 claim because there is no private right to enforce violations of Section 208; and (2) Section 208 applies only to in-person voting and not absentee voting. (Doc. No. 44-1, PageID #2586–87; Doc. No. 49, PageID #4296–97; Doc. No. 53, PageID #4447.) Substantively, State Defendants and Intervenors contend that if their procedural challenges fail, Section 208 does not provide a disabled voter with their choice of *any* person. Instead, they argue that Section 208 leaves room for states to identify who qualifies as "a person" within Section 208. (Doc. No. 43, PageID #2185; Doc. No. 44-1, PageID #2583–84.)

### 1.     Private Causes of Action

Intervenors argue that neither the VRA nor § 1983 provide for a private right to enforce Section 208. (Doc. No. 44-1, PageID #2586.) However, the Sixth Circuit has already spoken to

13

this issue and has found that "the VRA permits suit by the Attorney General or aggrieved voters," including organizations. *See Ne. Ohio Coal. for the Homeless*, 837 F.3d at 624 (allowing VRA claim by private litigant to proceed). The plain text of the VRA provides, in relevant part: "Whenever the Attorney General *or an aggrieved person* institutes a proceeding *under any statute to enforce the voting guarantees* of the fourteenth or fifteenth amendment . . . ." 52 U.S.C. § 10302 (emphasis added). As the Sixth Circuit found, the language "aggrieved person" means "aggrieved voters" and clearly contemplates that such person may initiate proceedings under the VRA.

Intervenors' arguments to the contrary are not persuasive. According to Intervenors, the VRA already provides for an express statutory enforcement scheme, which can be found in 52 U.S.C. § 20104(c). (*Id.*) When a law already provides for such a scheme, it "suggests that Congress intended to preclude other[]" methods of enforcement, including private rights of action. *See Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). As for § 1983, Intervenors argue that when a law provides for a statutory enforcement scheme that is more restrictive than § 1983, a plaintiff cannot avail itself of § 1983 to bring a claim. (Doc. No. 44-1, PageID #2586–87.)

Intervenors' reasoning neither comports with the VRA nor existing case law. Take the statutory scheme first. Intervenors rely on 52 U.S.C. § 20104(c), which provides:

> The chief election officer of each State shall provide public notice, calculated to reach elderly and handicapped voters, of the availability of aids under this section, assistance under section 10508 of this title, and the procedures for voting by absentee ballot, not later than general public notice of registration and voting is provided.

But this section only requires the "chief election officer" to provide public notice of resources available to disabled voters, including that disabled individuals "may be given assistance by a person of the voter's choice . . . ."

Intervenors also rely on 52 U.S.C. § 20105(a), which states:

If a State or political subdivision does not comply with this chapter, the United States Attorney General or a person who is personally aggrieved by the noncompliance may bring an action for declaratory or injunctive relief in the appropriate district court.

Together, Intervenors argue that because the "chief election officer of each State" must "provide public notice[] . . . of the availability of . . . assistance under section [208]," and because it authorizes the "Attorney General or a person who is personally aggrieved" by noncompliance with § 20104, there is an existing enforcement scheme which precludes a private right of action.  (Doc. No. 44-1, PageID #2586–87.)  The Intervenors interpretation fails because the enforcement provision in § 20105 only applies when "a State or political subdivision does not comply *with this chapter* . . . ."  52 U.S.C. § 20105(a) (emphasis added).  This means that the enforcement scheme Intervenors point to only relates to a state's or political subdivision's noncompliance with the public notice requirement identified in § 20104—it does not apply to violations of Section 208, nor any other part of the VRA, which are different chapters within Title 52 of the United States Code.  *Compare* 52 U.S.C. § 20105 (codified as the Voting Accessibility for the Elderly and Handicapped in Chapter 201), *with* 52 U.S.C. § 10302 (codified as the Voting Rights Act in Chapter 103).

Other courts have persuasively held that Section 208 permits private causes of action. Those courts universally agree that private plaintiffs can bring claims to enforce Section 208. Indeed, "every court to consider the issue has found that section 208 *does* implicitly allow private enforcement."  *Fla. State Conf. of NAACP v. Lee*, 576 F.Supp.3d 974, 988–90 (N.D. Fla. 2021) (emphasis in original) (further holding that "[i]n sum, every court that has considered the issue—and the Attorney General of the United States—agree that private parties may enforce section 208"); *Ark. United v. Thurston*, 517 F.Supp.3d 777, 790 (W.D. Ark. 2021) (holding that

Section 208 "creates a private right of action to enforce the VRA, and the Court cannot render [the statutes] language meaningless" and that "the VRA clearly permits both the Attorney General or 'an aggrieved person' to initiate judicial proceedings to enforce the statute's requirements."); *Democracy N.C.*, 476 F.Supp.3d at 233–36 (allowing plaintiff to proceed with claim that Section 208 preempts North Carolina law). Intervenors provide no persuasive arguments for this Court to depart from this consensus.

In any event, § 1983 provides a backstop for Plaintiffs to pursue their claims. *See DRNC v. N.C. Bd. of Elections*, 602 F.Supp.3d 872, 877 (E.D.N.C. 2022) (allowing Section 208 claim to proceed under § 1983). Intervenors argue that because § 20105 contains a more restrictive enforcement scheme, private plaintiffs cannot use § 1983 to bring a cause of action under Section 208 of the VRA. (Doc. No. 44-1, PageID #2586.) The Supreme Court has explained that "§ 1983 can presumptively be used to enforce unambiguously conferred federal individual rights, unless a private right of action under § 1983 would thwart any enforcement mechanism that the rights-creating statute contains for protection of the rights it has created." *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 172 (2023). There is no question that Section 208 confers a federal right on individuals with disabilities. And Intervenors repeated invocation of the enforcement mechanism found in § 20105, which cannot plausibly apply to a separately codified statute, law, and right, is not sufficient to overcome the presumption, particularly because that section is not within the "rights-creating statute." In this way, § 1983 does not thwart any enforcement mechanism relating to violations of Section 208. In conclusion, Plaintiffs may pursue this action under Section 208 directly, or they may enforce Section 208 through a § 1983 claim.

### 2.     Section 208's Application to In-Person and Absentee Voting

The State Defendants and Intervenors argue that Congress enacted Section 208 to provide disabled individuals an assistor of their choice *at the ballot box*.  (Doc. No. 44-1, PageID #2585; Doc. No. 49, PageID #4296–97; Doc. No. 53, PageID #4447.)  That is, they question Section 208's applicability to absentee voting.

The VRA defines the terms "vote" and "voting" to include:

> [A]ll action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

52 U.S.C. § 10310(c)(1).  As written, the statutory language encapsulates absentee voting since it refers to "all action necessary to make a vote effective."  Clearly, absentee voting is "action" that is "necessary to make a vote effective."  *See Carey v. Wis. Elections Comm'n*, 624 F.Supp.3d 1020, 1032 (W.D. Wis. 2022) ("Section 10508 is broadly worded, and the text of the statute doesn't limit the permitted assistance to voting in person"); *DRNC v. N.C. State Bd. of Elections*, 602 F.Supp.3d 872, 877 (E.D.N.C. 2022) ("In the context of assisting voters in congregate settings like nursing homes, 'voting includes the delivery of an absentee ballot to a county board of elections as an action necessary to make a vote effective'") (quoting *Democracy N.C.*, 476 F.Supp.3d at 234–35); *OCA-Greater Houston*, 867 F.3d at 614 (rejecting the argument that Section 208 is limited to the literal act of marking the ballot, holding that "'[t]o vote,' . . . plainly contemplates more than the mechanical act of filling out the ballot sheet" and includes "'casting a ballot' as only one example in a non-exhaustive list of actions that qualify as voting").  The broad language chosen by Congress is determinative.  Section 208 applies in equal force to absentee voting.

17

### 3.    Section 208: Statutory Interpretation

Whether Section 208 preempts the Challenged Ohio Law turns on the statutory

interpretation of Section 208.  "When interpreting a statute we start, as we must, with the text."

*J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 726 (6th Cir.

2022); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) ("Our precedents make clear that the

starting point for our analysis is the statutory text.").  Where "the words of the statute are

unambiguous, the judicial inquiry is complete."  *Desert Palace*, 539 U.S. at 98 (quotation and

citation omitted).  "Above all else, we presume that Congress 'says in a statute what it means and

means in a statute what it says.'"  *J. B-K by E.B.*, 48 F.4th at 726 (quoting *Conn. Nat'l Bank v.

Germain*, 503 U.S. 249, 253–54 (1992)).  The terms of a statute must be interpreted "as taking

their ordinary, contemporary, common meaning."  *Sandifer v. U.S. Steel Corp.*, 571 U.S 220, 227

(2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  Moreover, "[c]ourts should

'resist reading words or elements into a statute that do not appear on its face.'"  *Cnty. Of

Oakland v. Fed. Housing Fin. Agency*, 716 F.3d 935, 940 (6th Cir. 2013) (*Hoge v. Honda of Am.

Mfg., Inc.*, 384 F.3d 238, 246 (6th Cir. 2004)).  As the Sixth Circuit has explained, "[i]t is not the

Court's role to address perceived inadequacies in a statute."  *Id.* (quotation and citation omitted).

Section 208 provides that:

> Any voter who requires assistance to vote by reason of blindness, disability, or
> inability to read or write may be given assistance by a person of the voter's choice,
> other than the voter's employer or agent of that employer or officer or agent of the
> voter's union.

52 U.S.C. § 10508.  The parties' dispute the meaning of "a person of the voter's choice."  To

Plaintiffs, "a person" means *any* person of the voter's choice.  (Doc. No. 42-1, PageID #460–61.)

State Defendants and Intervenors argue that Plaintiffs' interpretation would be correct *if*

Section 208 read that "*any* person" or "*the* person" of a disabled voter's choice could assist with

18

absentee ballots.  (Doc. No. 43, PageID #2185; Doc. No. 44-1, PageID #2583–84.)  To the State Defendants and Intervenors, "'a' person of a voter's choice" leaves room for the State to enact legislative limits.  (Doc. No. 43, PageID #2185–86; Doc. No. 44-1, PageID #2584.)  The use of the "indefinite-article 'a' means some undetermined or unspecific particular," they argue.  (Doc. No. 43, PageID #2186; Doc. No. 44-1, PageID #2584.)  Because it is "undetermined or unspecific," the State may identify which individuals qualify as "persons" for purposes of absentee voting assistance.  (Doc. No. 43, PageID #2186; Doc. No. 44-1, PageID #2584.)  Meaning, the State can limit a disabled persons' choice to certain specified family members while also allowing that voter to select "a person" of their choice.

The Court's analysis is rooted in the text of the statute.[5]  "When used as an indefinite article, 'a' means '[s]ome undetermined or unspecified particular.'"  *McFadden v. United States*, 576 U.S. 186, 191 (2015) (dictionary citations omitted).  "In common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either 'any' or 'one.'"  *United States v. Alabama*, 778 F.3d 926, 932 (11th Cir. 2015) (holding that the "plain meaning of the term 'an election' means 'any election'").  The Sixth Circuit recognized that statutory language using the indefinite article "a" can be synonymous with "any."  *See United States v. Carpenter*, 80 F.4th 790, 791 (6th Cir. 2023) (finding that "a sentence" as used in the First Step Act meant "any kind of sentence" and was not limited to include additional restrictions not found in the statute) (Kethledge, J. concurring in denial of rehearing en banc); *see also United States v. Deuman*, 568 F. App'x 414, 421 (6th Cir.

---

[5] Because the statute is clear and unambiguous, the Court does not resolve the parties' arguments relating to the legislative history of Section 208, including the parties' discussions and arguments raised relating to an "undue burden" test to determine whether a law violates Section 208.  There is nothing contained in the text of the statute that requires a court to consider undue burden.

2014) ("That definition uses the indefinite article 'an' as opposed to the definite article 'the.'  By its terms, then, the rule applies to *any* witness . . . .") (emphasis added).  Looking simply at the text of the statute and applying the ordinary meaning of "'a' person of the voter's choice," Section 208 gives disabled voter's right to choose who will facilitate the submission of their absentee ballot without further restriction by the state.  *Alabama*, 778 F.3d 933 ("We have repeatedly found in prior cases that an indefinite article was purposefully used as a synonym for the word 'any,' determining that the context of a statute required us to read 'a' or 'an' to mean 'any' rather than 'one.'") (collecting cases).

Textual canons of construction provide additional support for this conclusion.  Courts must read the words and phrases of a statute in context.  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme'" (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))).  In this way, courts "give effect to all the words to avoid an interpretation which would render words superfluous or redundant."  *Day v. James Marine, Inc.*, 518 F.3d 411, 417 (6th Cir. 2008) (quotation and citation omitted).

If a state can limit who "a person" is, as the State Defendants and Intervenors assert, then the statutory phrase "of the voter's choice" is either superfluous or loses all meaning.  And Congress has already defined for the states—and the courts—who the unspecified person is: "a person *of the voter's choice*."  State Defendants and Intervenors try to side-step Congress' chosen language.  To them, if the disabled voter has some choice, Section 208 is not violated. (Doc. No. 44-1, PageID #2584; Doc. No. 43, PageID #2186.)  But Section 208 does not merely grant disabled voters a right to make *a choice*, however short or long the list to choose from may

be.  Section 208 grants disabled voters the right to assistance by a person of *the voter's choice*.

That additional language—ignored by State Defendants and Intervenors—is key.  The

"straightforward reading of the statute leads to the unremarkable conclusion that when Congress

said" a person of the voter's choice, it meant the disabled voter could choose their own

facilitator.  *Cnty. Of Oakland*, 716 F.3d at 940.

Congress' express exclusion of certain facilitators is also instructive.  "'[W]here

Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions

are not to be implied, in the absence of evidence of a contrary legislative intent.'"  *Hillman v.*

*Maretta*, 569 U.S. 483, 496 (2013) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17

(1980)); *see also United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides

exceptions in a statute, it does not follow that courts have authority to create others.  The proper

inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in

the end, limited the statute to the ones set forth.").  Here, Section 208 does not allow the disabled

voter to choose their own "employer or agent of that employer or officer or agent of the voter's

union."  52 U.S.C. § 10508.  Because Congress included these exceptions, "[t]he proper

inference" is that Congress did not mean to leave it to the states or courts to create others.

*Johnson*, 529 U.S. at 58.  And yet that is precisely what the State Defendants and Intervenors ask

this Court to do.

The State Defendants and Intervenors assert election integrity concerns and other policy

arguments in support of their interpretation of Section 208 and their subsequent legislative

efforts.  But such election integrity and policy arguments should be put to Congress, not the

courts.  Congress enacted Section 208 with the very specific language "a person of the voter's

choice."  Section 208 does not say, as the State Defendants and Intervenors suggest it should,

that disabled voters are limited to "a person of the voter's choice *from a list to be determined by the several states*."  And Section 208 does not say disabled voters are limited to "a person of the voter choice *so long as that person is a family relative*."  Had Congress intended Section 208 to be limited in the way the State Defendants and Intervenors now argue—or even in the way the Challenged Ohio Law states—it could have done so.  Congress did not provide for such limitations.  Courts "will not alter the text [of a statute] in order to satisfy the policy preferences" of the parties.  *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462 (2002).

Still along the lines of statutory interpretation, the State Defendants and Intervenors also argue that Plaintiffs' interpretation leads to absurd results.  (Doc. No. 44-1, PageID #2584; Doc. No. 43, PageID #2186–87.)  Under Plaintiffs' interpretation, they argue, a disabled voter could choose an incarcerated person (potentially mandating the release of that person) or a person convicted of voter fraud to assist them.  (Doc. No. 44-1, PageID #2584; Doc. No. 43, PageID #2186–87.)  With respect to an incarcerated person, that result clearly does not flow from the statute.  *See Ark. United v. Thurston*, 626 F.Supp.3d 1064, 1087 (W.D. Ark. 2022) (rejecting the argument that an incarcerated person could be chosen to assist because "a common-sense reading of § 208 suggests that any assistor chosen by a voter must be *willing* and *able* to assist") (emphasis in original).  Moreover, the State Defendants' and Intervenors' interpretation of Section 208 and the Challenged Ohio Law lead to the same result.  If, for instance, a disabled voter's father is currently incarcerated for voter fraud, the voter could simply select their father to assist them, leading to the same feared result.  Nothing in R.C. § 3599.21's language would prevent such a result.  Accordingly, this "absurd result" does not flow from Plaintiffs' reading of Section 208.  On the other hand, the State Defendants' and Intervenors' interpretation would lead to absurd results, including the ability of states to limit the right Congress guaranteed in Section

208.

In reviewing other district court cases resolving similar legislative efforts to narrow Section 208, district courts have largely rejected those efforts as being inconsistent with Congress' chosen language.  These cases also concluded that Section 208 precludes state action that intrudes on a disabled person's right to choose their own voting facilitator.

In *Arkansas United*, the district court invalidated Arkansas law which criminalized assisting more than six voters in casting ballots at the polls.  626 F.Supp.3d at 1070.  Relying on the plain language of the text, the court held that Section 208 preempted the Arkansas law:

> Under § 208, a voter may select "a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."  But, in Arkansas, if the person of a voter's choice had already assisted six voters, the voter could not be assisted by that person, and the voter would not be getting the assistor of their choice.  The six-voter limit is therefore more restrictive than § 208 and makes compliance with both . . . impossible.

*Id.* at 1085 (citation and quotation omitted).  The court found that Arkansas law impermissibly narrowed Section 208 because the law essentially added a clause to Section 208 that is not there.  *Id.* (explaining that Arkansas law transformed Section 208 to mean "any voter who requires assistance to vote by reason of . . . disability . . . may be given assistance by a person of the voter's choice . . . *so long as that person has assisted fewer than six other voters during the election*.").

In *Carey*, the court had no difficulty finding that Section 208 preempted a Wisconsin law which restricted voters from obtaining assistance in returning their absentee ballot, with no exception for individuals with disabilities.  624 F.Supp.3d at 1032 ("The application of the VRA to the facts of this case is straightforward" because "the VRA requires that plaintiffs be allowed to choose a person to assist them with mailing or delivering their absentee ballot").  Plaintiffs were four disabled voters who used third parties to cast absentee ballots.  *Id.* at 1023–24.

Wisconsin, through new interpretation of existing law, required only the voter to return absentee ballots. *Id.* at 1024. The court found that Section 208 preempted the Wisconsin law "to the extent it prohibits third-party ballot-return assistance to disabled voters who require such assistance." *Id.* at 1033. The court held that Section 208 "allows plaintiffs to receive assistance from 'a person of their choice,' so long as that person is not their 'employer or agent of that employer or officer or agent of their union.'" *Id.* at 1032 (quoting § 10508). In the end, the court concluded that "[v]oters shouldn't have to choose between exercising their federal rights and complying with state law." *Id.* at 1024.

In *DRNC v. North Carolina State Board of Elections*, the court was confronted with three North Carolina laws which restricted a voter's ability to request and return an absentee ballot. No. 21-cv-361, 2022 WL 2678884, at *1 (E.D.N.C. July 11, 2022). The court first dealt with a North Carolina law which limited who may request an absentee ballot to the voter, the voter's near relative, or the voter's legal guardian. *Id.* at *5. The plaintiffs challenged that statute, arguing that Section 208 preempted the law because it does not allow a disabled person the ability to choose who may assist them in voting. *Id.* at *1. The court agreed and explained that "[t]he plain language of North Carolina's provisions impermissibly narrows a Section 208 voter's choice of assistant from the federally authorized right to 'a person of the voter's choice' to 'the voter's near relative or verifiable legal guardian.'" *Id.* at *5. The court rejected defendant's contention that Section 208's use of "a person" showed intent by Congress to allow states to restrict the federally created right, explaining that Congress does not "hide elephants in mouseholes." *Id.* at *4 n.2 (quoting *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001)). Looking to the statute's legislative history for additional support, the court explained:

> The purpose of Section 208 was to give voters with disabilities unrestricted choice in their right to assistance, thus it cannot have been Congress's intent to permit state

voting laws to directly restrict that right. Accordingly, states may not impose additional limits on disabled voters' choice of assistant, other than the two excluded groups in the text of Section 208.

*Id.* at *5.

The court then invalidated two more North Carolina laws relating to ballot completion restrictions and ballot return restrictions on the same grounds. *Id.* at *6. In the court's previous decision on this issue on a motion to dismiss, the court found that "[o]ther than these two excluded groups, the plain language of Section 208 gives voters unfettered choice over who may assist them with the voting process." *DRNC*, 602 F.Supp.3d at 877. In that decision, the court specifically rejected the defendants' contention that Section 208 only "guarantees the assistance of *a* person of the voter's choice, not *the* person of the voter's choice." *Id.* at 878 (emphasis in original). The court explained that "Congress only included two categories of excluded assistants in the statutory text, and if Congress intended to exclude more categories, or to allow states to exclude more categories, it could have said so." *Id.*

In *Democracy North Carolina*, the court invalidated a law that limited a voter's assistance to near relatives. 476 F.Supp.3d at 236. Among the North Carolina statutes plaintiffs challenged were statutes that restricted who could assist a disabled voter in marking and returning absentee ballots. *Id.* at 172–73, 176. Those statutes limited such assistance to near relatives. *Id.* The state argued that Section 208 allows a disabled voter "to be given assistance by a person—not any person—of their choice." *Id.* at 234 (alterations omitted). In rejecting that contention, the court held that Section 208 allows a disabled voter to choose who assists them without any restriction other than those listed in the statute. *Id.* at 235 ("The court finds these regulations impermissibly narrow Section 208's dictate that a voter may be assisted 'by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or

25

agent of the voter's union.'").

The Fifth Circuit confronted a similar issue in *OCA-Greater Houston*, where the court upheld a district court's injunction which invalidated a Texas law limiting the ability of a voter who needs an interpreter to choose an interpreter of their choice.  867 F.3d at 608.  In finding that Section 208 preempted the Texas law, the Fifth Circuit explained:

> [T]he problem remains that the Texas provisions expressly limit the right to the act of casting a ballot.  It should go without saying that a state cannot restrict this federally guaranteed right by enacting a statute tracking its language, then defining terms more restrictively than as federally defined.

*Id.* at 615.

State Defendants and Intervenors attempt to distinguish these cases from the present one, citing: (a) factual and procedural differences, (b) differences among the specific laws at issue, and (c) the nature of the relief sought.  (Doc. No. 53, PageID #4449.)  But their arguments distinguishing these cases ignore the crucial holding of each decision—state laws limiting a disabled voter's choice of facilitator is inconsistent with Section 208.  State Defendants and Intervenors also argue that none of the cases discussed above turned on a textual interpretation of "a person."  (Doc No. 53, PageID #4449.)  That is incorrect.  Each case interpreted the plain statutory text to determine that the respective state laws were not consistent with Section 208. And courts have explicitly rejected the arguments State Defendants' and Intervenors' assert here. *See Ark. United v. Thurston*, No. 20-cv-5193, 2020 WL 6472651, at *4 (W.D. Ark. Nov. 3, 2020) ("The Court is unconvinced that the use of the indefinite article 'a' evinces an intent by Congress to allow states to limit who may act as a voter assistor under § 208."); *DRNC*, 2022 WL 2678884, *4 n.2 ("The use of the indefinite article 'a' does not show intent by Congress to allow states to restrict a federally created right"); *DRNC*, 602 F.Supp.3d at 878 (rejecting argument that Section 208's use of "a person" rather than "the person" allows states to limit a

disabled voter's choice); *Democracy N.C.*, 476 F.Supp.3d at 234 (rejecting argument that the language "a person" allows states to further restrict a disabled voter's choice).

The State Defendants and Intervenors rely primarily on *Priorities USA v. Nessel*, 487 F.Supp.3d 599 (E.D. Mich. 2020) and *Priorities USA v. Nessel*, 628 F.Supp.3d 716 (E.D. Mich. 2022).[6] In *Priorities USA*, plaintiff challenged a Michigan law that restricted a person's possession of another's absentee ballot unless the person was an immediate family member or resident of the same household. 628 F.Supp.3d at 722. The court held that the Michigan law did not conflict with Section 208, holding that "Section 208 allows certain voters who need help voting to select *a* person of the voter's choice—not *any* person, not *the* person." *Id.* at 732 (citations and quotations omitted). Focusing on the use of an indefinite article "a," the court held that "Section 208's natural effect allows some wiggle room: a voter may select 'a person' to assist them, but not *the* person of their choice." *Id.*

*Priorities USA* discusses "a person" but does not address "of the voter's choice." *See Niz-Chavez v. Garland*, 593 U.S. 155, 162 (2021) (when interpreting the word "a," "context matters"). For the reasons explained above, Section 208's statutory text is not limited to simply "'a' person." Section 208 expressly states that disabled voters may select "a person *of the*

---

[6] Intervenors also rely on other cases. (Doc. No. 44-1, PageID #2585.) Those cases are not persuasive. For instance, *Ray v. Texas*, No. 06-cv-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008), is arguably abrogated by the Fifth Circuit's decision in *OCA-Greater Houston.* 867 F.3d at 615 ("We must conclude that the limitation on voter choice expressed in Tex. Elec. Code § 61.033 impermissibly narrows the right guaranteed by Section 208 of the VRA"). And in *Qualkinbush v. Skubisz* and *DiPietrae v. City of Philadelphia*, the state courts relied on a misinterpretation of Section 208's plain text to create exceptions not found within the statute based on improper policy considerations this Court is prohibited from making. 826 N.E.2d 1181, 1197 (Ill. App. Ct. 2004) (the challenger to the state law "ignores the clear basis set forth by the legislature for allowing a voter to choose who will assist him or her—the potential for undue influence and manipulation"); 666 A.2d 1132, 1136 (Pa. Commw. Ct. 1995) (allowing state law to stand because it "appears to be a reasonable means of balancing the rights of a disabled person who wishes to vote with the public need to insure a fair election").

*voter's choice*," followed by two specific exclusions. The *Priorities USA* court held that because Congress used "a," as opposed to "the," it "suggests that some state law limitations on the identity of persons who may assist voters is permissible." 628 F.Supp.3d at 733. Holding that anytime Congress uses an indefinite article in a statute, it implies that state law limitations are permissible, is not supported by case law or any existing doctrine. Use of an indefinite article is not an invitation for states to act in contravention of Congress' clear intent: allowing disabled voters to choose for themselves a person to assist them with voting. *See Carpenter*, 80 F.4th at 791. Such a doctrine might have sweeping implications. And in this case, it seems unlikely that Congress meant to allow states to restrict a federally created right—particularly one as crucial as a voting right—simply by the use of an indefinite article. *DRNC*, 602 F.Supp.3d at 878 ("The use of the indefinite article 'a' does not show intent by Congress to allow states to restrict a federally created right"). If Congress wanted to allow states to modify or this right, it would have said so. It did not.

### 4. Preemption of the Challenged Ohio Law

Preemption is rooted in the Constitution: "the Supremacy Clause provides that the Constitution, federal statutes, and treaties constitute 'the supreme Law of the Land.'" *Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (citing U.S. Const. art. VI, cl. 2). Therefore, "[i]f federal law 'imposes restrictions or confers rights on private actors' and 'a state law confers rights or imposes restrictions that conflict with the federal law,' 'the federal law takes precedence and the state law is preempted.'" *Id.* (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018)). "State laws . . . may be overridden by conflicting federal laws, both expressly and impliedly." *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 583 (6th Cir. 2013) (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982)).

As relevant here, "'conflict' preemption [. . .] nullifies state law 'to the extent that it actually conflicts with federal law[.]'" *Id.* at 584 (quoting *Fidelity Fed. Sav. & Loan Ass'n*, 458 U.S. at 153). "A state law actually conflicts with federal law if either 1) compliance with both is impossible, or 2) the state requirement is an obstacle to the full purposes and objectives of Congress." *Id.* (first citing *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963); then citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (courts find preemption through impossibility where it is "impossible for a private party to comply with both state and federal requirements"); *Arizona v. United States*, 567 U.S. 387, 399 (2012) (a state law is preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects . . . ." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). In conducting the preemption analysis, and considering federalism principles, courts apply a "presumption against preemption." *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009).

The State Defendants and Intervenors rely heavily on the presumption against preemption.[7] (Doc. No. 43, PageID #2187; Doc. No. 44-1, PageID #2583.) But the presumption is just that—a presumption that can be overcome by the facts of the case. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151 (2001) (the presumption against preemption "can be overcome where, as here, Congress has made clear its desire for pre-emption"); *see also Cmty. Refugee and*

---

[7] It is not altogether clear that the presumption against preemption actually applies in this case. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 13–14 (2013) (holding that the presumption against preemption does not apply in Election Clause cases because the state's authority to regulate elections is inherently weaker). For the purposes of this Order, the Court assumes it applies.

*Immigr. Servs. v. Petit*, 393 F.Supp.3d 728, 737 (S.D. Ohio 2019) ("The presumption against preemption of state laws can . . . be overcome when Congress enacts its own specific laws to the contrary."). Here, the presumption against preemption cannot save the Challenged Ohio Law. Section 208 unambiguously recognizes that disabled voters have a right to choose their own facilitator. The Challenged Ohio Law directly contravenes that mandate. The presumption against preemption is rebutted by the plain text of Section 208.

The Challenged Ohio Law is also an obstacle to the full purposes and objectives of Congress. Courts have explained that the "purpose and intended effects" of Section 208 are "to ensure those who required assistance to exercise their right to vote received the assistor of their choice." *Ark. United*, 626 F.Supp.3d at 1075; *see also DRNC*, 2022 WL2678884, at *4 ("The purpose [of Section 208] was to create a guaranteed right to the voting process that could not be narrowed or limited by state legislation."). The Challenged Ohio Law is a direct affront to Section 208's purpose and intended effect.

### 5. Anticommandeering Doctrine

State Defendants argue that Section 208 violates the anticommandeering doctrine because it is a direct order to the states. (Doc. No. 43, PageID #2188–89.) State Defendants also argue that if the Court accepts Plaintiffs' interpretation of Section 208, then Ohio's election law would be uprooted completely, requiring Ohio to enact new legislation to protect the security of its elections. (*Id.*) Again, the Court clarifies the limited scope of this case. This case applies only to disabled absentee voters who want assistance returning their ballot. Nothing more.

More fundamentally, the State Defendants misapprehend the anti-commandeering doctrine. Under the anti-commandeering doctrine, "Congress may not simply 'commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal

regulatory program.'" *New York v. United States*, 505 U.S. 144, 161 (1992) (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 288 (1981)).  The Supreme Court explained: "We have always understood that even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts."  *Murphy v. NCAA*, 584 U.S. 453, 472 (2018) (quoting *New York*, 505 U.S. at 166).  Thus, "[w]here a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents."  *Id.* (quoting *New York*, 505 U.S. at 178).  Section 208 does not conscript the states to enact legislation nor promulgate regulation.  And Section 208 does not directly compel the states to enact legislation or require the states to prohibit certain acts.  Instead, it directly confers a federal right to private actors, namely, individuals with disabilities.  To the extent the Ohio legislature believes it necessary to enact new legislation to protect the integrity of its elections, it is free to do so.  But it may not do so as it has done here.

### 6.    Challenges to Section 208's Constitutionality

In opposition to Plaintiffs' motion for summary judgment, the State Defendants—for the first time—assert that Section 208 is unconstitutional because Congress exceeded its authority.  (Doc. No. 49, PageID #4289.)  Intervenors join these arguments.  (Doc. No. 58, PageID #4549.)

Rule 5.1 of the Federal Rules of Civil Procedure addresses the procedure a party must follow when "drawing into question the constitutionality of a federal or state statute."  Fed. R. Civ. P. 5.1(a).  Under that rule, if the United States is not a party to the action, the questioning party "must promptly" "file a notice of constitutional question stating the question and identifying the paper that raises it."  *Id.* at 5.1(a)(1).  Then, the party must "serve the notice and paper on the Attorney General of the United States."  *Id.* at 5.1(a)(2).  Further, the court must

"certify to the appropriate attorney general that a statute has been questioned." *Id.* at 5.1(b). After notice is served, the Attorney General has 60 days to intervene.  During that 60-day timeline, "the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional." *Id.* at 5.1(c).

The State Defendants do not contend they have complied with Rule 5.1, nor is there evidence in the record from which the Court could conclude that compliance has occurred.  The United States, which submitted a statement of interest in this case (*see* Doc. No. 55), represented to the Court that no such service was made.  Because of this procedural deficiency, State Defendants are not entitled to their requested relief.  Their procedural deficiency is not in dispute.  The Court, therefore, need not address the State Defendants' untimely argument challenging Congress' authority to enact Section 208 of the Voting Rights Act.[8]  *See Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F.Supp.3d 922, 941 (S.D. Ohio 2014) ("Because [plaintiff] has not filed that notice, the Court will not consider [plaintiff's] constitutional arguments").

### D.    Ordered Relief

Under Rule 65 of the Federal Rules of Civil Procedure, a party may seek injunctive relief. Fed. R. Civ. P. 65.  As it relates to their VRA claim, Plaintiffs ask this Court to:

> Declare that Defendants' adoption, maintenance, administration, and enforcement of . . . R.C. 3599.21(A)(9), (10), and R.C. 3509.05(C)(1) . . . [v]iolate Section 208 of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10508, by infringing on the rights of voters with disabilities, such as Plaintiffs, to receive assistance from the assistor of their choice, and therefore are preempted pursuant to the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2.

(Doc. No. 1, PageID #38; Doc. No. 42-25.)  Plaintiffs also request that this Court order

---

[8] The Court is mindful of the judicial axiom that "if it is not necessary to decide more, it is necessary not to decide more."  *PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C.C. 2004) (Roberts, J. concurring).

"Defendants to take all necessary steps to ensure that people beyond family members enumerated in R.C. § 3509.05(C)(1) . . . can, without threat of prosecution, assist voters with disabilities in receiving and returning their absentee ballots . . ."  (Doc. No. 1, PageID #39), including that Defendants

> provide public notice of these additional voting opportunities for voters with disabilities by notifying all local media that any in-home caregiver or director, employee, or other staff member of an institution or facility where voters with disabilities reside will be permitted, without threat of prosecution, to assist voters with disabilities in receiving and returning their absentee ballots; and by posting sufficient notices at all affected poll locations and institutions where Ohioans with disabilities may reside; on the websites of the Ohio Secretary of State; and on the social media accounts used by the Ohio Secretary of State.

(*Id.*)[9]

### 1.    Injunctive Relief Factors

"In general, 'the standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that for a preliminary injunction the plaintiff must show a likelihood of success on the merits rather than actual success.'"  *ACLU of Ky. v. McCreary County, Ky.*, 607 F.3d 439, 445 (6th Cir. 2010) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).  "A plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, 'that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted,' and that it is in the public's interest to issue the injunction."  *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  When a plaintiff has "shown a substantial likelihood of success on the merits and imminent irreparable injuries, the government faces a high hurdle in showing that these factors warrant withholding

---

[9] The same or similar requests were made in the submitted proposed order.  (Doc. No. 42-25.)

relief."  *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023).

First, as explained above, Plaintiffs have shown actual success on the merits of their Voting Rights Act claim.  Second, Plaintiffs would suffer irreparable injury without the issuance of this injunction.  As it currently stands, the Challenged Ohio Law infringes on Ms. Kucera's federally guaranteed rights, which in turn infringe on Ms. Kucera's fundamental right to vote.  *See Obama for Am.*, 697 F.3d at 436 ("A restriction on the fundamental right to vote . . . constitutes irreparable injury.").  And others, including members of the LWVO, maybe charged with a fourth-degree felony if they facilitate the return of a disabled voter's absentee ballot.  For these irreparable injuries, there is no adequate remedy at law.

In considering the balance of hardships, an injunction would not cause substantial harm to others *and* it would serve the public interest.  Enjoining the enforcement of the Challenged Ohio Law would restore rights to disabled voters in Ohio that Congress guaranteed them.  *Id.* at 437 ("The public interest . . . favors permitting as many qualified voters to vote as possible."); *Carey*, 624 F.Supp.3d at 1034 ("the public interest is served by helping to ensure that eligible citizens are able to exercise their right to vote"); *DRNC*, 2022 WL 2678884, at *7 ("The public interest is served by protecting federally guaranteed voting rights[.]").

Intervenors speculate that they would suffer irreparable harm because the Court's order would erode "Republican voters' confidence in the State's elections, threatening to reduce Republican voter turnout, and exposing Intervenors to new illegitimate competitive tactics in the middle of an election year . . . ."  (Doc. No. 53, PageID #4452.)  Intervenors cite no evidence that Republican voters would be dissuaded from voting if disabled voters are able to choose who assists them in submitting an absentee ballot.  In any event, the clear violation of a federally guaranteed voting right in this case outweighs any harm State Defendants and Intervenors may

34

suffer.

### 2. Injunctions and *Purcell*

State Defendants and Intervenors argue that even if the law supports issuing an injunction here, such injunctive relief should be denied for temporal proximity concerns. Meaning, the injunction should be denied because it would issue too close to the November 2024 election. (Doc. No. 49, PageID #4307; Doc. No. 53, PageID #4450–51.) Citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006), State Defendants and Intervenors argue that federal courts should not change or modify election rules close to an election. (Doc. No. 49, PageID #4307; Doc. No. 53, PageID #4450–51.) Here, they argue that any injunction would violate that principle. (Doc. No. 49, PageID #4307; Doc. No. 53, PageID #4450–51.)

The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (citing *Purcell*, 549 U.S. at 1); *see also A. Philip Randolph Inst. of Ohio v. LaRose*, 831 F. App'x 188, 190 (6th Cir. 2020). This is so because "[c]ourt orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4–5. Accordingly, "[w]hen an election is imminent and when there is inadequate time to resolve factual disputes and legal disputes, courts will generally decline to grant an injunction to alter a State's established election procedures." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (cleaned up).

The Sixth Circuit recently addressed *Purcell* and its factors. *See Tenn. Conference of the NAACP v. Lee*, 105 F.4th 888 (6th Cir. 2024). In *Lee*, the district court issued an injunction invalidating a Tennessee law requiring felons to confirm their voter eligibility in writing. *Id.* at

894.  The Sixth Circuit issued a stay of the injunction.  *Id.* at 890.

The Sixth Circuit initially resolved two questions regarding *Purcell* applicability (1) did the case involve an election issue? and (2) was the injunction issued on the eve of an election? *Id.* at 897.  The first answer was clear: the case involved election procedures.  *Id.*  The second answer was also clear: Tennessee was days away from a voter registration deadline and only weeks from the special election.  *Id.* at 897–98.  The Sixth Circuit then discussed *Purcell* factors, namely, timing, confusion, and burdens.  *Id.* at 898.  As to timing, the Sixth Circuit considered the speed of the case and the conduct of the parties.  *Id.* at 899.  As to confusion, the Sixth Circuit assessed the risk of voter confusion resulting from inconsistencies between voter registration forms and the district court's injunction.  *Id.* at 899–900.  And, as to burdens, the Sixth Circuit analyzed what effect the injunction would have on the state's preparations for the special election.  *Id.* at 900–01.

The Court has considered *Purcell* and *Lee* in light of the facts presented here and, with those factors in mind, tailors its injunction order accordingly.

While this case involves an election matter, that election is months away.  In *Lee*, the stayed injunction issued days before the registration deadline and one month before the special election.  Here, absentee voting for military and overseas voters begins on September 20, 2024. (Doc. No. 53, PageID #4451.)  Absentee voting for domestic voters begins on October 8, 2024. (*Id.*)  Election day is not until November 5, 2024.  There is no evidence to suggest Plaintiffs delayed filing this action in order to purposefully interfere with the election.  Indeed, they sought—and all parties agreed to—expedited discovery and dispositive motions deadlines.[10]

---

[10] That expedited discovery and submissions has occurred means that this Court is reviewing the record when it is most complete, and not at a preliminary stage in the litigation.

As to confusion, the injunction the Court issues today will resolve confusion for disabled voters and those who may facilitate the return of a disabled voter's absentee ballot.  At present, disabled voters may believe that only one of the enumerated persons listed in the Challenged Ohio Law can assist them.  A disabled voter may also believe that the absence of a choice for them—either because they do not have such a person in their lives any longer or do not feel that they can rely on such a person—means that they cannot lawfully submit an absentee ballot in the upcoming election.  This perceived conflict with Section 208 is the source of confusion.  This confusion is easily remedied with a limited injunction order.

As to burdens, enjoining enforcement of the Challenged Ohio Law does not alter the entirety of Ohio's election laws.  Nor does it require a sweeping change that will interfere with the administration of other voting laws or efforts.  The limited injunction relates only to: (a) disabled voters; (b) who want to utilize absentee voting; *and* (c) who do not want or cannot obtain assistance from one of state's specified assistors.  As Intervenors correctly point out, this particular group of voters is only a "subset of (a subset of)" voters.  (Doc. No. 44-1, PageID #2579.)  And it clarifies their rights under existing federal law.  *Carey*, 624 F.Supp.3d at 1035 ("even if the court's order imposes a small burden on defendants, that burden is justified by the clear violation of plaintiffs' federal rights"); *see also Merrill v. Milligan*, 142 S.Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (one factor to consider under *Purcell* is whether "the underlying merits are entirely clearcut in favor of the plaintiff").[11]

---

[11] Other courts have issued voting-related injunctions even closer to upcoming elections.  *See Arkansas United*, 626 F.Supp.3d at 1088 n.16 (W.D. Ark.) (issuing injunction on September 7, 2022, and tailoring injunction to limit any *Purcell* impact); *Carey*, 624 F.Supp.3d at 1035 (issuing injunction on August 31, 2022, and specifically rejecting that *Purcell* warranted delaying injunction); *Democracy North Carolina*, 476 F.Supp.3d at 238–39 (issuing injunction on August 4, 2020 and specifically rejecting that *Purcell* warranted delaying injunction).

The Court is mindful that while the injunction may have some effect on how disabled absentee voters submit their ballots for the November 2024 election.  But minor effects do not contradict *Purcell* or other election considerations.  *Carey*, 624 F.Supp.3d at 1035 ("even if the court's order imposes a small burden on defendants, that burden is justified by the clear violation of plaintiffs' federal rights"); *see also Merrill v. Milligan*, 142 S.Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (one factor to consider under *Purcell* is whether "the underlying merits are entirely clearcut in favor of the plaintiff").

### 3.    The Declaratory and Injunctive Relief Ordered

As to the requested injunctive relief sought by Plaintiffs, it is not sufficiently detailed or tailored.  Thus, they have not carried their burden as required by Rule 65 of the Federal Rules of Civil Procedure or binding Sixth Circuit precedent on all portions of the relief sought.  For instance, permanently enjoining defendants to "take all necessary steps" to comply with Section 208 does not afford defendants the requisite level of clarity.  *Union Home Mortgage v. Cromer,* 31 F.4th 356, 362 (6th Cir. 2022).  Vague injunction orders cannot issue.  *Id.*  Notwithstanding, some of Plaintiffs' requests for permanent injunctive relief is sufficiently clear and is granted in part.  Pursuant to the authority stated herein, the Court hereby finds that:

> Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, allows a disabled voter to select a person of their choice to assist them with voting, including the return of a disabled voter's absentee ballot.  To the extent that R.C. § 3599.21(A)(9) and R.C. § 3599.21(A)(10) prohibit such assistance by limiting who a disabled voter may select to assist them in this manner, the statutes are PREEMPTED by Section 208 of the Voting Rights Act.

The Court ORDERS that:

> The State Defendants, the CCPO, and any of their agents, employees, or successors in office, are hereby PERMANENTLY ENJOINED from administering, implementing, or enforcing R.C. § 3599.21(A)(9) or R.C. § 3599.21(A)(10) against any disabled voter or against any individual who assists any disabled voter with the return of the disabled voter's absentee

ballot to the extent such enforcement contradicts Section 208 of the Voting Rights Act, with immediate effect.

**E.     Plaintiffs' ADA, RA, and Vagueness Challenge**

Having resolved Plaintiffs' VRA claim, the Court need not resolve whether the Challenged Ohio Law violates the Americans with Disabilities Act (Count One), the Rehabilitation Act (Count Two), or is void for vagueness (Count Four).  *See Carey*, 624 F.Supp.3d at 1033–34 (refusing to decide ADA, RA, and vagueness claim because VRA claim provided remedy plaintiffs sought); *Ctr. For Biological Diversity v. Regan*, No. 21-119, 2024 WL 1591671, at *8 (D.D.C. Apr. 12, 2024) ("courts often have the discretion to treat alternative claims, which offer the plaintiff no prospect of obtaining any further relief, as prudentially moot.").  The parties agree that if Plaintiffs are successful on either the VRA, ADA, or RA claims, the Court should not address whether the Challenged Ohio Law is void for vagueness. (Doc. No. 43, PageID #2193; Doc. No. 51, PageID #4337; Doc. No. 58, PageID #4550.)  The vagueness claim is mooted also because federal courts "ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Matal v. Tam*, 582 U.S. 218, 231 (2017) (quoting *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944)).

Accordingly, Plaintiffs' partial motion for summary judgment on Count One (ADA) and Count Two (RA) is denied without prejudice.[12]  State Defendants' and Intervenors' motions for summary judgment on Count One (ADA), Count Two (RA), and Count Four (void for vagueness) are denied without prejudice.  The CCPO's motion for summary judgment is denied without prejudice to the extent it incorporates the State Defendants' or Intervenor's arguments.

---

[12] Plaintiffs did not move on Count Four (vagueness).

F.      **Motion for Leave to File Memorandum of Law as** *Amicus Curiae*

The District of Columbia, Delaware, Illinois, Maryland, Nevada, New Jersey, and New York filed a motion for leave to file a memorandum of law as *amici curiae*.  (Doc. No. 46.)  The memorandum of law in support of Plaintiffs motion for partial summary judgment was submitted as an attachment to the motion for leave.  (Doc. No. 46-1.)  The motion for leave was not opposed by any of the defendants.

There is no established standard by which district courts evaluate motions for leave to file *amicus curiae* briefs.  *See Bounty Minerals, LLC v. Chesapeake Expl., LLC*, No. 17-cv-1695, 2019 WL 7048981, at *10 (N.D. Ohio Dec. 23, 2019) ("The Federal Rules of Civil Procedure do not address motions for leave to appear as *amicus curiae* in a federal district court."); *Oakland Tactical Supply, LLC v. Howell Twp.*, No. 18-cv-13443, 2022 WL 17112202, at *3 (E.D. Mich. Nov. 22, 2022) ("there is no governing standard for obtaining leave to file an *amicus curiae* brief in the district court").  However, a district court may grant leave under their inherent authority where the filing may provide a unique perspective that assists the district court in resolving the pending dispute.  *Bounty Minerals*, 2019 WL 7048981, at *10 ("the decision to allow an appearance as an *amicus* falls under the district court's inherent authority") (citing *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991)); *see also Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 50 F.4th 164, 193 (D.C.C. 2022) (a district court "has broad discretion to allow *amicus* briefs when they provide unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide") (citation and quotation omitted).

"In determining whether to grant leave to file *amicus* briefing, courts have considered a variety of factors, including whether the parties are adequately represented, whether the proposed

*amici* have a cognizable direct interest in the outcome of the case, and whether the proposed *amici* would address matters or advance arguments different from those raised by the parties." *Bounty Minerals*, 2019 WL 7048981, at *10. "District courts focus on both the usefulness of the brief and the timeliness of the brief." *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, No. 15-cv-1191, 2017 WL 11454764, at * 1 (W.D. Mich. Oct. 30, 2017) (citing *Ellsworth Assocs., Inc. v. United States*, 917 F.Supp. 841, 846 (D.D.C. 1996)).

The motion for leave was timely submitted and attached the *amici* states' memorandum of law in support of Plaintiffs' partial motion for summary judgment. No defendant stated an opposition. Accordingly, the Court exercises its inherent authority to consider the non-party submission and grants the motion for leave. The memorandum of law attached thereto is deemed filed as of the date on which it was submitted. That said, while the Court accepts the filing and has reviewed the memorandum of law in support, the submission provides little, if any, assistance to the Court's findings here, namely that the text of Section 208 unambiguously allows disabled voters to choose for themselves who will assist them in voting, and that the Challenged Ohio Law's limitations of this choice to only certain family members is unlawful and unenforceable.

## III.   Conclusion

For the reasons stated above, Plaintiffs' motion for partial summary judgment (Doc. No. 42) is GRANTED as to Count Three (VRA claim) and DENIED as to Count One (ADA) and Count Two (RA). Plaintiffs' request for declaratory relief and a permanent injunction is GRANTED in part and DENIED in part. State Defendants' and Intervenors' motions for summary judgment on Plaintiffs' VRA claim (Doc. Nos. 43, 44) are DENIED. CCPO's motion for summary judgment (Doc. No. 45) is DENIED. *Amici* state's motion for leave to file a

memorandum of law in support of Plaintiff's motion for partial summary judgment (Doc. No.

46) is GRANTED and the memorandum of law attached to the motion for leave is deemed

filed.[13]

Pursuant to the authority stated in its Memorandum Opinion and Order, the Court hereby

finds that:

> Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, allows a disabled
> voter to select a person of their choice to assist them with voting, including
> the return of a disabled voter's absentee ballot.  To the extent that R.C. §
> 3599.21(A)(9) and R.C. § 3599.21(A)(10) prohibit such assistance by
> limiting who a disabled voter may select to assist them in this manner, the
> statutes are PREEMPTED by Section 208 of the Voting Rights Act.

The Court ORDERS that:

> The State Defendants, the CCPO, and any of their agents, employees, or
> successors in office, are hereby PERMANENTLY ENJOINED from
> administering, implementing, or enforcing R.C. § 3599.21(A)(9) or R.C. §
> 3599.21(A)(10) against any disabled voter or against any individual who
> assists any disabled voter with the return of the disabled voter's absentee
> ballot to the extent such enforcement contradicts Section 208 of the Voting
> Rights Act, with immediate effect.

Count One, Count Two, and Count Four of the Complaint are DISMISSED.


**IT IS SO ORDERED.**


**Date**:  July 22, 2024

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

---

[13] Plaintiffs also filed a motion to exclude State Defendants' expert Kimberly Strach.  (Doc. No.
48.)  That motion is fully briefed.  (Doc. Nos. 60, 61.)  All parties agree that Ms. Strach's report
and proposed testimony are only relevant to Plaintiffs' ADA and RA claims.  (Doc. No. 60,
PageID #4577; Doc. No. 61, PageID #4583.)  Because the Court does not reach Plaintiffs' ADA
or RA claims, it need not resolve Plaintiffs' motion to exclude.  The motion is denied.